**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>11 MD 2296 (WHP)<br>12 MC 2296 (WHP)<br><br>ECF Case |
| THIS DOCUMENT RELATES TO:<br><br>MATTERS LISTED ON EXHIBIT A |  |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT PHASE ONE MOTION TO DISMISS THE INDIVIDUAL CREDITOR ACTIONS WITH PREJUDICE <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    A.    Tribune's LBO ...............................................................................................3

    B.    Tribune's Bankruptcy Filing ........................................................................3

    C.    Relief from the Automatic Stay ...................................................................5

    D.    Individual Creditor Actions .........................................................................7

    E.    The Plan .......................................................................................................8

ARGUMENT .......................................................................................................................9

I.    SECTION 546(e) OF THE BANKRUPTCY CODE BARS PLAINTIFFS' CLAIMS. .....9

    A.    The Payments to Tribune's Shareholders Were Settlement Payments Protected Under § 546(e). ...........................................................................9

    B.    State Law Permitting the Avoidance of a Debtor's Pre-Petition Settlement Payments Would Conflict With and Is Preempted by § 546(e). ...........................11

        1.    Plaintiffs' SLCFC Claims Threaten To Undermine The Important Federal Policies Underlying § 546(e). ......................................................14

        2.    The State Fraudulent Transfer Laws On Which Plaintiffs Rely Conflict With Section 546(e) and Are Preempted. ...................................16

        3.    Allowing Plaintiffs a Section 546(e) "Work-Around" Would Nullify Longstanding Judicial Precedent. ...............................................19

II.    PLAINTIFFS LACK STANDING. ..................................................................................22

    A.    The Committee Has Exclusive Standing to Avoid Tribune's Pre-Petition Payments to Shareholders and Has Sued to Avoid Those Payments ....................22

    B.    Plaintiffs Lack Standing to Avoid the Same Transfers as the Committee ............24

III.    THE SLCFC CLAIMS DID NOT REVERT TO PLAINTIFFS, AND EVEN IF THEY DID, WOULD REMAIN SUBJECT TO PRE-REVERSION LIMITATIONS AND DEFENSES. ....................................................................................29

    A.    The SLCFC Claims Did Not Revert to Plaintiffs. .................................................29

    B.    Even if the SLCFC Claims Did Revert, They Would Be Subject to Pre-Reversion Limitations and Defenses, Including § 546(e). ..............................32

CONCLUSION ...................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

<u>C</u>ASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................2

*Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*,
    330 B.R. 364 (Bankr. S.D.N.Y. 2005) ..................................................................4

*Allen v. McCurry*,
    449 U.S. 90 (U.S. 1980).......................................................................................28

*Arizona v. United States*,
    132 S. Ct. 2492 (2012)....................................................................................12, 35

*Astor Holdings v. Roski*,
    325 F. Supp. 2d 251 (S.D.N.Y. 2003)..................................................................13

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531 (1994).............................................................................................30

*In re Becker*,
    136 B.R. 113 (Bankr. D.N.J. 1992). ...............................................................29-30

*Best Mfg., Inc. v. White Plains Coat & Apron Co. (In re Daniele Laundries, Inc.)*,
    40 B.R. 404 (Bankr. S.D.N.Y. 1984)...................................................................14

*Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*,
    590 F.3d 252 (3d Cir. 2009)......................................................................5, 10, 19

*In re Bridge Information Systems*,
    325 B.R. 824 (Bankr. E.D. Mo. 2005)............................................................26, 28

*Briggs v. Smith Barney, Inc. (In re David)*,
    193 B.R. 935 (Bankr. C.D. Cal. 1996)................................................................21

*Cadle Co. v. Mims (In re Moore)*,
    608 F.3d 253 (5th Cir. 2010). .............................................................................29

*Contemporary Indus. Corp. v. Frost*,
    564 F.3d 981 (8th Cir. 2009) ...................................................................... *passim*

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000).............................................................................................12

*Dixon v. Bennett*,
    531 A.2d 1318 (Md. Ct. Spec. App. 1987)..........................................................32

*E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*,
    236 F.3d 117 (2d Cir. 2001)........................................................................13

*Eberhard v. Marcu*,
    530 F.3d 122 (2d Cir. 2008)........................................................................14

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    341 B.R. 451 (Bankr. S.D.N.Y. 2006),
    *rev'd on other grounds*, 422 B.R. 423 (S.D.N.Y. 2009)........................11

*In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
    651 F.3d 329 (2d Cir. 2011)................................................................ *passim*

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)..............................................................................12, 13

*In re Gen. Motors*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009),
    *aff'd sub nom. Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
    428 B.R. 43 (S.D.N.Y. 2010)......................................................................13

*Hechinger Inv. Co. v. Fleet Retail Fin. Grp.*,
    274 B.R. 71 (Bankr. D. Del. 2002) ...........................................17, 18, 19, 20

*Herzog v. Kroner (In re Kroner)*,
    118 B.R. 86 (Bankr. N.D. Ill. 1990) ..........................................................28

*In re Infinity Bus. Group, Inc.*,
    No. 10-06335-jw, 2011 Bankr. LEXIS 3261 (Bankr. D.S.C. June 22, 2011) ..................26

*Int'l Shoe Co. v. Pinkus*,
    278 U.S. 261 (1929)....................................................................................13

*Ivester v. Miller*,
    398 B.R. 408 (M.D.N.C. 2008) ............................................................26, 28

*Jonas v. Resolution Trust Corp. (In re Comark)*,
    971 F.2d 322 (9th Cir. 1992) ................................................................10, 20

*K.D. Homes, Inc. v. Fritz (In re Fritz)*,
    88 B.R. 434 (Bankr. S.D. Fla. 1998)..........................................................23

*Kaiser Steel Co. v. Pearl Brewing Co. (In re Kaiser Steel Corp.)*,
    952 F.2d 1230 (10th Cir. 1991) ..................................................................10

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
    913 F.2d 846 (10th Cir. 1990) ........................................................10, 15, 19

*Kaler v. Craig (In re Craig)*,
    144 F.3d 587 (8th Cir. 1998) ........................................................33

*Klingman v. Levinson*,
    158 B.R. 109 (N.D. Ill. 1993) ..................................................31, 32

*Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*,
    139 F.3d 574 (7th Cir. 1998) ........................................................33

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*,
    181 F.3d 505 (3d Cir. 1999)............................................... *passim*

*Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*,
    463 B.R. 28 (Bankr. W.D. Mich. 2012).........................................26

*Mgmt. Corp. v. Spencer Savings & Loan Ass'n*
    *(In re Bevill, Bresler & Schulman Asset Mgmt. Corp.)*,
    878 F.2d 742 (3d Cir. 1989) ................................................... 20-21

*Miller v. CSFB (In re Refco Sec. Litig.)*,
    No. 09 Civ. 2885, 2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009), *adopted in full*,
    No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010) ...................10, 11

*Munson v. Rinke*,
    395 Ill. App. 3d 789 (Ill. App. Ct. 2009). .......................................32

*Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (Matter of Pinetree, Ltd.)*,
    876 F.2d 34 (5th Cir. 1989) ..........................................................23

*N.L.R.B. v. Martin Arsham Sewing Co.*,
    873 F.2d 884 (6th Cir. 1989) ........................................................22

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*,
    612 F.3d 97 (2d Cir. 2010)............................................................12

*Nat'l Am. Ins. Co. Ruppert Landscaping Co.*,
    187 F.3d 439 (4th Cir. 1999) ............................................. *passim*

*Nat'l Tax Credit Partners, L.P. v. Havlik*,
    20 F.3d 705 (7th Cir. 1994). .........................................................29

*N. Trust Bank, FSB v. Wells Fargo Bank, N.A.*,
    464 B.R. 269 (E.D. Va. 2012)..................................................26, 28

*Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc. v.*
    *Am. United Life Ins. Co. (In re Quebecor World (USA) Inc.)*,
    453 B.R. 201 (Bankr. S.D.N.Y. 2011), *aff'd*,
    No. 11 Civ. 753 (JMF), 2012 WL 4477247 (S.D.N.Y. Sept. 28, 2012).................... 10-11

*OneBeacon Ins. Co. v. Empress Ambulance Serv., Inc.*,
No. 02 Civ. 2595(WHP), 2003 WL 1857622 (S.D.N.Y. Mar. 28, 2003)...........................3

*PHP Liquidating v. Robbins*,
291 B.R. 603 (D. Del. 2003), *aff'd*, 128 F. App'x 839 (3d Cir. 2005) .............................19

*In re PWS Holding Corp.*,
303 F.3d 308 (3d Cir. 2002).......................................................................22, 24, 29, 31

*Pac. Capital Bank v. Connecticut*,
542 F.3d 341 (2d Cir. 2008)......................................................................................12, 13

*Pereira v. United Jersey Bank, N.A.*,
201 B.R. 644 (S.D.N.Y. 1996).........................................................................................12

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011)...................................................................................16, 21

*Poth v. Russey*,
99 F. App'x. 446 (4th Cir. 2004) ........................................................................25, 26, 27

*QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.)*,
571 F.3d 545 (6th Cir. 2009) ...............................................................................10, 20

*SIPC v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*,
476 B.R. 715 (S.D.N.Y. 2012).........................................................................................21

*Simmons v. Roundup Funding, LLC*,
No. 08 Civ. 6263, 2009 WL 3049586 (S.D.N.Y. Sept. 23, 2009),
*aff'd in part and vacated in part on other grounds*, 622 F.3d 93 (2d Cir. 2010) ..............13

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
884 F.2d 688 (2d Cir. 1989)...................................................................................... 22-23

*In re Stein*,
314 B.R. 306 (D.N.J. 2004) ............................................................................................23

*Stolz v. Brattleboro Housing Auth. (In re Stolz)*,
315 F.3d 80 (2d Cir. 2002)...............................................................................................13

*In re Tessmer*,
329 B.R. 776 (Bankr. M.D. Ga. 2005)..................................................................23, 27, 28

*In re Tribune Co. Fraudulent Conveyance Litigation*,
831 F. Supp. 2d 1371 (J.P.M.L. 2011).............................................................................8

*Trimble v. Woodhead*,
102 U.S. 647, 649 (1880)..................................................................................................31

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
    No. 3:10-CV-1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012) ...........17, 18, 19, 20

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...............................................................14

*U.S. Lines, Inc. v. United States (In re McLean Indus., Inc.)*,
    196 B.R. 670 (S.D.N.Y. 1996) ..........................................................................31

*Wanger v. Primack (In re Primack)*,
    81 B.R. 711 (Bankr. S.D. Fla. 1987) ................................................................23

*Weisfelner v. Morgan Stanley & Co. (In re Lyondell Chemical Co.)*,
    Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y.) ....................................................21

*Wyle v. Howard, Weil, Labouisse, Friedrichs, Inc. (In re Hamilton Taft & Co.)*,
    196 B.R. 532 (N.D. Cal. 1995) ........................................................................21

## CONSTITUTION

U.S. Const. art. VI, § 2 ............................................................................................12

## FEDERAL RULE

Fed. R. Civ. P. 12(b)(6) .......................................................................................2, 35

## FEDERAL STATUTES

11 U.S.C. § 101 .........................................................................................................9

11 U.S.C. § 101(22)(A) ...........................................................................................11

11 U.S.C. § 363 .......................................................................................................30

11 U.S.C. § 541 .......................................................................................................14

11 U.S.C. § 542 .......................................................................................................14

11 U.S.C. § 543 .......................................................................................................14

11 U.S.C. § 544 .................................................................................................*passim*

11 U.S.C. § 544(b) ...........................................................................................*passim*

11 U.S.C. § 544(b)(1) ...................................................................................9, 14, 18

11 U.S.C. § 545 .................................................................................................10, 14

11 U.S.C. § 546(a) ..................................................................................................31

11 U.S.C. § 546(e) ............................................................................................... *passim*

11 U.S.C. § 547 ............................................................................................... 9, 14

11 U.S.C. § 547(b) ............................................................................................... 13

11 U.S.C. § 548 ............................................................................................... 14, 24

11 U.S.C. § 548(a)(1)(A) ............................................................................... *passim*

11 U.S.C. § 548(a)(1)(B) ............................................................................... 5, 9

11 U.S.C. § 548(b) ............................................................................................... 9

11 U.S.C. § 549 ............................................................................................... 14

11 U.S.C. § 550 ............................................................................................... 14

11 U.S.C. § 551 ............................................................................................... 14

11 U.S.C. § 553 ............................................................................................... 14

11 U.S.C. § 554 ............................................................................................... 30

11 U.S.C. § 554(d) ............................................................................................... 30

11 U.S.C. § 741 ............................................................................................... 9

11 U.S.C. § 741(8) ............................................................................................... 10

11 U.S.C. § 1129 ............................................................................................... 30

## STATE STATUTES

Mass. Gen. L. 109A, § 11 ............................................................................... 33

740 Ill. Comp. Stat. 160/11 ............................................................................... 33

N.Y. Debt. & Cred. L. § 280 ............................................................................... 33

U.C.C. Rev. Art. 8, Refs & Annos (2005) ............................................................... 34

## MISCELLANEOUS

BLACK'S LAW DICTIONARY (9th ed. 2009) ............................................................... 34

Collier on Bankruptcy,
    ¶ 544.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ............................... 24

Depository Trust Co. Order,
    Exchange Act Release No. 20221 (Sept. 23, 1983),
    48 Fed. Reg. 45167 (Oct. 3, 1983)......................................................................11

Financial Netting Improvements Act of 2006,
    Pub. L. No. 109-390, § 5(b)(1), 120 Stat. 2692, 2697-98 (2006) ......................16

H.R. Rep. 97-420 (1982)
    *as reprinted in* 1982 U.S.C.C.A.N. 583, 583 ....................................................15

James Steven Rogers, *Policy Perspectives on Revised U.C.C. Article 8*,
    43 UCLA L. Rev. 1431, 1443–45 (1996) .................................................33, 34

Self-Regulatory Organizations – The Depository Trust Company,
    Exchange Act Release No. 34-47978 (June 4, 2003),
    68 Fed. Reg. 35037 (June 11, 2003) ........................................................11, 34

## PRELIMINARY STATEMENT

In 2007, in connection with a leveraged buy-out ("LBO") of Tribune Company ("Tribune") by investor Sam Zell and Tribune's Employee Stock Ownership Plan (the "Tribune ESOP"), approximately $8.2 billion was paid to thousands of public shareholders in exchange for their Tribune shares.  In December 2008, Tribune and its subsidiaries filed for bankruptcy protection.  Plaintiffs now seek to avoid payments to Tribune's former shareholders as constructive fraudulent transfers under state law.  For the reasons explained below, Plaintiffs' claims are barred as a matter of law.

First, Tribune's payments to its shareholders are classic "settlement payments" as defined in the Bankruptcy Code.  Under § 546(e) of the Code, settlement payments cannot be avoided except in cases of actual, intentional fraud under federal law.  Plaintiffs do not allege actual, intentional fraud under federal law.  They allege only constructive fraud and only under state law.  To the extent that state law would permit Plaintiffs to avoid settlement payments that are protected from avoidance under § 546(e), state law conflicts with federal law and is preempted.  Preemption of conflicting state law is necessary for § 546(e) to serve its intended purpose – safeguarding the finality of securities transactions and the orderly functioning of the securities markets.

Second, Plaintiffs lack standing to assert state law constructive fraudulent conveyance ("SLCFC") claims because those claims target the same transfers that are the subject of an avoidance action brought by the Official Committee of Unsecured Creditors of Tribune Company (the "Committee").  The Bankruptcy Court granted the Committee standing to pursue all avoidance actions on behalf of Tribune's estate, and the Committee has exercised that authority, suing in the Bankruptcy Court to avoid (as *intentional* fraudulent transfers) the same payments to shareholders that Plaintiffs seek to avoid (as *constructive* fraudulent transfers) here.

That the elements of Plaintiffs' claims do not correspond one-to-one with the elements of the Committee's claim is of no consequence, for as the case law uniformly holds, an individual creditor lacks standing to assert *any* state-law avoidance action that shares the same "object and purpose" as an avoidance action brought by an estate representative.  Defendants know of no case permitting an individual creditor to pursue an avoidance action targeting the same transfer that an estate representative also seeks to avoid.  This case should not be the first.

Third, Plaintiffs lost the right to assert SLCFC claims when Tribune filed for bankruptcy. While Tribune's creditors would have had the right to bring SLCFC claims if Tribune had never filed for bankruptcy, once Tribune did file, the right to bring those claims vested exclusively in the bankruptcy estate.  Nothing in the Bankruptcy Code allowed the claims to later "revert" to Plaintiffs or to any other creditors of Tribune.  Nor did Plaintiffs acquire the right to pursue the claims through any of the mechanisms the Bankruptcy Code expressly provides, such as a sale or abandonment of claims.  And even if the claims "reverted," they would be subject to the same limitations and defenses that existed prior to the reversion, including the § 546(e) safe harbor.

Longstanding principles of federal preemption and standing, and the Bankruptcy Code itself, bar Plaintiffs' claims as a matter of law.  The Individual Creditor Actions should be dismissed with prejudice.

## STATEMENT OF FACTS

The facts presented below either are alleged in the complaints and therefore accepted as true for purposes of this motion,[1] or are taken from the record of proceedings in the Tribune chapter 11 case and in this Court, and are therefore properly the subject of judicial notice.[2]

---

[1]   On a motion under Rule 12(b)(6), the court must accept as true all facts alleged in the complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A.     **Tribune's LBO**

In 2007, the Tribune ESOP acquired all of Tribune's outstanding shares through an LBO that was accomplished in two steps:  a cash tender offer for 50% of Tribune's shares at a price of $34 per share and a back-end merger at the same price.  N.H. Compl. ¶ 62, Ret. Compl. ¶¶ 36-40.[3]  In total, Tribune's shareholders were paid approximately $8.2 billion, most of it borrowed from large financial institutions.  *See* N.H. Compl. ¶¶ 62, 66; Ret. Compl. ¶¶ 35-36.  The payments to shareholders were made through Computershare Trust Company ("CTC") as the shareholders' agent and attorney-in-fact, s*ee* N.H. Compl. ¶ 149, and the transactions were cleared and settled through The Depository Trust & Clearing Corporation ("DTCC") and one or more of its subsidiaries, including The Depository Trust Company ("DTC").  *See* Ret. Compl. ¶ 295.

B.     **Tribune's Bankruptcy Filing**

Tribune operated for nearly one year after completing the LBO, but in December 2008, amid the growing worldwide financial crisis, Tribune and its subsidiaries were forced to file for bankruptcy.  *See* N.H. Compl. ¶ 112, Ret. Compl. ¶ 13.  In the spring of 2010, the Bankruptcy Court appointed an examiner (the "Examiner") to investigate potential causes of action available

---

[2]     The Court may take judicial notice of pleadings from the Tribune bankruptcy case and this and related litigation.  *See OneBeacon Ins. Co. v. Empress Ambulance Serv., Inc.*, No. 02 Civ. 2595(WHP), 2003 WL 1857622, at *3 (S.D.N.Y. Mar. 28, 2003) (Pauley, J.).  As used herein: (i) "Bankr. Dckt. No." refers to the Tribune bankruptcy case, *In re Tribune*, No. 08-13141 (KJC) (Bankr. D. Del.); (ii) "Adv. Pro. Dckt. No." refers to the Committee Action, *Official Committee of Unsecured Creditors of Tribune Company, et al. v. Fitzsimons*, No. 10-ap-54010 (KJC); and (iii) "MDL Dckt. No." refers to *In re Tribune*, No. 11-md-2296 (S.D.N.Y.).

[3]     The complaints in the Note Holder Actions are identical in all material respects. Citations are to the Third Amended Complaint in *Deutsche Bank Trust Co. Americas, et al. v. Adaly Opportunity Fund TD Sec., Inc., et al.*, No. 11-cv-04784 (Oct. 9, 2012) (MDL Dckt. No. 1558) ("N.H. Compl.").  The complaints in the Retiree Actions are also substantively identical. Citations are to the Second Amended Complaint in *Niese, et al. v. AllianceBernstein L.P., et al.*, No. 11-cv-4538 (S.D.N.Y. Dec. 20, 2011) (Dckt. No. 203) ("Ret. Compl.").

3

to the Tribune bankruptcy estate arising out of the LBO.  *See* Ret. Compl. ¶ 99.  In July 2010,

following an investigation that cost the estate almost $9 million, the Examiner presented his

findings and conclusions in a four-volume, 1200-page report (the "Examiner Report").[4]

Based upon information gleaned from the Examiner Report, the Committee obtained an

order of the Bankruptcy Court in October 2010 granting the Committee standing to act for

Tribune's bankruptcy estate and file an adversary proceeding asserting claims arising out of the

LBO.[5]  One month later, the Committee initiated its own investigation, issuing more than 1600

subpoenas and, over the next 6 months, collecting voluminous documents and information

related to the LBO.[6]

On November 1, 2010, the Committee filed its adversary proceeding (the "Committee

Action") asserting claims against Zell, Tribune's officers and directors, financial advisors, and

others under legal theories that included breach of fiduciary duty, payment of illegal dividends,

and unjust enrichment.[7]  In Count XIII, which named all of Tribune's former shareholders as

defendants, the Committee sought to avoid the payments the shareholders received in exchange

for their shares.  The Committee alleged that those payments constituted *intentional* fraudulent

transfers and could therefore be avoided under § 548(a)(1)(A) of the Bankruptcy Code.  The

---

[4]     *See* Submission of Report of Kenneth N. Klee, as Examiner, and Notice Thereof, Bankr.
Dckt. No. 5130-34.

[5]     *See* Bankr. Dckt. No. 5668 (motion requesting standing filed on Sept. 13, 2010) and
Bankr. Dckt. No. 6150 (order granting standing entered on Oct. 27, 2010).  While the
Bankruptcy Code grants the "trustee" standing to bring fraudulent transfer claims, *see* 11 U.S.C.
§§ 544, 548, it also provides that a debtor-in-possession has the same rights as a trustee, *see id.*
§ 1107(a), and bankruptcy courts may authorize a creditors' committee to stand in the shoes of
the debtor-in-possession or trustee as a representative of the bankruptcy estate.  *See, e.g.*,
*Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364,
373 (Bankr. S.D.N.Y. 2005).

[6]     *See* Committee's Motion for Protective Order, Adv. Pro. Dckt. No. 113.

[7]     *See* Committee Compl., Adv. Pro. Dckt. No. 1; *see also* First Amended Complaint, Adv.
Pro. Dckt. No. 61 ("Committee Compl.").

Committee did not allege that the payments were *constructive* fraudulent transfers avoidable under §§ 548(a)(1)(B) or 544, and instead allowed the two-year statute of limitations applicable to any such claim to expire.[8]  The Committee alleged only intentional fraudulent transfers, and not constructive fraudulent transfers, presumably because § 546(e) does not protect intentional fraudulent transfers under § 548(a)(1)(A) from avoidance.  The Committee's decision not to pursue a claim for constructive fraudulent transfer was consistent with the Examiner's conclusion that under a "straightforward" application of the Bankruptcy Code, "[a] court is highly likely to find that Bankruptcy Code [§] 546(e) protects payments to the Selling Stockholders on account of their stockholder interests in Tribune under the [LBO], except to the extent the transfers constitute intentional fraudulent transfer[s]" "under Bankruptcy Code [§] 548(a)(1)(A)."[9]

## C.   Relief from the Automatic Stay

On March 1, 2011, the Note Holders[10] moved the Bankruptcy Court for relief from the automatic stay in order to file lawsuits outside of the Bankruptcy Court asserting SLCFC claims to avoid the payments to Tribune's shareholders.[11]  Joining the motion (the "Stay Relief Motion") was Aurelius Capital Management ("Aurelius"),[12] a distressed debt hedge fund that

---

[8]      *See* Committee Compl. at ¶¶ 317-21 (alleging intentional fraudulent transfer claim). Subject to certain narrow exceptions, the Committee Action has been stayed by order of this Court.  *See* Master Case Order No. 3 at ¶¶ 36, 41 (MDL Dckt. No. 45) (Sept. 7, 2012) (the "Master Case Order").

[9]      *See* Examiner Report Vol. II at 241 (citing *Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 590 F.3d 252, 258-59 (3d Cir. 2009); *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 514-16 (3d Cir. 1999)).

[10]      As used herein, "Note Holders" refers to the indenture trustees identified in the Master Case Order.

[11]      *See* Bankr. Dckt. No. 8201 (Mar. 1, 2011).

[12]      Bankr. Dckt. No. 7205 (Dec. 16, 2010).

had acquired a majority position in Tribune's Senior Notes and a significant position in

Tribune's PHONES Notes,[13] presumably at a deep discount, after Tribune went into bankruptcy.

   The Committee supported the Note Holders' Stay Relief Motion, explaining that the

Committee "deliberately did not initiate any Creditor SLCFC claims against the Former

Shareholders," "inten[ding] . . . that individual creditors have the ability to pursue the Creditor

SLCFC Claims on their own behalf."[14]  The Committee's cooperation with the Note Holders was

not unexpected.  As noted in the Examiner Report nine months earlier, certain unidentified

parties had raised with the Examiner the prospect of circumventing § 546(e) so as to allow

individual creditors to prosecute SLCFC claims that were foreclosed to the Committee.  The

Examiner considered the validity of any such "546(e) Work-Around" as outside the scope of his

mandate, and therefore "refrain[ed] from opining" on the subject.[15]

   The Bankruptcy Court granted the Stay Relief Motion, permitting the Note Holders and

other creditors to file SLCFC claims against Tribune's shareholders.  In ruling on the motion, the

Bankruptcy Court made clear that it was not deciding the merits of the SLCFC claims or even

whether creditors had the right to bring them: "[T]he debtors' creditors have regained the right, *if

any*, to prosecute their respective state-law constructive fraudulent conveyance claims."[16]  The

Bankruptcy Court stressed that "[n]othing in this Order shall prejudice or impair any claims or

defenses of any defendant in any proceeding in respect of a Creditor SLCFC Claim," and that it

was "mak[ing] no finding and issu[ing] no ruling determining the standing of the [Note Holders

---

[13] "Senior Notes" and "PHONES Notes" are defined and more fully described in the Master Case Order at 1.

[14] *See* Statement of the Official Committee of Unsecured Creditors, Bankr. Dckt. No. 8396, at 4.

[15] Examiner Report Vol. II at 254-55.

[16] *See* N.H. Compl. Ex. B at ¶ 2; Ret. Compl. Ex. A at ¶ 2.

or Retirees] (or any creditor) to assert the Creditor SLCFC Claims or whether such claims are preempted or otherwise impacted by . . . § 546(e)."[17]

### D.     Individual Creditor Actions

Beginning on June 2, 2011, Plaintiffs initiated 44 actions against thousands of former Tribune shareholders in 21 state and federal courts around the country, asserting SLCFC claims to avoid billions of dollars in payments that the shareholders received in the LBO, the same payments the Committee seeks to avoid in Count XIII of the Committee Action.  The Note Holder Plaintiffs sued under the fraudulent transfer laws of Illinois, Massachusetts and New York.  *See, e.g.*, N.H. Compl. ¶¶ 115-160.  The Retiree Plaintiffs sued only under Illinois law. *See, e.g.*, Ret. Compl. ¶¶ 314-329.

In preparing their complaints, the Note Holders and Retirees had access to the voluminous discovery the Committee compiled during its investigation.  *See* Motion for Protective Order at ¶ 16 (Adv. Pro. Dckt. No. 113).  In the Bankruptcy Court, when the Note Holders sought access to the Committee's discovery record, the Committee supported the request, *see id.*, which the Bankruptcy Court granted.  *See* Protective Order (Adv. Pro. Dckt. No. 113).  Not surprisingly, the Note Holders' SLCFC claims closely mirror Count XIII in the Committee Action, which seeks to avoid (as intentional fraudulent transfers) the same payments to the same Tribune shareholders.  Indeed, the Committee's counsel has acknowledged in this Court that the Committee, the Note Holders, and the Retirees are pursuing essentially the same case, to avoid the same transfers to the same defendants, different only in that the Committee

---

[17]     *See* N.H. Compl. Ex. B at ¶ 8 n.2; Ret. Compl. Ex. A at ¶ 8 n.2.

alleges intentional fraud and seeks to benefit all creditors while the Note Holders and Retirees allege constructive fraud and seek to benefit only themselves.[18]

On August 16, 2011, the Note Holders moved the Judicial Panel on Multidistrict Litigation to consolidate the Individual Creditor Actions in the Southern District of New York. The Panel granted the motion, and on February 10, 2012, the transferred cases were assigned to this Court. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F.2d 1371, 1371 (J.P.M.L. 2011). The Panel subsequently consolidated additional cases before this Court, including the Committee Action. *See* Order Lifting Stay of Conditional Transfer Order (MDL Dckt. No. 992) (Mar. 20, 2012). The consolidated litigation currently includes 52 cases originally filed in 24 different courts.

### E.    The Plan

On July 23, 2012, the Bankruptcy Court confirmed Tribune's plan of reorganization (the "Plan").[19] When the Plan becomes effective, a litigation trust will assume control of the Committee's claims, including those asserted in the Committee Action. Plan ¶¶ 1.1.124, 1.1.174, 13.1.2. In furtherance of the attempted "546(e) Work-Around," however, certain claims will not be transferred to the litigation trust and will instead be left to creditors to pursue themselves. Plan ¶ 1.1.67. These "Disclaimed State Law Avoidance Claims" are the creditor SLCFC claims that Plaintiffs assert here. *Id.*

---

[18]    *See* July 10 Hearing Transcript at 12:13-13:8 (MDL Dckt. No. 46) (remarks of Counsel for the Committee acknowledging that the Committee's fraudulent transfer action "in a number of respects parallels" Plaintiffs' fraudulent transfer actions).

[19]    *See* Fourth Amended Joint Plan of Reorganization (Bankr. Dckt. No. 12072) (July 20, 2012).

## ARGUMENT

### I.   SECTION 546(e) OF THE BANKRUPTCY CODE BARS PLAINTIFFS' CLAIMS.

Congress enacted § 546(e) of the Bankruptcy Code to prevent the exact claims Plaintiffs assert here.  Relying on state law, Plaintiffs seek to avoid and recover billions of dollars paid to thousands of public shareholders who sold their stock in Tribune through a tender offer and merger five years ago.  Under § 546(e), the payments to Tribune's shareholders cannot be avoided (except under § 548(a)(1)(A)) because they are "settlement payment[s] . . . made by or to . . . [a] financial institution."  State fraudulent transfer laws that would permit the avoidance of such payments conflict with § 546(e) and are preempted.  Thus, Plaintiffs' attempted "546(e) Work-Around"—using state law to achieve what federal law forbids—fails as a matter of law.

### A.   The Payments to Tribune's Shareholders Were Settlement Payments Protected Under § 546(e).

Section 546(e) of the Bankruptcy Code establishes an absolute "safe harbor" protecting a settled securities transaction from being unwound as a constructive fraudulent transfer when a party to the transaction files for bankruptcy.  Without that safe harbor, a trustee could seek to avoid such a transaction by asserting constructive fraudulent transfer causes of action that the debtor's creditors could themselves have brought under state law, such as Plaintiffs' SLCFC claims.  *See* 11 U.S.C. § 544(b)(1).  By its terms, § 546(e) precludes this result:

> *Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a . . . settlement payment*, as defined in section 101 or 741 of this title, *made by or to . . .* [*a*] *financial institution, financial participant, or securities clearing agency . . .* that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

*Id.* § 546(e) (emphasis added).

9

The payments to Tribune's shareholders fall squarely within § 546(e)'s safe harbor because they were plainly "settlement payments . . . made by or to . . . [a] financial institution, financial participant, or securities clearing agency."

The Bankruptcy Code definition of settlement payment[20] is "extremely broad." *In re Resorts Int'l*, 181 F.3d at 515.  It encompasses virtually all "transfer[s] of cash or securities made to complete a securities transaction." *Id.*; *accord In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 337 (2d Cir. 2011) (a "settlement payment" is "an exchange of money or securities that completes a securities transaction").[21]  Payments to shareholders in exchange for their shares in an LBO are unquestionably "settlement payments."  *See, e.g.*, *In re Resorts Int'l*, 181 F.3d at 514-16 (holding that a "payment for shares during an LBO" is a "settlement payment for the purposes of § 546(e)").[22]

The settlement payments at issue here were also made "by or to . . . [a] financial institution, financial participant, or securities clearing agency."  The payments were processed through the shareholders' agent and attorney-in-fact, CTC, a "trust company" and therefore a

---

[20]     *See* 11 U.S.C. § 741(8) ("'[S]ettlement payment' means a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade[.]").

[21]     *See also QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.)*, 571 F.3d 545, 549-50 (6th Cir. 2009); *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 985-86 (8th Cir. 2009); *Jonas v. Resolution Trust Corp. (In re Comark)*, 971 F.2d 322, 325-26 (9th Cir. 1992); *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 849-50 (10th Cir. 1990).

[22]     *Accord In re Plassein Int'l Corp.*, 590 F.3d at 258-59; *In re QSI Holdings*, 571 F.3d at 550; *Contemporary Indus. Corp.*, 564 F.3d at 986-88; *Kaiser Steel Co. v. Pearl Brewing Co. (In re Kaiser Steel Corp.)*, 952 F.2d 1230, 1240 (10th Cir. 1991); *Kaiser Steel*, 913 F.2d at 849-50; *Miller v. CSFB (In re Refco Sec. Litig.)*, No. 07 MDL 1902, 2009 WL 7242548, at *3-8 (S.D.N.Y. Nov. 13, 2009) (report and recommendation of special master), *adopted in full*, No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010); *Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor World (USA) Inc.)*, 453 B.R. 201, 218-19 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 11 Civ. 753(JMF), 2012 WL 4477247 (S.D.N.Y. Sept. 28, 2012).

"financial institution" as defined in the Bankruptcy Code.  11 U.S.C. § 101(22)(A).  The

transactions were also cleared and settled through DTCC and/or its subsidiary DTC, a registered

clearing agency.  *See* Depository Trust Co. Order, Exchange Act Release No. 20221 (Sept. 23,

1983), 48 Fed. Reg. 45167 (Oct. 3, 1983) (SEC's approval of DTC's registration as a clearing

agency); Self-Regulatory Organizations – The Depository Trust Company, Exchange Act

Release No. 34-47978 (June 4, 2003), 68 Fed. Reg. 35037, 35041 (June 11, 2003) (noting that

DTC is a registered clearing agency and "facilitate[es] the prompt and accurate settlement of

securities transactions . . . ."); U.C.C. § 8-102(14) (defining "securities intermediaries" to include

clearing corporations).[23]

     As a matter of law, therefore, the payments here are protected from avoidance under

§ 546(e).

     **B.**    **State Law Permitting the Avoidance of a Debtor's Pre-Petition Settlement Payments Would Conflict With and Is Preempted by § 546(e).**

     Because the payments to Tribune's shareholders were settlement payments made by or to

a financial institution, state law claims to avoid those payments would have been expressly

barred under § 546(e) if brought by the Committee.  The Committee's election not to bring those

claims, and instead to allow the statute of limitations to expire, admits the point.

     In furtherance of their attempt to develop a "Section 546(e) Work-Around," however,

Plaintiffs will no doubt argue that because § 546(e) refers only to an action by the "trustee" to

avoid settlement payments under "section 544" of the Bankruptcy Code, § 546(e) does not apply

to their actions brought under state law.  That argument is without merit.  The protections of

---

[23]    The Court can take judicial notice that CTC, DTCC and DTC are among the qualified
market participants listed in § 546(e).  *Cf. In re Refco*, 2009 WL 7242548, at *6-8 (taking
judicial notice that The Bank of New York was a "financial institution"); *Enron Corp. v. Int'l
Fin. Corp. (In re Enron Corp.)*, 341 B.R. 451, 458 (Bankr. S.D.N.Y. 2006), *rev'd on other
grounds*, 422 B.R. 423 (S.D.N.Y. 2009) (same, with respect to Chase Manhattan Bank).

§ 546(e) do not disappear simply because the state law claims are asserted by Plaintiffs rather

than the Committee.  Settled principles of implied conflict preemption bar Plaintiffs from using

state law to accomplish precisely what § 546(e) expressly forbids as a matter of federal law.

Under the Supremacy Clause, state laws that interfere with or are contrary to federal law

are preempted.  *See* U.S. Const. art. VI, § 2.  Congress may preempt state law explicitly, or may

do so implicitly under (1) "field preemption, where Congress has legislated so comprehensively

that federal law occupies an entire field of regulation and leaves no room for state law," or (2)

"conflict preemption, where local law conflicts with federal law such that it is impossible for a

party to comply with both *or* the local law is an obstacle to the achievement of federal

objectives."  *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010)

(emphasis added) (internal quotation marks omitted).  Under implied preemption, state-law

causes of action that "stand[] as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress," *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000),

or that "would frustrate the purposes of the federal scheme," *Pac. Capital Bank v. Connecticut*,

542 F.3d 341, 351 (2d Cir. 2008), are preempted.  "If the purpose of the [federal] act cannot

otherwise be accomplished—if its operation within its chosen field else must be frustrated and its

provisions be refused their natural effect—the state law must yield . . . ."  *Crosby v. Nat'l*

*Foreign Trade Council*, 530 U.S. 363, 373 (2000) (internal quotation marks omitted); *accord*

*Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012).

The rules of implied federal preemption apply with full force in bankruptcy cases.  *See,*

*e.g.*, *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 676-80 & n.25 (S.D.N.Y. 1996)

(creditor state-law unjust enrichment claims to recover pre-bankruptcy transfers of the debtor's

property were preempted to the extent they would "stand as an obstacle to the accomplishment

and execution of the full purposes and objectives of [§] 547(b)," another avoidance provision concerning preferential transfers); *In re Gen. Motors*, 407 B.R. 463, 515 (Bankr. S.D.N.Y. 2009) (state auto-dealer franchise law "trumped by federal bankruptcy law" "[t]o the extent that [those] laws . . . impair the ability to reject, or to assume and assign [auto-dealer contracts]" under the Bankruptcy Code), *aff'd sub nom. Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010).

Indeed, in many contexts, courts have construed the Bankruptcy Code to have an even broader preemptive effect on state law under principles of field preemption. The Supreme Court has recognized that "[i]n respect of bankruptcies the intention of Congress is plain"—it is "to establish uniformity [that] necessarily excludes state regulation" and means that states "may not . . . enforce laws to interfere with . . . the Bankruptcy Acts or to provide additional . . . regulations." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929). On this basis, the Court of Appeals and district courts in the Second Circuit have held that a wide variety of state-law causes of action are preempted by the Bankruptcy Code.[24]

These principles are dispositive here. Plaintiffs are attempting to avoid the same payments, under the same theories of constructive fraudulent transfer, that are protected from avoidance under § 546(e). If successful, Plaintiffs' claims would assuredly "frustrate the purposes," *see Pac. Capital Bank*, 542 F.3d at 351, of the federal statute and "stand[] as an obstacle to [its] accomplishment and execution." *See Geier*, 529 U.S. at 873.

---

[24]     *See, e.g.*, *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120-21 (2d Cir. 2001) (per curiam) (state-law tort claims for violations of the Bankruptcy Code's automatic stay); *Simmons v. Roundup Funding, LLC*, No. 08 Civ. 6263, 2009 WL 3049586, at *4 (S.D.N.Y. Sept. 23, 2009) (state-law claims for filing fraudulent proof of claim), *aff'd in part and vacated in part on other grounds*, 622 F.3d 93 (2d Cir. 2010); *Astor Holdings v. Roski*, 325 F. Supp. 2d 251, 262-63 (S.D.N.Y. 2003) (state-law tort claims for "bad faith" bankruptcy filings); *Stolz v. Brattleboro Housing Auth. (In re Stolz)*, 315 F.3d 80, 92-94 (2d Cir. 2002) (state-law eviction remedies for non-payment of discharged rent).

      1.      <u>Plaintiffs' SLCFC Claims Threaten to Undermine the Important Federal Policies Underlying § 546(e).</u>

When Congress passed the Bankruptcy Code, it provided a set of remedies to recover the debtor's assets for the benefit of all creditors, including the avoidance and recovery of fraudulent transfers.  *See* 11 U.S.C. §§ 541-545, 547-551, 553.  In § 548, Congress created a distinct, federal fraudulent transfer cause of action available to the trustee.  But it also incorporated the state law of fraudulent transfer, specifying that "the trustee may avoid any transfer . . . that is voidable under applicable law by a creditor."  *Id.* § 544(b)(1).  Outside of bankruptcy, state fraudulent transfer law enables creditors to set aside transfers of a debtor's property if the transfer hindered repayment of the creditor's claim.  *See Eberhard v. Marcu*, 530 F.3d 122, 129-31 (2d Cir. 2008).  In bankruptcy, these creditor remedies are preserved in § 544.  That section, unlike § 548, does not create a new, federal law cause of action.  It simply provides a mechanism for enforcing the creditors' state-law rights.  11 U.S.C. § 544.  It does so by allowing the trustee to step into the creditors' shoes and assert the fraudulent transfer claims that creditors could have brought under state law.  *Id.* § 544(b).

The remedy Congress provided in § 544(b), however, is limited in two important respects.  <u>First</u>, under § 544(b)(1), the trustee or other representative of the bankruptcy estate has the *exclusive* right to bring creditor SLCFC claims.  Upon the commencement of a bankruptcy case, therefore, it is "axiomatic that . . . creditors of the estate have no right to proceed independently" to pursue fraudulent transfer actions under state law.  *Best Mfg., Inc. v. White Plains Coat & Apron Co. (In re Daniele Laundries, Inc.)*, 40 B.R. 404, 408 (Bankr. S.D.N.Y. 1984); *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002) (the "trustee has exclusive authority to maintain" "fraudulent conveyance claims based upon pre-bankruptcy petition transfers by a debtor").  <u>Second</u>, under

§ 546(e), the trustee "may not avoid" securities settlement payments.  This limitation on the trustee's avoidance power exists "[n]otwithstanding [§] 544," which would otherwise empower the trustee to assert any creditor SLCFC claims to avoid such payments.

By granting a trustee the exclusive right to bring the creditors' state-law avoidance claims, and then barring those claims that fall within the § 546(e) safe harbor, Congress precluded creditor state-law claims to avoid settlement payments, precisely the claims Plaintiffs assert here.  Congress limited state law remedies in this way because it determined that when a debtor files for bankruptcy, the creditor-protection policies underlying constructive fraudulent transfer law must give way to the paramount federal policy of "protect[ing] the nation's financial markets from the instability caused by the reversal of settled securities transactions." *Kaiser Steel Corp.*, 913 F.2d at 848 (internal quotation marks omitted).  Given the volatile and interconnected nature of the financial markets, Congress was concerned that a major bankruptcy filing could trigger attempts to unwind the debtor's prior securities transactions and create the "danger of a 'ripple effect' on the entire market." *Id.* at 849 (quoting H.R. Rep. 97-420, at 1 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 583, 583) (internal citation omitted).  "If a firm is required to repay amounts received in settled securities transactions, it could have insufficient capital or liquidity to meet its current securities trading obligations, placing other market participants and the securities markets themselves at risk." *In re Enron Creditors Recovery Corp.*, 651 F.3d at 334.

Section 546(e) represents Congress' response to this risk of market instability.  In § 546(e), Congress sought to "'minimiz[e] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries.'" *Id.* (quoting *Kaiser Steel Corp.*, 913 F.2d at 846).  "By restricting a bankruptcy trustee's power to recover

payments that are otherwise avoidable under the Bankruptcy Code, the [§ 546(e)] safe harbor stands 'at the intersection of two important national legislative policies on a collision course—the policies of bankruptcy and securities law.'" *Id.* (quoting *In re Resorts Int'l*, 181 F.3d at 515). Section 546(e) reflects a legislative judgment on how to balance these conflicting policies that Congress, and Congress alone, is entitled to make:  to permit intentional fraudulent transfer claims to proceed under § 548(a)(1)(A), but otherwise to bar fraudulent transfer claims seeking to undo settlement payments.  Congress has revisited § 546(e) on numerous occasions, *see Picard v. Katz*, 462 B.R. 447, 452 n.3 (S.D.N.Y. 2011), and on each occasion it has reaffirmed its commitment to the important federal policies underlying the statute.  Indeed, as recently as 2006, Congress amended § 546(e) to *broaden* its protections, extending the safe harbor beyond "settlement payments" to *any* other "transfer" made "in connection with a securities contract." *See* Financial Netting Improvements Act of 2006, Pub. L. No. 109-390, § 5(b)(1), 120 Stat. 2692, 2697-98 (2006).

Allowing Plaintiffs' claims to proceed would create the very instability Congress sought to prevent through the § 546(e) safe harbor.  Plaintiffs are attempting to unwind thousands of payments made five years ago to settle securities transactions between Tribune and its shareholders.  These transactions involved large financial institutions, clearing agencies, and other market participants that play pivotal roles in the financial markets.  By seeking to avoid these payments, Plaintiffs are spreading confusion and uncertainty and undermining investor confidence in the financial markets, precisely what Congress sought to prevent.

2.  <u>The State Fraudulent Transfer Laws on Which Plaintiffs Rely Conflict with Section 546(e) and Are Preempted</u>.

Given this manifest Congressional intent, courts have rejected efforts by trustees, creditors committees, and other estate representatives to circumvent § 546(e) by bringing claims

to recover settlement payments under state law.  In a case like this one arising out of an LBO, the Eighth Circuit held that § 546(e) preempted state law claims to avoid the same settlement payments to shareholders that the court had already held were "unavoidable under § 546(e)" as constructive fraudulent conveyances.  *See Contemporary Indus. Corp.*, 564 F.3d at 988. Although the state-law claims were styled as claims for unjust enrichment and illegal shareholder distributions rather than claims to avoid fraudulent transfers, and thus fell outside the literal terms of §§ 544 and 546(e), the Eighth Circuit nevertheless concluded that they were barred under implied preemption principles because they would "conflict[] with" and "frustrate[], federal law, [i.e., § 546(e)]."  *Id.* (internal quotation marks omitted).  Permitting the state-law claims to proceed "would wholly frustrate the purpose behind [§ 546(e)]" because, just as here, "[a]llowing recovery on these [state-law] claims would render the § 546(e) exemption meaningless."  *Id.*

Two district court decisions, including one rendered earlier this year, have applied the same analysis and reached the same conclusion.  *See U.S. Bank N.A. v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 4050088, at*18-19 (N.D. Tex. Sept. 14, 2012) (section 546(e) preempted state-law unlawful dividend claim to recover payment in spin-off transaction because "allowing the plaintiff in this case to recover . . . under state unlawful dividend statute would render [§] 546(e) meaningless"); *Hechinger Inv. Co. v. Fleet Retail Fin. Grp.*, 274 B.R. 71, 96-98 (D. Del. 2002) (section 546(e) preempted state-law unjust enrichment claim to recover payments to shareholders in leveraged buyout because "[§] 546(e) would be rendered useless" if the payments could be recovered under state law).

Here, the conflict between state and federal law is even starker than in *Contemporary Industries*, *U.S. Bank*, and *Hechinger*.  Plaintiffs do not assert a state-law "unjust enrichment

17

claim [that] *effectively acts* as a [§] 544 fraudulent conveyance claim." *Hechinger*, 274 B.R. at 96 (emphasis added). They assert a state-law cause of action that *is* a fraudulent conveyance claim.

It is no answer for Plaintiffs to say that they are suing in their own name under state law, whereas § 546(e) refers to an action by the "trustee" under "[§] 544." The Bankruptcy Code makes clear that only the "trustee" may pursue creditor state-law fraudulent transfer claims when a debtor files for bankruptcy and that the trustee must do so under "[§] 544." *See* 11 U.S.C. § 544(b)(1). It is not surprising, therefore, that when Congress sought to bar the avoidance of settlement payments under state fraudulent transfer law in § 546(e), it placed those limits on the single party expressly authorized to bring them in the first place, the "trustee" acting pursuant to "[§] 544."

Moreover, any argument that the statute does not expressly apply here fails because in *all* cases of *implied* preemption, federal law does not *expressly* supersede state law. In *Contemporary Industries*, *U.S. Bank*, and *Hechinger*, for example, plaintiffs' state-law claims for unjust enrichment and unlawful dividend were not expressly foreclosed under section 546(e) because they were not brought pursuant to "[§] 544," and did not seek to "avoid" the settlement payments at issue. The courts nonetheless held the state claims preempted under § 546(e), because permitting the actions to go forward would allow the plaintiffs to obtain the same relief prohibited under the Bankruptcy Code.

The same is true here. If Plaintiffs were permitted to avoid the settlement payments to Tribune's shareholders, those payments would not be avoided by a "trustee" acting on Plaintiffs' behalf, but they would be avoided nonetheless for Plaintiffs' benefit. That would "implicate the same concerns regarding the unraveling of settled securities transactions . . . [§] 546(e)

18

precludes." *Hechinger*, 274 B.R. at 96.  Because Plaintiffs' SLCFC claims "would render the § 546(e) exemption meaningless, and would wholly frustrate the purpose behind that section," those claims must "give way." *Contemporary Indus.*, 564 F.3d at 988; *accord U.S. Bank*, 2012 WL 4050088, at *18-19; *Hechinger*, 274 B.R. at 94, 96.[25]

>    3.    Allowing Plaintiffs a Section 546(e) "Work-Around" Would Nullify
>           Longstanding Judicial Precedent.

Allowing Plaintiffs to proceed with their SLCFC claims would not only ignore the bright line Congress drew in § 546(e), but it would also render impotent decades of judicial decisions implementing that legislative judgment.  The federal courts have construed § 546(e) broadly, repeatedly rejecting efforts by debtors and their creditors to limit or evade the safe harbor.

Early on, plaintiffs tried to limit § 546(e) to "routine" securities transactions and to exclude settlement payments made in leveraged buyouts.  The Courts of Appeals rejected that argument, finding no such limitation in the "extremely broad" language of the statute, nor in its purpose:  "[t]he danger of a 'ripple effect' on the entire market is at least as inherent in the avoidance of an LBO as it is in the avoidance of a routine stock sale." *Kaiser Steel Corp.*, 913 F.2d at 848-49; *accord In re Resorts Int'l*, 181 F.3d at 515-16.

Later, plaintiffs tried to weaken § 546(e) by confining it to transactions in publicly held securities.  The Courts of Appeals rejected those efforts, too, reiterating that Congress "intended to sweep broadly" and finding "[n]othing in the relevant statutory language suggest[ing] Congress intended to exclude these payments" from the safe harbor. *Contemporary Indus.*, 564

---

[25]    In correspondence to this Court, Plaintiffs have cited *PHP Liquidating v. Robbins*, 291 B.R. 603, 607 (D. Del. 2003), *aff'd*, 128 F. App'x 839 (3d Cir. 2005), where the court noted that § 546(e) does not expressly apply to avoidance claims by a creditor trust.  That statement was dicta, however, because, as the court held, the creditor trust lacked standing to bring those claims anyway. *See id.* at 610-11.  More importantly, the court did not even purport to address the question presented here—whether, under principles of *implied* conflict preemption, the claims would be barred under § 546(e).

F.3d at 986; *see also In re Plassein Int'l Corp.*, 590 F.3d at 258-59; *In re QSI Holdings*, 571 F.3d at 548-49 ("The value of the privately held securities at issue [$208 million] is substantial and there is no reason to think that unwinding that settlement would have any less of an impact on financial markets than publicly traded securities.").

Courts of Appeals, including the Second Circuit, have also rejected efforts to restrict § 546(e) to transactions in which the participants, including financial institutions and stockbrokers, took title to the transferred property rather than serve as mere conduits. *See In re Enron Creditors Recovery Corp.*, 651 F.3d at 338-39 ("[W]e do not think the absence of a financial intermediary that takes title to the transacted securities during the course of the transaction is a proper basis on which to deny safe-harbor protection."); *In re QSI Holdings*, 571 F.3d at 551 ("[T]he plain language of § 546(e) simply does not require a 'financial institution' to have a 'beneficial interest' in the transferred funds."); *Contemporary Indus.*, 564 F.3d at 987; *In re Resorts Int'l,* 181 F.3d at 516. And as discussed above, courts have also rejected state-law claims that seek to circumvent § 546(e) altogether by re-labeling statutorily barred avoidance claims as causes of action for unjust enrichment or illegal dividends. *See Contemporary Indus.*, 564 F.3d at 988; *U.S. Bank*, 2012 WL 4050088, at *18-19; *Hechinger*, 274 B.R. at 95-98.

These are just a few examples of the courts' repeated refusal to limit § 546(e). Other efforts to defeat the policy judgment Congress made to protect the securities markets through § 546(e) have similarly been rejected, in context after context. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 651 F.3d at 336-38 (section 546(e) not limited to securities transactions involving a "purchase" or "sale" of a security); *In re Comark*, 971 F.2d at 325-26 (section 546(e) does not exclude transfers returning securities posted as collateral in cancelled securities-repurchase transactions); *Mgmt. Corp. v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler &*

*Schulman Asset Mgmt. Corp.*), 878 F.2d 742, 752-53 (3d Cir. 1989) ("'[S]ettlement payment'

does not only mean payment of cash . . . but also encompasses transfer of . . . securities.").[26]

If, however, Plaintiffs, unlike their predecessor litigants, were to succeed with their

"546(e) Work-Around," all of this law would be swept away as trustees and creditors'

committees would follow the same path.  In every case in which § 546(e) would bar "the trustee"

(or creditors' committee) from asserting creditors' state-law claims under § 544 to avoid

settlement payments, the trustee (or creditors' committee) and the debtor's creditors could

simply bypass § 546(e) using the same formula the parties used here:  the trustee would

"relinquish" his statutory authority to bring the prohibited claims and let the creditors bring the

same claims themselves.[27]  This would create the very risk of market disruption that Congress

sought to prevent when it adopted § 546(e).  As the Second Circuit recently noted, "undoing

long-settled leveraged buy-outs" like Tribune's LBO "would have a substantial impact on the

stability of the financial markets."  *In re Enron Creditors Recovery Corp.*, 651 F.3d at 339.  That

impact would be just as profound whether those transactions were unwound in a lawsuit

commenced by a trustee, or, as here, by the creditors the trustee represents.  Far from being a

"safe harbor," § 546(e) would be a dead letter.  That result—the nullification, as a practical

matter, of federal law—would frustrate Congress' goal of protecting the securities markets.

Plaintiffs' SLCFC claims are preempted.

---

[26]    *See also*, *e.g.*, *Katz*, 462 B.R. at 452; *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R. 715, 718-23 (S.D.N.Y. 2012) (applying § 546(e) to transactions that are only securities transactions based on misrepresentation); *Wyle v. Howard, Weil, Labouisse, Friedrichs, Inc. (In re Hamilton Taft & Co.)*, 196 B.R. 532, 536-37 (N.D. Cal. 1995); *Briggs v. Smith Barney, Inc. (In re David)*, 193 B.R. 935, 939-42 (Bankr. C.D. Cal. 1996) (rejecting narrow interpretation of "margin payment" and "settlement payment" as used in § 546(e)).

[27]    A similar end-run of § 546(e) is already being attempted in another bankruptcy case.  *See (Weisfelner v. Morgan Stanley & Co. (In re Lyondell Chemical Co.)*, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y.).

21

## II.      PLAINTIFFS LACK STANDING.

Even if Plaintiffs' SLCFC claims were not barred by § 546(e), Plaintiffs would lack standing to sue.  When Tribune filed for bankruptcy, the right to avoid fraudulent transfers vested exclusively in an estate representative, here the Committee.  The Committee is the only party with standing to avoid the payments made to Tribune's shareholders in order to fulfill the Bankruptcy Code's purpose of ensuring an equitable distribution among creditors.  Exercising its exclusive power to recover alleged fraudulent transfers on behalf of the estate, and thus on behalf of all creditors, the Committee filed the Committee Action, seeking to avoid the same transfers Plaintiffs seek to avoid in their Individual Creditor Actions.  The Committee Action and the Individual Creditor Actions thus share the same object and purpose, which, under settled law, deprives Plaintiffs of standing to sue.  Defendants know of no case in which a court permitted an individual creditor to seek avoidance of the same transfer that an estate representative also seeks to avoid.  This case should not be the first.

### A.      The Committee Has Exclusive Standing to Avoid Tribune's Pre-Petition Payments to Shareholders and Has Sued to Avoid Those Payments.

If a debtor never seeks bankruptcy protection, its creditors may bring separate fraudulent transfer actions, recovering on a "first-come, first-served basis."  *See N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989).  However, once a debtor files for bankruptcy protection, this principle no longer applies.  *See id.*  At that point, the trustee (or creditors' committee) acquires complete dominion and control over any creditor's state law claims, including the "power . . . to resolve potential fraudulent transfer claims" through litigating, settling, or extinguishing the claims in a plan of reorganization, and "the creditors are bound by the outcome of the trustee's action."  *In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002); *see also St. Paul Fire & Marine Ins. Co. v. PepsiCo. Inc.,* 884 F.2d 688, 701 (2d Cir.

1989); *K.D. Homes, Inc. v. Fritz (In re Fritz)*, 88 B.R. 434, 436 (Bankr. S.D. Fla. 1998)

(fraudulent transfer action "is available only to the bankruptcy trustee, not to a creditor");

*Wanger v. Primack (In re Primack)*, 81 B.R. 711, 712 (Bankr. S.D. Fla. 1987) (denying creditor

leave to amend complaint to add fraudulent transfer claim because the "cause of action is vested

in the trustee" and therefore "plaintiff lacks standing").

Under § 544(b), state-law avoidance claims of individual creditors, like Plaintiffs'

SLCFC claims here, are collected for the benefit of all creditors to "obtain the maximum possible

recovery for and equitable distribution among creditors."  *Mut. Benefit Life Ins. Co. v. Pinetree,

Ltd. (Matter of Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir. 1989); *see also In re Stein*, 314 B.R.

306, 311 (D.N.J. 2004) ("Pursuant to 11 U.S.C. §§ 323 and 544(b), the Trustee is conferred with

the authority to represent *all* creditors and the Debtor's estate and with the sole responsibility of

bringing actions on behalf of the Debtor's estate to marshal assets for the estate's creditors."); *In

re Tessmer*, 329 B.R. 776, 780 (Bankr. M.D. Ga. 2005) (if a creditor could challenge the same

transaction as a trustee, "§ 544(b) would be rendered ineffective").  Bankruptcy thus eliminates

individual creditor rights in favor of collective bankruptcy-estate rights.  *See Nat'l Am. Ins. Co.

v. Ruppert Landscaping Co. (Ruppert)*, 187 F.3d 439, 441-42 (4th Cir. 1999) ("As a general

matter, [t]he trustee's single effort eliminates the many wasteful and competitive suits of

individual creditors.") (internal quotations omitted).

In October 2010, the Bankruptcy Court granted the Committee exclusive standing and

authority to "commence and prosecute the claims of the Debtors' estates . . . relating to the

leveraged buy-out of Tribune in 2007 that . . . ii) *assert fraudulent conveyance claims arising

under state law*, including claims against former shareholders of Tribune . . . ."  Bankr. Dckt. No.

6150 (emphasis added).  Acting pursuant to that authority, the Committee filed the Committee

Action, in which the Committee seeks to avoid the payments to Tribune's former shareholders as intentional fraudulent transfers under §§ 544(b) and 548(a)(1)(A) of the Bankruptcy Code. *See* Committee Compl. ¶¶ 317-21. By bringing its claims pursuant to § 548 *and* § 544(b), the Committee seeks to avoid the payments to shareholders under both federal and "applicable" state law. *See* Collier on Bankruptcy ¶ 544.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (by bringing a claim under § 544(b), a trustee "exercise[s] the rights of creditors under state fraudulent transfer law").

In sum, the Committee alone had exclusive standing to avoid Tribune's pre-petition payments to shareholders, the Committee exercised that exclusive right, and it is currently seeking to avoid those very payments. Thus, "the creditors are bound by the outcome of the [Committee's] action." *See In re PWS Holding Corp.*, 303 F.3d at 315.

### B.     Plaintiffs Lack Standing to Avoid the Same Transfers as the Committee.

A single transfer can be avoided only *once*, and the legal power to avoid a single transfer cannot be split between a representative of the estate, like the Committee, and individual creditors. As many courts have observed, when a trustee or other authorized estate representative seeks to avoid a transfer for the benefit of all creditors, individual creditors are barred from bringing any claim with a similar "object and purpose" because doing so would fatally undermine the Bankruptcy Code's policy of equitable distribution to all creditors. *See, e.g.*, *Ruppert*, 187 F.3d at 441. An action by an individual creditor to avoid the same transfer a trustee also seeks to avoid necessarily shares the same "object and purpose" as the trustee's avoidance action. *See id.* Such an action is barred as a matter of law, regardless of whether the claims of the individual creditor present different elements or rely on different theories of recovery. *See id.*

In *Ruppert,* individual creditors sought to avoid a transfer based on allegations of successor liability, tortious interference with contract, and conspiracy, even though the trustee had the authority to avoid the same transfer as a fraudulent transfer.  *Id.*  The Fourth Circuit held that the creditors lacked standing because their claims were "similar in object and purpose to" the trustee's potential avoidance claims.  *Id.*  The court reasoned that "the trustee should have [the] first crack at challenging the Ruppert/Green Thumb transaction" because allowing the individual creditors to pursue their own avoidance action would contravene the purposes of the Bankruptcy Code:

> Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process.  If it were otherwise, there would be a multi-jurisdictional rush to judgment whose organizing principle could only be first-come-first-served.

*Id.* at 442 (internal quotations omitted).  In concluding that the plaintiffs lacked standing, the court of appeals found irrelevant that the individual creditors' claims were not identical to the trustee's:  "Although the [creditors'] claims and the trustee's fraudulent conveyance claim do not contain identical elements, they all share [the] same underlying focus . . . ."  *Id.*

The Fourth Circuit reinforced this rule of law in *Poth v. Russey,* 99 F. App'x. 446 (4th Cir. 2004).  There, the court affirmed the dismissal of an individual creditor's claim for breach of fiduciary duty where the trustee could have alleged a claim for fraudulent conveyance.  *Id.* at 448.  As in *Ruppert*, it made no difference that the claims of the creditor and the trustee did not "'contain identical elements'" so long as they "'share[d] th[e] same underlying focus.'"  *Id.* at 457 (quoting *Ruppert*, 187 F.3d at 441).  "When a creditor brings a state-law challenge to a transaction that a bankruptcy trustee could avoid as a fraudulent conveyance, the state-law cause of action is 'so similar in object and purpose' to the fraudulent conveyance claim that the creditor lacks standing to assert it."  *Id.* (quoting *Ruppert*, 187 F.3d at 441).

Courts have followed *Ruppert* and *Poth* in holding that individual creditors lack standing to avoid the same transfer as a trustee.  *See, e.g.*, *Ivester v. Miller*, 398 B.R. 408, 431 (M.D.N.C. 2008) (following *Ruppert* and *Poth* in holding that "[t]he Trustee was . . . authorized to pursue the fraudulent transfers because the claims in the state court action were so similar in object and purpose that the [individual creditors] lacked standing"); *In re Infinity Bus. Grp., Inc.*, No. 10-06335-jw, 2011 Bankr. LEXIS 3261, at *7, *14 (Bankr. D.S.C. June 22, 2011) (following *Ruppert* in staying individual creditor actions because the trustee intended to bring claims that were "similar in object and purpose," and noting the risk of the trustee and creditors "simultaneously pursuing causes of action[] for the benefit of creditors [or] competing for sources of recovery").

In *Northern Trust Bank, FSB v. Wells Fargo Bank, N.A.*, 464 B.R. 269 (E.D. Va. 2012), the district court recently followed *Ruppert* in holding that individual creditors lacked standing to challenge the same transfer as a trustee.  The court reasoned:

> While the trustee's adversary proceeding and the creditors' lawsuits asserted different theories, both lawsuits concerned the same "underlying focus"—a transfer by the debtor to a third party . . . . [R]egardless *of how the* [*individual creditor's*] *claims are couched*[,] . . . [*t*]*he Trustee's ongoing prosecution of its fraudulent conveyance action "on behalf of all the creditors" deprives* [*the creditor*] *of standing to pursue its individual claims*.

*Id.* (emphasis added); *see also In re Bridge Info. Sys.*, 325 B.R. 824, 835-36 (Bankr. E.D. Mo. 2005) (citing *Ruppert* in holding that an individual creditor lacked standing to pursue tort claims challenging certain transfers because the debtor's plan administrator sought to settle fraudulent transfer claims related to the same transfers).

Other cases are in accord.  In *Meoli v. Huntington National Bank (In re Teleservices Group, Inc.)*, 463 B.R. 28, 32, 36 (Bankr. W.D. Mich. 2012), for example, the court stayed an

individual creditor's action for unjust enrichment because the creditor sought to challenge the

"same transfer" as the trustee:

> Actions for unjust enrichment and constructive trust . . . share with fraudulent transfer actions a common purpose . . . . [Here] it happens that *Trustee has simply chosen one of these remedies and [an individual creditor] another in order to rectify what both agree is the same injustice deriving from [the transferee's] receipt of the same transfer* . . . .   Indeed, the only real difference between Trustee's and [the individual creditor's] actions against [the transferee] is that the recovery Trustee seeks is for the benefit of all of [the debtor's] creditors, including [the individual creditor], whereas any recovery by [the individual creditor] would be only for its own benefit.

(emphasis added.)

Similarly, in *In re Tessmer*, 329 B.R. at 780, an individual creditor brought a fraudulent

transfer claim in state court even though the bankruptcy court had already approved the trustee's

settlement of the right to avoid the same transfer.  The bankruptcy court concluded:

> Once the Trustee acts under § 544(b), the rights of all other parties to bring a suit based on the same transaction are fully and permanently cut off unless the Trustee later abandons his claim. . . .  [The individual creditor] is permanently enjoined from taking any steps to further prosecute her state law fraudulent conveyance action against the [transferees], and . . . she is permanently enjoined from initiating any other suit that arises from the transfer of property in question.

*Id.* at 780.

The cases discussed above are squarely on point.  Here, Plaintiffs seek to avoid the very

same pre-petition payments to shareholders that the Committee is already attempting to avoid.

Plaintiffs' SLCFC claims and the Committee's claims are unquestionably "based on the same

transaction" and share the same "object and purpose."  *Ruppert*, 187 F.3d at 441; *accord Poth*,

99 F. App'x. at 457; *In re Tessmer*, 329 B.R. at 780.  Because the Committee has exercised its

authority to pursue avoidance of the shareholder payments for the benefit of all creditors,

including Plaintiffs, Plaintiffs lack standing to assert SLCFC claims seeking to avoid the same

27

transfers. *Ivester*, 398 B.R. at 431; *N. Trust Bank*, 464 B.R. at 270; *In re Bridge Info. Sys.*, 325 B.R. at 835-36.

The bar against litigation by an individual creditor to avoid the same transfers as a trustee is absolute—and with good reason. As explained in *In re Tessmer*, 329 B.R. at 780, if individual creditors could pursue avoidance of the same transfer as a trustee, then "defendants . . . would be unwilling to negotiate settlements" with the trustee. Moreover, simultaneous prosecution of more than one lawsuit arising from the same transaction would violate the rule against claim splitting and principles of *res judicata*. *See Herzog v. Kroner (In re Kroner)*, 118 B.R. 86, 88 (Bankr. N.D. Ill. 1990) ("Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. . . . The policy behind res judicata is to protect defendants and the courts from a multiplicity of suits arising from the same set of facts. Litigation must end.") (internal quotations omitted).

Here, Plaintiffs have brought their 52 Individual Creditor Actions in 24 different jurisdictions to avoid the same shareholder payments that the Committee Action is seeking to avoid. This procedural nightmare threatens to waste judicial resources and presents the risk of inconsistent judgment, illustrating the "multi-jurisdictional," "first-come-first-served," "piecemeal litigation" that the bankruptcy process is designed to prevent. *Ruppert*, 187 F.3d at 442; *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[R]es judicata and collateral estoppel [are] intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and . . . prevent[] inconsistent decisions.").

Each payment to Tribune's shareholders can only be avoided once. The legal power to avoid a single transfer cannot be divided between the Committee, on the one hand, and the Note Holders and Retirees, on the other, without violating well-established bankruptcy law, the rule

against claim-splitting, and principles of *res judicata*.  Moreover, when the Committee exercised the exclusive right to seek avoidance of Tribune's pre-petition payments to shareholders, "the creditors [were] bound by the outcome of the [Committee's] action."  *In re PWS Holding Corp.*, 303 F.3d at 315.  Therefore, Plaintiffs lack standing to bring the SLCFC claims.

## III.   THE SLCFC CLAIMS DID NOT REVERT TO PLAINTIFFS, AND EVEN IF THEY DID, WOULD REMAIN SUBJECT TO PRE-REVERSION LIMITATIONS AND DEFENSES.

Plaintiffs purport to assert individual constructive fraudulent transfer claims that became, after Tribune filed for bankruptcy protection, part of the collective avoidance claims available exclusively to Tribune's bankruptcy estate.  For Plaintiffs' claims to be viable, therefore, (i) the collective avoidance claims of Tribune's bankruptcy estate would have to be disaggregated into claims of individual creditors; (ii) those disaggregated claims would have to "revert" from the estate to the individual creditors; and (iii) the reverted claims would have to be stripped of the limitations and defenses, including § 546(e), to which they were subject while part of Tribune's estate.  The Bankruptcy Code precludes each of these steps.

### A.   The SLCFC Claims Did Not Revert to Plaintiffs.

Once Tribune filed for bankruptcy relief, § 544(b) of the Code empowered Tribune's estate to prosecute creditors' SLCFC claims for the benefit of all creditors.  *See In re PWS Holding*, 303 F.3d at 314-15.  From that point forward, only an estate representative could pursue, compromise, or dispute those claims.  *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 261 (5th Cir. 2010) ("'[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or a debtor in possession may pursue once a bankruptcy is under way.'" (quoting *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994))); *In re Becker*, 136 B.R. 113, 116 (Bankr.

D.N.J. 1992) ("The trustee's rights under the avoiding powers in Code [§§] 544 through 551 are property of the estate.").

The Bankruptcy Code establishes only one means by which the estate's collective claims—which an estate representative alone can pursue, for the benefit of all creditors—revest in the individual creditors who held the constituent claims prior to bankruptcy.  Section 349(b)(3) provides, "[u]nless the court, for cause, orders otherwise, the dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."  Because Congress expressly provided for the disaggregation and revesting of estate claims upon the dismissal of a bankruptcy case, *but in no other circumstances*, Congress plainly did not intend estate claims to "revert" to individual creditors where, as here, the chapter 11 case was not dismissed, but rather proceeded to confirmation of a plan.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another, and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism." (internal citation and quotation marks omitted)).

The Bankruptcy Code also establishes mechanisms by which an estate claim can be transferred to other parties—through sale (§ 363), plan distribution (§ 1129), or abandonment (§ 554).[28]  None of those methods was followed here, and, as a result, the estate's claims remain with the estate.  *See* 11 U.S.C. § 554(d) (absent court order, property of the bankruptcy estate

---

[28]    Plaintiffs brought their Individual Creditor Actions before any plan was confirmed, and no Bankruptcy Court order directed a transfer of the claims.  To the contrary, Bankruptcy Judge Carey "ma[de] no finding and issue[d] no ruling determining the standing of [any creditor] to assert [SLCFC claims]."  Bankr. Dckt. No. 8740 at ¶ 8 n.2.

that is not administered or abandoned remains the estate's property).  In no event would the claims have "reverted" to Plaintiffs.

In a case decided under the predecessor to the current Bankruptcy Code, the Bankruptcy Act of 1867, the Supreme Court expressly rejected the notion that an estate claim could revert to an individual creditor.  There, the Court, affirming the lower court, barred a creditor from pursuing a state-law avoidance action after the trustee (referred to then as the "assignee" in bankruptcy) had failed to act within the limitations period applicable to the trustee.  "We do not see on what principle the failure of the assignee to sue within two years transfers his right of action to the complainant," the Court concluded.  *Trimble v. Woodhead*, 102 U.S. 647, 649 (1880).

Some courts from outside this jurisdiction have fashioned a form of reverter where an estate claim is not brought within the limitations period provided in § 546(a).  *See, e.g.*, *Klingman v. Levinson*, 158 B.R. 109, 112-13 (N.D. Ill. 1993).  These lower court opinions cannot be reconciled with *Trimble*, fail to acknowledge that the Bankruptcy Code does not expressly provide for reverter, and fail to address any of the statutory inconsistencies that would arise if reverter were implied under the Code, such as why a trustee is able to settle a claim against the wishes of a creditor to whom a claim would later revert.  *See In re PWS Holding*, 303 F.3d at 315, and why, if the right to bring fraudulent transfer claims automatically reverts to creditors after the limitations period for the trustee to sue has run, a trustee may still continue to assert an avoidance claim defensively to resist the transferee's assertion of a claim against the bankruptcy estate, for the benefit of the estate.  *See, e.g., U.S. Lines, Inc. v. United States (In re McLean Indus., Inc.*), 196 B.R. 670, 675–77 (S.D.N.Y. 1996) (permitting defensive use of avoidance claims under § 502(d) even after § 546(a)'s statute of limitations had run).

The lower court opinions are also distinguishable.  By permitting reverter, those courts enabled plaintiffs to recover on a cause of action that the estate representatives could have brought but did not file, to plaintiffs' detriment.  *See, e.g.*, *Klingman*, 158 B.R. at 111-12 (former client swindled by embezzling debtor could proceed on avoidance claims after trustee failed to do so); *Munson v. Rinke*, 395 Ill. App. 3d 789, 794 (Ill. App. Ct. 2009) (fraudulent transfer action by judgment creditor of the debtor for the debtor's transfer of vehicles to his wife); *Dixon v. Bennett*, 531 A.2d 1318, 1323 (Md. Ct. Spec. App. 1987) (fraudulent transfer action by former partner of the debtor for the debtor's transfer of assets away from the partnership).  By contrast, here, the estate representative could not have brought these actions.

The concept of reverter, which is integral to Plaintiffs' SLCFC claims, finds no support in the Bankruptcy Code, cannot be harmonized with several of its provisions, and is inconsistent with Supreme Court precedent.

### B.   Even if the SLCFC Claims Did Revert, They Would Be Subject to Pre-Reversion Limitations and Defenses, Including § 546(e).

Even if there were a statutory basis for automatic reverter, which there is not, the SLCFC claims that would have reverted to Plaintiffs would be subject to the same limitations and defenses as they were before the alleged reversion.  The only way the collective estate claims could have left the estate, disaggregated and free of § 546(e), would have been through dismissal under § 349(b)(3), which did not happen here.  Estate claims that leave the estate through any other statutorily prescribed means remain subject to the limitations imposed on them by the Bankruptcy Code.  For example, when a plan assigns claims to a litigation trustee, the claims remain subject to § 546(e).  *Cf. In re Enron Creditors Recovery Corp.*, 651 F.3d at 337 (fraudulent transfer claims prosecuted by the reorganized company were limited by § 546(e)).  If

Congress had intended to lift § 546(e)'s limitations through any means other than dismissal, it would have expressly done so.

Subjecting a reverted avoidance claim to the § 546(e) defense would be consistent with the Uniform Fraudulent Transfer Act ("UFTA") and the Uniform Fraudulent Conveyance Act ("UFCA"), the two state-law statutes under which the Plaintiffs have sued. Both require courts to engage in common-law development of fraudulent transfer law to reflect and support important public policies:

> Unless displaced by provisions of this [Act], the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Mass. Gen. L. 109A, § 11 (UFTA); 740 Ill. Comp. Stat. 160/11 (UFTA); N.Y. Debt. & Cred. L. § 280 (UFCA; to the same effect).

Consistent with this directive, courts have incorporated Bankruptcy Code policy choices into state fraudulent conveyance law. *See, e.g.*, *Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576-77 (7th Cir. 1998) (looking to federal bankruptcy law for definition of "reasonably equivalent value" under UFTA); *Kaler v. Craig (In re Craig)*, 144 F.3d 587, 592–93 (8th Cir. 1998) (looking to federal bankruptcy law for definition of "transfer" under UFTA).

Incorporating within the UFTA and UFCA the policy choices manifest in § 546(e) of the Bankruptcy Code would protect the modern securities-holding system from disruption arising out of avoidance actions like the Individual Creditor Actions. *See, e.g.*, James Steven Rogers, *Policy Perspectives on Revised U.C.C. Article 8*, 43 UCLA L. Rev. 1431, 1443–45 (1996) (explaining that, in the indirect holding system, the vast majority of stock certificates are held by a securities intermediary that settles transactions, thereby eliminating the need to move paper

certificates and allowing the clearance and settlement system to handle enormous trading volume); *see generally* Self-Regulatory Organizations – The Depository Trust Company, Exchange Act Release No. 34-47978, 68 Fed. Reg. 35037 (June 11, 2003).  The benefits of the indirect holding system and the strong public policy in favor of protecting that system are well recognized.  *See, e.g.*, Rogers, *supra*, at 1438 (discussing systemic risk and quoting former Federal Reserve Chairman Alan Greenspan as stating "my experience with financial crises has convinced me that the greatest threat to the liquidity of our financial markets is the potential for disturbance to the clearance and settlement process for financial institutions").

Since the states began enacting the UFTA, every state has also adopted a major revision to Article 8 of the Uniform Commercial Code, designed to implement and facilitate the indirect holding system in the securities industry.  U.C.C. Rev. Art. 8, Refs & Annos (2005).  This is precisely the kind of "law merchant" that courts are required to consider in interpreting and developing the UFTA and UFCA.  *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("[m]any of the law merchant's principles came to be incorporated into the common law, which in turn formed the basis of the Uniform Commercial Code.").  While there is no case law outside of the bankruptcy context holding that the UFTA and UFCA should be construed to incorporate the limitations and defenses contained within § 546(e), that merely reflects the reality that the types of transfers at issue in this case—payments in tender offers and LBO mergers—generally arise only with respect to companies with enough debt to end up in chapter 11.  In no reported decision has a creditor-plaintiff previously attempted to circumvent § 546(e) in the way Plaintiffs do here.

The UFTA and UFCA empower courts to ensure that as commerce and transactional practices develop, fraudulent conveyance law develops in tandem to prevent abuse by both

debtors and creditors.  Reading the § 546(e) safe harbor into the UFTA and UFCA would be consistent with the directives of those statutes and would promote the uniform development of fraudulent conveyance law among the states.  It would also be consistent with the basic rule of "constitutional avoidance," under which state laws should be construed in ways that render them constitutional and avoid the need for courts to hold that they are preempted or otherwise unconstitutional.  *See Arizona*, 132 S. Ct. at 2510 ("So far as statutes fairly may be construed in such a way as to avoid doubtful constitutional questions they should be so construed; and it is to be presumed that state laws will be construed in that way by the state courts.") (internal quotation marks omitted).  For this additional reason, the Individual Creditor Actions should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant Defendants' Joint Phase One Motion to Dismiss the Individual Creditor Actions With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: New York, New York
        November 6, 2012

                                        **RESPECTFULLY SUBMITTED,**


**Bingham McCutchen LLP**                **Davis Polk & Wardwell LLP**

By:    /s/ P. Sabin Willett             By:    /s/ Elliot Moskowitz
       P. Sabin Willett                        Elliot Moskowitz
       sabin.willett@bingham.com               elliot.moskowitz@davispolk.com
       Michael C. D'Agostino
       michael.dagostino@binham.com

One Federal Street                       450 Lexington Avenue
Boston, MA 02110-1726                    New York, NY 10017

*Defendants' Executive Committee*        *Defendants' Executive Committee*

**Dechert LLP**                          **Entwistle & Capucci LLP**

By:    /s/ Michael S. Doluisio          By:    /s/ Andrew J. Entwistle
       Michael S. Doluisio                     Andrew J. Entwistle
       michael.doluisio@dechert.com            aentwistle@entwistle-law.com

Cira Centre                              280 Park Avenue
2929 Arch Street                         26th Floor
Philadelphia, PA 19104-2808             New York, NY 10017

*Defendants' Executive Committee*        *Defendants' Executive Committee*

**Gibson, Dunn & Crutcher LLP**          **Ice Miller LLP**

By:    /s/ Joel A. Feuer                 By:    /s/ Matthew L. Fornshell
       Joel A. Feuer                            Matthew L. Fornshell
       jfeuer@gibsondunn.com                    matthew.fornshell@icemiller.com

2029 Century Park East                   250 West Street
Los Angeles, CA 90067                    Columbus, OH 43215

*Defendants' Executive Committee*        *Defendants' Executive Committee*

**Katten Muchin Rosenman LLP**

By:    /s/ David C. Bohan
        David C. Bohan
        david.bohan@kattenlaw.com


525 West Monroe Street
Chicago, IL 60661

*Defendants' Executive Committee*

**O'Melveny & Myers LLP**

By:    /s/ Daniel L. Cantor
        Daniel L. Cantor
        dcantor@omm.com

Times Square Tower
7 Times Square
New York, NY 10036

*Defendants' Executive Committee*

**Proskauer Rose LLP**

By:    /s/ Gregg M. Mashberg
        Gregg M. Mashberg
        gmashberg@proskauer.com
        Stephen L. Ratner
        sratner@proskauer.com

11 Times Square
New York, NY 10036

*Defendants' Executive Committee*

**Milbank, Tweed, Hadley & McCoy LLP**

By:    /s/ Alan J. Stone
        Alan J. Stone
        astone@milbank.com
        Andrew M. LeBlanc
        aleblanc@milbank.com

1 Chase Manhattan Plaza
New York, NY 10005

*Defendants' Executive Committee*

**Potter Stewart Jr. Law Offices, P.C.**

By:    /s/ David N. Dunn
        David N. Dunn
        ddunn@potterstewartlaw.com

The Merchants Bank Building
205 Main Street, Suite 8
Brattleboro, VT 05301

*Defendants' Executive Committee*

**Robinson & Cole LLP**

By:    /s/ Steven R. Schoenfeld
        Steven R. Schoenfeld
        sschoenfeld@rc.com

885 Third Avenue
Suite 2800
New York, NY 10022

*Defendants' Executive Committee*

**Ropes & Gray LLP**

By:    /s/ D. Ross Martin
        D. Ross Martin
        ross.martin@ropesgray.com

1211 Avenue of the Americas
New York, NY 10036-8704

*Defendants' Executive Committee*

**Steptoe & Johnson LLP**

By:    /s/ Mark A. Neubauer
        Mark A. Neubauer
        mneubauer@steptoe.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067

*Defendants' Executive Committee*

**Wilmer Cutler Pickering Hale & Dorr LLP**

By:    /s/ Philip D. Anker
        Philip D. Anker
        philip.anker@wilmerhale.com

7 World Trade Center
250 Greenwich Street
New York, NY 10007

*Defendants' Executive Committee*

**EXHIBIT A**

| | |
|---|---|
| 11-cv-04522-WHP | Deutsche Bank Trust Co. Americas, et al. v. Dhabi Inv. Auth., et al. |
| 11-cv-04538-WHP | William A. Niese et al. v. Alliance Bernstein L.P. |
| 11-cv-04784-WHP | Deutsche Bank Trust Co. Americas, et al. v. Adaly Opportunity Fund TD Sec. Inc. C/O Adaly Inv. Mgmt. Co. et al. |
| 11-cv-04900-WHP | Deutsche Bank Trust Co. Americas, et al. v. Cantor Fitzgerald & Co., et al. |
| 11-cv-05136-WHP | Deutsche Bank Trust Co. Americas, et al. v. World Markets Corp., et al. |
| 11-cv-09319-WHP | Deutsche Bank Trust Co. Americas, et al. v. Blackrock Institutional Trust Co., N.A., et al. |
| 11-cv-09406-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sumitomo Trust & Banking Co. (U.S.A.), et al. |
| 11-cv-09407-WHP | Deutsche Bank Trust Co. Americas, et al. v. Merrill Lynch Trust Co., et al. |
| 11-cv-09408-WHP | Deutsche Bank Trust Co. Americas, et al. v. Eaton Vance Multi Cap Growth Portfolio, et al. |
| 11-cv-09409-WHP | Deutsche Bank Trust Co. Americas, et al. v. Richard Paniagua, et al. |
| 11-cv-09410-WHP | Deutsche Bank Trust Co. Americas, et al. v. King, et al. |
| 11-cv-09510-WHP | Deutsche Bank Trust Co. Americas, et al. v. Anderson, et al. |
| 11-cv-09511-WHP | Deutsche Bank Trust Co. Americas, et al. v. Burroughs Wellcome Fund, et al. |
| 11-cv-09512-WHP | Deutsche Bank Trust Co. Americas, et al. v. Aqua America-Gabelli Asset Mgt, et al. |
| 11-cv-09514-WHP | Deutsche Bank Trust Co. Americas, et al. v. Assoc. Bank Green Bay, NA, et al. |
| 11-cv-09515-WHP | Deutsche Bank Trust Co. Americas, et al. v. Mazur |
| 11-cv-09568-WHP | Deutsche Bank Trust Co. Americas, et al. v. Emps. Ret. Fund of the City of Dallas, et al. |
| 11-cv-09569-WHP | Deutsche Bank Trust Co. Americas, et al. v. Bank of America N.A. / GWIM Trust Operations, et al. |

| 11-cv-09570-WHP | Deutsche Bank Trust Co. Americas, et al. v. Long, et al. |
| 11-cv-09571-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ader, et al. |
| 11-cv-09572-WHP | Deutsche Bank Trust Co. Americas, et al. v. First Republic Bank, et al. |
| 11-cv-09581-WHP | Deutsche Bank Trust Co. Americas, et al. v. Robert Dishon Family Trust, et al. |
| 11-cv-09582-WHP | Deutsche Bank Trust Co. Americas, et al. v. 1st Source Bank, et al. |
| 11-cv-09583-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sirius Int'l Ins. Corp., et al. |
| 11-cv-09584-WHP | Deutsche Bank Trust Co. Americas, et al. v. Aetna, Inc., et al. |
| 11-cv-09585-WHP | Deutsche Bank Trust Co. Americas, et al. v. Wells Fargo Bank, N.A. et al. |
| 11-cv-09586-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sowood Alpha Fund LP, et al. |
| 11-cv-09587-WHP | Deutsche Bank Trust Co. Americas, et al. v. RBS Sec., et al. |
| 11-cv-09588-WHP | Deutsche Bank Trust Co. Americas, et al. v. Auto. Machinists Pension Trust Fund, et al. |
| 11-cv-09589-WHP | Deutsche Bank Trust Co. Americas, et al. v. Huntington Nat'l Bank, et al. |
| 11-cv-09590-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ameriprise Trust Co., et al. |
| 11-cv-09591-WHP | Deutsche Bank Trust Co. Americas, et al. v. Goodrich Corp MAS TR QUAL EMPL BEN, et al. |
| 11-cv-09592-WHP | Deutsche Bank Trust Co. Americas, et al. v. Am. Elec. Power, et al. |
| 11-cv-09593-WHP | Deutsche Bank Trust Co. Americas, et al. v. Edwards & Sons, et al. |
| 11-cv-09594-WHP | Deutsche Bank Trust Co. Americas, et al. v. Verizon Inv. Mgmt. Corp., et al. |
| 11-cv-09595-WHP | Deutsche Bank Trust Co. Americas, et al. v. Alliance Capital Mgmt LLC, et al. |
| 11-cv-09596-WHP | Deutsche Bank Trust Co. Americas, et al. v. Wells Fargo Invs., LLC, et al. |
| 11-cv-09597-WHP | Deutsche Bank Trust Co. Americas, et al. v. ING Trust Equity Inc. Port et al. |
| 11-cv-09598-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ametek Inc Emps. Master Ret. |

| | Trust, et al. |
|---|---|
| 11-cv-09599-WHP | Deutsche Bank Trust Co. Americas, et al. v. Pandora Select Partners LP, et al. |
| 11-cv-09600-WHP | Deutsche Bank Trust Co. Americas, et al. v. U.S. Bank, N.A. et al. |
| 12-cv-00061-WHP | Deutsche Bank Trust Co. Americas, et al. v. Waterman Broad. Corp., et al. |
| 12-cv-00062-WHP | Deutsche Bank Trust Co. Americas, et al. v. National Elec. Benefit Fund, et al. |
| 12-cv-00063-WHP | Deutsche Bank Trust Co. Americas, et al. v. McGurn, et al. |
| 12-cv-00064-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ohlson Enters., et al. |
| 12-cv-00065-WHP | Deutsche Bank Trust Co. Americas, et al. v. 1994 Alicia P. Guggenheim, et al. |
| 12-cv-00549-WHP | Deutsche Bank Trust Co. Americas, et al. v. Fushimi, et al. |
| 12-cv-00550-WHP | Deutsche Bank Trust Co. Americas, et al. v. Oppenheimer Main St. Select Fund, et al. |
| 12-cv-00551-WHP | William A. Niese et al. v. A.G. Edwards Inc. |
| 12-cv-00552-WHP | Deutsche Bank Trust Co. Americas, et al. v. AIG Life Ins. Co., et al. |
| 12-cv-00554-WHP | William A. Niese et al. v. Chandler Trust No. 1 |
| 12-cv-00555-WHP | William A. Niese et al. v. ABN AMRO Clearing Chicago LLC |