**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>11 MD 2296 (WHP)(JLC)<br>12 MC 2296 (WHP)(JLC)<br><br>ECF Case |
| THIS DOCUMENT RELATES TO:<br><br>ALL INDIVIDUAL CREDITOR ACTIONS, AS DEFINED IN MASTER CASE ORDER NO. 3 (ECF NO. 1395) | |

**INDIVIDUAL CREDITOR PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' JOINT PHASE ONE MOTION**
**TO DISMISS THE INDIVIDUAL CREDITOR ACTIONS WITH PREJUDICE**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

David M. Zensky
Mitchell P. Hurley
Deborah J. Newman
Jason L. Goldsmith
Katherine P. Scully
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
E-mail: dzensky@akingump.com

*Plaintiffs' Liaison Counsel on behalf of all Plaintiffs in the Note Holder Actions*

Jay Teitelbaum
TEITELBAUM & BASKIN LLP
1 Barker Avenue, Third Floor
White Plains, New York 10601
Telephone: (914) 437-7670
E-mail: jteitelbaum@tblawllp.com

*Plaintiffs' Liaison Counsel on behalf of all Plaintiffs in the Retiree Actions*

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT ...................................................................................................................6

I.     Section 546(e) Does Not Preempt Plaintiffs' Claims.........................................................6

     A.     The Supreme Court Requires A Strong Showing To Overcome The "High Threshold" Imposed By The Presumption Against Implied Preemption................6

     B.     The Plain Text Of The Code Evidences That Congress Did Not Intend Section 546(e) To Preempt Plaintiffs' Claims.........................................................9

          1.     The Plain Text of Section 546(e) Prohibits Only A Bankruptcy Trustee From Avoiding Settlement Payments...............................................9

          2.     When Congress Intends The Code To Preempt State Law, Congress Manifests That Intent With An Express Preemption Provision ................12

          3.     The Section 546(e) Case Law Cited By Defendants Does Not Support Their Argument ..........................................................................14

     C.     The Legislative History Of Section 546(e) Evidences That Congress Did Not Intend To Preempt Plaintiffs' Claims .............................................................15

     D.     Congress, Rather Than The Courts, Should Decide What Its Objectives Are And Whether They Are Being Frustrated ........................................................19

     E.     Arguments Preserved For Appeal ..........................................................................23

II.     Plaintiffs Have Standing To Assert Their Claims ...........................................................25

     A.     Individual Creditors Can Pursue A Fraudulent Transfer Claim Where A Bankruptcy Trustee Fails To Pursue That Claim Within Two Years......................25

     B.     Plaintiffs' Claims Are Not "Estate Property" That "Reverts" To Creditors Only Under Specific Sections Of The Code ..........................................................32

III.     The Committee Action Does Not Divest Plaintiffs Of Standing .....................................34

     A.     Ruppert And Its Progeny Are Inapplicable Where, As Here, The Bankruptcy Trustee Supports Creditors' State Law Avoidance Claims................34

B.    Plaintiffs' Claims Should Not Be Dismissed On The Remaining Grounds Raised By Defendants ............................................................................38

CONCLUSION ..................................................................................................40

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*,
    34 F.3d 800 (9th Cir. 1994) ................................................. 19

*Adelphia Recovery Trust v. FPL Grp., Inc. (In re Adelphia Commc'ns. Corp.)*,
    452 B.R. 484 (Bankr. S.D.N.Y. 2011) .................................. 21

*Air Transport Ass'n of Am. v. Prof'l Air Traffic Controllers Org.*,
    667 F.2d 316 (2d Cir. 1981) ................................................ 31

*Allen v. McCurry*,
    449 U.S. 90 (1980) .............................................................. 38

*Am. Nat'l Bank of Austin v. Mortgage Am. Corp. (In re Mortgage Am. Corp.)*,
    714 F.2d 1266 (5th Cir. 1983) ....................................... 30, 33

*AP Servs LLP v. Silva*,
    No. 11-cv-3005, 2012 WL 5426499 (S.D.N.Y. Nov. 7, 2012) ............... 15

*Ardestani v. I.N.S.*,
    502 U.S. 129 (1991) ............................................................ 23

*Barber v. Westbay (In re Integrated Agri, Inc.)*,
    313 B.R. 419 (Bankr. C.D. Ill. 2004) .......................... passim

*Baron Fin. Corp. v. Natanzon*,
    509 F. Supp. 2d 501 (D. Md. 2007) ............................... 36, 37

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005) .............................................................. 7

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007) ................................................ 20

*In re Becker*,
    136 B.R. 113 (Bankr. D.N.J. 1992) ..................................... 34

*Best Mfg., Inc. v. White Plains Coat & Apron Co., Inc. (In re Daniele Laundries, Inc.)*,
    40 B.R. 404 (Bankr. S.D.N.Y. 1984) .................................. 30

*Branch v. Human*,
    109 S.E.2d 732 (Ga. 1959) .................................................. 27

*In re Bridge Info. Sys., Inc.,*
    325 B.R. 824 (Bankr. E.D. Mo. 2005) ..................................................................38

*Burns v. Grupo Mexico S.A. de C.V.,*
    No. 07 Civ. 3496, 2007 WL 4046762 (S.D.N.Y. Nov. 16, 2007) ...........................25

*Cadle Co. v. Mims (In re Moore),*
    608 F.3d 253 (5th Cir. 2010) .................................................................................33

*California v. ARC Am. Corp.,*
    490 U.S. 93 (1989) ....................................................................................................8

*Casey Nat'l Bank v. Roan,*
    668 N.E.2d 608 (Ill. App. Ct. 1996) .................................................................25, 27

*Chamber of Commerce of the U. S. v. Whiting,*
    131 S. Ct. 1968 (2011) ....................................................................................6, 7, 19

*Christian v. Mason,*
    219 P.3d 473 (Idaho 2009) ......................................................................................27

*Cmty. Commc'ns Co. v. City of Boulder, Colo.,*
    455 U.S. 40 (1982) ....................................................................................................7

*Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.),*
    950 F.2d 839 (2d Cir. 1991) ....................................................................................31

*Contemporary Indus. Corp. v. Frost,*
    564 F.3d 981 (8th Cir. 2009) .............................................................................14, 17

*De Buono v. NYSA-ILA Med. & Clinical Serv. Fund,*
    520 U.S. 806 (1997) ..................................................................................................7

*Dixon v. Bennett,*
    531 A.2d 1318 (Md. Ct. Spec. App. 1987) .................................................25, 26, 29

*Eberhard v. Marcu,*
    530 F.3d 122 (2d Cir. 2008) ....................................................................................32

*English v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) ...........................................................................................8, 9, 21

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ....................................................................21

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
    651 F.3d 329 (2d Cir. 2011) ...............................................................17, 23, 24, 39

*Envtl. Encapsulating Corp. v. City of N.Y.*,
    855 F.2d 48 (2d Cir. 1988)...................................................................7

*FDIC v. Davis*,
    733 F.2d 1083 (4th Cir. 1984) .........................................................27

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
    980 F.2d 125 (2d Cir. 1995).................................................25, 30, 33

*In re Federal Mogul Global Inc.*,
    684 F.3d 355 (3d Cir. 2012)..............................................................13

*Freeman v. Quicken Loans, Inc.*,
    132 S. Ct. 2034 (2012).................................................................20, 22

*Klingman v. Levinson*,
    158 B.R. 109, 113 (N.D. Ill. 1993) ..............................................26, 39

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*,
    450 B.R. 414 (Bankr. S.D.N.Y. 2011)..............................................20

*Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar*,
    69 F.3d 799 (7th Cir. 1995) ..................................................12, 30, 39

*Gold v. N.Y. Life Ins. Co.*,
    No. 09 Civ 3210, 2012 WL 1674300 (S.D.N.Y. May 14, 2012)............9

*Hall v. United States*,
    132 S. Ct. 1882 (2012).....................................................................23

*Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*,
    530 U.S. 1 (2000)..............................................................................10

*Hatchett v. United States*,
    330 F.3d 875 (6th Cir. 2003) ..................................................... passim

*In re Infinity Bus. Grp., Inc.*,
    No. 10-6335, 2011 WL 9375422 (Bankr. D.S.C. June 22, 2011) .........38

*Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*,
    124 F.3d 487 (3d Cir. 1997)..........................................................9, 14

*Ivester v. Miller*,
    398 B.R. 408 (M.D.N.C. 2008) .........................................................37

*K.D. Homes, Inc. v. Fritz*,
    88 B.R. 434 (S.D. Fla. 1988) ............................................................30

*Kaiser Steel Corp. v. Jacobs (In re Kaiser Steel Corp.)*,
    105 B.R. 639 (Bankr. D. Colo. 1989) ...................................................................24

*Kaler v. Craig (In re Craig)*,
    144 F.3d 587 (8th Cir. 1998) ........................................................................39

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002) .............................................................25

*Lee v. Burkhart*,
    991 F.2d 1004, 1010 (2d Cir. 1993) ..............................................................10

*Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*,
    139 F.3d 574 (7th Cir. 1998) ........................................................................39

*Lumbard v. Maglia, Inc.*,
    621 F. Supp. 1529 (S.D.N.Y. 1985) .........................................................28, 36

*Matney v. Combs*,
    198 S.E. 469 (Va. 1938) ...............................................................................27

*Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,
    463 B.R. 28 (Bankr. W.D. Mich. 2012) .........................................................37

*Munford v. Valuation Research Corp. (In re Munford, Inc.)*,
    98 F.3d 604 (11th Cir. 1996) ........................................................................24

*Munson v. Rinke*,
    919 N.E.2d 438 (Ill. 2009) ............................................................................27

*Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*,
    876 F.2d 34 (5th Cir. 1989) ..........................................................................31

*N.L.R.B. v. Martin Arsham Sewing Co.*,
    873 F.2d 884 (6th Cir. 1989) ........................................................................30

*N. Trust Bank, FSB v. Wells Fargo Bank, N.A.*,
    464 B.R. 269 (E.D. Va. 2012) .......................................................................38

*Nat'l Am. Ins. Co. v. Ruppert Landscape Co.*,
    122 F. Supp. 2d 670 (E.D. Va. 2000) ........................................................28, 39

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*,
    187 F.3d 439 (4th Cir. 1999) ................................................................. passim

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ...........................................................................19

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*,
    226 F.3d 237 (3d Cir. 2000)...........................................................................9, 25, 33

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Delaware v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co.)*,
    274 B.R. 71 (D. Del. 2002)..........................................................................14, 15, 17

*Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*,
    928 F.2d 565 (2d Cir. 1991)..................................................................................28

*PHP Liquidating, LLC v. Robbins*,
    291 B.R. 603 (D. Del. 2003).................................................................9, 11, 12, 39

*In re Pitts*
    9 F. 542, 544–45 (S.D.N.Y. 1881)........................................................................29

*Poth v. Russey*,
    99 F. App'x 446 (4th Cir. 2004)...........................................................................37

*In re PWS Holding Corp.*,
    303 F.3d 308 (3d Cir. 2002).................................................................................30

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    132 S. Ct. 2065 (2012).........................................................................................23

*In re Saunders*,
    101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)..........................................................33

*Seligson v. N.Y. Produce Exch.*,
    394 F. Supp. 125 (S.D.N.Y. 1975)........................................................................16

*In re Smith Barney Transfer Agent Litig.*,
    No. 05 Civ. 7583, 2012 WL 1438241 (S.D.N.Y. Apr. 25, 2012)............................23

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*,
    884 F.2d 688 (2d Cir. 1989).................................................................................30

*In re Stein*,
    314 B.R. 306 (D.N.J. 2004) .................................................................................30

*In re Tessmer*,
    329 B.R. 776, 779 (Bankr. M.D. Ga. 2005)......................................................27, 30

*Trimble v. Woodhead*,
    102 U.S. 647 (1880).............................................................................................29

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
    464 B.R. 606 (Bankr. S.D.N.Y. 2012) ...................................................................19

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
    No. 3:10 Civ. 1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012) ...........................14, 15

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ....................................................................30

*Wanger v. Primack (In re Primack)*,
    81 B.R. 711 (Bankr. S.D. Fla. 1987) .....................................................................30

*Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*,
    639 F. Supp. 2d 371 (S.D.N.Y. 2009) ...................................................................10

*Wiebolt Stores, Inc. v. Schottenstein*,
    131 B.R. 655 (N.D. Ill. 1991) ..............................................................................24

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ....................................................................9, 13, 17, 19

## STATUTES AND RULES

11 U.S.C.
    § 101 ....................................................................................................1
    § 323 ....................................................................................................9
    § 341 ...................................................................................................14
    § 362 ................................................................................................4, 28
    § 541 ...................................................................................................32
    § 544 .............................................................................................. passim
    § 546 .............................................................................................. passim
    § 741 ...................................................................................................23
    § 1107 ...................................................................................................9
    § 1109 ..................................................................................................10

15 U.S.C.
    § 78bb ..................................................................................................22

18 U.S.C.
    § 1964 ..................................................................................................21

Ariz. Rev. Stat. Ann.
    §§ 13-2301(D)(4)(xviii) ..............................................................................22

Bankruptcy Act of 1867, ch. CLXXVI
    14 Stat. 517 (1867) (repealed 1878) .................................................................29

Fed. R. Bankr. P. 7004 .................................................................................................20

Fed. R. Civ. P. 12 ..........................................................................................................1

La. Rev. Stat. Ann.
    §§ 51:712(D)(1) ......................................................................................................22

N.J. Stat. Ann.
    §§ 2C:41-1(a)(p) ....................................................................................................22

**OTHER AUTHORITIES**

Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ......................................8

Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 before the Subcomm. on
    Civil & Constitutional Rights of the Comm. on the Judiciary, 94th Cong. (1976) .................18

Bankruptcy Reform Act: Hearings Before the Subcomm. on Improvements in Judicial
    Machinery of the Comm. on the Judiciary, 95th Cong. (1977) ................................18

Deborah L. Thorne, *Last in Line: Circumventing § 546(e) in Recovery of LBO
    Fraudulent Transfers Transfers,* Am. Bankr. Inst. J., Mar. 28, 2012 (Mar. 28, 2012). ..........11

Garrard Glenn, Fraudulent Conveyances & Preferences ...............................................7

H.R. Conf. Rep. No. 104-369 (1995) ..........................................................................21

H.R. Rep. No. 95-595 (1977) ................................................................................16, 18

H.R. Rep. No. 96-1195 (1980) .....................................................................................16

H.R. Rep. No. 97-420 (1982) ................................................................................16, 21

H.R. Rep. No. 109-648 (2006) .....................................................................................16

John E. Floyd, RICO State by State: A Guide to Litigation Under the State Racketeering
    Statutes (2d ed. 2011) ............................................................................................22

Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes & Statutory Construction ..........31

Pub. L. No. 101-311 (1990) .........................................................................................17

Pub. L. No. 103-394 (1994) .........................................................................................17

Pub. L. No. 105-183 (1998) .........................................................................................17

Pub. L. No. 109-390 (2006) .........................................................................................17

Pub. L. No. 109-8 (2005) .............................................................................................17

Pub. L. No. 97-222 (1982) ........................................................................................................17

Pub. L. No. 98-353 (1984) ........................................................................................................17

Pub. L. No. 99-554 (1986) ........................................................................................................17

S. Rep. No. 95-989 (1978) ........................................................................................................16

## PRELIMINARY STATEMENT

Defendants contend that the Individual Creditor Actions[1] should be dismissed for three principal reasons — all of which fail as a matter of law.  First, Section 546(e) of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101, *et seq.*, expressly applies only to claims asserted by a bankruptcy trustee.  Neither the plain text of Section 546(e) nor its legislative history evidence any Congressional intent to expressly or impliedly preempt Plaintiffs' state law rights to independently pursue constructive fraudulent transfer claims.  Second, the Code grants a bankruptcy trustee only the temporary right to assert creditors' state law fraudulent transfer claims for the benefit of the bankruptcy estate; it does not permanently divest creditors of their property rights in those claims once the bankruptcy trustee's statutory period for asserting them has lapsed, and the automatic stay is no longer in force.  Third, the out-of-circuit doctrine that Defendants cite for their contention that creditors may not avoid transfers which a bankruptcy trustee pursues under a different theory of liability is premised upon the inapplicable rationale that the creditors' claims may interfere with the trustee's action, and does not apply where, as

---

[1] Capitalized terms have the meaning ascribed in Master Case Order No. 3, *In re Tribune Co. Fraudulent Conveyance Litig.*, 11-md-2296 (S.D.N.Y. Sept. 7, 2012), ECF No. 1395, and in the Third Amended Complaint, *Deutsche Bank Trust Co. Am.. v. Adaly Opportunity Fund TD Securities Inc.*, 11-cv-04784 (S.D.N.Y. Oct. 9, 2012), ECF No. 704 (the "Complaint" or "Compl.").  References to "Ret. Compl." are to the Second Amended Complaint, *Niese v. AllianceBernstein L.P.*, 11-cv-04538 (S.D.N.Y. Dec. 20, 2011), ECF No. 204.  References to "Motion" or "Mot." are to the Memorandum Of Law In Support Of Defendants' Joint Phase One Motion To Dismiss The Individual Creditor Actions With Prejudice Pursuant To Federal Rule Of Civil Procedure 12(b)(6), *In re Tribune Co. Fraudulent Conveyance Litig.*, 11-md-2296 (S.D.N.Y. Nov. 6, 2012), ECF No. 1671.  References to "Bankr. Docket" are to filings made in connection  with, and publically available on the docket of, the Tribune Company ("Tribune") bankruptcy cases that are being jointly administered in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), *In re Tribune Co., et al.*, 08-13141 (Bankr. D. Del.).  The parties have cited to various documents that were filed in connection with the Tribune bankruptcy cases.  Because many of those documents are quite lengthy, and all are publicly available on the docket of the Tribune bankruptcy cases, Plaintiffs have not appended copies of any such document to this opposition.  Plaintiffs will provide the Court with a courtesy copy of any document upon request.

here, the bankruptcy trustee supports the creditors' claims.  Defendants' arguments are

unsupported by the plain language of the Code, its legislative history, and relevant precedent.

Plaintiffs respectfully request that the Court deny the Motion in its entirety.

## STATEMENT OF FACTS

Plaintiffs in the Individual Creditor Actions are 186 retired Tribune employees (the

"Retirees") who had vested rights in Tribune's non-qualified retirement plans (*see* Ret. Compl.

¶¶ 103–10), and three successor indenture trustees acting for the holders of notes (the "Note

Holders") issued by Tribune prior to its leveraged buy-out (the "LBO") by Sam Zell (*see* Compl.

¶¶ 15–21).  Defendants are former Tribune shareholders and related parties who were cashed out

in the LBO.  (*See id.* ¶¶ 22–43.)

In 2007, the newspaper industry — and Tribune to a greater degree — were experiencing

steady and relentless declines.  (*See id.* ¶¶ 8–11.)  Nevertheless, in response to demands by

Tribune's largest shareholders, Tribune and its subsidiaries (collectively, the "Debtors")

borrowed nearly $11 billion — while Zell would invest just $315 million of his own money — to

consummate the LBO.  (*See id.* ¶¶ 56, 59, 62.)  Industry analysts described the deal as one of the

most highly leveraged in history.  (*See id.* ¶¶ 1, 70–88.)

In connection with the LBO, Tribune transferred to its former shareholders more than

$8.2 billion (collectively, the "Shareholder Transfers"), but received no value in return.  (*See id.*

¶¶ 6, 7, 62.)  The LBO nearly tripled Tribune's debtload from almost $5 billion to almost $14

billion, for the benefit of Tribune's shareholders and to the detriment of its creditors.  (*See id.* ¶

110.)  As predicted, the LBO rendered Tribune insolvent and with inadequate capital to operate

its business.  (*See id*. ¶¶ 70–88, 110–14.)  Tribune filed for bankruptcy in the Bankruptcy Court

in 2008, less than a year after the second step of the LBO.  (*See id*. ¶ 112.)

In October 2010, the Official Committee of Unsecured Creditors of Tribune (the "Committee") obtained the Bankruptcy Court's permission to assert claims as trustee on behalf of the bankruptcy estate.[2]  The Committee then commenced various adversary proceedings, one of which (the "Committee Action")[3] included a claim to avoid the Shareholder Transfers as intentional fraudulent transfers pursuant to various provisions of the Code.  The Committee Action does not assert any constructive fraudulent transfer claims, nor can it assert any such claims pursuant to the express terms of the Plan and expiration of the statute of limitations pursuant to Section 546(a).

 In October 2010, the Debtors, the Committee, and others submitted a proposed plan of reorganization (as amended and ultimately confirmed on July 23, 2012, the "Plan").  Under the Plan, the Retirees and the holders of Tribune's senior notes are guaranteed a recovery of approximately 33% –34% of their claims, while the holders of Tribune's subordinated debentures will receive nothing at all.[4]

The Plan settles all fraudulent transfer claims against the entities that financed the LBO (the "LBO Lenders") but preserves the rights of individual Tribune creditors (like Plaintiffs) to pursue claims against Tribune's former shareholders and other related parties outside of bankruptcy court.[5]  Specifically, the Plan does not release Plaintiffs' state law constructive fraudulent conveyance ("SLCFC") claims; rather, it specifies that they are not claims that the Committee may assert for the benefit of the bankruptcy estate, and provides that "nothing in th[e] Plan shall or is intended to impair" creditors' rights to "prosecut[e]" them.[6]  Notably, the

---

[2] *See* Bankr. Docket No. 6150 (the "Committee Order").

[3] *Official Comm. of Unsecured Creditors v. FitzSimons*, 10-54010 (Bankr. D. Del. 2010).

[4] *See* Bankr. Docket No. 11355, at Ex. B, at 4; Ret. Compl. ¶ 96.

[5] *See* Bankr. Docket No. 12072, Attachment B(1) §§ 1.1.67, 5.8.2, 11.2.1.

[6] *Id.* §§ 1.1.67, 5.8.2, 11.2.1.

Debtors, the Committee, and the other proponents of the Plan urged the Bankruptcy Court to approve the Plan on the grounds that, among other things, "creditors [would] retain any and all recoveries from state law avoidance claims that they independently pursue."[7]  Finally, in contrast to the treatment of Plaintiffs' claims, the Plan establishes a Litigation Trust to continue pursuing various claims commenced by the Committee under the Code for the benefit of the estate, and gives all creditors holding allowed claims specified rights to potential trust recoveries.[8]

In March 2011, before the Plan was confirmed, some of Tribune's creditors (including several of the Plaintiffs) asked the Bankruptcy Court to issue an order determining that creditors had regained their right to prosecute the SLCFC claims and, in an abundance of caution, lifting the automatic stay[9] so that those claims could be prosecuted (the "Lift-Stay Motion").[10]  Certain Tribune shareholders objected, arguing that the creditors lacked proper "standing" and were barred by Section 546(e).[11]  The Committee, which had already commenced the Committee Action, supported the Lift-Stay Motion and stated that it had "deliberately determined not to pursue the [SLCFC] Claims," and that the proposed Plan was crafted to "give[] creditors the option to pursue the state law fraudulent transfer claims that have reverted to them."[12]

The Bankruptcy Court granted the creditors' request, and lifted the automatic stay "to permit the filing of any complaint by or on behalf of creditors on account of [the creditors' constructive fraudulent transfer claims]."[13]  The Bankruptcy Court's order stated that, "[b]ecause no state law constructive fraudulent conveyance claims against [former Tribune] shareholders . . .

---

[7] Bankr. Docket No. 8897 at 89.

[8] *See* Bankr. Docket No. 12072, Attachment B(1) §§ 1.1.35–41, 1.1.127, 3.2, 13.1.

[9] *See* 11 U.S.C. § 362(a).

[10] *See* Bankr. Docket No. 8201.

[11] *See* Bankr. Docket No. 8361.

[12] Bankr. Docket No. 8396 at 8; *see also* Bankr. Docket No. 8485 at 54:11–58:12.

[13] Bankr. Docket No. 8740 at 2.

were commenced by or on behalf of the Debtors' estates before the expiration of the applicable

statute of limitations under 11 U.S.C. § 546(a), the Debtors' creditors ha[d] regained the right, if

any, to prosecute their respective state law constructive fraudulent conveyance claims against

[such] Shareholders."[14]  The Bankruptcy Court clarified that its order "makes no finding and

issues no rule determining the standing of . . .  any creditor [including Plaintiffs] to assert the

Creditor SLCFC claims or whether such claims are preempted or otherwise impacted by 11

U.S.C. § 546(e)."[15]  At the hearing on the Lift-Stay Motion, however, the Bankruptcy Court

asked incredulously if anybody was "really seriously disputing" whether individual creditors can

pursue state law claims "once the estate has failed to exercise whatever right it may have had" to

assert them, and also expressed that it was "highly doubtful" that the Committee's intentional

fraudulent transfer claim "impliedly may or could pull in the constructive fraudulent transfer

claims that the creditors sought to pursue.[16]

       In June 2011, Plaintiffs commenced the Individual Creditor Actions, alleging that the

Shareholder Transfers were constructively fraudulent pursuant to applicable state law, and

seeking to collect sufficient proceeds to satisfy their claims against Tribune, plus interest.

---

[14] *Id.* at 2–3.

[15] *Id.* at 4 n.2.

[16] Bankr. Docket No. 8485 at 43:13–44:1 ("Is there truly a dispute about whether once the
estate has failed to exercise whatever right it may have had with respect to such avoidance
actions, that it's left to those who might have state law claims to pursue them? Is that — is
somebody really seriously disputing that?").

## ARGUMENT

## I.   SECTION 546(E) DOES NOT PREEMPT PLAINTIFFS' CLAIMS[17]

It is undisputed that the plain text of Section 546(e) does not prohibit Plaintiffs from avoiding the Shareholder Transfers pursuant to applicable state law.  Rather, Defendants contend that, because Section 546(e) *expressly* prohibits a *bankruptcy trustee* from avoiding the Shareholder Transfers as constructively fraudulent pursuant to an authority conferred by the Code, it also should *impliedly* prohibit *everyone else* from avoiding the Shareholder Transfers as constructively fraudulent pursuant to a right conferred by non-bankruptcy law.  This Court should not, however, amend Section 546(e) to give it a broader scope than Congress provided in the plain text of the statute, especially since doing so here would contravene the legislative history and curtail a centuries-old body of state law that enables individual creditors to avoid fraudulent transfers outside of bankruptcy court.

### A.   The Supreme Court Requires A Strong Showing To Overcome The "High Threshold" Imposed By The Presumption Against Implied Preemption

Defendants incorrectly contend that Section 546(e) impliedly preempts state fraudulent transfer laws because they "frustrate the purposes of [Section 546(e)] and stand as an obstacle to its accomplishment and execution."  (Mot. at 13.)  But an "[i]mplied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," because "such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law."  *Chamber of Commerce of the U. S. v. Whiting*, 131 S. Ct. 1968, 1985 (2011).  In recognition of this principle, and "because pre-emption treads on the very sensitive area of federal-state relations," *Cmty. Commc'ns Co. v. City of Boulder, Colo.*, 455

---

[17] The arguments advanced in Sections I.A–D assume, *arguendo*, that the Shareholder Transfers are "settlement payments" that would be protected by Section 546(e) had the SLCFC claims been asserted by a bankruptcy trustee.  As set forth in Section I.E below, however, Plaintiffs do not concede that the Shareholder Transfers are "settlement payments."

U.S. 40, 61 (1982), the Supreme Court repeatedly holds that "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Whiting*, 131 S. Ct. at 1985. Federalism, therefore, is the guiding principle of any implied preemption analysis: "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state law causes of action." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

To give teeth to this "high threshold," the Supreme Court and the Second Circuit both mandate that Defendants make a strong showing of a "clear and manifest purpose of Congress" in order to "bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *De Buono v. NYSA-ILA Med. & Clinical Serv. Fund*, 520 U.S. 806, 813 n.8, 814 (1997). As explained by the Second Circuit, "a state's police powers are not displaced by federal law unless there is compelling evidence that this was the manifest aim of Congress. The burden of overcoming this presumption in favor of state law is heavy in those cases that rely on implied preemption, which rests in turn on inference." *Envtl. Encapsulating Corp. v. City of N.Y.*, 855 F.2d 48, 58 (2d Cir. 1988).

The presumption against preemption of state law not only applies here, it applies with greater force because the States have traditionally regulated fraudulent transfers. *See Bates*, 544 U.S. at 449 (a "long history of tort litigation" pursuant to state law "adds force to the basic presumption against pre-emption"). It is beyond peradventure that fraudulent transfer law is, and long has been, a field traditionally regulated by the States. As far back as the American Revolution — long before Congress enacted a federal bankruptcy law — the common law and a patchwork of state statutes enabled creditors to avoid fraudulent transfers. *See* 1 GARRARD GLENN, FRAUDULENT CONVEYANCES & PREFERENCES § 58 (1940 ed.). In 1938, noting the

States' growing adoption of the Uniform Fraudulent Conveyance Act of 1918 (the "UFCA"),

"Congress adopted its language as federal law" in a series of amendments to the Bankruptcy Act.

5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 548.01[2] (2011).  Over

the course of the next 75 years, the UFCA has been amended, the Uniform Fraudulent Transfer

Act has been promulgated, and all 50 states now have nearly identical fraudulent transfer laws

that uniformly enable creditors, independent of federal bankruptcy law, to avoid fraudulent

transfers.  *See id*.  Therefore, Defendants must rebut a heightened presumption against

preemption by making an even stronger showing than would be required in an ordinary case.

Remarkably, while the Motion principally is based upon preemption, Defendants make

no mention of this binding Supreme Court and Second Circuit precedent.    Instead, Defendants'

entire preemption argument depends on their mistaken assumption that state law can never offer

a remedy to individual creditors that federal law does not offer to a bankruptcy trustee.  (*See*

Mot. at 21.)  In fact, there is no "policy against States imposing liability in addition to that

imposed by federal law."  *California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) (state law

antitrust claim was not preempted by a federal law which contained limitations upon similar

federal law antitrust claims).  To the contrary, "[o]rdinarily, state causes of action are not pre-

empted solely because they impose liability over and above that authorized by federal law . . . ."

*Id.*; *accord English v. Gen. Elec. Co.*, 496 U.S. 72, 88 (1990) (state law tort claim not preempted

by a similar, but more limited federal law because the restriction in the federal statute was

specifically applicable only "to the remedy provided by [federal law] and d[id] not suggest that it

bars state law tort actions," nor did the legislative history "reveal a clear congressional purpose

to supplant state law causes of action that might afford broader relief.").

**B.** **The Plain Text Of The Code Evidences That Congress Did Not Intend Section 546(e) To Preempt Plaintiffs' Claims**

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). And the quest to divine congressional purpose must begin with the plain text of the statute. *See, e.g.*, *English*, 496 U.S. at 87; *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997); *Gold v. N.Y. Life Ins. Co.*, No. 09 Civ. 3210, 2012 WL 1674300, at *3 (S.D.N.Y. May 14, 2012). Here, the plain text of Section 546(e) and related Code provisions do not evidence a "clear and manifest purpose of Congress" to preempt state law claims that are asserted outside of bankruptcy court by individual creditors.

**1.** **The Plain Text of Section 546(e) Prohibits Only A Bankruptcy Trustee From Avoiding Settlement Payments**

Defendants contend that "Congress enacted [Section] 546(e) . . . to prevent the exact claims Plaintiffs assert here." (Mot. at 9.) This assertion, however, is belied by the plain text of Section 546(e) itself:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, *the trustee* may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . . stockbroker, financial institution, financial participant, or securities clearing agency, . . . in connection with a securities contract . . . , that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

Notably, Section 546(e) has a singular subject: "the trustee." And the Code uses the term of art "trustee" to refer to a singular person: the statutory "representative of the estate." 11 U.S.C. § 323(a).[18] Section 546(e) does not say "any person," or "any creditor," or "any party in

_____

[18] The Code provides that a debtor in possession shall, with certain exceptions not relevant here, have the rights and powers, and perform the functions and duties, of a "trustee." *See* 11 U.S.C. § 1107(a). The term "trustee" can also include certain parties to whom a court grants authority to assert claims on behalf of the bankruptcy estate. *See, e.g.*, *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000) (creditors' committee); *PHP Liquidating, LLC v. Robbins*, 291 B.R. 603, 607 (D.

interest" — terms that the Code uses when a provision is intended to affect a broader group of persons. *See, e.g.*, 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [Chapter 11].").

In *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, the Supreme Court reiterated the oft-repeated maxim that "Congress says in a statute what it means and means in a statute what it says there," and concluded that the term "trustee," as it is used in the Code, is narrowly interpreted to mean only an estate representative:

> [T]he statute appears quite plain in specifying who may use [it] — the trustee. . . . [T]he fact that the sole party named — the trustee — has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others. . . . Similarly, had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the parties who could act under other sections of the Code.[19]

Just three years after the Supreme Court's narrow interpretation of the term "trustee" in *Hartford*, the United States District Court for the District of Delaware was presented with — and remains the only court ever to have examined — the exact question at issue here: does Section

---

Del. 2003) (successor to a debtor-in-possession), *aff'd on other grounds*, 128 F. App'x 839 (3d Cir. 2005). The term "trustee" collectively embraces these types of formally authorized estate representatives, but excludes individual creditors who act on their own behalf, such as the Plaintiffs here.

[19] 530 U.S. 1, 7 (2000). When a statute specifies the party to which it applies, courts should not expand its scope to encompass additional parties. *See Lee v. Burkhart*, 991 F. 2d 1004, 1010 (2d Cir. 1993) ("ERISA undoubtedly requires that participants be told who has the financial obligation to fund the plans. But that obligation is placed on the person designated under ERISA as the 'administrator' of the plan, not on every fiduciary. . . . Respect for our proper role requires that we decline to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the 'administrator.'"); *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371 (S.D.N.Y. 2009) (same).

546(e) bar only a bankruptcy trustee's claims to avoid settlement payments, or does it also bar claims regardless of whether the plaintiff is a bankruptcy trustee?  While the court's conclusion on this issue was not dispositive of the outcome of the case, the court nevertheless stated that Section 546(e) applies only to a bankruptcy trustee, and *does not* bar claims asserted by individual creditors to avoid settlement payments.  *See PHP*, 291 B.R. at 607.

In *PHP*, a corporation redeemed its common stock from public shareholders at a time when the company was financially impaired.  *See id*. at 605.  Several years later, the corporation filed for bankruptcy protection.  *See id*.  Pursuant to the plan of reorganization, a litigation trust was created to which unsecured creditors assigned their individual avoidance claims against the former shareholders.  *See id*.  On behalf of these creditors, the litigation trustee commenced an avoidance action outside of the bankruptcy court to avoid the redemption payments pursuant to state law, and the former shareholders asserted Section 546(e) as a defense.  *See id*.  The district court, however, concluded that the plain text of Section 546(e) applied only to claims asserted by an estate representative — not claims held by ordinary creditors, like Plaintiffs here:

> [I]f the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code. However, in this case, [the plaintiff] has not asserted its claims against [the defendants] in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession. *Rather, [the plaintiff] is bringing the instant claims as a direct assignee of the unsecured creditors. As such, Section 546(e) is not a bar to [the plaintiff's] claims.*

*Id.* at 607 (emphasis added).

*PHP* remains the only case nationwide ever to have directly addressed the issue currently before this Court.[20]  And here, as in *PHP*, Plaintiffs "ha[ve] not asserted [their] claims against

---

[20] While many commentators have addressed the scope of Section 546(e) as applied to actions commenced by a bankruptcy trustee, the only article (of which Plaintiffs are aware) ever to have

[Defendants] in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession." *Id.* Indeed, Plaintiffs here do not even act through any trust or vehicle created by a plan of reorganization, but instead assert their claims on their own behalf and at their own expense — thus, the inapplicability of Section 546(e) is even more evident here than in *PHP*.[21]

Defendants' only response to the fact that the plain text of Section 546(e) applies only to a bankruptcy trustee is that "[i]t is not surprising" because the bankruptcy trustee "is the single party expressly authorized" to assert fraudulent transfer claims "in the first place." (Mot. at 18.) This contention, however, assumes that Defendants will prevail on their flawed argument that Plaintiffs lack standing. As discussed below, that argument fails.

>    2.    **When Congress Intends The Code To Preempt State Law, Congress Manifests That Intent With An Express Preemption Provision**

Section 546(e) contains no reference to state law claims that are asserted outside of bankruptcy court by individual creditors seeking to avoid settlement payments. Yet, Congress *has* expressly precluded individual creditors from pursuing state law claims outside of bankruptcy court that seek to avoid a *different* kind of transfer.

---

addressed the precise question of whether Section 546(e) bars claims by an individual creditor concluded that "[d]efendants raising § 546(e) as a defense to the claims of [individual creditors] should not be allowed to do so because the Code . . . does not impinge upon the rights of creditors outside of bankruptcy and does not apply to claims brought outside of bankruptcy." *See* Deborah L. Thorne, *Last in Line: Circumventing § 546(e) in Recovery of LBO Fraudulent Transfers*, Am. Bankr. Inst. J., Mar. 28, 2012, at 29 (Mar. 28, 2012) (authored by a practitioner unaffiliated with Plaintiffs or their counsel).

[21] Appellate courts nationwide similarly have concluded that another subsection of Section 546 applies exclusively to claims asserted by a bankruptcy trustee, and have rejected efforts to extend the statute to individual creditors. *See, e.g.*, *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003) ("[T]he statute of limitations in § 546[(a)(1)] applies only to actions by trustees . . . . [T]his state law action by the [non-trustee plaintiff] for fraudulent conveyance . . . has nothing to do with the rights of the trustee."); *Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar*, 69 F.3d 799, 800 (7th Cir. 1995) (same).

Section 544(b)(1) — which itself is cross-referenced in Section 546(e) — empowers a bankruptcy trustee, for a period of two years after the petition date, to avoid any transfer that is voidable by a creditor pursuant to state law.  *See* 11 U.S.C. § 544(b)(1).  Section 544(b)(2), in turn, provides that a bankruptcy trustee may not employ Section 544(b)(1) to avoid certain kinds of transfers to charitable organizations.  *See id*. § 544(b)(2).  Consequently, the first sentence of Section 544(b)(2) creates a "charitable contribution safe harbor" that, like Section 546(e), operates solely against the bankruptcy trustee.  But the second sentence of Section 544(b)(2) expands the reach of this safe harbor to prohibit claims by plaintiffs other than just the bankruptcy trustee, providing that "*[a]ny claim by any person* to recover a transferred contribution . . . *under Federal or State law in a Federal or State court* shall be preempted by the commencement of the case."  11 U.S.C. § 544(b)(2) (emphasis added).   This second sentence is conspicuously absent from Section 546(e).

A comparison of Section 544(b)(2) and Section 546(e) "is powerful evidence" that Congress did not intend Section 546(e) to preempt state law claims — like Plaintiffs' claims — which belong to individual creditors.  *See Wyeth*, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.").  Section 544(b)(2) not only reflects Congress's  awareness that individual creditors can assert claims pursuant to state fraudulent transfer laws, but also evidences Congress's decision to draw a deliberately placed line-in-the-sand regarding them: claims by all persons, including a bankruptcy trustee, to avoid certain charitable contributions are preempted; other individual creditor claims, including those to avoid payments made to shareholders who are cashed out in an LBO, are not.  *See In re Federal Mogul*

*Global Inc.*, 684 F.3d 355, 373 (3d Cir. 2012) ("Where the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent.").

Numerous other provisions of the Code also demonstrate that when Congress wishes to preempt state law, it does so expressly.  *See, e.g.*, 11 U.S.C. § 341(c) ("Notwithstanding any local court rule, provision of a State constitution, any otherwise applicable nonbankruptcy law . . . ."); *id.* §§ 366(c)(4), 704(c)(2)(B), 1123(a), 1142(a), 1302(d)(2)(B); *see also Integrated Solutions*, 124 F.3d at 493 ("The clear lack of Congressional intent to preempt state law . . . is even more telling given the explicit language Congress uses when it intends to displace nonbankruptcy law in other provisions of the Bankruptcy Code.").  Congress has not done so here.

### 3.    The Section 546(e) Case Law Cited By Defendants Does Not Support Their Argument

Defendants do not (and cannot) cite any case which has held that Section 546(e) preempts claims asserted by individual creditors.  Instead, Defendants rely on three cases which did not involve claims asserted individual creditors, but purportedly support the contention that Section 546(e) preempts Plaintiffs' claims: *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981 (8th Cir. 2009), *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Delaware v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co.)*, 274 B.R. 71 (D. Del. 2002), and *U.S. Bank N.A. v. Verizon Commc'ns Inc.*, No. 3:10 Civ. 1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012).  (*See* Mot. at 16–19.)  In each of those cases, the plaintiff unsuccessfully attempted to assert various state law claims — in addition to claims pursuant to Section 544 and./or Section 548 — against the recipient of a settlement payment.  However, the plaintiff in each of those cases was either a bankruptcy trustee, a successor thereto, or an estate representative — *precisely* the type of plaintiff that Section 546(e) *expressly* restricts.  *See Contemporary Indus.*, 564 F.3d at 983;

*Hechinger*, 274 B.R. at 75–76; *U.S. Bank*, 2012 WL 4050088, at *6.  Consequently, none of these cases involves preemption of state law rights held by individual creditors outside of bankruptcy court or implicates any federalism concerns.  Rather, and notwithstanding that the opinions speak in the language of preemption, all three merely held that which the plain text of Section 546(e) already says: a bankruptcy trustee cannot avoid a settlement payment other than as an intentional fraudulent transfer.[22]

Defendants also cite a series of cases that have applied Section 546(e) to prohibit the avoidance of various types of transfers that the plaintiff — in each case a bankruptcy trustee or an entity exercising the trustee's powers — argued were not settlement payments.  (*See* Mot. at 19–21.)  Yet these decisions merely deal with the interpretation of the term "settlement payment," as it is used in the statute.   They do not involve preemption, address the question of individual creditors' state-law rights, or excise from the statute's plain text its express limitation to the trustee.  Contrary to Defendants' hyperbole, adhering to Section 546(e)'s plain language (as this Court must) by limiting the statute only to the trustee will not "render impotent" or "swe[ep] away" any of this precedent.  (Mot. at 19, 21.)

C.   **The Legislative History Of Section 546(e) Evidences That Congress Did Not Intend To Preempt Plaintiffs' Claims**

Given that the text of Section 546(e) and related sections of the Code demonstrate a "clear and manifest purpose of Congress" *not* to preempt Plaintiffs' claims, Defendants invite this Court to examine the section's legislative history for expressions of policy objectives that purportedly reflect preemptive intent.  (*See* Mot. at 15–16.)   However, the legislative history of

---

[22] Of the same specie is *AP Servs LLP v. Silva*, No. 11-cv-3005, 2012 WL 5426499 (S.D.N.Y. Nov. 7, 2012), decided after Defendants filed the Motion.  Because the challenged claims were asserted by an estate representative exercising the powers of a bankruptcy trustee, this decision — like the rulings in *Contemporary Indus.*, *Hechinger*, and *Verizon* — does not involve true preemption of state law rights held by individual creditors.

15

Section 546(e) harmonizes with the statutory text, and belies Defendants' contention that prosecution of Plaintiffs' claims frustrates the purpose of Section 546(e).

**First**, the legislative history of Section 546(e) evidences that Congress did not intend Section 546(e) to provide anything other than a limitation on a bankruptcy trustee acting pursuant to an authority conferred by the Code.  In 1978, when Congress enacted the predecessor to Section 546(e) — in response to an avoidance action commenced by a *bankruptcy trustee*[23] — the House Report explained that the provision "indicates the extent to which the avoiding powers may be used by *the trustee*."  H.R. Rep. No. 95-595, at 391 (1977) (emphasis added).[24]  In 1982, when Congress first amended the statute, the House Report reiterated that the provision "limits the *trustee's avoiding powers*."  H.R. Rep. No. 96-1195, at 17 (1980) (emphasis added).[25]  Finally, in 2006, when Congress most recently amended Section 546(e), the House Report once again impressed that the statute applies "to the avoidance powers of a *trustee under the Bankruptcy Code*."  H.R. Rep. No. 109-648, at 6 (2006) (emphasis added).

---

[23] *See* S. Rep. No. 95-989, at 106 (1978) (referencing *Seligson v. N.Y. Produce Exch.*, 394 F. Supp. 125 (S.D.N.Y. 1975)).

[24] *Accord* S. Rep.  No. 95-989, at 8 (1978) ("Another policy established by this subchapter is that margin payments made to clearing organizations are not voidable by *the trustee in bankruptcy*." (emphasis added)); *id.* at 106 (explaining that the amendment "lists certain transfers which are not voidable *by the trustee*" (emphasis added)).

[25] *Accord* H.R. Rep. No. 96-1195, at 6 (1980) ("It is also made clear that *the trustee* may not avoid as a preference or fraudulent transfer, a margin payment, deposit or settlement payment made by or to a commodity broker, forward contract merchant, stockbroker or securities clearing agency." (emphasis added)); H.R. Rep. No. 97-420, at 1–2 (1982) ("One of the market protections presently contained in the Bankruptcy Code, for example, prevents *a trustee in bankruptcy* from avoiding or setting aside, as a preferential transfer, margin payments made to a commodity broker. . . . The amendments will ensure that *the avoiding powers of a trustee* are not construed to permit margin or settlement payments to be set aside except in cases of fraud . . . ." (emphasis added)).

Congress's exclusive focus on the bankruptcy trustee reverberates throughout judicial decisions that have interpreted and applied Section 546(e).  In fact, *Hechinger*, one of the three primary cases cited by Defendants, makes this very point:

> [I]t is clear from the case law and legislative history of [Section 546(e)] that *the broad avoidance power given to a trustee in bankruptcy* led to the potential risk that the avoidance of a major transfer would have a disruptive effect on settled securities transactions. To address this danger, *Congress passed section 546(e) to narrow the trustee's avoidance power under certain circumstances* to protect the nation's financial markets from the instability caused by the reversal of settled securities transactions.

274 B.R. at 88 (emphasis added); *accord Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011) (Section 546(e) "restrict[s] *a bankruptcy trustee's power* to recover payments that are otherwise avoidable under the Bankruptcy Code." (emphasis added)); *Contemporary Indus.*, 564 F.3d at 984 (Section 546(e) was enacted as "an exception to various other Code provisions that allow *a trustee or debtor-in-possession* to avoid certain transfers" (emphasis added)).

Most tellingly, however, Congress has amended Section 546(e) on eight separate occasions since its enactment nearly 34 years ago,[26] and twice since *PHP* was decided, but the statute still does not contain an express preemption provision.  "If Congress thought state law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point." *Wyeth*, 555 U.S. at 574.

**Second**, not only is there no evidence that Congress intended Section 546(e) to preempt state law claims by individual creditors, but Congress also considered — and rejected — at least

---

[26] *See* Pub. L. No. 109-390, § 5(b)(1) (2006); Pub. L. No. 109-8, § 907(o)(3) (2005); Pub. L. No. 105-183 § 3(c)(1) (1998); Pub. L. No. 103-394, § 501(b)(4)(A) (1994); Pub. L. No. 101-311 § 203 (1990); Pub. L. No. 99-554, § 283(l) (1986); Pub. L. No. 98-353, § 351(3) (1984); Pub. L. No. 97-222 § 4 (1982).

two separate recommendations to include an express preemption provision in the statutory text of Section 546(e).  In 1976, the Chairman of the Commodities Futures Trading Commission (the "CFTC") testified before Congress that settlement payments should not only "be protected from reversal by the trustee in bankruptcy," but also that "*[a]ny such provision should also clearly preempt state law in this area*."[27]  Notably, the congressional record makes clear that "[t]he content of [Section 546(e)] is derived largely from the testimony of Chairman Bagley" of the CFTC.  H.R. Rep. No. 95-595, at 271 (1977).  Section 546(e) does not, however, include the express preemption language that Chairman Bagley recommended.

In 1977, the Commodity Exchange Inc. ("Comex"), the leading futures exchange at the time, submitted a similar recommendation to Congress — and even specifically referenced the very state law (*i.e.*, New York Debtor and Creditor Law) which Plaintiffs invoke here:

> *The bankruptcy law should be amended to provide that state law inconsistent with provisions of the bankruptcy law relating to preferential or fraudulent payments is not valid. . . .* [I]t would be highly unfortunate if a [specific type of] payment which is not subject to being set aside under the federal statute would be vulnerable under a statute such as the New York Debtor and Creditor Law . . . . *Comex believes that it is essential that the law in this area be uniform and it urges that S. 2266 be amended to provide that the federal bankruptcy law prevail over state laws* with respect to preferential or fraudulent payments . . . .[28]

Congress has never adopted any of these recommendations to preempt state fraudulent transfer laws.  It is highly unlikely, of course, that Congress intended to accomplish implicitly

---

[27] *Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 before the Subcomm. on Civil & Constitutional Rights of the Comm. on the Judiciary*, 94th Cong., at 2406 (1976) (emphasis added).

[28] *Bankruptcy Reform Act: Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Comm. on the Judiciary*, 95th Cong., at 1296–97 (1977) (emphasis added). The Comex statement also mentioned in a footnote — without citation, explanation, or identification of the source — that it had been "suggested" that "the supremacy doctrine" might act to override state law in this area.  As set forth herein, however, any such suggestion would have been incorrect.

that which it refused to do expressly.  *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) (courts "give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme"); *Wyeth*, 555 U.S. at 575.

### D.   Congress, Rather Than The Courts, Should Decide What Its Objectives Are And Whether They Are Being Frustrated

Neither case law nor legal doctrine requires this Court to assess the basis or wisdom of Congress's decision regarding the limited scope of Section 546(e).  *See Whiting*, 131 S. Ct. at 1985.  Nevertheless, the limited scope is entirely reasonable, given that a bankruptcy trustee who is exercising an authority conferred by federal law poses a far greater threat to settlement payments than an individual creditor who is prosecuting a claim pursuant to state law.  For example, "Section 544(b) of the Bankruptcy Code . . . allow[s] a trustee to avoid a fraudulent transfer without regard to the size of the claim of the creditor whose rights and powers the trustee was asserting," whereas "state fraudulent transfer laws . . . provide[] that the creditor in a fraudulent transfer action may not recover more than the amount necessary to satisfy the creditor's [own] claim."  *Tronox Inc. v. Anadarko Petroleum Corp.*, (*In re Tronox Inc.*), 464 B.R. 606, 615–16 (Bankr. S.D.N.Y. 2012); *accord Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 428 (Bankr. C.D. Ill. 2004); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir. 1994)  It is for this very reason, in fact, that Plaintiffs only asserted claims to recover on account of their own claims against Tribune, and not the billions of dollars in unpaid claims held by other creditors who have chosen not to sue Defendants.  Furthermore, unlike an individual creditor prosecuting its claim outside of bankruptcy court, a bankruptcy trustee is funded by the bankruptcy estate, and receives significant procedural advantages such as nationwide long-arm jurisdiction in a single forum and the ability to serve process by mail.  *See*

19

FED. R. BANKR. P. 7004(b), (d).  Thus, it was not unreasonable for Congress to have concluded that settlement payments could be meaningfully protected merely by limiting the broad powers that Congress itself conferred on bankruptcy trustees.  *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2044 (2012) ("Vague notions of statutory purpose provide no warrant for expanding [a statute]'s prohibition beyond the field to which it is unambiguously limited . . . .").

      The "clear and manifest purpose of Congress" to limit only the avoidance powers of a bankruptcy trustee is underscored by its limited applicability generally.  Section 546(e) does not apply before the commencement of a bankruptcy case, when individual creditors are free to avoid settlement payments, nor does it apply after the dismissal of a bankruptcy case.  (*See* Mot. at 9, 32.)  And during the pendency of a bankruptcy case, the statute does not even provide complete immunity from claims asserted by a bankruptcy trustee.  For example, Section 546(e) does not provide a defense against a bankruptcy trustee's intentional fraudulent transfer claims to avoid settlement payments — even though the potential market disruption is the same regardless of whether the trustee pursues an intentional or constructive fraudulent transfer theory.[29]  Nor does Section 546(e) provide a defense against claims to avoid debt obligations that provide the funding for settlement payments — even though Sections 544 and 548 permit a bankruptcy trustee to avoid obligations that are owed to financial institutions.[30]  Nor does Section 546(e) provide a defense where the challenged transfer otherwise is void pursuant to applicable state

---

[29] *See Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 13 n.18 (S.D.N.Y. 2007) ("[Section] 546(e) does not preclude avoidance if there is actual fraud under § 548(a)(1)(A) . . . .").

[30] *See Geltzer v. Mooney (In re MacMenamin's Grill Ltd.)*, 450 B.R. 414, 429 (Bankr. S.D.N.Y. 2011) ("[S]ection 546(e) provides only that 'the trustee may not avoid a transfer'; it does not, by its plain terms, extend the safe harbor to the trustee's avoidance of the incurrence of an obligation.").

corporate law,[31] or where the defense was not asserted on a timely basis.[32]  Given the measured

scope of Section 546(e), Defendants' contention that its "object and purpose" must impliedly

deprive creditors of their state law rights falls flat.  *See English*, 496 U.S. at 88 (declining to

preempt a private plaintiff's state law claim for punitive damages, even though federal law would

have precluded a private plaintiff, but not the federal government, from recovering punitive

damages under federal law).  Indeed, as Congress itself stated, Section 546(e) was "intended to

minimize," not eliminate, "the displacement caused in the commodities and securities markets in

the event of a major bankruptcy affecting those industries."  H.R. Rep. No. 97-420, at 1 (1982).

This type of measured legislative reaction — where Congress limits federal causes of

action in the interest of market stability, but leaves untouched their state law analogs — is not

uncommon.  For example, in 1995, Congress enacted the Private Securities Litigation Reform

Act (the "PSLRA") to curtail class actions that allege fraud in connection with the sale of

securities.   Among other things, the PSLRA amended the federal Racketeer Influenced and

Corrupt Organizations Act ("RICO") to eliminate securities fraud as a predicate act of

racketeering.  *See* 18 U.S.C. § 1964(c).  Congress intended this amendment to mitigate the

perceived adverse impact that RICO treble-damage claims, which accompanied nearly all

securities-fraud actions, were having on the capital markets.  *See* H.R. Conf. Rep. No. 104-369 at

31 (1995).  Significantly, however, Congress *did not* preempt state law analogs to RICO which

---

[31] *See Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 859 (Bankr. S.D.N.Y. 2005) ("The Court holds that because, under [applicable state] law, an act in violation of the [State's] distribution statute is considered void, such action is a nullity and, as such, the underlying transaction cannot form the basis of a securities transaction that supports a settlement payment. Therefore, section 546 of the Bankruptcy Code does not protect such payment from the trustee's avoidance powers.").

[32] *See Adelphia Recovery Trust v. FPL Grp., Inc. (In re Adelphia Commc'ns. Corp.)*, 452 B.R. 484, 492–93 (Bankr. S.D.N.Y. 2011) (failure to timely assert a defense based upon Section 546(e) waives the defense).

still permitted treble-damage claims that allege securities fraud as a predicate act.[33]  *See* JOHN E. FLOYD, RICO STATE BY STATE: A GUIDE TO LITIGATION UNDER THE STATE RACKETEERING STATUTES 1–3 (2d ed. 2011).  Another example is Congress's decision in the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to preempt state law fraud actions in connection with the purchase or sale of covered securities only if they are brought on behalf of a covered class, but not if brought on behalf of individual investors, regardless of how large the individual claims are.  *See* 15 U.S.C. § 78bb(f)(1).  Therefore, Defendants' attempt to disparage Plaintiffs' claims as a "work-around" (*see* Mot. at 19, 21) is no more persuasive than to argue that a state law racketeering claim is a "work-around" for RICO, or that a state law fraud claim is a "work-around" for SLUSA.  It simply is not improper to assert claims that Congress, in its effort to weigh competing policy considerations, has expressly left available.

It would therefore be inappropriate for the Court to accept Defendants' invitation to effectively amend Section 546(e) under the guise of preemption — and as a pretext for favoring one policy objective (*i.e.*, market protection) at the expense of other policies (*e.g.*, creditors' rights and federalism).  And it would be particularly inappropriate to do so where Congress rejected multiple recommendations to include an express preemption provision, and even expressly preempted an individual creditor's state law fraudulent transfer claims in a similar statute and in a similar context.  Congress drew a bright line that results in a balanced advancement of multiple competing objectives, and it is not the judiciary's role to say that Congress should have drawn that line differently.  *See Freeman*, 132 S. Ct. at 2044 ("[N]o legislation pursues its purposes at all costs, and every statute purposes, not only to achieve

---

[33] *See, e.g.*, ARIZ. REV. STAT. ANN. §§ 13-2301(D)(4)(xviii) (securities fraud as predicate act), 13-2314.04(a) (treble damages); LA. REV. STAT. ANN. §§ 51:712(D)(1) (securities fraud as predicate act), 15:1356(E) (treble damages);  N.J. STAT. ANN. §§ 2C:41-1(a)(p) (securities fraud as predicate act), 2C:41-4(c) (treble damages).

certain ends, but also to achieve them by particular means."); *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) ("[I]t is the province of Congress, not this Court, to decide whether to bring [a particular type of action] within the scope of the statute.").

As aptly stated by the Supreme Court just last Term:

> Certainly, there may be compelling policy reasons [to prohibit the challenged conduct] . . . . But if Congress intended that result, it did not so provide in the statute. Given the statute's plain language, context, and structure, it is not for us to rewrite the statute, particularly in this complex terrain of interconnected [bankruptcy] provisions and exceptions enacted over nearly three decades. . . . Congress is entirely free to change the law by amending the text.

*Hall v. United States*, 132 S. Ct. 1882, 1893 (2012); *accord RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012) ("[T]he pros and cons . . . are for the consideration of Congress, not the courts"); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2012 WL 1438241, at *2 (S.D.N.Y. Apr. 25, 2012) ("To be sure, there are compelling policy arguments  . . . . But this Court is not at liberty to rewrite the statute to reflect a meaning it deems more desirable.").

### E.   <u>Arguments Preserved For Appeal</u>

In the alternative, the Motion should be denied based upon the following arguments that were rejected by the Second Circuit in *Enron Creditors Recovery Corp.* — but have not yet been addressed by the Supreme Court — and are hereby preserved for purposes of an eventual appeal or interim change in the law.  651 F.3d 329.

1.    The Shareholder Transfers are not protected by Section 546(e) because they do not constitute "settlement payments."  The term "settlement payment" is defined to include only payments that are "commonly used in the securities trade."  11 U.S.C. § 741(8).  A payment made in connection with a leveraged buyout, however, is an unusual, rather than common, type of payment and this is particularly so with respect to the billions of dollars in payments that went

to Tribune's controlling shareholders.  *See Kaiser Steel Corp. v. Jacobs* (*In re Kaiser Steel Corp.*), 105 B.R. 639, 653 (Bankr. D. Colo. 1989).  The Shareholder Transfers that were made in connection with the second step of the LBO are not "settlement payments" for the additional reason that the second step involved the redemption of a security, not the "purchase or sale" of a security — a critical element that is necessary for a transfer to be deemed a "securities transaction."  *See Enron Creditors Recovery Corp.*, 651 F.3d at 342 (Koeltl, J., dissenting).

2. Section 546(e) only protects transfers made "by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency . . . ."  11 U.S.C. § 546(e).  To the extent the financial institutions that were involved in implementing the Shareholder Transfers contend that they were acting as "mere conduits" for the ultimate beneficiaries and were not "transferees," Section 546(e) is not applicable.  *See Munford v. Valuation Research Corp. (In re Munford, Inc.)*, 98 F.3d 604, 610 (11th Cir. 1996).

3. The Shareholder Transfers should not be protected by Section 546(e) because "[t]he inviolability of payments to shareholders is simply not basic to the operation of the clearance and settlement systems" that Section 546(e) seeks to protect.  *Wiebolt Stores, Inc. v. Schottenstein*, 131 B.R. 655, 664 n.11 (N.D. Ill. 1991).  Congress intended Section 546(e) only to mitigate the risk that "the bankruptcy of one party in the clearance and settlement chain could spread to other parties in that chain" as a result of interlocking guarantees and netting arrangements.  *Id.* at 664.  This concern is not implicated by the Individual Creditor Actions.

## II.     PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS

### A.     Individual Creditors Can Pursue A Fraudulent Transfer Claim Where A Bankruptcy Trustee Fails To Pursue That Claim Within Two Years

Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). This provision gives a trustee the power to "use causes of action that state law provides to creditors" while standing "in the overshoes of a creditor." *Cybergenics Corporation*, 226 F.3d at 243–44. While "[u]nder non-bankruptcy law, the debtor cannot sue to recover its own fraudulent transfers," Section 544(b) "puts the trustee in the creditors' shoes, and allows him to assert claims that only they could assert outside of bankruptcy." *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 206–07 (Bankr. S.D.N.Y. 2002).

Critically, however, Section 546(a)(1) gives the trustee only two years from the petition date to assert such claims. 11 U.S.C. § 546(a)(1). During this two-year period, the ability of individual creditors to pursue state law avoidance claims against a debtor's transferees is stayed, on the ground that such claims exist only because of "a claim against the debtor," and thus fall within the Code's automatic stay provisions. *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131–32 (2d Cir. 1995); *see also Burns v. Grupo Mexico S.A. de C.V.*, No. 07 Civ. 3496, 2007 WL 4046762, at *2 (S.D.N.Y. Nov. 16, 2007).

There is nothing in Section 544, however, or any other section of the Code, that *permanently* divests creditors of their property rights in their own state law fraudulent conveyance claims. Rather, the Code merely holds these claims in abeyance, in order to provide the trustee with the first opportunity to pursue such claims on behalf of the entire estate. *See Integrated Agri*, 313 B.R. at 427; *Casey Nat'l Bank v. Roan*, 668 N.E.2d 608, 612–13 (Ill. App.

Ct. 1996); *Dixon v. Bennett*, 531 A.2d 1318, 1325 (Md. Ct. Spec. App. 1987) *overruled on other grounds*, *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 400 Md. 136 (2007).

Where the trustee determines that the estate has no interest in pursuing the claims or the statute of limitations under Section 546(a)(1) has passed, a creditor regains the ability to pursue a state law fraudulent conveyance action, in its own name and for its own benefit.  *Integrated Agri*, 313 B.R. at 427–28.  This rule has been acknowledged by countless federal and state courts.  For example, in *Klingman v. Levinson*, the court observed that the "commencement of a bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors," but that "the trustee does not retain that exclusive right in perpetuity."  158 B.R. 109, 113 (N.D. Ill. 1993).  Rather, the court held that "*[t]he trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action*."  *Id.*  (emphasis added).

Similarly, in *Dixon v. Bennett*, an individual creditor sued to recover an alleged fraudulent transfer under Maryland state law following the expiration of the Section 546(a)(1) period in the debtor's bankruptcy.  531 A.2d at 1320.  The defendant moved for summary judgment, contending that the "state law claim was barred because the bankruptcy trustee had the exclusive right to bring an action to set aside any alleged fraudulent transfers . . . ."  *Id.*  In reversing the lower court's grant of summary judgment, the court observed that "no case law or language in the Bankruptcy Code itself . . . prevents an unsecured creditor from bringing a state cause of action in state court once the trustee's two-year time limitation has passed," and that "to do so would only serve to shield the recipients of fraudulent transfers at the expense of the unsecured creditor."  *Id*. at 1324, 1325.   The court opined:

26

> If Congress had wanted to continue to extend the trustee's statutory
> time period and in turn restrict the unsecured creditor's ability to
> maintain an independent cause of action, it could have done so.
> We cannot do what Congress has chosen not to do.  Therefore, we
> hold that, once the trustee's statutory time period has expired, an
> unsecured creditor can bring an action against a fraudulent
> transferee under state law provided the state statute of limitations
> has not yet expired.

*Id.*; *see also FDIC v. Davis*, 733 F.2d 1083, 1085 (4th Cir. 1984) ("creditors having unavoided

liens [can] pursue their state law remedies independently of the trustee" after the trustee's power

to do so lapsed); *Christian v. Mason*, 219 P.3d 473, 479 (Idaho 2009) ("[I]n situations where the

trustee has clearly demonstrated an intention not to pursue a state law fraudulent transfer claim,

the claim may be pursued by any other creditor with a valid state law claim."); *Munson v. Rinke*,

919 N.E.2d 438, 442–43 (Ill. 2009) ("[P]laintiffs were not barred from pursuing [state law

avoidance claims] based on the prior bankruptcy proceeding" where "the trustee ultimately did

not pursue the action."); *Casey Nat'l Bank*, 668 N.E.2d at 612–13 (trustee loses "the exclusive

right to pursue fraudulently conveyed assets . . . and creditors may step in once the trustee no

longer has a viable cause of action"); *Sparano v. Southland Corp.*, 94 C 2098, 1995 WL 470267,

at *8 (N.D. Ill.  Aug. 4, 1995); *Branch v. Human*, 109 S.E.2d 732, 734 (Ga. 1959); *Matney v.

Combs*, 198 S.E. 469, 473 (Va. 1938); *see also Hatchett*, 330 F.3d at 886.

Indeed, the holdings of these cases are supported by two of Defendants' cases.  In *In re

Tessmer* (*see* Mot. at 30), the court stated that "creditors do not regain the right to sue *unless the

trustee abandons the claim or he 'no longer has a viable cause of action' because, for example,

the statute of limitations has run*." 329 B.R. 776, 779 (Bankr. M.D. Ga. 2005) (emphasis added).

Additionally, Defendants rely heavily on the appellate decision *National American Insurance Co.

v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999)  (*see* Mot. at 24–28), but do not

address (or even note) the decision on remand in that case, holding  that state law fraudulent

conveyance actions "survived the bankruptcy period" and confirming the creditors' "independent standing" to bring such claims once the trustee's statute of limitations had lapsed. *Nat'l Am. Ins. Co. v. Ruppert Landscape Co.*, 122 F. Supp. 2d 670, 676 (E.D. Va. 2000).

The same result is mandated here. Neither the Committee nor any other entity acting as a trustee asserted constructive fraudulent transfer claims against Defendants within the two-year window for bringing such claims, and the Bankruptcy Court lifted the automatic stay for the express purpose of permitting Plaintiffs to file the Individual Creditor Actions.[34] Thus the bar to individual creditor avoidance actions imposed by the automatic stay no longer applies, and there are no other provisions in the Code that preclude Plaintiffs from pursuing their state law claims.[35]

Tribune and the other proponents of the Plan lobbied the Bankruptcy Court to approve the proposed Plan — including its settlement of claims against the LBO lenders — *based in part on the fact that the Individual Creditor Plaintiffs would be seeking further recoveries outside of the bankruptcy process in the Individual Creditor Actions.*[36]

Based on these facts, and consistent with the numerous cases cited above, Plaintiffs have the absolute right to pursue the SLCFC claims in their own name, for their own benefit. *See supra* at 26–7; *see also Lumbard v. Maglia, Inc.,* 621 F. Supp. 1529, 1541 (S.D.N.Y. 1985)

---

[34] *See* Bankr. Docket No. 8740 at 3 ("To the extent the automatic stay of 11 U.S.C. § 362(a) stays the commencement of any Creditor SLCFC claims, the automatic stay is hereby lifted to permit the filing of any complaint by or on behalf of creditors on account of such Creditor SLCFC claims . . . .").

[35] Defendants contend that the Committee Order bars Plaintiffs from bringing the Individual Creditor Actions. (*See* Mot. at 23–24.) In fact, the Committee Order simply anointed the Committee to act as the trustee with respect to claims arising out of the LBO, subject to the trustee's usual rights and limitations. Thus, once the trustee's exclusive ability to bring a constructive fraudulent conveyance action under Section 544(b)(1) lapsed under Section 546(a), so too did the Committee's. Moreover, even if the Committee Order was germane, it was superseded in relevant part by the Bankruptcy Court's subsequent order lifting the stay so that Plaintiffs could initiate these actions and the confirmation order approving the Plan, which expressly preserves these claims for Plaintiffs.

[36] *See supra* at 3–4.

28

(creditor had standing to bring state law avoidance action after bankruptcy court lifted the automatic stay).

The cases cited by Defendants do not warrant a different result.  Defendants suggest that the decades of precedent cited above were all wrongly decided in light of *Trimble v. Woodhead*, 102 U.S. 647 (1880).  *Trimble*, however, was decided under the Bankruptcy Act of 1867, which — unlike the Code — vested fraudulently transferred property in the assignee (the analog of the modern-day trustee), and precluded *any person*, and not just the assignee, from commencing an avoidance action more than two years after the bankruptcy filing.  *See* Bankruptcy Act of 1867, ch. CLXXVI, §§ 2, 14, 14 Stat. 517 (1867) (repealed 1878).  As one court presented with Defendants' precise argument here explained, the Supreme Court in *Trimble* merely found that "the creditor in *Trimble* did not have a right to avoid and recover the fraudulent transfer pursuant to state law," and that the "failure of the assignee to sue within two years did not transfer *the assignee's* cause of action to the unsecured creditor."  *Dixon*, 531 A.2d at 1324 (emphasis added); *see Trimble* 102 U.S. at 649.  This makes perfect sense, given that the Bankruptcy Act of 1867 expressly precluded *any person*, not just the assignee, from commencing an avoidance action more than two years after the bankruptcy filing.  Thus the creditor in *Trimble* had no independent state law claim of his own to retain.

This interpretation of *Trimble* is confirmed by *In re Pitts*, which was decided by a court in this District only one year later.  9 F. 542, 544–45 (S.D.N.Y. 1881).  In *Pitts*, a group of creditors filed a fraudulent conveyance action shortly *before* the debtor filed for bankruptcy.  *Id.*  The creditors' suit was enjoined during the two years following the bankruptcy filing, but the assignee did not invoke its right to pursue the avoidance claim during that period.  *Id.*  The court thus vacated the injunction, finding that after the assignee's right to bring the suit expired, "no

benefit to the estate of the bankrupt c[ould] possibly arise from a longer continuance of the injunction, and it would be unjust to deprive" creditors of their right to continue their action, which had been timely commenced.  *Id*.

In this century, we must look to the Code, which: (i) imposes the two-year statute of limitations for avoidance actions *only on the trustee* and leaves untouched the substantially longer statute of limitations available to individual creditors under state law, *see, e.g.*, *Hatchett*, 330 F.3d at 887; *Gleischman Sumner*, 69 F.3d at 800, and (ii) as expressly held by the Second Circuit, provides that "property that has been fraudulently transferred is . . . not to be considered property of the estate until it is recovered." *Colonial Realty*, 980 F.2d at 131–32.  *Trimble* thus has no impact on these cases.  Nor does it call into question the cases upholding an individual creditor's standing once the two-year period has expired.

Defendants' remaining cases are also unavailing.  (*See* Mot. at 14, 22–28.)  Nearly all of these cases deal with inapposite fact patterns where an individual creditor sought to pursue state law fraudulent conveyance claims either (i) before the trustee's two-year limitations period had run,[37] (ii) after the trustee stepped into the shoes of individual creditors by using Section 544 to commence or settle claims the creditor sought to bring,[38] or (iii) after a confirmed plan expressly extinguished the creditor's claim and released the defendants.[39]  The other cases[40] are premised

---

[37] *See Ruppert*, 187 F.3d at 440–41; *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 692 (2d Cir. 1989); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 203 (S.D.N.Y. 2002); *K.D. Homes, Inc. v. Fritz*, 88 B.R. 434, 436 (S.D. Fla. 1988); *Wanger v. Primack (In re Primack)*, 81 B.R. 711, 712 (Bankr. S.D. Fla. 1987).

[38] *See Tessmer*, 329 B.R. at 780; *In re Stein*, 314 B.R. 306, 308–09 (D.N.J. 2004); *Best Mfg., Inc. v. White Plains Coat & Apron Co., Inc. (In re Daniele Laundries, Inc.)*, 40 B.R. 404 (Bankr. S.D.N.Y. 1984).

[39] *See In re PWS Holding Corp.*, 303 F.3d 308, 311–12 (3d Cir. 2002).

[40] *See N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884 (6th Cir. 1989) (relying on *Am. Nat'l Bank of Austin v. Mortgage Am. Corp. (In re Mortgage Am. Corp.)*, 714 F.2d 1266 (5th Cir. 1983)).  A discussion of *Mortgage America* is set forth below at 33–34.

on reasoning that has been *expressly rejected* by the Second Circuit, whose law applies in these MDL proceedings, *see, e.g.*, *Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.)*, 950 F.2d 839, 847 (2d Cir. 1991), or do not even address the question of creditor standing.[41]  None of these cases supports Defendants' position that a creditor is barred from pursuing its state law avoidance rights where, as here, the trustee's ability to do so has lapsed.

Moreover, there is specific statutory evidence — again found in Section 544(b)(2) — that Congress intended such claims to be preserved.  Although the first sentence of Section 544(b)(2) bars the trustee from avoiding certain charitable contributions, the second sentence bars "*any person*" from doing the same, under state or federal law, in state or federal court, after "the commencement of the [bankruptcy] case."  If Defendants were correct that only the trustee has standing to bring state law avoidance claims once a company files for bankruptcy, the second sentence of Section 544(b)(2) would be complete surplusage.  *See* NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 46:6 (2011) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.").

Other rules of statutory interpretation support this view as well.  Courts must "presume that Congress is aware of settled judicial constructions of existing law, and that it intends to retain those remedies that it has left in place."  *Air Transport Ass'n of Am. v. Prof'l Air Traffic Controllers Org.*, 667 F.2d 316, 321 (2d Cir. 1981).  The numerous decisions cited above holding that creditors regain their right to pursue state law fraudulent conveyance actions where a trustee does not, and no longer can, pursue its rights to do so span more than one hundred years.  *See,*

---

[41] *See, e.g., Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir. 1989).

*supra* at 26–7.  In that time Congress enacted the Code and subsequently amended it on more than twenty occasions.  Based on this record, it is both unreasonable and impermissible to assume that Congress intended a different result.

The prevailing rule on creditor standing is also the most sensible one.  Where a trustee decides that it would not be in the estate's interest to pursue or settle creditors' avoidance claims and so does not bring or resolve those claims within the two-year window, there is no harm to the estate if individual creditors pursue those claims for their own benefit and at their own expense.

### B.    Plaintiffs' Claims Are Not "Estate Property" That "Reverts" To Creditors Only Under Specific Sections Of The Code

Defendants next argue that state law avoidance claims do not "revert" to the creditors unless the claims are sold, abandoned or distributed by the debtor, or the bankruptcy case is dismissed.  (*See* Mot. at 29–30.)  Defendants assume incorrectly that creditors' state law avoidance claims become "estate property" upon the filing of a bankruptcy case.  Notably, however, none of the cases discussed above, which upheld individual creditor standing, noted such a limitation, or required the dismissal of a bankruptcy case, or the sale, abandonment, or plan distribution of such claims.[42]

In fact, the law in this circuit is clear that creditors' state law avoidance rights do not constitute "estate property."   "Estate property" is defined to include the "legal or equitable interests *of the debtor* in property as of the commencement of the case."  11 U.S.C. § 541(a)(1) (emphasis added).  It is black-letter law that "a transferor" (here, Tribune) "cannot set aside a disposition of assets on the ground that the disposition allegedly constituted a fraudulent

---

[42] While *Integrated Agri*, 313 B.R. at 427–28 and *Hatchett*, 330 F.3d at 886, involved a formal abandonment of claims, neither decision indicates the abandonment was integral to its ruling. Additionally, *Hatchett* cites with favor a number of cases that permitted individual creditor standing without abandonment.  330 F.3d at 886.

conveyance." *See Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008); *Cybergenics*, 226 F.3d at 246 n.16 ("the fraudulent transfer action belonged to [the debtor]'s creditors as of the time of the bankruptcy filing").  Thus, as held by the court in *In re Saunders*, a decision whose reasoning has been expressly adopted by the Second Circuit, "the fraudulent transfer cause of action itself is not considered property of the estate since the avoidance of such a transfer is not a cause of action assertable by the debtor."  101 B.R. 303, 305 (Bankr. N.D. Fla. 1989); *Integrated Agri*, 313 B.R. at 422 n.2 ("[A] trustee's avoidance actions, including those under Section 544(b), are not, technically, property of the estate and the concept of abandonment is inapplicable to them."); *see also Colonial Realty*, 980 F.2d at 131–32.

Neither of the cases Defendants cite for their assertion that state law avoidance claims are irrevocably vested in a bankruptcy estate upon the filing of a bankruptcy case addresses the question presented here.  Rather, *Cadle Co. v. Mims (In re Moore)*, involved the different question of whether a trustee's avoidance rights under state law can be sold by the trustee under the provision of the Code allowing for the sale of "estate property."  608 F.3d 253, 259 (5th Cir. 2010).  Additionally, *Moore* is premised on a decision by the Fifth Circuit in *Mortgage America*, where the court held that a debtor has "a legal or equitable interest" in fraudulently transferred property "within the meaning of" Section 541(a)(1).  714 F.2d at 1275.  *Moore* expressly relied on *Mortgage America* for the proposition urged here that state law fraudulent transfer claims are property of the estate under Section 541(a)(1).  608 F.3d at 259–62.

That analysis has no applicability here.  *Mortgage America* was expressly rejected by the Second Circuit, by name, in *Colonial Realty*, where the Second Circuit held that "property that has been fraudulently transferred is . . . not to be considered property of the estate until it is recovered."  980 F.2d at 131–32.  Moreover *Moore* is completely at odds with the plain text of

Section 541 (*see supra*), and all the cases upholding creditor's post-bankruptcy standing.  Given *Colonial Realty*, Defendants' assertion that this Court should follow *Moore* is plainly incorrect.

In re Becker also has no bearing on this matter.  136 B.R. 113 (Bankr. D.N.J. 1992) (*see* Mot. at 29–30).  While *Becker* summarily states — without discussion or citation — that "[t]he trustee's rights under the avoiding powers in Code are property of the estate," it addresses only the wholly irrelevant questions of whether the automatic stay applies to an equitable distribution proceeding in a divorce case, and whether the bankruptcy court could determine the estate's interest in marital property.  136 B.R. at 116–17.

At bottom, in the Second Circuit, creditors retain their right to assert state law avoidance claims before, during, and after a bankruptcy.  To be sure, creditors are temporarily barred from asserting those claims while the trustee has the power to pursue them, but where, as here, that power lapses and the automatic stay is lifted, creditors may proceed to assert their claims.

### III.   THE COMMITTEE ACTION DOES NOT DIVEST PLAINTIFFS OF STANDING

#### A.   *Ruppert* And Its Progeny Are Inapplicable Where, As Here, The Bankruptcy Trustee Supports Creditors' State Law Avoidance Claims

Defendants contend that the pendency of the Committee Action also deprives Plaintiffs of "standing" to bring their claims.  (*See* Mot. at 22–29.)  In support of this assertion, Defendants rely on a Fourth Circuit doctrine set forth in *Ruppert*.  187 F.3d 439.  But *Ruppert* and the similar cases Defendants cite — almost all of which come from courts in the Fourth Circuit, and none of which come from courts in this circuit — do not bar Plaintiffs' claims.

In *Ruppert*, individual creditors sought to assert various tort claims against another creditor prior to the expiration of the trustee's two-year window to bring avoidance claims on behalf of the estate.  187 F.3d 439.  Noting that the trustee had a "potential fraudulent conveyance action" that was not yet commenced or released, the court held that the creditors'

causes of action, which "rel[ied] heavily on exposing the . . . transaction [at issue] to be fraudulent in fact," were "so similar in object and purpose to claims that the bankruptcy trustee could bring in bankruptcy court that the [creditors] lacke[d] standing" to bring them . . . "until there is an 'abandonment' of the trustee of his claim." *Id.* at 441. The purpose of this ruling, the court reasoned, was to give the trustee the "first crack" at bringing a fraudulent transfer claim, and to protect creditors as against a "rush to judgment" that would result in a "first-come-first-served" recovery. *Id.* at 441–42.

   *Ruppert's* logic does not apply here because *Ruppert* was concerned with protecting the trustee from interference or competition posed by competing claims brought by individual creditors. *Id.* It held only that during the period in which a trustee maintains the exclusive right to pursue creditors' state law avoidance actions, "*wasteful* and *competitive* suits" by creditors should be barred. *Id.* at 441–42 (emphasis added). Here there is no need for such protection because the trustee's time to bring such claims has expired, and the party exercising the trustee's powers (*i.e.* the Committee) has determined that the Individual Creditors Actions will *not* interfere with the fulfillment of the Committee's (or the Litigation Trust's) duties to the estate.[43] Indeed, the Committee was integral to the creation and confirmation of the Plan which contemplated that creditors would bring the SLCFC claims, and preserved their right to do so.[44]

   As the Committee explained to the Bankruptcy Court in support of the Lift-Stay Motion, "*Ruppert Landscaping's* reasoning does not apply" to these actions because the "Committee deliberately determined not to pursue the Creditor SLCFC claims," and because the Plan was crafted to "give[] creditors the option to pursue the state law fraudulent transfer claims that have

---

[43] *See supra* at 3–4.

[44] *See id.*

reverted to them."[45]  The Plan, the Committee continued, "was painstakingly drafted and negotiated in furtherance of the Committee's intent not to pursue" the claims asserted here, and "to enable individual creditors to pursue such claims for their own benefit."[46]

Defendants' are wrong that this case will "be the first" to "permit[] an individual creditor to seek avoidance of the same transfer that an estate representative also seeks to avoid."  (Mot. at 2, 22.)  In fact, at least two decisions — one issued by a court sitting in the Southern District of New York — have held that individual creditors *may* pursue such claims.

The decision from this district, *Lumbard v. Maglia*, holds that an individual creditor maintains standing to sue, side by side with the trustee, where the trustee approves of the action. 621 F. Supp. at 1533.  In *Lumbard*, an individual creditor stipulated with the bankruptcy trustee that together they would jointly prosecute fraudulent transfer and other claims against the debtor's transferees.  *See id.*  The defendants sought to dismiss the creditor's claims, arguing that the "gravamen" of its complaint was "fraudulent[] convey[ance]," and thus the claims belonged to the bankruptcy estate and were barred by the automatic stay.  *Id.* at 1541.  The court disagreed, observing that the bankruptcy court had modified the stay to permit the creditor to prosecute the claims, and thus the issue of the creditor's standing had been resolved.  *Id.*

A district court in the Fourth Circuit reached the same conclusion, even though it was bound to follow *Ruppert*.  *See Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 521 (D. Md. 2007).  There, the court found that while the creditor's claims shared the same object and purpose as the trustee's, if "the Trustee does not view the [plaintiffs'] lawsuit as an assault on the creditor's interests or the integrity of the bankruptcy proceedings, but as a positive benefit to the bankruptcy estate," "[i]t would be an affront to the Bankruptcy Court (as well as nonsensical)

---

[45] Bankr. Docket No. 8396.

[46] *Id.* at 4.

[to] declare [plaintiffs'] lack of standing in an effort to protect the interests of the bankruptcy estate.*" Id.* at 521–22.  The court explained that *Ruppert*'s "policy rationale . . . is not compromised by affirming [plaintiffs'] standing to pursue" claims when the trustee supports those claims.  *Id.* at 521.  *See also Integrated Agri*, 313 B.R. at 429 (individual creditors had standing to pursue avoidance actions seeking to recover same funds that trustee was pursuing under alternative theory of liability; possibility of overlapping recovery did not defeat standing and would, if necessary, be addressed in later proceedings).

The same is true here.  Even if *Ruppert* applied in the Second Circuit, barring Plaintiffs from bringing the Individual Creditor Actions where the Committee supports Plaintiffs' ability to pursue them, and the only parties who oppose them are Defendants to the actions, would be completely contrary to *Ruppert's* underlying rationale of protecting the estate.  187 F.3d at 441–42.

The other cases that Defendants cite do no more for Defendants than *Ruppert* does.  Unlike *Baron* and *Lumbard*, which favor Plaintiffs, none of the cases cited by Defendants involved a situation like the one here, where the estate representative supported a creditor's prosecution of its own claims going forward.  Rather, all of the cases arose in the context of an ongoing bankruptcy, where the automatic stay applied and had not been lifted,[47] and many of the cases involved situations where the trustee objected to the individual creditor's prosecution of

---

[47] *See Poth v. Russey*, 99 F. App'x 446, 456–58 (4th Cir. 2004); *Ivester v. Miller*, 398 B.R. 408, 429–31 (M.D.N.C. 2008); *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 463 B.R. 28, 32–36 (Bankr. W.D. Mich. 2012).

claims outside of the bankruptcy court.[48]  The significance of these distinctions cannot be overstated.

> **B.**     **Plaintiffs' Claims Should Not Be Dismissed On The Remaining Grounds Raised By Defendants**

Defendants' argument that allowing the Individual Creditor Actions and the Committee Action to proceed would result in claim splitting and raise *res judicata* concerns is also without merit.  (*See* Mot. at 28.)  As Defendants' own case shows, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90 (1980) (cited in Mot. at 28.)  Here, no "final judgment on the merits" has been issued in either the Committee Action or the Individual Creditor Actions.  Additionally, the Plan expressly carved the SLCFC claims out of the claims that the Committee was authorized to bring, and authorized only the Committee and its successor to pursue the claims asserted in the Committee Action.  Thus, neither the Committee nor the Plaintiffs "could have" brought the claims asserted in one another's actions.  Defendants' related suggestion that the Individual Creditor Actions somehow violate the principle that each payment to shareholders may be avoided only once (*see* Mot. at 28) is also misplaced, as both Plaintiffs and the Committee agree that no Defendant's liability could exceed the amount of the Shareholder Transfer they received, plus pre- and post-judgment interest, and have further agreed to pursue settlement in a coordinated fashion.

Finally, Defendants argue that when creditors regain their standing to pursue individual state law claims, they should be subject to all defenses that the trustee would have been subject to.  (*See* Mot. at 32.)  This simply rehashes Defendants' argument that Plaintiffs' state law claims

---

[48] *See N. Trust Bank, FSB v. Wells Fargo Bank, N.A.*, 464 B.R. 269, 270 (E.D. Va. 2012); *In re Infinity Bus. Grp., Inc.*, No. 10-6335, 2011 WL 9375422, at *3 (Bankr. D.S.C. June 22, 2011); *In re Bridge Info. Sys., Inc.*, 325 B.R. 824, 835 (Bankr. E.D. Mo. 2005).

perpetually become property of the estate upon the commencement of the bankruptcy case. But courts have recognized that "the cause of action brought by a trustee pursuant to Section 544(b) based upon an actual creditor's rights under the UFTA is not identical to the UFTA claim that the creditor may bring in state court." *Integrated Agri*, 313 B.R. at 428. And Defendants' one "cf." citation (*see* Mot. at 32 ("cf" citing *Enron Creditors Recovery Corp.*)), does not suggest otherwise, as the claims there were brought by a reorganized debtor, which is a statutory "trustee" and exercises statutory bankruptcy powers subject to the trustee's limitations. *See Enron Creditors Recovery Corp.*, 651 F.3d at 331; *PHP*, 291 B.R. at 607.

Moreover, courts have consistently rejected the similar argument that state law claims should be limited by Section 546(a)'s two-year limitation on actions by the trustee, holding that the state law limitations period survives the bankruptcy. *See, e.g.*, *Hatchett*, 330 F.3d at 887; *Gleischman Sumner*, 69 F.3d at 800; *Nat'l Am. Insur. Co.*, 122 F. Supp. 2d at 674–76; *Klingman*, 158 B.R. 109. There is no rational basis for concluding that a different result should be reached with respect to Section 546(e), which, like Section 546(a), "applies to trustees exclusively." *Gleischman Sumner*, 69 F.3d at 800.

Defendants also cite *Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574 (7th Cir. 1998), and *Kaler v. Craig (In re Craig)*, 144 F.3d 587, 593 (8th Cir. 1998) in connection with their assertion that "courts have incorporated Bankruptcy Code policy choices into state law fraudulent conveyance law." (Mot. at 33.) Yet these cases also fail to support the result urged by Defendants. Both cases construed state statutory provisions that were derived from or nearly identical to terms in the Code. Looking to federal bankruptcy law for guidance in construing a term that is already in a state statute (and was modeled on federal

bankruptcy law) is decidedly different from using state common law to transplant an entirely new section from the Code into a robust and historic body of state law.

In truth, as a fallback to their preemption argument, Defendants ask the Court to rewrite the state law statutes under which Plaintiffs are suing to track federal law.  (*See* Mot. at 33–35.) But this result, if it is to be achieved, must be fashioned by the legislature rather than the courts. And given that the judicial amendment Defendants urge would apply to state law, it would be particularly inappropriate for such a change to be effected by a federal court.   Defendants' request that the Court override the legislative process should be rejected.

## <u>CONCLUSION</u>

There is no possible reading of the plain text of Section 546(e) or its legislative history which expressly or impliedly preempts the state law rights of Plaintiffs to independently pursue the SLCFC claims.  Nor is there any possible reading of the Code or the case law to support Defendants' contention that Plaintiffs have been permanently divested of their right to assert the SLCFC claims now that the Committee's statutory period for asserting them has lapsed, and the automatic stay is no longer in force.  Accordingly, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated: December 21, 2012

By,   /s/ David Zensky
David M. Zensky
AKIN GUMP STRAUSS HAUER & FELD LLP

*Plaintiffs' Liaison Counsel on behalf of all Plaintiffs in the Note Holder Actions*

By,   /s/ Jay Teitelbaum
Jay Teitelbaum
TEITELBAUM & BASKIN LLP

*Plaintiffs' Liaison Counsel on behalf of all Plaintiffs in the Retiree Actions*