UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                              :

IN RE: TRIBUNE COMPANY                  Consolidated Multidistrict Litigation
FRAUDULENT CONVEYANCE      :  11 MD 2296 (WHP)
LITIGATION                        12 MC 2296 (WHP)
----------------------------------------------------------------- :

THIS DOCUMENT RELATES TO:       :

ALL "NOTE HOLDER ACTIONS"       :
(AS DEFINED IN MASTER CASE ORDER
NO. 3, DATED SEPTEMBER 7, 2012)    :
----------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CERTAIN "TENDERING PHONES HOLDERS" TO INTERVENE AS PLAINTIFFS

Citadel Equity Fund Ltd., a Cayman Islands company, Camden Asset Management LP, and certain of their affiliates (collectively, referred to herein as the "Tendering PHONES Holders"), by their undersigned counsel, submit this Memorandum of Law in support of their Motion (the "Motion") pursuant to Federal Rule of Civil Procedure 24 for an Order Authorizing Intervention, as Plaintiffs, in the above-captioned action (the "MDL").

## INTRODUCTION

The Tendering PHONES Holders hold approximately $300 million initial principal amount of PHONES Notes (the "PHONES") that were issued by Tribune Company ("Tribune"). The holders of PHONES are plaintiffs in this Multidistrict Litigation (the "MDL") and the "Note Holder Actions"[1] through Wilmington Trust Company ("WTC"), their indenture trustee.  At the time of the LBO (as defined below) which is the subject of the MDL, and when the MDL and the Note Holder Actions were commenced, the aggregate principal amount of all outstanding PHONES was approximately $1.24 billion. The Tendering PHONES Holders purchased their

---

[1] As defined in Master Case Order No. 3 entered by this Court on September 7, 2012.

PHONES prior to the LBO and, as a consequence, at the time of the LBO and at the time the Note Holders Actions were commenced, the Tendering PHONES Holders together held approximately $300 million (or more) principal amount of PHONES.

In November and December 2008, shortly before Tribune filed for bankruptcy (and well after the consummation of the LBO), pursuant to the terms of the PHONES Indenture, the Tendering PHONES Holders (along with certain other PHONES holders) attempted to tender or exchange their PHONES for cash. Without paying the Tendering PHONES Holders the exchange amount for such PHONES, Tribune and certain of its affiliates filed for bankruptcy in the District of Delaware (the "Bankruptcy Court").  The Tendering PHONES Holders never received any cash (or other satisfaction) in exchange for the PHONES they unsuccessfully attempted to tender to Tribune.

In proceedings in Tribune's bankruptcy cases, the Bankruptcy Court held, among other things, that the Tendering PHONES Holders surrendered their PHONES for exchange and that, solely for bankruptcy claim purposes, the Tendering PHONES Holders hold a claim against Tribune in the amount that Tribune was obligated to pay the Tendering PHONES Holders on the bankruptcy petition date (as opposed to the full principal amount of "exchanged" PHONES held by them).  Shortly prior to the date the Tendering PHONES Holders sent a letter to this Court requesting the Court's authorization to file a motion to intervene in these proceedings, WTC informed the Tendering PHONES Holders that WTC no longer represents them in the MDL and the Note Holder Actions and that they should intervene in the MDL, as original plaintiffs, to protect their rights.

Contrary to WTC's view, the Tendering PHONES Holders believe that WTC continues to represent them in the MDL because the Tendering PHONES Holders held PHONES at the

time the causes of action asserted in the Note Holder Actions accrued.  In order, however, to avoid unnecessary litigation and to ensure that the Tendering PHONES Holders' interests are represented in the MDL (given WTC's stated position that it no longer represents them), the Tendering PHONES Holders hereby seek authorization from this Court to intervene as plaintiffs in the MDL and the Note Holder Actions for all purposes, effective as of the date the Note Holder Actions were commenced.

The Tendering PHONES Holders have no intention of actively participating in the MDL or the Note Holder Actions (except as to matters that uniquely and directly affect them).  Lead counsel and lead plaintiffs have been designated and nothing will change in terms of the prosecution of the MDL and the Note Holder Actions by such parties.  The sole purpose of the Tendering PHONES Holders' requested intervention is to ensure that the Tendering PHONES Holders - - in effect as a "sub-set" of PHONES holders represented by WTC when the Note Holder Actions were commenced and the causes of action asserted therein accrued - - are not prejudiced.  If there are sufficient recoveries for the PHONES, by judgment or settlement, the Tendering PHONES Holders' interests need to be represented.  (Any dispute between the Tendering PHONES Holders and holders of PHONES that did not attempt to exchange their PHONES, whether relating to the amount of the Tendering PHONES Holders' claim in the Note Holder Actions or otherwise, is not an issue for today.  Such dispute, if it ever becomes "ripe," would be the subject of further proceedings before this Court.  This Court need not make any findings relevant to these issues at this juncture; further, to the extent any party seeks to challenge the merits of the claims asserted by the Tendering PHONES Holders, such motion practice would be best deferred to Phase 2 of these MDL proceedings.)

For the reasons set forth herein, the Tendering PHONES Holders should be authorized to intervene.

## BACKGROUND

**A.      The PHONES**

In April 1999, Tribune issued approximately $1.24 billion original principal amount of the PHONES pursuant to an Indenture, dated as of April 1, 1999 (the "PHONES Indenture"). The PHONES Indenture provides, among other things, that each holder thereof has the right, at any time, to exchange all or a portion of its PHONES for an amount of cash per PHONE equal to 95% of the market value of two shares of common stock of Time Warner, Inc., as successor by merger to America Online Inc. (the "Exchange Option").

**B.      The LBO**

In 2007, Tribune and its former shareholders (collectively, the "Shareholders") consummated an ill-advised (and, ultimately, disastrous) leveraged buyout transaction (the "LBO") with billionaire Samuel Zell. The LBO resulted in the Shareholders receiving $8.3 billion of cash at the expense of Tribune's creditors and precipitated Tribune's filing bankruptcy shortly thereafter (as described below).

**C.      The Failed Exchange**

In November and December 2008, after the consummation of the LBO and on the eve of Tribune's bankruptcy filing, numerous holders of PHONES, including the Tendering PHONES Holders, unsuccessfully attempted to exercise the PHONES' Exchange Option (the "Failed Exchange"). Tribune, however, never paid the Tendering PHONES Holders the exchange amount for the PHONES that the Tendering PHONES Holders attempted to tender (or otherwise satisfied the debt represented thereby).

D.      **The Tribune Bankruptcy Cases**

On December 8, 2008 (the "Petition Date"), Tribune and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of title 11, United States Code, in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 08-13141 (KJC) (collectively, the "Bankruptcy Cases"). WTC, as indenture trustee, has taken an active role in the Bankruptcy Cases on behalf of the PHONES Holders.  In addition, throughout the Bankruptcy Cases, Camden participated as a member of a group of PHONES Holders represented by Brown Rudnick LLP, as WTC's counsel.

One of the many disputes that arose in the Bankruptcy Cases was between the Debtors and WTC (among others) regarding the amount of the bankruptcy claim held by the PHONES holders that attempted to tender or exchange their PHONES in the Failed Exchange.  The Debtors contended that the aggregate bankruptcy claim amount (as of the Petition Date and for bankruptcy purposes) of the PHONES holders that attempted to tender their PHONES was approximately $56 million and that the aggregate PHONES claim amount was approximately $750 million (the "Low PHONES Amount"). WTC, as indenture trustee for all holders of PHONES, contended that the aggregate bankruptcy claim of the PHONES holders that attempted to tender their PHONES was approximately $481 million (i.e., the same claim amount, per-PHONE, as those PHONES holders that did not attempt to tender their PHONES) and that the aggregate PHONES claim amount was approximately $1.24 billion (the "High PHONES Amount").

On April 9, 2012, the Bankruptcy Court issued its Memorandum and accompanying Order (collectively, the "Allocation Decision") addressing this dispute. In the Allocation Decision, the Bankruptcy Court concluded that the PHONES holders that participated in the

Failed Exchange had tendered their PHONES and that, as of the Petition Date, such PHONES holders held a bankruptcy claim against Tribune for the cash amount that Tribune was obligated to pay such holders as a result thereof (i.e., approximately $56 million). Consequently, the Bankruptcy Court held that the aggregate bankruptcy claim held by all PHONES Holders was in the Low PHONES Amount of approximately $750 million.

On April 23, 2012, the Tendering PHONES Holders filed their Motion for Reconsideration of the Allocation Decision (the "Clarification Motion"). Among other things, the Clarification Motion sought confirmation from the Bankruptcy Court that it did not intend for its Allocation Decision to (i) affect the rights and remedies of the Tendering PHONES Holders in the MDL and/or (ii) fix or establish the classification of the Tendering PHONES Holders' claims under any chapter 11 plan for the Debtors (including the Plan).

On July 13, 2012, the Bankruptcy Court entered its Memorandum and Order (collectively, the "Confirmation Opinion"), (i) confirming the Fourth Amended Chapter 11 Plan, dated April 17, 2012, filed by Tribune and certain other parties, and (ii) ruling with respect to the Clarification Motion. In the Confirmation Opinion, the Bankruptcy Court declined to make a determination on the precedential effect or impact of its decisions on the MDL and/or the Note Holder Actions.

> "I have not made and do not intend to make any determination on the effect of my decisions upon the Court in the MDL or with respect to litigation now pending or that may be brought in other fora. If and when an issue arises about what effect, if any, this Court's decisions have upon other litigation, such an issue will be decided by the court in which such litigation is pending."

Confirmation Opinion, at p. 21.

The Bankruptcy Court, however, upheld its determination in the Allocation Decision with respect to the aggregate claim amount, solely for bankruptcy claim purposes, held by the PHONES Holders that tendered PHONES in the Failed Exchange.

**E.      The Note Holder Actions and the MDL**

On or around June 2011, while the Bankruptcy Cases were pending (and prior to the Bankruptcy Court's Allocation Decision and Confirmation Opinion), WTC, Deutsche Bank Trust Company Americas ("DBTCA"), and Law Debenture Trust Company of New York ("Law Debenture" and, together with DBTCA and WTC, the "Noteholder Trustees"), in their capacity as indenture trustees for several series of notes (including the PHONES) (the "Notes") issued by Tribune, collectively commenced the Note Holder Actions.  The Noteholder Trustees are the named plaintiffs in the Note Holder Actions on behalf of the respective holders of the Notes (including the PHONES) at the time the LBO occurred and the causes of action in the Note Holder Actions accrued.  As noted above, the Tendering PHONES Holders purchased their PHONES prior to the LBO and held their PHONES at the time the LBO occurred.

By Orders dated December 19, 2011, December 28, 2011, and December 29, 2011, the United States Judicial Panel on Multidistrict Litigation transferred to this Court the Note Holder Actions and certain other related actions (and, thereby, instituted this "MDL").  On February 23 and March 20, 2012, this Court entered Master Case Orders Nos. 1 and 2, respectively, which, among other things, designated the lead plaintiffs (including WTC) in the MDL. On September 7, 2012, this Court entered its Master Case Order No. 3, which designated Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as "Lead" Plaintiff Counsel in the MDL with respect to the Note Holder Actions.

## REQUESTED RELIEF

The Tendering PHONES Holders believe that WTC continues to represent them in the MDL and the Note Holder Actions. The Tendering PHONES Holders held PHONES at the time the causes of action asserted in the Note Holder Actions accrued and at the time such actions were commenced.  Because WTC has informed the Tendering PHONES Holders that it no longer represents them, however, to ensure that their interests are adequately represented in the MDL, the Tendering PHONES Holders hereby seek this Court's authorization under Rule 24 of the Federal Rules of Civil Procedure to intervene as plaintiffs in the MDL and the Note Holder Actions for all purposes as of the date such actions were commenced, or *nunc pro tunc* such date.

Fed. R. Civil P. 24(a)(2) provides that a court must permit any party to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Under Rule 24(a)(2), intervention *as of right* is permitted when the applicant meets the following four requirements:

> (1)   the application for intervention must be timely;
>
> (2)   the applicant must have an interest relating to the property or transaction which is the subject of the action;
>
> (3)   the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and
>
> (4)   the applicant's interest must be inadequately represented by the existing parties to the suit.

*Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir. 1991).

Intervention under Fed. R. Civil P. 24(a)(2) is to be freely granted. *Greer v. Blum*, 462 F. Supp. 619, 624-25 (S.D.N.Y. 1978). Rule 24(a)(2) "is a nontechnical directive to courts that

provides the flexibility necessary 'to cover the multitude of possible intervention situations . . .'" *U.S. v. Hooker Chems. & Plastics Corp.*, 749 F. 2d 968, 983 (2d Cir. 1984) (quoting *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 875 (2d Cir. 1984); *see also Kleissler v. United States Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998) (Rule 24(a)(2) "demands flexibility when dealing with the myriad situations in which claims for intervention arise").

Fed. R. Civil P. 24(b)(1)(B) provides that a court may permit any party to intervene who "has a claim or defense that shares with a main action a common question of law or fact." Unlike Rule 24(a), a court's determination of whether intervention is permissible under Rule 24(b) is purely discretionary. *United States Postal Service*, 579 F.2d at 91. "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citation omitted).

## ARGUMENT

### A.   The Tendering PHONES Holders Are Entitled to Intervene Under Rule 24(a)(2)

#### 1.   The Tendering PHONES Holders' Motion Is Timely

In determining whether the "timeliness" prong is satisfied, Courts generally consider: (1) how long the applicant had notice of the action before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d. Cir. 1994). The key to the timeliness test is whether the parties to the case will be prejudiced by the intervention. *See Authors Guild v. Google Inc.*, No. 05 Civ. 8136 (DC), 2009 WL 3617732, at *2 (S.D.N.Y. 2009) (citing Pitney Bowes, Inc., 25 F.3d at 72-73).

The Tendering PHONES Holders submit that the "timeliness" factor is satisfied here and is a "non-issue." The Tendering PHONES Holders have obviously known of the Note Holder Actions and the MDL since they were commenced - - Camden has been an active and acknowledged member of the Note Holder plaintiff group represented by WTC in the MDL. Only shortly prior to the date the Tendering PHONES Holders asked this court for authorization to file a motion to intervene, however, were the Tendering PHONES Holders informed that WTC was taking the position that the Tendering PHONES Holders were no longer a part of the plaintiff group (or "class" of PHONES holders) represented by WTC. As a result, until WTC informed the Tendering PHONES Holders of its position, the Tendering PHONES Holders had no reason to believe that their interests were not being adequately represented in the MDL and the Note Holder Actions or that there was a need for the Tendering PHONES Holders to seek to intervene in this litigation. Moreover, as a result of the Tribune Bankruptcy Cases, the MDL and the Note Holder Actions were effectively stayed for all purposes until recently.

More importantly, the Tendering PHONES Holders are essentially a "sub-set" of the plaintiffs represented, and sued on behalf of, by WTC. Intervention, as requested, would not prejudice any parties to the MDL. The MDL is still in its "early stages." Little or no substantive motion practice or discovery has taken place. As indicated herein, the Tendering PHONES Holders do not intend to take an "active" role in these proceedings, particularly given the Court's prior designation of lead plaintiffs and lead counsel.

In contrast, the Tendering PHONES Holders will be greatly prejudiced if they are not permitted to intervene. WTC, the indenture trustee for the PHONES and the party that has a fiduciary obligation to represent the interest of the PHONES holders in this litigation, has stated its position that it no longer represents the Tendering PHONES Holders' interests and that the

Tendering PHONES Holders are no longer beneficiaries of the causes of action asserted in the MDL and the Note Holder Actions (as a result of the Bankruptcy Court's ruling with respect to the amount of their bankruptcy claims). The Tendering PHONES Holders dispute such contention.

> **2.      The Tendering PHONES Holders Have an Interest in the Property or Transaction Which is the Subject of this Litigation**

It is undisputed that the Tendering PHONES Holders held PHONES at the time the LBO occurred and that WTC commenced the Note Holder Actions on their behalf as plaintiffs. Although the Tendering PHONES Holders unsuccessfully attempted to tender their PHONES in the Failed Exchange after the LBO was consummated, the Tendering PHONES Holders never received payment of cash (or any other satisfaction of the debt) in exchange for the PHONES they attempted to tender.  As a result, they have the same claims against the Defendants in the MDL and the Note Holder Actions as all other holders of PHONES.

The Bankruptcy Court's decisions with respect to the amount of the Tendering PHONES Holders' claims against Tribune, for chapter 11 bankruptcy claim purposes, have no bearing on whether the Tendering PHONES Holders have an interest in the state law causes of action against the shareholder defendants asserted in the MDL and the Note Holder Actions.  As holders of PHONES at the time such causes of action accrued, the Tendering PHONES Holders have an interest in this litigation and this factor supports granting the relief requested herein.

> **3.      Disposition of this Litigation Would Impair or Impede the Tendering PHONES Holders' Ability to Protect Their Interests**

As discussed above, the Tendering PHONES Holders held PHONES at the time the LBO occurred and the Note Holder Actions were commenced.  Any disposition in the MDL or the Note Holder Actions that is applicable to other holders of PHONES would be binding on the Tendering PHONES Holders as well.  WTC, however, has now taken the position that the

Tendering PHONES Holders are not entitled to the benefits of this litigation and is proceeding in this litigation as if the Tendering PHONES Holders do not hold claims against the Defendants. Accordingly, if the Tendering PHONES Holders are not allowed to intervene in this action, WTC and the other Note Holder plaintiffs may attempt to take actions that do not take into account, or would otherwise prejudice, the Tendering PHONES Holders' rights and interests in the causes of action asserted in the Note Holder Actions. Intervention by the Tendering PHONES Holders in this litigation is necessary to allow the Tendering PHONES Holders to protect such interests.

> **4.    The Tendering PHONES Holders' Interests Are Being Inadequately Represented by the Existing Parties to this Litigation**

The Tendering PHONES Holders' burden of demonstrating the inadequacy of representation is minimal. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Louis Berger Group, Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 487-88 (S.D.N.Y. 2011). In any event, the Tendering PHONES Holders submit that this factor unquestionably weighs in favor of granting the Tendering PHONES Holders' request to intervene. WTC has stated that it does not represent the Tendering PHONES Holders in this litigation (and is proceeding in this litigation as if the Tendering PHONES Holders do not hold claims against the Defendants). WTC has effectively admitted that this factor is present here.

As stated above, the Tendering PHONES Holders do not intend to take an "active" role in the MDL. Designated counsel and lead plaintiffs would continue to prosecute this action as if the Tendering PHONES Holders had not intervened and the Tendering PHONES Holders should be viewed as a sub-set of WTC's original "class" of plaintiffs.

**B.**      **In the Alternative, the Tendering PHONES Holders Should Be Permitted to Intervene Under Rule 24(b)(1)(B)**

In addition to having a right to intervene under Fed. R. Civ. P. Rule 24(a)(2), the Tendering PHONES Holders should also be permitted to intervene under Fed. R. Civ. P. Rule 24(b)(1)(B). The Tendering PHONES Holders' claims and defenses in the MDL and the Note Holder Actions share common questions of law and/or fact with those of the other holders of PHONES. Indeed, as noted above, the Tendering PHONES Holders believe that WTC continues to represent them in this litigation. As a precautionary measure, however, the Tendering PHONES Holders submit that, as PHONES holders at the time of the LBO, the questions of law and fact in this litigation relating to the Tendering PHONES Holders are effectively identical to the questions of law and fact relating to the claims of any other PHONES holders in the MDL and the Note Holder Actions, and that permissive intervention is warranted under Rule 24(b).

**C.**      **This Court Should Waive the Requirements of Fed. R. Civ. P. Rule 24(c)**

Fed. R. Civ. P. Rule 24(c) provides that a motion to intervene under Fed. R. Civ. P. Rule 24 must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  A number of courts have taken a "non-literal" reading of the statute and refused to require strict compliance with Rule 24(c). *See, e.g., Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.Supp. 870 (S.D. N.Y. 1991) (motion to intervene was not insufficient on the ground that intervenor had not filed its own pleading); *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309 (6th Cir. 2005) (district court's rejection of motion to intervene for failure to attach a pleading was an abuse of discretion); *Payne v. Weirton Steel Co.*, 397 F.Supp. 192 (N.D. W.Va. 1975) (Rule 24(c) was satisfied when proposed plaintiff-intervenor stated that it would "adopt the plaintiffs' Complaint as [its] Complaint in intervention"); *Dalva v. Bailey*, 158 F.Supp. 204 (S.D. N.Y. 1957) (same).

As described at length above, the Tendering PHONES Holders believe that WTC continues to represent them in the MDL and the Note Holder Actions and that the Tendering PHONES Holders hold claims as set forth in the complaints filed by WTC and the other Noteholder Trustees in the Note Holder Actions. The Tendering PHONES Holders "adopt" or "reiterate" the claims made in those complaints. The Tendering PHONES Holders submit that it would be unnecessarily formulaic and duplicative for the Tendering PHONES Holders to be required to file a separate complaint in the MDL and/or any of the Note Holder Actions to intervene as plaintiffs effective as of the date the Note Holder Actions were commenced. The Tendering PHONES Holders, therefore, request that this Court waive the "additional pleading" requirement under Fed. R. Civ. P. Rule 24(c) or otherwise deem Rule 24(c) satisfied here.

WHEREFORE, for all of the foregoing reasons, the Tendering PHONES Holders respectfully request that the Court (i) authorize the Tendering PHONES Holders to intervene as plaintiffs in the MDL and the Note Holder Actions for all purposes and (ii) grant such other and further relief as is just, proper and equitable.

Dated:  January 29, 2013
      New York, New York                ANDREWS KURTH LLP

                                By:  /s/ Paul N. Silverstein
                                      Paul N. Silverstein
                                      Lynne M. Fischman Uniman
                                      Jeremy B. Reckmeyer
                                      450 Lexington Avenue, 15th Floor
                                      New York, New York  10017
                                      Telephone: (212) 850-2800
                                      Facsimile: (212) 850-2929

                                    *Counsel to Citadel Equity Fund Ltd.,*
                                    *Camden Asset Management LP and*
                                    *Certain of their Affiliates*