**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>11 MD 2296 (WHP)<br>12 MC 2296 (WHP)<br><br>ECF Case |
| THIS DOCUMENT RELATES TO:<br><br>MATTERS LISTED ON EXHIBIT A | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' JOINT**
**PHASE ONE MOTION TO DISMISS THE INDIVIDUAL CREDITOR ACTIONS WITH**
**PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................... ii

ARGUMENT

I.   SECTION 546(e) PREEMPTS PLAINTIFFS' SLCFC CLAIMS ....................................1

     A.   State Law That Stands as an Obstacle to the Accomplishment of
          Congress' Objectives Is Preempted Under Implied Conflict Preemption
          Principles.........................................................................................................1

     B.   Plaintiffs' SLCFC Claims Would Stand as an Obstacle to Congress'
          Objectives and Are Preempted.........................................................................3

     C.   Plaintiffs' Counter-Arguments Fail ................................................................4

II.   PLAINTIFFS LACK STANDING ................................................................................11

     A.   Individual Creditors Lack Standing to Pursue Avoidance of a Transfer
          After an Estate Representative Has Sought to Avoid the Same Transfer.............12

     B.   *Baron*, *Agri*, and *Lumbard* Underscore Plaintiffs' Lack of Standing..................13

III.   THE SLCFC CLAIMS ARE PROPERTY OF THE ESTATE, DID NOT REVERT
       TO PLAINTIFFS, AND WOULD BE SUBJECT TO PRE-REVERSION
       LIMITATIONS AND DEFENSES IN ANY EVENT .....................................................16

     A.   The SLCFC Claims Are Property of Tribune's Bankruptcy Estate.....................16

     B.   The Bankruptcy Code Does Not Permit Reversion of Avoidance Rights
          Free and Clear of § 546(e) ............................................................................18

IV.   STATE LAW SHOULD NOT BE CONSTRUED TO PERMIT DISRUPTION
       OF THE SECURITIES MARKETS................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*AP Servs. LLP v. Silva,*
    483 B.R. 63 (S.D.N.Y. 2012) ..................................................................................4

*Arizona v. United States,*
    132 S. Ct. 2492 (2012) ........................................................................................1, 7

*Barber v. Westbay (In re Integrated Agri, Inc.),*
    313 B.R. 419 (Bankr. C.D. Ill. 2004) ...............................................................14, 15

*Baron Fin. Corp. v. Natanzon,*
    509 F. Supp. 2d 501 (D. Md. 2007) ..................................................................13, 14

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ..............................................................................................1

*Bessette v. Avco Fin. Servs., Inc.,*
    230 F.3d 439 (1st Cir. 2000) ..................................................................................2

*Cadle Co. v. Mims (In re Moore),*
    608 F.3d 253 (5th Cir. 2010) ................................................................................17

*California v. ARC Am. Corp.,*
    490 U.S. 93 (1989) ................................................................................................2

*Central Va. Cmty. Coll. v. Katz,*
    546 U.S. 356 (2006) ..............................................................................................3

*Chamber of Commerce of the U.S. v. Whiting,*
    131 S. Ct. 1968 (2011) ..........................................................................................1

*Comm'r of Internal Revenue v. Estate of Bosch,*
    387 U.S. 456 (1967) ............................................................................................20

*Contemporary Indus. Corp. v. Frost,*
    564 F.3d 981 (8th Cir. 2009) ............................................................................4, 10

*Cox v. Zale Del., Inc.,*
    239 F.3d 910 (7th Cir. 2001) ..................................................................................3

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) ...........................................................................................2, 7

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,*
    520 U.S. 806 (1997) ..............................................................................................2

*Duncan v. Walker*,
   533 U.S. 167 (2001) ................................................................................................4

*E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*,
   236 F.3d 117 (2d Cir. 2001) ....................................................................................2

*Eberhard v. Marcu*,
   530 F.3d 122 (2d Cir. 2008) ..................................................................................18

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ..................................................................................................1

*Enron Creditors Recovery Corp. v. Alfa*,
   651 F.3d 329 (2d Cir. 2011) ......................................................................3, 10, 11

*Envtl. Encapsulating Corp. v. City of New York*,
   855 F.2d 48 (2d Cir. 1988) ......................................................................................1

*Falcon Creditor Trust v. Blue Cross Blue Shield (In re Falcon Prods., Inc.)*,
   372 B.R. 474 (Bankr. E.D. Mo. 2007) ..................................................................17

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
   980 F.2d 125 (2d Cir. 1992) ..........................................................................17, 18

*Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*,
   78 F.3d 764 (2d Cir. 1996) ....................................................................................20

*Fox v. Picard (In re Madoff)*,
   848 F. Supp. 2d 469 (S.D.N.Y. 2012) ..................................................................17

*Garcia-Villeda v. Mukasey*,
   531 F.3d 141 (2d Cir. 2008) ....................................................................................4

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000) ................................................................................................2

*Hartford Underwriters Ins. Co. v. Union Planters Bank*,
   530 U.S. 1 (2000) ....................................................................................................6

*Hechinger Inv. Co. v. Fleet Retail Fin. Grp.*,
   274 B.R. 71 (Bankr. D. Del. 2002) ..........................................................................4

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ..................................................................................................1

*In re Ames Dep't Stores, Inc.*,
   287 B.R. 112 (Bankr. S.D.N.Y. 2002) ..................................................................16

*In re Asia Global Crossing, Ltd.*,
    344 B.R. 247 (Bankr. S.D.N.Y. 2006) ...................................................................17

*In re Becker*,
    136 B.R. 113 (Bankr. D.N.J. 1992) .....................................................................17

*In re Colonial Realty Co.*,
    No. 3:91-200X(JAC), 1991 WL 487192 (D. Conn. Dec. 30, 1991)....................18

*In re Federal-Mogul Global, Inc.*,
    684 F.3d 355 (3d Cir. 2012)..................................................................................8

*In re PWS Holding Corp.*,
    303 F.3d 308 (3d Cir. 2002)................................................................................17

*In re Saunders*,
    101 B.R. 303 (Bankr N.D. Fla. 1989) .................................................................18

*Klingman v. Levinson*,
    158 B.R. 109 (N.D. Ill. 1993) .............................................................................12

*Lumbard v. Maglia*,
    621 F. Supp. 1529 (S.D.N.Y. 1985).....................................................................15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006)................................................................................................9

*Moyer v. Dewey*,
    103 U.S. 301 (1880)......................................................................................18, 19

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*,
    226 F.3d 237 (3d Cir. 2000)................................................................................18

*Pearsall v. Smith*,
    149 U.S. 231 (1893)............................................................................................19

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) ................................................................................3

*PHP Liquidating v. Robbins*,
    128 F. App'x 839 (3d Cir. 2005) ......................................................................5, 6

*PHP Liquidating v. Robbins*,
    291 B.R. 603 (D. Del. 2003)................................................................................5

*Picard v. Maxam Absolute Return Fund, L.P. (SIPC v. Bernard L. Madoff Inv. Sec., LLC)*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) .................................................................16

*QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.)*,
  571 F.3d 545 (6th Cir. 2009) ...........................................................................10

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*,
  884 F.2d 688 (2d Cir. 1989)..............................................................................11

*Trimble v. Woodhead*,
  102 U.S. 647 (1880).....................................................................................18, 19

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
  No. 3:10-CV-1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012) ...............................4, 7

*United States v. Naftalin*,
  441 U.S. 768 (1979)...........................................................................................4

*Weisfelner v. Morgan Stanley & Co. (In re Lyondell Chemical Co.)*,
  Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Jan. 11, 2011) ...........................................6

*Whyte v. Barclays Bank PLC et al.*,
  No. 12 Civ. 5318 (S.D.N.Y. Nov. 7, 2012) ............................................................5

*Wood v. Gen. Motors Corp.*,
  865 F.2d 395 (1st Cir. 1988).................................................................................7

*Wyeth v. Levine*,
  555 U.S. 555 (2009)...........................................................................................8

*Zedner v. United States*,
  547 U.S. 489 (2006)...........................................................................................8

**STATE CASES**

*Dixon v. Bennett*,
  531 A.2d 1318 (Md. Ct. Spec. App. 1987), *overruled on other grounds by BAA, PLC v. Acacia Mut. Life Ins. Co.*, 929 A.2d 1 (Md. 2007) ...............................................12

*Matney v. Combs*,
  198 S.E. 469 (Va. 1938)....................................................................................12

*Munson v. Rinke*,
  919 N.E.2d 438 (Ill. App. Ct. 2009) ....................................................................12

**FEDERAL STATUTES**

11 U.S.C. § 502(d) ............................................................................................17

11 U.S.C § 541 .................................................................................................16

11 U.S.C. § 544 ............................................................................................*passim*

11 U.S.C. § 546 ............................................................................................*passim*

11 U.S.C. § 548 ..........................................................................................2, 9, 11

12 U.S.C. § 1821(e) .........................................................................................10

Bankruptcy Act of 1867, ch. CLXXVI, § 2, 14 Stat. 517 (1867) (repealed 1878) ......................19

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 ...................................................................................................10

**STATE STATUTES**

740 Ill. Comp. Stat. ........................................................................................20

Mass. Gen. L. 109A, § 11 .................................................................................20

Mass. Gen. L. 109A, § 12 .................................................................................20

N.Y. Debt. & Cred. Law § 280 ...........................................................................20

N.Y. Debt. & Cred. Law § 281 ...........................................................................20

N.Y. U.C.C. Law § 9-102(a)(42) ........................................................................16

**RULES**

Fed. R. Civ. P. 12(b)(6) .....................................................................................20

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I, § 8, cl. 4 ................................................................................2

**OTHER AUTHORITIES**

*Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 before Subcomm. on Civil & Constitutional Rights of the Comm. on the Judiciary*, 94th Cong. (1976) ................................9

*Bankruptcy Before Act: Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Comm. on the Judiciary*, 95th Cong. (1977) .................................................9

Pub. L. No. 105-183 (1998) ................................................................................8

As shown in Defendants' opening memorandum ("Op. Mem."), Plaintiffs' SLCFC claims fail for at least three independent reasons:  (i) they conflict with and are preempted by § 546(e) of the Bankruptcy Code; (ii) Plaintiffs lack standing to avoid the same transfers the Committee[1] is attempting to avoid; and (iii) once Tribune filed for bankruptcy, any state law fraudulent transfer claims became property of its bankruptcy estate and those claims could not "revert" to Tribune's creditors free and clear of the § 546(e) safe harbor.   None of the arguments in Plaintiffs' opposition memorandum ("Opp.") undermines any of these bases for dismissal.

## I.    SECTION 546(e) PREEMPTS PLAINTIFFS' SLCFC CLAIMS.

### A.    State Law That Stands as an Obstacle to the Accomplishment of Congress' Objectives Is Preempted Under Implied Conflict Preemption Principles.

Last term, the Supreme Court reaffirmed the "well-settled" rule of law that governs the conflict preemption issue here:  federal law preempts state law that "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 61 (1941)).  Recognizing that their SLCFC claims stand as an obstacle to the protection of the securities markets that Congress sought to accomplish in § 546(e), Plaintiffs try to rewrite the established standards for preemption.

Plaintiffs assert that there is a "high threshold" for preemption.  But they quote from a plurality opinion (Opp. 6-7) (citing *Chamber of Commerce of the U.S. v. Whiting*, 131 S. Ct. 1968, 1985 (2011)) and rely largely on decisions that address "field" preemption,[2] which

---

[1]  As used herein, the "Committee" shall mean the Official Committee of Unsecured Creditors and its successor in interest in the Committee Action, the Tribune Litigation Trust.

[2]  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005) (field of misbranding) and *Envtl. Encapsulating Corp. v. City of New York*, 855 F.2d 48, 58 (2d Cir. 1988) (field of asbestos).  Plaintiffs' other cases are readily distinguishable.  *See Whiting*, 131 S. Ct. at 1973 (state law fell "squarely within the federal statute's savings clause"); *English v. Gen. Elec. Co.*,

requires a more demanding showing than "conflict" preemption.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) ("[T]hough the Court has looked for a specific statement of preemptive intent . . . [for] so-called 'field preemption'—the Court has never before required a specific . . . statement identifying conflict in order to conclude that such a conflict in fact exists."); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000) ("Assuming, *arguendo*, that some presumption against preemption is appropriate, we conclude . . . the state Act presents a sufficient obstacle to the full accomplishment of Congress's objectives . . . to find it preempted.").

Similarly, Plaintiffs' assertion that a "heightened presumption against preemption" applies in fields traditionally occupied by the States (Opp. 7-8) has no application here.  While fraudulent transfers may be regulated by the States if the debtor is not in bankruptcy, once the debtor is in bankruptcy, the fraudulent transfers are governed by federal law.  The Bankruptcy Code includes two fraudulent transfer provisions, §§ 544 and 548, which are limited by a third, § 546(e).  Congress enacted these provisions pursuant to its authority to "establish . . . uniform laws on the subject of bankruptcies throughout the United States."  U.S. Const. Art. I, § 8, cl. 4. Accordingly, even under the more demanding standards of field preemption, the Bankruptcy Code preempts many state laws.  *See, e.g.*, *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 120 (2d Cir. 2001) (per curiam) (state tort claims for violating Code preempted since the "Bankruptcy Code provides a comprehensive federal system . . . govern[ing] . . . creditors' rights," "preclud[ing] enforcement of state laws on the same subject").[3]

---

496 U.S. 72, 88 (1990) ("[B]arring petitioner's tort action would not even serve the federal interest."); *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814-16 (1997) (addressing express, not implied, preemption); *California v. ARC Am. Corp.*, 490 U.S. 93, 104 (1989) (state law "pose[d] no [] risk to the enforcement of the federal law").

[3]  *See also* Op. Mem. 12-13 & n.24 (citing Second Circuit cases); *Bessette v. Avco Fin. Servs.*,

### B.   Plaintiffs' SLCFC Claims Would Stand as an Obstacle to Congress' Objectives and Are Preempted.

Plaintiffs do not dispute that if Tribune's estate had asserted Plaintiffs' SLCFC claims under § 544 and made the same arguments that Plaintiffs have "preserved" for potential Supreme Court review (Opp. 23-24), those claims would have failed under § 546(e) and controlling Circuit-level authority.  (Op. Mem. 9-11.)[4]  Nor can Plaintiffs deny that permitting them to recover those same payments under state law would afford them the very relief that § 546(e) prohibits.  That result, the effective nullification of § 546(e), would stand as an obstacle to Congress' objective of protecting the securities markets.

Plaintiffs' response is at war with the controlling law of this Circuit.  Plaintiffs would have this Court conclude that all Congress sought to accomplish in § 546(e) was to require that avoidance actions targeting settlement payments be brought in the name of the debtor's creditors rather than the creditors' statutory representative, the bankruptcy trustee.  (Opp. 9-23.)  But the Second Circuit has held otherwise:  "Congress enacted § 546(e)'s safe harbor in 1982 . . . [to] minimiz[e] the displacement caused in the . . . securities markets in the event of a major bankruptcy."  *Enron Creditors Recovery Corp. v. Alfa*, 651 F.3d 329, 334 (2d Cir. 2011) (internal quotes and citations omitted).  If Plaintiffs were right, § 546(e) would not accomplish this end; indeed, it would serve no practical purpose.  Under "cardinal principle[s] of statutory

---

*Inc.*, 230 F.3d 439, 447-48 (1st Cir. 2000) (state law claims for violating Code preempted); *accord Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425-26 (6th Cir. 2000); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 913 (7th Cir. 2001); *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 379 (2006) (holding that Constitution's bankruptcy clause abrogated state sovereign immunity to preference avoidance actions by the bankruptcy estate).

[4]  Plaintiffs seek to "preserve" for appellate review arguments that the payments were not settlement payments, made "by or to" a financial institution, financial participant, or securities clearing agency, or part of the clearance and settlement systems.  Because Plaintiffs do not dispute that the law of this Circuit precludes these arguments, Defendants do not address them again herein and instead rely on the controlling precedent and Defendants' prior arguments.  (Op. Mem. 9-11.)

construction," this Court cannot interpret § 546(e) to "be superfluous, void, or insignificant,"

*Duncan v. Walker*, 533 U.S. 167, 174 (2001), "render [itself] ineffective," *Garcia-Villeda v.*

*Mukasey*, 531 F.3d 141, 147 (2d Cir. 2008), or "create a loophole," *United States v. Naftalin*, 441

U.S. 768, 777 (1979).

     **C.**     **Plaintiffs' Counter-Arguments Fail.**

     Plaintiffs present no cogent reason for this Court to deviate from a straightforward

application of conflict preemption law or to conclude that Congress intended § 546(e) to be

toothless.

     1.     <u>*Hechinger* and its Progeny</u>.  Seeking to distinguish case law that uniformly rejects

their position, Plaintiffs argue that the *Hechinger* line of cases "does not involve true

preemption."  (Opp. 14-15 & n.22.)  But not only did "the opinions speak in the language of

preemption," *id.*, they had to.  By its terms, § 546(e) did not apply to any of the state law unjust

enrichment or illegal dividend claims asserted in those cases, because none of those claims

sought to "avoid" a transfer under "[§] 544."  11 U.S.C. § 546(e).  Yet each of the courts held

that § 546(e) nevertheless barred those state law claims under conflict preemption principles.

And they did so, not because "the challenged claims were asserted by an estate representative"

(Opp. 15 n.22)—none of the cases mentions this as a relevant, let alone determinative, factor—

but because § 546(e)'s safe harbor would be rendered "meaningless" if those same settlement

payments could be recovered under state law.  *See Contemporary Indus. Corp. v. Frost*, 564 F.3d

981, 984, 988 (8th Cir. 2009); *U.S. Bank N.A. v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G,

2012 WL 4050088, at *18-19 (N.D. Tex. Sept. 14, 2012); *Hechinger Inv. Co. v. Fleet Retail Fin.*

*Grp.,* 274 B.R. 71, 94, 96 (Bankr. D. Del. 2002).

     After Defendants filed their opening brief, a court in this district reached the same

conclusion.  *See AP Servs. LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (Kaplan, J.) (citing

*Contemporary Industries* and *Hechinger* and holding that § 546(e) preempted state law claim to recover LBO payments to shareholders because "[a]llowing recovery for unjust enrichment . . . would implicate the same concerns regarding the unraveling of settled securities transactions . . . which is precisely the result that [§] 546(e) precludes").

Even more recently, another court in this district dismissed SLCFC claims brought by a bankruptcy litigation trust purporting to sue on behalf of individual creditors rather than the estate, where the transfers fell within another safe harbor, § 546(g), which bars "the trustee" from "avoid[ing]" swap transfers under "[§] 544." *See* Order, *Whyte v. Barclays Bank PLC et al.*, No. 12 Civ. 5318 (S.D.N.Y. Nov. 7, 2012) [Dckt. No. 32]. Although Judge Rakoff has not yet issued a written opinion, at oral argument he commented:

> I would mostly like to hear argument on what I would call in a nontechnical sense the preemption issue.… [T]he judge [in *Hechinger*] held that insofar as the creditor state law claims permitted the creditors committee to avoid transfers subject to an explicit safe harbor of the bankruptcy code, they were preempted .… Why isn't the reasoning here? Why isn't it just sort of through a kind of sleight-of-hand doing what the bankruptcy code would otherwise not permit you to do?

Tr., *Whyte* (S.D.N.Y. Oct. 9, 2012) [Dckt. 30] at 2:16-18; 16:3-24 (attached with Order to Decl. of David C. Bohan).

The only case Plaintiffs cite (Opp. 10-12) as supposed authority that § 546(e) does not preempt their SLCFC claims says nothing of the kind. In *PHP Liquidating v. Robbins,* 291 B.R. 603, 609-611 (D. Del. 2003), *aff'd*, 128 F. App'x 839 (3d Cir. 2005), the district court *dismissed* the creditors' state law claims to avoid settlement payments because "[§] 544(b) . . . grants only trustees or debtors-in-possession standing to pursue general claims held by the debtor's creditors." The district court's unadorned statement that § 546(e) would not have *expressly* barred the creditors' claims, *see id.* at 607, not only is dicta, as Plaintiffs concede (Opp. 11), it is beside the point. Defendants argue that § 546(e) impliedly, not expressly, bars Plaintiffs' claims,

and implied preemption is an issue the court did not even touch.  For its part, the Third Circuit

did not mention § 546(e) at all, affirming the dismissal solely on standing grounds.  *See PHP*,

128 F. App'x at 844-46.

        2.     <u>Text of § 546(e)</u>.  Plaintiffs argue that § 546(e) refers only to the "trustee," and if

Congress had wanted to protect settlement payments from being avoided by anyone else, "it

could simply have said so."  (Opp. 9-12, 15-17) (quoting *Hartford Underwriters Ins. Co. v.

Union Planters Bank*, 530 U.S. 1 (2000).)  The short answer is that § 546(e) refers only to "the

trustee" because "the trustee" is the only party Congress authorized to assert any fraudulent

transfer claims in bankruptcy in the first place.  11 U.S.C. § 544.  By barring everyone who

could otherwise bring such claims—i.e., "the trustee"—from bringing them, Congress

manifested its intent to *bar* those claims, not to authorize someone else—the debtor's creditors—

to bring them.  Plaintiffs' own authority, *Hartford Underwriters*, underscores the point, as the

Supreme Court held there that another Code power that, like § 544, is granted only to "the

trustee" likewise could not be exercised by anyone else.  530 U.S. at 7; *see also id.* at 13 n.5

(noting "§ 544 . . . mention[s] only the trustee" and citing case law "holding that creditor had no

right to bring avoidance action independently").

        Plaintiffs' suggestion that Congress "'surely would have enacted an express pre-emption

provision at some point'" if it "'thought state law suits posed an obstacle to its objectives'" (Opp.

17) (quoting *Wyeth v. Levine,* 555 U.S. 555, 574 (2009)), is equally unpersuasive.  Until *Lyondell*

(Op. Mem. 21 n.27),[5] there were no similar SLCFC suits.  Congress' failure to expressly preempt

---

[5]  In *Lyondell*, the creditors committee "abandoned" the estate's § 544 claims and a creditor trust
was formed to bring the same SLCFC claims on behalf of Lyondell's creditors.  The defendants'
motion to dismiss those claims under § 546(e) and preemption principles is awaiting ruling by
the bankruptcy court.  *See* Mot. to Dismiss, *Weisfelner v. Morgan Stanley & Co. (In re Lyondell
Chemical Co.)*, Adv. Pro. No. 10-04609 (Bankr. S.D.N.Y. Jan. 11, 2011) [Dckt No. 72].

them simply signifies that Congress did not anticipate the later efforts by creditors to circumvent § 546(e).  *Cf. Wood v. Gen. Motors Corp.*, 865 F.2d 395, 402 (1st Cir. 1988) ("At that time, the only kind of legal claim which could give rise to the present dilemma . . . had yet to take its place in the arsenal of the plaintiffs' bar. . . .  Congress simply did not anticipate the situation that now confronts us.").

        3.      <u>Negative Inference From Other Code Provisions</u>.  Plaintiffs argue that preemption cannot be implied because § 546(e) does not include an express preemption clause, as other Code provisions do.  (Opp. 12-14.)  The Supreme Court has rejected that argument:  "A failure to provide for preemption expressly [in one provision, while so providing in others] may reflect nothing more than the settled character of implied preemption doctrine that courts will dependably apply, and in any event, the existence of conflict cognizable under the Supremacy Clause does not depend on express congressional recognition that federal and state law may conflict."  *Crosby*, 530 U.S. at 387-88 & n.27 (federal foreign sanctions law preempted state sanctions law under implied conflict principles, even though Congress had expressly preempted other state sanctions laws); *accord Arizona*, 132 S. Ct. at 2505.  Indeed, *U.S. Bank* held that § 546(e) impliedly preempted state law, notwithstanding the plaintiff's arguments that "other parts of the Bankruptcy Code . . . expressly state[] that state law does not apply."  2012 WL 4050088, at *19; *see also supra* p. 2 & note 2 (citing cases holding that the Code impliedly preempts state law).

        Plaintiffs' argument (Opp. 12-13) that the express preemption clause in § 544(b)(2) suggests that Congress approved Plaintiffs' end run around § 546(e) cannot withstand scrutiny. Unlike here, an express preemption clause was needed in § 544(b)(2) to protect from avoidance transfers to charities by creditors because the trustee had no authority to bring state law claims to

7

avoid those transfers in the first place, which created a concern that plaintiffs other than the trustee might assert them.  *See* 11 U.S.C. § 544(b)(1) (granting trustee exclusive authority to assert all creditor state law fraudulent transfer claims "[e]xcept as provided in paragraph (2)"); *id.* § 544(b)(2) ("Paragraph (1) shall not apply to a transfer of a charitable contribution.").  By contrast, there was no need to amend § 546(e) when Congress enacted § 544(b)(2) because § 544(b)(1) authorizes only the trustee to sue and no creditor had attempted to litigate around § 546(e) in the 16 years it had been in place.[6]

      4.   <u>Legislative History</u>.  Plaintiffs contend that Congress evidenced its intent to allow suits like those here because it supposedly "considered—and rejected" statutory text expressly preempting SLCFC suits when it enacted § 546(e)'s predecessor in 1978.  (Opp. 16-19.)  It did no such thing.  The snippets that Plaintiffs cite from two hearing witnesses—neither a member of Congress—do not represent the views of Congress,[7] and even if they did, provide no support for Plaintiffs' assertion.  Both witnesses recommended that Congress bar a trustee from using state law to avoid safe-harbored payments, which is precisely what Congress did in § 546(e).  CFTC Chairman Bagley asked that the Code "clearly preempt state law in this area" to "eliminate[] the *Seligson* problem," a decision permitting a trustee to seek to avoid commodities payments under

---

[6]  The 1998 amendment addressed only the Code's treatment of charitable contributions.  *See* Pub. L. No. 105-183 (1998).  Plaintiffs' authorities (Opp. 13-14) are inapposite.  *Wyeth* held that a federal drug-labeling law did not impliedly preempt state law failure-to-warn suits because, unlike the end run here, Congress legislated with "certain awareness" of such suits and merely sought "to bolster" those state law protections.  *See* 555 U.S. at 574.  *In re Federal-Mogul Global, Inc.*, 684 F.3d 355, 372-73 (3d Cir. 2012), applied Plaintiffs' negative inference rule— that use of a clause in only one of two related statutes permits an inference that it was deliberately omitted in the other—to resolve a question of statutory interpretation, not to hold that an express preemption clause precludes implied preemption of state law that conflicts with other provisions of federal law.  As discussed, the Supreme Court rejected the latter proposition in *Crosby* and *Arizona*.

[7]  *See Zedner v. United States*, 547 U.S. 489, 510 (2006) (Scalia, J., concurring in part and in the judgment) (the "belief" that "what is said by a single person in a floor debate or by a committee report represents the view of Congress as a whole" has "no basis either in law or in reality").

New York fraudulent transfer law using § 544's predecessor.[8]  The Commodity Exchange, Inc. similarly urged that the Code preempt state law so that "Congressional intent would not be frustrated because a trustee in bankruptcy is in a position to rely on the New York [fraudulent transfer] Law," as "in the *Seligson* action."[9]  Neither witness even considered the end run being attempted here, much less proposed a prohibition on it that Congress "considered—and rejected."

       5.      <u>Exception for Actual, Intentional Fraud</u>.  Ignoring the Second Circuit's *Enron* decision, Plaintiffs argue that Congress did not intend § 546(e) to prevent the "potential market disruption" caused by avoiding settlement payments because § 546(e) allows a trustee to avoid such payments under § 548(a)(1)(A).  (Opp. 20-21.)  To the contrary, that provision demonstrates that Congress considered whether there should be any exceptions to § 546(e) and concluded there should be only one, for actual, intentional fraudulent transfer claims under federal law, which are far more difficult to prove and less common than constructive fraudulent transfer claims.  As § 546(e) makes clear, Congress decided to bar *all* SLCFC claims seeking to avoid settlement payments in bankruptcy.[10]

       6.      <u>No Pre-Bankruptcy Restriction</u>.  Plaintiffs' observation that § 546(e) does not apply if the debtor never files for bankruptcy (Opp. 20) likewise proves nothing.  Congress enacted § 546(e) to bar fraudulent transfer claims in those circumstances in which the most

---

[8]  *Bankruptcy Act Revision:  Hearings on H.R. 31 and H.R. 32 before Subcomm. on Civil & Constitutional Rights of the Comm. on the Judiciary*, 94th Cong., at 2405-06, 2409 (1976).

[9]  *Bankruptcy Before Act:  Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Comm. on the Judiciary*, 95th Cong., at 1293-98 (1977).

[10]  Plaintiffs note that SLUSA permits individual investors' state law fraud claims to proceed (Opp. 22), but SLUSA's purpose was to preclude, not all state law fraud claims, but merely state law class actions, because the "class-action device was being used to injure 'the entire U.S. economy.'"  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006).

significant threats to securities markets arise—when a debtor files for bankruptcy.  In contrast to fraudulent transfer litigation when the debtor has been able to avoid bankruptcy, which typically involves one plaintiff suing one creditor, when an entity defaults following an LBO or other major securities transaction and ends up in bankruptcy, any subsequent litigation to unwind that transaction will be brought on behalf of numerous creditors.  Here, Plaintiffs concede that these suits are intertwined with Tribune's bankruptcy and provide Tribune's creditors an "alternate source of recovery."  Note Holder Plaintiffs' Mem. of Law. in Opp. to Defs.' Mot. to Dismiss, MDL Dckt. No. 2087, at 6.

       7.    <u>Comparative Threat</u>.  Plaintiffs' related argument that Congress' purpose would not be frustrated because a trustee poses a more significant threat to markets than "an individual creditor who is prosecuting a claim pursuant to state law" (Opp. 19-20) rings hollow.  This is not a suit by an individual creditor but rather a coordinated action by numerous bondholders (and other creditors) arising from Tribune's bankruptcy case seeking to avoid billions of dollars in payments to thousands of Tribune's public shareholders.  The sums Plaintiffs demand—in excess of $2.5 billion—are substantially greater than the amounts involved in other transactions that courts have concluded Congress intended § 546(e) to bar.  *See Enron*, 651 F.3d at 339 ($1 billion); *In re QSI Holdings, Inc.*, 571 F.3d 545, 548-49 (6th Cir. 2009) ($208 million); *Contemporary Indus.*, 564 F.3d at 987 ($26.5 million).  Undoing multi-billion dollar transfers would raise the very threats to market stability that Congress sought to prevent, *see Enron,* 651 F.3d at 334, and the specter of such liability could discourage investment in the nation's capital markets (or shift participation to less sophisticated investors unaware of the bankruptcy risks).[11]

---

[11]  Congress' concern about fraudulent transfer litigation arising out of large corporate failures is also reflected in similar safe harbors it has enacted in the insolvency statutes for banks and other financial companies.  *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L.

In sum, the question here is simple and straightforward:  whether state law, if it permitted avoidance of the payments to Tribune's shareholders, would stand as an obstacle to the accomplishment of Congress' objectives in enacting § 546(e).  Like the unjust enrichment and unlawful dividends claims in the *Hechinger* line of cases and the creditor fraudulent transfer claims in *Whyte*, Plaintiffs' SLCFC claims here stand as an obstacle to the accomplishment of Congress' objectives.  If they are permitted to go forward, settlement payments protected under § 546(e) could be set aside, thereby causing the very harm Congress sought to prevent.  *See Enron*, 651 F.3d at 338 ("[U]ndoing long-settled leveraged buyouts would have a substantial impact on the stability of the financial markets.").  The market impact would be just as destabilizing whether Plaintiffs sued directly or a bankruptcy trustee sued on their behalf.  And as *Whyte* and *Lyondell* demonstrate, the same end run would be replicated in every bankruptcy case involving settlement payments, which would effectively nullify § 546(e).  Plaintiffs' SLCFC claims conflict with federal law and are preempted.

## II.     PLAINTIFFS LACK STANDING.

Plaintiffs concede that § 544(b) grants an estate representative the exclusive right to pursue avoidance actions available to creditors under state law, and when an estate representative exercises that right, it "step[s] into the shoes of" individual creditors, who become bound by the result of the representative's action.  (Opp. 25-26, 30, 35.)  Exercising its exclusive right, the Committee has sued on behalf of all unsecured creditors of Tribune's estate, under both § 544(b) and § 548, to avoid the same transfers Plaintiffs seek to avoid here.  Like every other creditor, Plaintiffs are "bound by the outcome" of the Committee Action.  *St. Paul Fire & Marine Ins. Co.*

---

111-203, § 210(c)(8)(C)(i)-(ii), (D)(i)-(ii), 124 Stat. 1376, 1481-82; Federal Deposit Insurance Act, 12 U.S.C. § 1821(e)(8)(C)(i)-(ii), (D)(i)-(ii).

*v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).  They lack standing to try to avoid the same

transfers the Committee seeks to avoid.

Plaintiffs do not dispute that their claims share the same "object and purpose" as the

Committee's claims:  they arise from the same facts and circumstances and seek to remedy the

identical alleged injury by avoiding the exact same transfers.  Plaintiffs nevertheless argue that

they have standing because (i) they rely on a different theory of recovery than the Committee,

constructive instead of actual fraud, and (ii) the Committee "supports" Plaintiffs' efforts.  (Opp.

28, 37.)  Plaintiffs' arguments contradict well-established precedent, and none of Plaintiffs' cases

recognizes a creditor's standing in circumstances remotely resembling those present here.

### A.  Individual Creditors Lack Standing to Pursue Avoidance of a Transfer After an Estate Representative Has Sought to Avoid the Same Transfer.

Plaintiffs assert that if an estate representative fails to pursue avoidance of a transfer

within the two-year limitation period provided in § 546(a), then individual creditors may "step

in" and try to avoid that transfer themselves.  (Opp. 25-32.)  However, this case involves the

opposite situation.  The Committee *did* pursue an avoidance claim within the limitation period

and is continuing to pursue avoidance of the same transfers Plaintiffs seek to avoid.  Plaintiffs'

own cases demonstrate that where an estate representative sues to avoid a transfer, individual

creditors may not sue to avoid the same transfer.  *See, e.g.*, *Dixon v. Bennett*, 531 A.2d 1318,

1323 (Md. Ct. Spec. App. 1987), *overruled on other grounds by BAA, PLC v. Acacia Mut. Life

Ins. Co.*, 929 A.2d 1 (Md. 2007) (creditor had standing because "the trustee never invoked the

right, under either the bankruptcy or state law, to avoid the transfers"); *Klingman v. Levinson*,

158 B.R. 109, 113 (N.D. Ill. 1993) (creditors had standing because "the trustee never sought to

recover the conveyance challenged"); *Munson v. Rinke*, 919 N.E.2d 438, 442 (Ill. App. Ct. 2009)

(creditors had standing because "the trustee ultimately did not pursue the action" to "pursue the

fraudulently conveyed assets"); *Matney v. Combs*, 198 S.E. 469, 473 (Va. 1938) (creditor had standing because "the trustee in bankruptcy failed to take action to recover the property alleged to have been fraudulently transferred").

Plaintiffs stress that the Committee brought the estate's claims for intentional, not constructive, fraudulent transfer (Opp. 28), but cite no case finding such a distinction relevant. Plaintiffs' cases—*Klingman*, *Munson*, *Matney*, *Dixon*—all focus on whether an estate representative "sought to recover the conveyance challenged," not whether the estate representative and the creditor relied on the same legal theory.

An unbroken string of authority, spanning several jurisdictions and cited with approval in the Second Circuit, holds that individual creditors lack standing to pursue claims that share the same "object and purpose" as claims brought by an estate representative. Plaintiffs contend that the "logic [of those cases] does not apply here" because the Committee "supports" their right to pursue SLCFC claims. (Opp. 35-37.) Here again, Plaintiffs fail to cite a single case attaching any relevance to an estate representative's endorsement of or opposition to an individual creditor's SLCFC claim. Nor do Plaintiffs cite any case permitting an individual creditor to sue to avoid the same transfer as an estate representative, even with the estate representative's "support." If Plaintiffs were correct that a creditor can have standing merely by asserting a different theory of avoidance than the estate representative, then the representative's support for or opposition to the creditor's claims would be irrelevant. And, if an estate representative could simply "support" its way around the express limitations on its own avoidance powers, then every estate representative would do so, and § 546(e) would be a dead letter.

**B.    *Baron*, *Agri*, and *Lumbard* Underscore Plaintiffs' Lack of Standing.**

Plaintiffs' own authorities undermine their argument. Plaintiffs cite *Baron Financial Corp. v. Natanzon*, 509 F. Supp. 2d 501 (D. Md. 2007), but omit the determinative facts from

that case. There, the trustee and an individual creditor entered into a "carefully crafted and court-approved" settlement agreement permitting the creditor to pursue contract and tort claims against third parties. *Id*. at 522. Those claims had been amended "to avoid infringing upon the rights of the Trustee" and were not "property of the Estate." *Id*. at 519. Denying the defendants' motion to dismiss, the court held that the creditor had standing to bring the claims for reasons that weigh against Plaintiffs' standing here. While the creditor in *Baron* was "not trying to recover assets diverted from [the debtor]" through a fraudulent transfer claim, *id*. at 520, here that is precisely what Plaintiffs are attempting to do through their SLCFC claims. Further, whereas in *Baron* there was "some similarity" in object and purpose between the claims of the creditor and the claims of the trustee, *id*. at 521 n.34, here there is an *identity* of object and purpose between Plaintiffs' claims and the Committee Action. And unlike in *Baron*, the Bankruptcy Court here never determined or approved of Plaintiffs' standing, and, as Plaintiffs concede (Opp. 5), expressly left that issue open.

Plaintiffs also cite *In re Integrated Agri, Inc.*, 313 B.R. 419, 429 (Bankr. C.D. Ill. 2004), but that case expressly recognized the "problem" with the position Plaintiffs posit. There, a trustee sued to avoid loans as fraudulent transfers or to recover the amounts due thereunder. The court held that the fraudulent transfer claims were time-barred under § 546(a), and, because the trustee could no longer avoid the transfers, individual creditors "regain[ed] standing" to do so. *Id*. at 427-28. The court also held that the trustee could not pursue the loan repayment claims if, as had been alleged, the loans were fully encumbered by a creditor's security interest, unless the creditor first released its security interest. *Id*. at 425. But the court added that, if the creditor were to release its security interest and the court were to permit the trustee to proceed with the loan repayment claims, then the trustee and creditor could end up pursuing "alternative theories

of liability arising out of the same series of transfers." *Id*. at 429.  The court recognized this would be a "problem," *id*., and indicated that where, as here, the trustee is *not* barred from "pursu[ing] recovery of [allegedly] fraudulently conveyed assets," and does so (regardless of the theory employed), individual creditors cannot "regain[] standing," *id*. at 427-28.  Thus, rather than supporting Plaintiffs here, *Agri* contradicts their argument.

Finally, Plaintiffs cite *Lumbard v. Maglia*, 621 F. Supp. 1529 (S.D.N.Y. 1985), but that case also confirms Plaintiffs' lack of standing.  There, two bankruptcy trustees, the trustee of a secured lender and the trustee of that lender's borrower, obtained bankruptcy court approval to jointly prosecute an avoidance action against the borrower's transferee.  Importantly, the secured lender's trustee sued to avoid the transfers *before the borrower filed for bankruptcy*, while the trustee unquestionably had standing to sue; no bankruptcy estate for the borrower existed yet and, hence, no representative of any such estate stood in the secured lender's shoes for purposes of avoiding the same transfers.  When the borrower later filed for bankruptcy, the borrower's trustee joined in the secured lender's action rather than pursue its own because the borrower, "by then an assetless shell," lacked sufficient funds to pursue an independent action.  *Id*. at 1532-33. Here, by contrast, Plaintiffs, a group of individual creditors without any judicial endorsement of their standing or express standing under the Bankruptcy Code, filed their claims months *after* the Committee had filed its action on behalf of the estate's unsecured creditors.

In sum, because the Committee filed the Committee Action, seeking under both state and federal law to avoid the same transfers Plaintiffs do, for the benefit of all creditors, Plaintiffs lack standing.  The Committee has stepped into the shoes of the estate's unsecured creditors, and Plaintiffs, like all other creditors, are bound by the outcome of the Committee Action.

**III.    THE SLCFC CLAIMS ARE PROPERTY OF THE ESTATE, DID NOT REVERT TO PLAINTIFFS, AND WOULD BE SUBJECT TO PRE-REVERSION LIMITATIONS AND DEFENSES IN ANY EVENT.**

Plaintiffs nowhere dispute that the Bankruptcy Code provides specific routes by which estate property may leave the estate—abandonment, sale, plan distribution, dismissal—and that only where the bankruptcy case is dismissed are an estate's fraudulent transfer claims stripped of § 546(e) limitations.  (Op. Mem. 32.)  Plaintiffs' only response is that fraudulent transfer claims under § 544(b) are not property of the estate in the first place, and both the estate and the individual creditors may avoid the same transfers.  (Opp. 32-34.)  Plaintiffs' "parallel property" theory is inconsistent with the Bankruptcy Code and the better reasoned, more recent decisions from this district and elsewhere.

**A.    The SLCFC Claims Are Property of Tribune's Bankruptcy Estate.**

An avoidance claim is a "thing in action," and thus a form of property.  *See* N.Y. U.C.C. Law § 9-102(a)(42) ("'General Intangible' means any personal property, including things in action.").  Section 541 of the Bankruptcy Code defines "property of the estate" broadly.  *See* 11 U.S.C. § 541(a)(1) ("all legal or equitable interests of the debtor in property as of the commencement of the case."); *see also In re Ames Dep't Stores, Inc.*, 287 B.R. 112, 121 (Bankr. S.D.N.Y. 2002) ("Congress intended property of the estate to be broadly defined.").  Estate property includes causes of action the debtor had prior to the petition date, *and* "avoidance actions created on the petition date" pursuant to § 544(b), that the trustee may pursue for the benefit of all creditors.  *Picard v. Maxam Absolute Return Fund, L.P. (SIPC v. Bernard L. Madoff Inv. Sec., LLC)*, 460 B.R. 106, 114 (Bankr. S.D.N.Y. 2011).  Proceeds of avoidance claims are property of the estate, *see* 11 U.S.C. § 541(a)(3), and Plaintiffs do not even attempt to explain how *proceeds* of property can belong to the estate if the *property* itself does not.

16

The trustee may extinguish and release avoidance claims.  *See In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002).  He may also assert them defensively, even after the statute of limitation in § 546(a) runs.  *See* 11 U.S.C. § 502(d); *In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 251 (Bankr. S.D.N.Y. 2006).  These powers are consistent with the trustee, and no one else, having a property interest in the claims.

Plaintiffs nevertheless argue that "the law in this circuit is clear that creditors' state law avoidance rights do not constitute 'estate property'" (Opp. 32), but Judge Koeltl in *Fox v. Picard (In re Madoff),* 848 F. Supp. 2d 469 (S.D.N.Y. 2012), and Judge Lifland in *Maxam Absolute Return Fund* have held to the contrary.  In *Fox*, the trustee asserted and then settled § 544(b) claims against the debtor's transferees.  Creditors filed suit against the same transferees in Florida state court, alleging state law claims based on the same conduct.  Judge Koeltl enjoined the creditors' action, explaining:  "[T]here ultimately is no substantive difference between the claims already asserted by the Trustee [under § 544] . . . and those claims asserted in the Florida Actions. . . .  [T]he Bankruptcy Court correctly found that the claims asserted in the Florida Actions were the property of the estate."  *Fox*, 848 F. Supp. 2d at 481; *see also In re Moore*, 608 F.3d 253, 262 (5th Cir. 2010) (claims under § 544(b) are estate property); *In re Becker*, 136 B.R. 113, 116 (Bankr. D.N.J. 1992) ("The trustee's rights under the avoiding powers in Code [§§] 544 through 551 are property of the estate."); *In re Falcon Prods., Inc.*, 372 B.R. 474, 481 (Bankr. E.D. Mo. 2007) (same).

*FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992), (Opp. 32-33) is not to the contrary.  After both the bankruptcy and district courts held that fraudulent conveyance actions *are* property of the estate (but acknowledged that the FDIC had superior rights in proceeds), the trustee pivoted in the Second Circuit, arguing that the transferred *property* (not the

17

claim to avoid the transfer) was property of the estate. *Colonial Realty*, 980 F. 2d at 131. The Second Circuit held that prior to avoidance, the estate had no interest in property transferred pre-petition. But nothing in that ruling suggests that avoidance *claims* are not property of the estate, and the court did not reject then-District Judge Cabranes' holding that they are. *Id.* at 129-30, *aff'g In re Colonial Realty Co.*, No. 3:91-200X(JAC), 1991 WL 487192, at *2 (D. Conn. Dec. 30, 1991) ("fraudulent conveyance actions based upon pre-petition transfers of a debtor . . . are property of the estate as of the commencement of the bankruptcy case.").[12]

Plaintiffs' other authorities are even further afield. *Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008), was a receivership action under New York law. It has nothing to do with property of a bankruptcy estate. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 246 (3d Cir. 2000), concerned whether a bankruptcy court order that authorized the sale of all assets "*of the debtor*" authorized the sale of the bankruptcy estate's avoidance claims. (Emphasis added.) The court held that it did not because avoidance actions are not property *of the debtor*. *Cybergenics* disclaimed any ruling on whether such claims are property *of the estate*. *Id.*

## B.     The Bankruptcy Code Does Not Permit Reversion of Avoidance Rights Free and Clear of § 546(e).

Plaintiffs argue that Defendants misconstrue *Trimble v. Woodhead*, 102 U.S. 647, 649-50 (1880), but Defendants construe it as the Supreme Court itself did in *Moyer v. Dewey*, 103 U.S. 301 (1880). *Trimble* holds that "the right to bring such an action as this—the right to the property so fraudulently conveyed—is vested in the assignee alone, and that his failure to sue within the two years allowed by the bankrupt law does not transfer this right of property or right

---

[12] Plaintiffs argue (Opp. 33) that *Colonial Realty* "adopt[s]" the reasoning of the court in *In re Saunders*, 101 B.R. 303 (Bankr N.D. Fla. 1989), but *Colonial Realty* does not even mention, much less adopt, *Saunders'* observation that *claims* are not property of the estate.

of action to a creditor of the bankrupt." *Moyer*, 103 U.S. at 303.  Plaintiffs also say that the 1867

Act barred "*any person . . . from commencing an avoidance action more than two years after the*

*bankruptcy filing.*"  (Opp. 29 (emphasis in original).)  It did not; it only barred such suits *by or*

*against the "assignee."*[13]  *See Pearsall v. Smith*, 149 U.S. 231, 234 (1893) (construing § 5057 of

the Revised Statutes, "an embodiment" of § 2 of the 1867 Act, to prohibit any "suit, either at law

or in equity . . . between an assignee in bankruptcy and a person claiming an adverse interest

touching any property . . . vested in such assignee, unless brought within two years . . . ."

(internal quotes omitted)).  If the assignee failed to pursue the claim within two years, that claim

did not revert to the bankrupt's creditors. *Trimble*, 102 U.S. at 649.

Plaintiffs cite cases holding that if the bankruptcy trustee fails to sue within the two-year

limitation period under § 546(a), creditors then "regain" the right to bring SLCFC claims.  (Opp.

25-32.)  But none of those cases anchors this notion of "reversion" to any provision of the

Bankruptcy Code.  And Plaintiffs identify no other legal regime in which the running of a federal

statute of limitation authorizes a different plaintiff to bring the lapsed claim.  In any event, even

if creditors may bring an action the trustee could have brought before his time to do so expired

under § 546(a), nothing in the case law implies that an individual creditor may bring an action

the trustee himself could *never* have brought due to § 546(e).  (Op. Mem. 32.)

## IV.   STATE LAW SHOULD NOT BE CONSTRUED TO PERMIT DISRUPTION OF THE SECURITIES MARKETS.

Plaintiffs offer no substantive response to Defendants' argument that state law should be

interpreted to bar Plaintiffs' claims in light of the public policy favoring the stability of the

public securities markets.  Instead, they argue in one paragraph, through two erroneous

---

[13]  Under the 1867 Act, a bankruptcy estate was created by statutory assignment, and the assignee was the counterpart to today's trustee.  *See generally* Bankruptcy Act of 1867, ch. CLXXVI, § 2, 14 Stat. 517 (1867) (repealed 1878).

statements of law, that it would be "inappropriate" for a federal court to decide a state law defense to this state law cause of action.  (Opp. 40.)

It is black-letter law that a federal court may not refuse to decide a question of state law simply because it is novel, and that instead the court must determine how the state's highest court would rule.  *Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 776 (2d Cir. 1996).  Plaintiffs' corollary argument that development of the UFTA and UFCA must be left to state legislatures fares no better.  Those statutes instruct courts to apply evolving "principles of law and equity, including the law merchant" in order to "supplement" the statutory provisions.  *See, e.g.*, Mass. Gen. Laws ch. 109A, § 11 (UFTA); 740 Ill. Comp. Stat. 160/11 (UFTA); N.Y. Debt. & Cred. Law § 280 (UFCA; to the same effect).  These provisions ensure that state fraudulent conveyance law develops along with evolving commercial practice, including the development of the securities holding system.  Further, the statutes require courts to construe different states' fraudulent transfer laws consistently.  *See, e.g.*, Mass. Gen. Laws ch. 109A, § 12 (UFTA); 740 Ill. Comp. Stat. 160/12 (UFTA); N.Y. Debt. & Cred. Law § 281 (UFCA).  A federal court sitting in a multi-district litigation is particularly well-positioned for this task.

\* \* \*

For the reasons set forth above and in Defendants' opening memorandum, Defendants respectfully request that this Court grant Defendants' Joint Phase One Motion to Dismiss the Individual Creditor Actions with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: New York, New York
       February 4, 2013

**RESPECTFULLY SUBMITTED,**

**Bingham McCutchen LLP**                    **Davis Polk & Wardwell LLP**

By:    /s/ P. Sabin Willett                  By:    /s/ Elliot Moskowitz
       P. Sabin Willett                             Elliot Moskowitz
       sabin.willett@bingham.com                    elliot.moskowitz@davispolk.com
       Michael C. D'Agostino
       michael.dagostino@binham.com

One Federal Street                           450 Lexington Avenue
Boston, MA 02110-1726                        New York, NY 10017

*Defendants' Executive Committee*            *Defendants' Executive Committee*

**Dechert LLP**                              **Entwistle & Capucci LLP**

By:    /s/ Michael S. Doluisio               By:    /s/ Andrew J. Entwistle
       Michael S. Doluisio                          Andrew J. Entwistle
       michael.doluisio@dechert.com                 aentwistle@entwistle-law.com

Cira Centre                                  280 Park Avenue
2929 Arch Street                             26th Floor
Philadelphia, PA 19104-2808                  New York, NY 10017

*Defendants' Executive Committee*            *Defendants' Executive Committee*

**Gibson, Dunn & Crutcher LLP**              **Ice Miller LLP**

By:    /s/ Joel A. Feuer                     By:    /s/ Matthew L. Fornshell
       Joel A. Feuer                                Matthew L. Fornshell
       jfeuer@gibsondunn.com                        matthew.fornshell@icemiller.com

2029 Century Park East                       250 West Street
Los Angeles, CA 90067                        Columbus, OH 43215

*Defendants' Executive Committee*            *Defendants' Executive Committee*

21

**Katten Muchin Rosenman LLP**

By:    /s/ David C. Bohan
       David C. Bohan
       david.bohan@kattenlaw.com

525 West Monroe Street
Chicago, IL 60661

*Defendants' Executive Committee*

**O'Melveny & Myers LLP**

By:    /s/ Daniel L. Cantor
       Daniel L. Cantor
       dcantor@omm.com

Times Square Tower
7 Times Square
New York, NY 10036

*Defendants' Executive Committee*

**Proskauer Rose LLP**

By:    /s/ Gregg M. Mashberg
       Gregg M. Mashberg
       gmashberg@proskauer.com
       Stephen L. Ratner
       sratner@proskauer.com

11 Times Square
New York, NY 10036

*Defendants' Executive Committee*

**Milbank, Tweed, Hadley & McCoy LLP**

By:    /s/ Alan J. Stone
       Alan J. Stone
       astone@milbank.com
       Andrew M. LeBlanc
       aleblanc@milbank.com

1 Chase Manhattan Plaza
New York, NY 10005

*Defendants' Executive Committee*

**Potter Stewart Jr. Law Offices, P.C.**

By:    /s/ David N. Dunn
       David N. Dunn
       ddunn@potterstewartlaw.com

The Merchants Bank Building
205 Main Street, Suite 8
Brattleboro, VT 05301

*Defendants' Executive Committee*

**Robinson & Cole LLP**

By:    /s/ Steven R. Schoenfeld
       Steven R. Schoenfeld
       sschoenfeld@rc.com

885 Third Avenue
Suite 2800
New York, NY 10022

*Defendants' Executive Committee*

**Ropes & Gray LLP**

By: <u>/s/ D. Ross Martin</u>
   D. Ross Martin
   ross.martin@ropesgray.com

1211 Avenue of the Americas
New York, NY 10036-8704

*Defendants' Executive Committee*

**Steptoe & Johnson LLP**

By: <u>/s/ Mark A. Neubauer</u>
   Mark A. Neubauer
   mneubauer@steptoe.com

2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067

*Defendants' Executive Committee*

**Wilmer Cutler Pickering Hale and Dorr LLP**

By: <u>/s/ Philip D. Anker</u>
   Philip D. Anker
   philip.anker@wilmerhale.com

7 World Trade Center
250 Greenwich Street
New York, NY 10007

*Defendants' Executive Committee*

**EXHIBIT A**

| | |
|---|---|
| 11-cv-04522-WHP | Deutsche Bank Trust Co. Americas, et al. v. Dhabi Inv. Auth., et al. |
| 11-cv-04538-WHP | William A. Niese et al. v. Alliance Bernstein L.P. |
| 11-cv-04784-WHP | Deutsche Bank Trust Co. Americas, et al. v. Adaly Opportunity Fund TD Sec. Inc. C/O Adaly Inv. Mgmt. Co. et al. |
| 11-cv-04900-WHP | Deutsche Bank Trust Co. Americas, et al. v. Cantor Fitzgerald & Co., et al. |
| 11-cv-05136-WHP | Deutsche Bank Trust Co. Americas, et al. v. World Markets Corp., et al. |
| 11-cv-09319-WHP | Deutsche Bank Trust Co. Americas, et al. v. Blackrock Institutional Trust Co., N.A., et al. |
| 11-cv-09406-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sumitomo Trust & Banking Co. (U.S.A.), et al. |
| 11-cv-09407-WHP | Deutsche Bank Trust Co. Americas, et al. v. Merrill Lynch Trust Co., et al. |
| 11-cv-09408-WHP | Deutsche Bank Trust Co. Americas, et al. v. Eaton Vance Multi Cap Growth Portfolio, et al. |
| 11-cv-09409-WHP | Deutsche Bank Trust Co. Americas, et al. v. Richard Paniagua, et al. |
| 11-cv-09410-WHP | Deutsche Bank Trust Co. Americas, et al. v. King, et al. |
| 11-cv-09510-WHP | Deutsche Bank Trust Co. Americas, et al. v. Anderson, et al. |
| 11-cv-09511-WHP | Deutsche Bank Trust Co. Americas, et al. v. Burroughs Wellcome Fund, et al. |
| 11-cv-09512-WHP | Deutsche Bank Trust Co. Americas, et al. v. Aqua America-Gabelli Asset Mgt, et al. |
| 11-cv-09514-WHP | Deutsche Bank Trust Co. Americas, et al. v. Assoc. Bank Green Bay, NA, et al. |
| 11-cv-09515-WHP | Deutsche Bank Trust Co. Americas, et al. v. Mazur |
| 11-cv-09568-WHP | Deutsche Bank Trust Co. Americas, et al. v. Emps. Ret. Fund of the City of Dallas, et al. |
| 11-cv-09569-WHP | Deutsche Bank Trust Co. Americas, et al. v. Bank of America N.A. / GWIM Trust Operations, et al. |

| 11-cv-09570-WHP | Deutsche Bank Trust Co. Americas, et al. v. Long, et al. |
|---|---|
| 11-cv-09571-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ader, et al. |
| 11-cv-09572-WHP | Deutsche Bank Trust Co. Americas, et al. v. First Republic Bank, et al. |
| 11-cv-09581-WHP | Deutsche Bank Trust Co. Americas, et al. v. Robert Dishon Family Trust, et al. |
| 11-cv-09582-WHP | Deutsche Bank Trust Co. Americas, et al. v. 1st Source Bank, et al. |
| 11-cv-09583-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sirius Int'l Ins. Corp., et al. |
| 11-cv-09584-WHP | Deutsche Bank Trust Co. Americas, et al. v. Aetna, Inc., et al. |
| 11-cv-09585-WHP | Deutsche Bank Trust Co. Americas, et al. v. Wells Fargo Bank, N.A. et al. |
| 11-cv-09586-WHP | Deutsche Bank Trust Co. Americas, et al. v. Sowood Alpha Fund LP, et al. |
| 11-cv-09587-WHP | Deutsche Bank Trust Co. Americas, et al. v. RBS Sec., et al. |
| 11-cv-09588-WHP | Deutsche Bank Trust Co. Americas, et al. v. Auto. Machinists Pension Trust Fund, et al. |
| 11-cv-09589-WHP | Deutsche Bank Trust Co. Americas, et al. v. Huntington Nat'l Bank, et al. |
| 11-cv-09590-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ameriprise Trust Co., et al. |
| 11-cv-09591-WHP | Deutsche Bank Trust Co. Americas, et al. v. Goodrich Corp MAS TR QUAL EMPL BEN, et al. |
| 11-cv-09592-WHP | Deutsche Bank Trust Co. Americas, et al. v. Am. Elec. Power, et al. |
| 11-cv-09593-WHP | Deutsche Bank Trust Co. Americas, et al. v. Edwards & Sons, et al. |
| 11-cv-09594-WHP | Deutsche Bank Trust Co. Americas, et al. v. Verizon Inv. Mgmt. Corp., et al. |
| 11-cv-09595-WHP | Deutsche Bank Trust Co. Americas, et al. v. Alliance Capital Mgmt LLC, et al. |
| 11-cv-09596-WHP | Deutsche Bank Trust Co. Americas, et al. v. Wells Fargo Invs., LLC, et al. |
| 11-cv-09597-WHP | Deutsche Bank Trust Co. Americas, et al. v. ING Trust Equity Inc. Port et al. |
| 11-cv-09598-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ametek Inc Emps. Master Ret. |

| | Trust, et al. |
|---|---|
| 11-cv-09599-WHP | Deutsche Bank Trust Co. Americas, et al. v. Pandora Select Partners LP, et al. |
| 11-cv-09600-WHP | Deutsche Bank Trust Co. Americas, et al. v. U.S. Bank, N.A. et al. |
| 12-cv-00061-WHP | Deutsche Bank Trust Co. Americas, et al. v. Waterman Broad. Corp., et al. |
| 12-cv-00062-WHP | Deutsche Bank Trust Co. Americas, et al. v. National Elec. Benefit Fund, et al. |
| 12-cv-00063-WHP | Deutsche Bank Trust Co. Americas, et al. v. McGurn, et al. |
| 12-cv-00064-WHP | Deutsche Bank Trust Co. Americas, et al. v. Ohlson Enters., et al. |
| 12-cv-00065-WHP | Deutsche Bank Trust Co. Americas, et al. v. 1994 Alicia P. Guggenheim, et al. |
| 12-cv-00549-WHP | Deutsche Bank Trust Co. Americas, et al. v. Fushimi, et al. |
| 12-cv-00550-WHP | Deutsche Bank Trust Co. Americas, et al. v. Oppenheimer Main St. Select Fund, et al. |
| 12-cv-00551-WHP | William A. Niese et al. v. A.G. Edwards Inc. |
| 12-cv-00552-WHP | Deutsche Bank Trust Co. Americas, et al. v. AIG Life Ins. Co., et al. |
| 12-cv-00554-WHP | William A. Niese et al. v. Chandler Trust No. 1 |
| 12-cv-00555-WHP | William A. Niese et al. v. ABN AMRO Clearing Chicago LLC |

## CERTIFICATE OF SERVICE

I, Allison M. Wuertz, an attorney admitted to practice in the State of New York and associated with the law firm of Katten Muchin Rosenman LLP, hereby certify that on February 4, 2013, I caused service of:  (i) Reply Memorandum in Further Support of Defendants' Joint Phase One Motion to Dismiss the Individual Creditor Actions with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6); and (ii) the Declaration of David C. Bohan, and the exhibits thereto, made by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action.

Dated:          February 4, 2013
                New York, New York


                                        /s/ Allison M. Wuertz
                                        Allison M. Wuertz