# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

Multidistrict Litigation No. 11 MD 2296 (RJS)
Master Case File No. 12 MC 2296 (RJS)

---

## IN RE TRIBUNE COMPANY
## FRAUDULENT CONVEYANCE LITIGATION

---

MEMORANDUM AND ORDER
September 23, 2013

---

RICHARD J. SULLIVAN, District Judge:

This multidistrict litigation ("MDL"), which consolidates state and federal cases from across the country, arises out of the leveraged buyout ("LBO") of the Tribune Company ("Tribune") in 2007 and its subsequent bankruptcy in 2008. Plaintiffs in these cases – the Official Committee of Unsecured Creditors (the "Committee"), which represents Tribune's bankruptcy estate, and hundreds of individual creditors of Tribune (the "Individual Creditors" or "Creditors"[1]) – seek to claw back funds that were distributed to individuals and entities bought out in the course of the LBO ("Defendants"). The Creditors' suits (the "Individual Creditor Actions") target transactions that the Committee's suits (the "Committee Actions") are already seeking to unwind; however, the Creditors and the Committee assert different claims in pursuit of their shared end.

Now before the Court is Defendants' consolidated motion to dismiss the Individual Creditor Actions pursuant to Federal Rule of Civil Procedure 12(b)(6). The narrow questions raised by the motion are whether Section 546(e) of the Bankruptcy Code prohibits the Creditors' state law constructive fraudulent conveyance claims now that Tribune has filed for bankruptcy, and, if not, whether the Creditors are deprived of standing to proceed with their constructive fraudulent conveyance claims outside of bankruptcy while the Committee simultaneously asserts different fraudulent conveyance claims to unwind the same transactions.[2] For the

---

[1] The Individual Creditors are comprised of both the "Note Holders" and the "Retirees" as defined in Master Case Order No. 3. (11 MD 2296, Doc. No. 1395.)

[2] At the outset, to avoid confusion, the Court notes that "standing" here denotes a creditor's power to bring suit in light of the stay on creditor litigation while a bankruptcy trustee litigates estate claims.

reasons set forth below, the Court concludes that Section 546(e) does not prohibit the Individual Creditors' fraudulent conveyance claims, but that Section 362(a)(1) nonetheless deprives the Individual Creditors of standing to avoid the same transactions that the Committee is simultaneously suing to avoid.

## I. BACKGROUND[3]

Tribune is a 166-year-old media corporation that publishes the *Chicago Tribune* and the *Los Angeles Times* and also operates business units in radio, television, and the Internet. In the mid-2000s, this storied company's financial condition was deteriorating, so on April 1, 2007, Tribune's board of directors approved a buyout plan proposed by private equity investor Sam Zell ("Zell"). (NH Compl. ¶¶ 2–3; *see* Retiree Compl. ¶ 34.) The LBO paid out more than $8.2 billion to thousands of public

shareholders in exchange for their Tribune shares. (NH Compl. ¶¶ 62, 66; Retiree Compl. ¶¶ 37, 40.) Although the company operated for a year after it was taken private, when the economy and the publishing industry entered a steep decline in 2008, Tribune commenced bankruptcy proceedings pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* (NH Compl. ¶ 112; Retiree Compl. ¶ 13.)

After Tribune filed for bankruptcy, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") created the Committee to stand in the shoes of the bankruptcy trustee and to file adversary proceedings for the benefit of Tribune's creditors. (*In re Tribune Co.*, 08-13141 (Bankr. D. Del.), Docket ("Bankr. Doc.") Nos. 5668 and 6150.)[4] In this capacity, the Committee filed suit against cashed-out Tribune shareholders, Tribune's officers and directors, financial advisors, Zell, and others who benefited from the buyout. (*Official Comm. of Unsecured Creditors of Tribune Co. v. Fitzsimons*, No. 10-ap-54010 (KJC) (Bankr. D. Del.), Doc. ("Committee SH Action Doc.") No. 1; *Official Comm. of Unsecured Creditors of Tribune Co. v. Citigroup Global Mkts., Inc.*, No. 12-ap-50446 (KJC) (Bankr. D. Del.), Doc. No. 1.) Among other claims, the Committee sought to unwind the LBO by asserting that the shareholder buyouts constituted intentional fraudulent conveyances. (Committee SH Action Doc. No. 1 ¶¶ 317–320.)

However, for reasons that will be made apparent below, the Committee did not

---

*See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700–01 (2d Cir. 1989).

[3] The following facts are drawn from the Third Amended Complaint in *Deutsche Bank Trust Co. Ams. v. Adaly Opportunity Fund TD Sec., Inc.*, No. 11 Civ. 4784 (RJS) (S.D.N.Y. Oct. 9, 2012), Doc. No. 704 ("NH Compl.") and the Second Amended Complaint in *Niese v. Alliance Bernstein L.P.*, No. 11 Civ. 4538 (S.D.N.Y. Dec. 20, 2011), Doc. No. 203 ("Retiree Compl.") – which, for the purposes of factual allegations, are substantively identical to the complaints filed, respectively, in the other Note Holder and Retiree Actions. (Def.'s Mem. of Law ("Mem.") at 3 n.3.) In deciding the motion, the Court also considered Defendants' memorandum of law in support of their motion, the Individual Creditors' brief in opposition ("Opp."), Defendants' reply ("Reply"), and the transcript of the May 23, 2013 oral argument on the motion ("Arg. Tr."). After the motion was fully briefed, the parties also submitted several letters with supplemental authority, which the Court also considered. (*See* Doc. Nos. 2358, 2393, 2420, 2476, 2490, 2498, 2499, 2515, 2523, 2526, 2576, 2580.)

---

[4] The Bankruptcy Court confirmed a plan for Tribune's reorganization (the "Plan") on July 23, 2012. (Bankr. Doc. No. 12074.) The Plan transferred the Committee Actions to a litigation trust administered by trustee Marc Kirschner (the "Litigation Trustee"). (*Id.*)

assert a claim for *constructive* fraudulent conveyance. Consequently, on March 1, 2011, the Individual Creditors moved the Bankruptcy Court to permit them to file state-law constructive fraudulent conveyance ("SLCFC") claims outside of bankruptcy.[5] (Bankr. Doc. No. 8201.) The Bankruptcy Court conditionally lifted the stay because it found that, although the estate had filed intentional fraudulent conveyance claims, it had not asserted SLCFC claims within the applicable time period under 11 U.S.C. § 546(a) for trustee-filed fraudulent conveyance actions. (Bankr. Doc. No. 8740 ("Bankr. Decision") ¶ 2.) The Bankruptcy Court expressly limited its decision, however, stating that it "made no finding and issue[d] no ruling determining the standing of [creditors] to assert SLCFC Claims or whether such claims are preempted or otherwise impacted by 11 U.S.C. § 546(e)," thus leaving those determinations for this Court. (Bankr. Decision ¶ 8 n.2.)

Based on the Bankruptcy Court's decision to conditionally lift the stay on the SLCFC claims, starting on June 2, 2011, Individual Creditors across the country initiated SLCFC actions in more than twenty state and federal courts to unwind the buyouts of Tribune shareholders. (*See e.g.*, NH Compl. ¶¶ 115–160; Retiree Compl. ¶¶ 314–329; *see also* Mem. at 7.) By December 19, 2011, the filings related to the LBO had become sufficiently voluminous that the Judicial Panel on Multidistrict Litigation consolidated the Individual Creditor Actions and the Committee Actions here in the Southern District of New York. *In re Tribune Co. Fraudulent Conveyance*

*Litig.*, 831 F. Supp. 2d 1371, 1371 (J.P.M.L. 2011).

Defendants filed their motion to dismiss and memorandum of law on November 6, 2012 (Doc. Nos. 1670, 1671[6]), and the Individual Creditors responded on December 21, 2012 (Doc. No. 2086). The motion was fully briefed as of February 4, 2013. (Doc. No. 2293.) On March 27, 2013, this MDL was transferred to my docket (Doc. No. 2419), and on May 23, the Court heard oral argument on the motion (Doc. No. 2560).

## II. DISCUSSION

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must "provide the grounds upon which his claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). He must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants assert two reasons why the Individual Creditor Actions are barred as a matter of law. First, Defendants argue that creditors' claims under state law are prohibited by 11 U.S.C. § 546(e), which bars a bankruptcy trustee from asserting constructive fraudulent conveyance claims to unwind "settlement payments" such as shareholder buyouts in an LBO. (Mem. at 9–21.) Second, Defendants argue that, because of Tribune's ongoing bankruptcy and the Committee's pursuit of intentional fraudulent conveyance claims, the Individual Creditors lack standing to assert constructive fraudulent conveyance claims that duplicate the Committee's claims. (*Id.*

---

[5] Intentional fraudulent conveyance claims require a showing of actual fraud by the transferor, whereas constructive claims impute fraudulent intent to transfers that, among other things, render the transferor insolvent.

[6] Unless otherwise noted, docket citations refer to the consolidated MDL docket sheet, 11 MD 2296.

at 22–35.)   The Court will address each argument in turn.

### A.   The Effect of Section 546(e) on State-Law Claims

Defendants contend that 11 U.S.C. § 546(e) bars not only the Committee from asserting constructive fraudulent conveyance claims, but the Individual Creditors as well. (Mem. at 9–21.) Before turning to that provision, a brief overview of trustee avoidance powers may be helpful.

A bankruptcy trustee is empowered to assert various fraudulent conveyance claims under the Bankruptcy Code.   Section 544(b)(1) gives a trustee power to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor."   This provision empowers the trustee to utilize, on behalf of the estate, any legal theory of recovery that a creditor could assert under state law.   Section 548(a)(1) also permits a trustee to avoid fraudulent transfers by the debtor, but this Section creates a federal cause of action in the trustee's own name. Under Section 548(a)(1), there are two different avenues by which a trustee may avoid a transaction.   Subsection (A) permits a trustee to:

> avoid any transfer . . . of an interest of the [bankrupt] debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the [bankruptcy], if the debtor voluntarily or involuntarily made such transfer . . . with *actual intent* to hinder, delay, or defraud any entity . . . .

11 U.S.C. § 548(a)(1)(A) (emphasis added). In contrast to Subsection (A)'s avoidance power for intentional fraudulent transfers,

Subsection (B) permits a trustee to avoid transactions that were constructively fraudulent due to the debtor's insolvency and the adequacy of the consideration the debtor received in exchange for the transfer. 11 U.S.C. § 548(a)(1)(B).

In this way, the Bankruptcy Code girds a trustee with broad avoidance powers; however, it also strips away those powers in certain circumstances. In particular, Section 546(e) dictates that "[t]he trustee [in bankruptcy] may not avoid a transfer that is a . . . settlement payment."   11 U.S.C. § 546(e).   The term "settlement payment" refers to any kind of payment that "complete[s] a transaction in securities," *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.* 651 F.3d 329, 336 (2d Cir. 2011), including a "payment for shares during an LBO," *In re Resorts Int'l*, 181 F.3d 505, 515–16 (3d Cir. 1999); *see Enron Creditors*, 651 F.3d at 336.   Section 546(e) makes one exception, however: a trustee may utilize Section 548(a)(1)(A) to avoid actually fraudulent transfers.   Therefore, in conjunction, Sections 546(e) and 548(a)(1)(A) prohibit a bankruptcy trustee from asserting a constructive fraudulent conveyance claim to unwind LBO payouts. Defendants argue that the Individual Creditors' claims are similarly barred.

#### 1.   Construing Section 546(e)

To determine whether Section 546(e) also applies to the Individual Creditors, the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). As discussed above, Section 546(e) addresses its prohibition on avoiding

4

settlement payments only to the bankruptcy trustee, and the Court works from the premise "that Congress says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). "[H]ad Congress intended [Section 546(e)] to be broadly [applicable], it could simply have said so, as it did in describing the parties who [may] act under other sections of the Code." *See Hartford Underwriters*, 530 U.S. at 7 (analyzing whether Section 506(c) of the Bankruptcy Code applies only to the bankruptcy trustee or also to an administrative claimant). And where, as here, "a statute [prohibits] specific action and designates a particular party [as barred from] tak[ing] it[, that] is surely among the least appropriate [moments] in which to presume nonexclusivity." *Id.* at 6. Moreover, "the fact that the sole party named – the trustee – has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would [apply a limitation] to him and not to others." *Id.* at 7. Because Congress has spoken so clearly with respect to the object of the limitation in Section 546(e), the Court discerns no basis in the text for barring SLCFC claims brought by Individual Creditors who have no relation to the bankruptcy trustee. *See PHP Liquidating, LLC v. Robbins*, 291 B.R. 603, 607 (Bankr. D. Del. 2003) (concluding that Section 546(e), by its own terms, does not apply to unsecured creditors seeking to unwind a fraudulent conveyance); *see also Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987) ("Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete." (quotation marks, punctuation, and citations omitted)).

### 2.  Implied Preemption

Notwithstanding the straightforward language of the statute, Defendants urge the Court to find that Congress impliedly preempted constructive fraudulent conveyance claims brought by state-law creditors when it enacted Section 546(e). (Mem. at 14–21.) Although "[i]mplied preemption analysis does not justify 'a freewheeling judicial inquiry . . . ,'" *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1985 (2011) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 111 (1992)), there are circumstances in which a court may infer that Congress clearly intended to preempt state law, even without expressly saying so, *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008). These include situations (1) "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law," *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010); (2) "where local law conflicts with federal law such that it is impossible for a party to comply with both . . . ," *id.*; and (3) where "state law . . . 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, Nos. 10-4135-cv (L), 10-4329-cv (XAP), 2013 WL 3863890, at *23 (2d Cir. July 26, 2013) (distinguishing "conflict preemption" from "obstacle preemption" but conceding that the latter may be "only an intermediate step down the road to impossibility preemption").

Here, Defendants focus on the third type of implied preemption – obstacle preemption – arguing that the Individual Creditors' claims "would assuredly frustrate the purposes of the federal statute and stand as an obstacle to its accomplishment." (Mem. at 13 (internal citations and quotation marks omitted).)      "The burden of establishing obstacle preemption . . . is heavy . . . .  Indeed, federal law does not preempt state law under obstacle preemption analysis unless 'the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.'" *MTBE Prods. Liab.*, 2013 WL 3863890, at *23 (quoting *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006)).

In every pre-emption case, "the purpose of Congress is the ultimate touchstone . . . ," *Wyeth v. Levine*, 555 U.S. 555, 565 (2009), and the first place to look for Congress's purpose is in the language it used, *see O&G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 161 (2d Cir. 2008) (declining to infer preemption by "'supply[ing] that which [was] omitted by the legislature'" when a federal statute "contain[ed] no limitation on its face" and utilized "unambiguous" language (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 127 (2d Cir. 2003))).  As already discussed, it is not evident from the language of Section 546(e) that Congress intended to block creditors from filing SLCFC claims.   Moreover, Congress has repeatedly issued reports discussing Section 546(e), and these reports refer only to the provision's effect on the trustee.[7]  Therefore,

Congress's language counsels against Defendants' argument.

Nevertheless, Defendants urge the Court to consider the policy goals that spurred congressional action. (Mem. at 14–16.)  By its own accounts, Congress enacted Section 546(e) in order to provide certainty to securities transactions and, in so doing, to enhance the stability of the nation's financial markets.  *See, e.g.*, H.R. Rep. No. 95-595, at 391 (1977); *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 848 (10th Cir. 1990) (finding that Congress enacted Section 546(e) to "protect the nation's financial markets from the instability caused by the reversal of settled securities transactions" (citing S. Rep. No. 989, 95th Cong., 2d Sess. 8 (1978))).     However, Congress pursues a host of other aims through the Bankruptcy Code, not least making whole the creditors of a bankruptcy estate.  *See, e.g.*, Elizabeth Warren, *The New Property*, 92 Mich. L. Rev. 336, 344–61 (1993).  It is not at all clear that Section 546(e)'s purpose with respect to securities transactions trumps all of bankruptcy's other purposes.  *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2044 (2012) (acknowledging that "no legislation pursues its purposes at all costs, and every statute purposes, not only to achieve certain ends, but also to achieve them by particular means"); *cf. Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982) (determining that, although the purpose of federal antitrust law is to prohibit anticompetitive conduct, a "state statute is not preempted . . . simply because [it] might have an anticompetitive effect" (citations omitted)).

To the contrary, Congress has repeatedly indicated that it did not enact Section 546(e) to protect market stability to the exclusion of all other policies.    For example, the Commodities Futures Trading Commission

---

[7] *See* H.R. Rep. No. 95-595, at 391 (1977) (referring only to the trustee in the context of § 546(e)); S. Rep. No. 95-989, at 8, 106 (1978) (same); H.R. Rep. No. 96-1195, at 6, 17 (1980) (same); H.R. Rep. No. 97-420, at 1–2 (1982) (same); H.R. Rep. No. 109-648, at 6 (2006) (same).

and Commodity Exchange, Inc. petitioned Congress to amend Section 546(e) to expressly preempt SLCFC claims. *See Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil & Constitutional Rights of the Comm. on the Judiciary*, 94th Cong., at 2406 (1976); *Bankruptcy Reform Act: Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Comm. on the Judiciary*, 95th Cong., at 1296–97 (1977). Nevertheless, Congress declined to do so when it enacted Section 546(e) in 1977.[8] Moreover, on each of the eight occasions when it has amended Section 546(e),[9] Congress has never added an express preemption provision, even after the Bankruptcy Court for the District of Delaware held that Section 546(e) *permits* creditors to assert SLCFC claims under the right circumstances. *See PHP*, 291 B.R. at 607. And tellingly, Congress chose not to extend Section 546 to SLCFC claims filed *before* bankruptcy or to intentional fraudulent conveyance claims brought *after* a bankruptcy filing, even though these types

of claims pose the very same threat to the stability of securities markets. Obviously, Congress has struck some balance between various policy priorities, which means that it has determined that fraudulent conveyance actions are not necessarily and in all cases "repugnant" to the interest of market stability. *See MTBE Prods. Liab.*, 2013 WL 3863890, at *23. The Court is not authorized to upend Congress's balance between the operation of state and federal law, even if doing so would clearly benefit investors and markets. *See O&G Indus.*, 537 F.3d at 161.

Furthermore, Congress has demonstrated elsewhere in the Bankruptcy Code that it knows how to – and is willing to – preempt an individual creditor's state law claims. *See* 11 U.S.C. § 544(b)(2). This is powerful evidence that Congress did not intend for Section 546(e) to preempt state law. *See MTBE Prods. Liab.*, 2013 WL 3863890, at *23 (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)); *see also Wyeth*, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts . . . .")). Specifically, in Section 544(b)(1), Congress empowered the trustee to avoid any fraudulent conveyances that a creditor could avoid under state law. Then in Section 544(b)(2), Congress withdrew this power in the case of certain charitable contributions, much in the way that Congress limited a trustee's power to avoid certain "settlement payments" under Section 546(e). However, Section 544(b)(2) goes further: it states that "any claim *by any person* to recover a transferred contribution . . . under Federal or State law in a Federal or State court shall be preempted by the commencement of the [bankruptcy] case." 11 U.S.C. § 544(b)(2)

---

[8] The Supreme Court has used Congress's decision not to explicitly implement the recommendations of interest groups as evidence that Congress rejected those proposals. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013) (citing a hearing witness's support for a bill eliminating the fraud-on-the-market theory from private securities litigation as evidence that Congress was aware of that option and chose not to pursue it); *see also Capitol Records, LLC, v. ReDIGI Inc.*, No. 12 Civ. 95 (RJS), 2013 WL 1286134, at *15 (S.D.N.Y. Mar. 30, 2013) ("[T]he Court cannot of its own accord condone wholesale [statutory revision], particularly when Congress itself has declined to take that step.").

[9] *See* Pub. L. No. 109-390, § 5(b)(1) (2006); Pub. L. No. 109-8, § 907(o)(3) (2005); Pub. L. No. 105-183, § 3(c)(1) (1998); Pub. L. No. 103-394, § 501(b)(4)(A) (1994); Pub. L. No. 101-311, § 203 (1990); Pub. L. No. 99-554, § 283(l) (1986); Pub. L. No. 98-353, § 351(3) (1984); Pub. L. No. 97-222, § 4 (1982).

(emphasis added). Section 546(e), as we have seen, names only the trustee. Congress's explicit preemption of all creditors' state-law claims in one section of the Code undermines the suggestion that Congress intended to *implicitly* preempt state-law claims only two sections later. *See MTBE Prods. Liab.*, 2013 WL 3863890, at *23; *Integrated Solutions, Inc. v. Svc. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997) ("The clear lack of Congressional intent to preempt state law . . . is even more telling given the explicit language the Congress uses when it intends to displace state nonbankruptcy law in other provisions of the Code." (citing 11 U.S.C. §§ 541(c)(1), 1123(a))).

Defendants also make much out of a recent decision in which Judge Rakoff held that a Bankruptcy Code provision very similar to Section 546(e) prohibits an avoidance action by creditors, not just the bankruptcy trustee. (*See* Doc. No. 2293 at 5 (citing *Whyte v. Barclays Bank PLC*, 494 B.R. 196 (S.D.N.Y. 2013)).) However, that case is readily distinguishable. In *Whyte*, a bankruptcy plan under Chapter 11 designated one entity, the SemGroup Litigation Trust ("SemGroup"), to serve in the capacity of both the bankruptcy trustee and the representative of outside creditors. SemGroup sued to avoid several "swap transactions," and the parties disputed the application of 11 U.S.C. § 546(g) to SemGroup's claim. Section 546(g) prohibits a bankruptcy trustee from avoiding certain "swap transactions" in much the same way that Section 546(e) bars a trustee from avoiding settlement payments. Therefore, in its role as bankruptcy trustee, SemGroup was clearly prohibited from avoiding swap transactions. In light of that prohibition and because 11 U.S.C. § 546(a)(1)(A) gives a bankruptcy trustee only two years after the initiation of bankruptcy proceedings to file

an avoidance claim, SemGroup waited for two years and then sought to avoid several swap transactions in its role as the representative of outside creditors. Judge Rakoff concluded that this was impermissible. He reasoned that, because Section 546(g) barred SemGroup-as-trustee from avoiding these transactions, to allow SemGroup-as-creditor – itself a "creature of a Chapter 11 plan" – to avoid the transaction "by way of a state fraudulent conveyance action would stand as a major obstacle to the purpose and objectives of" the prohibition in Section 546(g). *Whyte*, 494 B.R. at 200. In essence, SemGroup could not simply take off its trustee hat, put on its creditor hat, and file an avoidance claim that Section 546(g) prohibited the trustee from filing. By contrast, the Individual Creditors here, unlike SemGroup, are not creatures of a Chapter 11 plan, and they are in no way identical with the bankruptcy trustee; as a result, there is no reason why Section 546(e) should apply to them in the same way that Section 546(g) applied to SemGroup.[10]

Finally, Defendants contend that, if the Court does not find that Section 546(e)

---

[10] Defendants cite three other cases in which federal courts blocked state causes of action because of Section 546(e). However, each of the cases likewise involved a successor to the bankruptcy trustee – which is explicitly bound by Section 546(e) – so none of them addresses whether Section 546(e) should apply to individuals or entities other than the trustee. *See Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009) (blocking state law claims by the committee-successor to the trustee for unjust enrichment and impermissible shareholder distributions because they were effectively restyled constructive fraudulent conveyance claims); *U.S. Bank N.A. v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 812, 815 (N.D. Tex. 2012) (barring similar claims by the litigation trust that was the assignee of the bankruptcy trustee's claims); *Hechinger Inv. Co. v. Fleet Retail Fin. Grp.*, 274 B.R. 71, 74, 95–96 (D. Del. 2002) (prohibiting similar claims by the committee-successor to the bankruptcy trustee).

preempts *all* SLCFC claims, then bankruptcy trustees will simply assign these claims to creditors any time Section 546(e) bars the trustee from acting. (Mem. at 21; Arg. Tr. 13:23–14:4.) These concerns are overstated. For the reasons discussed below in Section II.B.3, the Court concludes that a trustee may not relinquish constructive fraudulent conveyance claims while retaining intentional claims, so there is some limit to the collusion between trustee and creditors that Defendants fear. In any event, as discussed above, Congress is not ignorant of the implications of its phrasing in Section 546(e), and despite multiple opportunities and invitations to amend the provision, Congress has left it untouched. Defendants do not explain why the Court should act where Congress has repeatedly declined to do so. *See Wyeth*, 555 U.S. at 574 ("If Congress thought state law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point.").

Accordingly, the Court concludes that Congress said what it meant and meant what it said, s*ee Underwriters Ins. Co.*, 530 U.S. at 6; as such, Section 546(e) applies only to the trustee and does not preempt the Individual Creditors' SLCFC claims.

## B. Standing

Defendants alternatively move to dismiss the Individual Creditor Actions based on three different standing arguments. First, they argue that "[b]ankruptcy . . . eliminates the individual creditor rights in favor of collective bankruptcy-estate rights," so the Individual Creditors were permanently divested of the right to sue on their own behalf when Tribune commenced bankruptcy proceedings. (Mem. at 1, 22–24.) Defendants next argue that, even if the SLCFC claims could revert to the Individual

Creditors, the claims would need to be formally disclaimed by the trustee first, which Defendants contend did not happen here. (*Id.* 29–32.) Finally, Defendants argue that, even if the SLCFC claims could automatically revert to the Individual Creditors, the Creditors nevertheless lack standing because the Committee is suing to avoid the *same* transactions under an intentional fraudulent conveyance theory.[11] (*Id.* at 24–29.) The Court addresses each of these arguments in turn.

### 1. SLCFC Claims Are Not Permanently Stayed by Bankruptcy

Defendants argue that, when Tribune filed for bankruptcy, the "trustee (or creditors' committee) acquire[d] complete dominion and control over any creditor's state law claims," meaning that the Individual Creditors were permanently divested of their fraudulent conveyance claims. (Mem. at 22.) The Court disagrees. Filing for bankruptcy is powerful magic, but the mere filing does not operate as a permanent stay against the Individual Creditors' SLCFC Claims.

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). This stay applies to fraudulent conveyance

---

[11] Defendants raise a fourth related argument – that even if Plaintiffs have standing they are subject to the same limitations that Section 546(e) imposes on a trustee. (Mem. at 32–35.) This argument simply rehashes their primary argument with regard to Section 546(e), and that argument fails for the reasons discussed in Section II.A.

claims, even though fraudulent conveyance claims are asserted against the debtor's transferee rather than against the debtor. *In re Colonial Realty Co.*, 980 F.2d 125, 131–32 (2d Cir. 1992) ("[T]hird-party action[s] to recover fraudulently transferred property [are] properly regarded as undertaken to recover a claim against the debtor and [are] subject to the automatic stay pursuant to § 362(a)(1)." (citation and internal quotations omitted)). Significantly, however, the stay does not last forever; it remains only until the bankruptcy proceedings are closed, dismissed, or discharged. 11 U.S.C. § 362(c)(2).

For some claims, the stay may lift even earlier. For example, under Section 546(a)(1)(A), the trustee has only two years to commence avoidance actions after a debtor files for bankruptcy, *see* 11 U.S.C. §§ 301(b), 546(a)(1)(A), and if that prerogative expires, a "creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit," *In re Integrated Agri, Inc.*, 313 B.R. 419, 427–28 (Bankr. N.D. Ill. 2004); *see Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) ("[T]he trustee does not retain this exclusive right in perpetuity. The trustee's exclusive right to maintain a fraudulent conveyance action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action." (citing *Kathy B. Enterprises, Inc. v. United States*, 779 F.2d 1413, 1415 (9th Cir. 1986); *Federal Deposit Ins. Corp. v. Davis*, 733 F.2d 1083, 1085 (4th Cir. 1984))). Therefore, the automatic stay on the Individual Creditors' SLCFC claims expired in 2010 unless the Committee exercised its own avoidance powers. The stay does not, of its own operation, continue to bar the Creditors' claims.

## 2. SLCFC Claims Revert to Creditors Automatically

Defendants next argue that, even if the Individual Creditors' claims are no longer inexorably barred by the stay, the claims do not revert to the Individual Creditors automatically. Instead, Defendants assert, the bankruptcy court must take some affirmative action before SLCFC claims may revert to the Individual Creditors. (Mem. at 30.)

Defendants' argument is premised on the language of 11 U.S.C. § 349(b)(3), which states that, "[u]nless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ." Because Tribune's bankruptcy has not been dismissed, Defendants contend that the SLCFC claims could not have reverted. However, Defendants clearly misconstrue the bankruptcy estate's relationship with fraudulent conveyance claims. A fraudulent conveyance claim is not treated as property of the bankruptcy estate because the debtor has no personal recourse against the transferee in a fraudulent conveyance. *See Colonial Realty*, 980 F.2d at 131 ("In accordance with 11 U.S.C. § 541(a)(1) (1988), the property of a bankruptcy estate includes . . . 'all legal or equitable interests of the debtor in property as of the commencement of the case. . . . [T]he inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered." (internal quotation marks omitted)). Because creditors' avoidance claims are not property of the estate, the trustee has a limited time in

which to bring them, and the bankruptcy court need not discharge the debtor from bankruptcy in order for the avoidance claims to revert. Instead, when the two-year limitation on trustee avoidance claims expires, the claims automatically revert. *See* 11 U.S.C. § 546(a)(1)(A); *Integrated Agri*, 313 B.R. at 427–28 ("A creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring the claim."); *Klingman*, 158 B.R. at 113 ("The trustee's exclusive right to maintain a fraudulent conveyance action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action."); *see also In re Tessmer*, 329 B.R. 776, 779 (Bankr. M.D. Ga. 2005) ("[C]reditors do not regain the right to sue unless the trustee abandons the claim or he no longer has a viable cause of action because, for example, the statute of limitations has run." (internal quotation marks omitted)).[12]

---

[12] In support of their contention that fraudulent conveyance claims did not revert to the Individual Creditors, Defendants cite the Bankruptcy Act of 1867 and the Supreme Court's interpretation of that statute in *Trimble v. Woodhead*, 102 U.S. 647, 649 (1880). Although the Court in *Trimble* barred a creditor from pursuing a state-law avoidance claim after the trustee had failed to act, that holding does not apply to this case. Critically, unlike the modern Code, the Bankruptcy Act of 1867 explicitly treated fraudulent conveyance claims as property of the trustee once bankruptcy proceedings commenced. *See* Act of March 2, 1867, ch. 176, 14 Stat. 517, 523 (repealed 1878) (vesting "all the property conveyed by the [debtor] in fraud of his creditors . . . at once . . . in such [trustee]" as is appointed). Therefore, the Supreme Court's jurisprudence interpreting the 1867 law is inapposite here.

3. The Committee's Intentional Fraudulent Conveyance Action Deprives the Individual Creditors of Standing to Pursue SLCFC Claims

Finally, Defendants argue that, because the Committee is still pursuing its own avoidance action against the LBO beneficiaries, the Individual Creditors' co-extensive claims are held in abeyance by the automatic stay in Section 362 of the Code. (Mem. at 24–29.) In essence, Defendants claim that the Committee's effort to avoid the LBO payouts on a theory of intentional fraudulent conveyance deprives the Individual Creditors of standing to avoid the same payouts under a constructive theory. Therefore, the question is whether the Individual Creditors may attempt to unwind the shareholder payouts even though the Committee is simultaneously targeting the same shareholder payouts by different means. This is ultimately a question of statutory interpretation, which of course turns on the language of the Bankruptcy Code.

The Court sees nothing in the language of the Bankruptcy Code to suggest that Congress intended for Section 362(a)(1)'s automatic stay to apply differently based on the theory under which a trustee brings a fraudulent conveyance claim or the particular Code provision on which the trustee relies. Section 362(a)(1) does not differentiate between constructive and intentional fraudulent conveyance actions: it stays *any* action "to recover a claim against the debtor" from a third party. 11 U.S.C. § 362(a)(1); *see In re Colonial Realty Co.*, 980 F.2d at 132. Other sections reinforce that Congress did not conceive of the trustee's avoidance power as a severable commodity that could be sliced up by theory and distributed between the trustee and creditors. Section 546(a), which creates the

time limitation on a bankruptcy trustee's avoidance power, recognizes no distinction between trustee avoidance actions brought under Section 544(b)(1) and those brought under Section 548(a)(1), nor does it distinguish between avoidance actions based on theories of actual fraud versus those based on constructive fraud.  11 U.S.C. § 546(a).  Similarly, Section 544(b)(1) states that "the trustee may avoid any transfer of an interest in property . . . that is voidable under applicable [state] law by a creditor." 11 U.S.C. § 544(b)(1).  It refers only to the trustee's power to avoid a transfer and makes no reference to the particular theory that the trustee employs.  Ultimately, it is irrelevant whether the Committee styles its claim as intentional or constructive or as one under Section 548(a)(1)(A) or Section 544(b)(1).[13]    Section 362(a)(1) stays fraudulent conveyance claims by creditors for as long as the trustee is exercising its avoidance powers, so the stay deprives the Individual Creditors' of standing to bring SLCFC claims against the same transactions that the Committee is currently targeting.

Other courts have reached the same conclusion.  In a leading example, the Fourth Circuit confronted a situation in which a trustee and a creditor both sought to unwind the same transactions using different theories of recovery.  *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co. Inc.*, 187 F.3d

439, 441 (4th Cir. 1999).  The court held that the creditors "lack[ed] standing to pursue these claims in district court.  Until the trustee . . . abandoned his potential fraudulent conveyance action, the [creditors could ]not proceed with their claims in district court."  *Id.*[14]    Other courts within and outside the Fourth Circuit have echoed this rule, and the Individual Creditors fail to identify any authority that holds otherwise.  *See, e.g.*, *Poth v. Russey*, 99 F. App'x 446, 457 (4th Cir. 2004) ("When a creditor brings a state-law challenge to a transaction that a bankruptcy trustee could avoid as a fraudulent conveyance, the . . . creditor lacks standing to assert it.");  *N. Trust Bank, FSB v. Wells Fargo Bank, N.A.*, 464 B.R. 269, 269 (E.D. Va. 2012) (holding that where both the trustee and a creditor challenge the same transfer, the trustee's "ongoing prosecution of its fraudulent conveyance action 'on behalf of all creditors' deprive[d the creditor] of standing to pursue its individual claims");  *In re Teleservices Group, Inc.*, 463 B.R. 28, 36 (Bankr. W.D. Mich. 2012) (determining that, where the trustee and a creditor choose different remedies to "rectify . . . the same injustice," the "automatic stay prohibits" the creditor from prosecuting its claim);  *In re Bridge Info. Sys., Inc.*, 325 B.R. 825, 836 (Bankr. M.D. Mo. 2005) (recognizing that only the trustee's successor "has the statutory right to assert" fraudulent conveyance claims, to the exclusion of state law claimants seeking to recover for the same transactions);  *In re Tessmer*, 329 B.R. 776, 780 (Bankr. M.D. Ga. 2005) ("Once the Trustee acts under

---

[13] In its original Complaint, the Committee brought its fraudulent conveyance claim pursuant to both Section 544(b)(1) and Section 548(a)(1)(A).  (*See* Committee SH Action Doc. No. 1 ¶¶ 317–320.)  In the Fifth Amended Complaint, the Committee relies exclusively on Section 548(a)(1)(A) as the statutory basis for its claim.  (*See* Doc. No. 2565, Ex. 1 ¶¶ 376–381.)  This amendment, which caused no substantive change whatsoever to the nature of the Committee's claim, illustrates the irrelevance of the distinction the Committee seeks to draw between Section 544(b)(1) and Section 548(a)(1)(A), and it does not alter the Court's analysis.

[14] Defendants assert that *Ruppert* is not applicable because it arose during the two-year period within which only the trustee may bring fraudulent conveyance claims.  (Opp. at 34–35; Arg. Tr. at 40:8–41:2, 48:20–49:6.)  While the Court appreciates this distinction, the thrust of *Ruppert* – that a creditor is stayed from asserting a claim to unwind the same transaction that a bankruptcy trustee is already suing to unwind – is equally applicable in this context.

§ 544(b), the rights of all other parties to bring a suit based on the same transaction are fully and permanently cut off unless the Trustee later abandons the claim."); *Integrated Agri*, 313 B.R. at 427 ("A creditor who had the right to bring, outside of bankruptcy, a UFTA claim to recover prepetition transfers fraudulently made by the debtor, has no standing to commence or continue the suit during the bankruptcy case, until and unless the trustee relinquishes the Section 544(b) claim or the trustee no longer has a viable cause of action."); *cf. In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275–76 (5th Cir. 1983) (concluding that actions "by individual creditors under state fraudulent conveyance laws would interfere with [the] estate and with the equitable distribution scheme dependent on it, and are therefore appropriately stayed . . . . Any other result would produce near anarchy . . . .").[15]

The Individual Creditors seek refuge in the fact that the Committee supports their effort to bring SLCFC claims and that the Bankruptcy Court released the Individual Creditors to pursue those claims. (Opp. at

35–36.) Whether the Committee supports the Individual Creditors' SLCFC claims is of no moment. The Individual Creditors cite no authority for the proposition that a bankruptcy trustee's druthers may trump Section 362(a)(1), nor is the Court aware of any authority to that effect. With respect to the Bankruptcy Court, its decision is wholly inapposite to the question of standing, since the Bankruptcy Court expressly declined to decide that issue, leaving it to this Court.[16]

Bankruptcy is intended to consolidate multiple, potentially wasteful claims in one entity – the trustee. *See Ruppert*, 187 F.3d at 441–42; *St. Paul Fire*, 884 F.2d at 701. While the trustee acts, it cuts off the claims of creditors in order to seek a fair, orderly, and comprehensive resolution of the debtor's financial affairs so that, as much as it is possible, creditors are made whole. *See St. Paul Fire*, 884 F.2d at 701 ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."). Here, the Committee has not completely abandoned its avoidance powers and is actively seeking to reverse the payouts made to the LBO beneficiaries. (*See* Committee SH Action Doc. No. 1 ¶¶ 317–320; Doc. No. 2565, Ex. 1 ¶¶ 376–381.) Unless and until the Committee actually and completely

---

[15] The cases that the Individual Creditors cite as counterexamples are distinguishable. (Opp. at 36–37; Arg. Tr. at 49:7–18.) In *Lumbard v. Maglia*, the bankruptcy trustee for an individual creditor and the bankruptcy trustee for that creditor's debtor stipulated that they would "jointly prosecute," under the same complaint, a fraudulent conveyance by the debtor, "dividing the eventual proceeds." 621 F. Supp. 1529, 1532–33 (S.D.N.Y. 1985). Here, of course, only one of the parties is a bankruptcy trustee, and the parties are proceeding separately. In *Baron Fin. Corp. v. Natanzon*, the court determined that a creditor could bring suit for *different* misconduct than that which the bankruptcy trustee was litigating. 509 F. Supp. 2d 501, 520–21, 521 n.34 (D. Md. 2007). In *Integrated Agri*, the trustee's time to bring a fraudulent conveyance action had expired, and it had filed no fraudulent conveyance claims, so the court permitted creditor fraudulent conveyance claims. 313 B.R. at 428–29.

[16] The Bankruptcy Court took great pains to emphasize that it made "no finding and issue[d] no ruling determining the standing of the [Individual Creditors] to assert the Creditor SLCFC Claims . . . ." (Bankr. Decision ¶ 8 n.2.) Its decision to conditionally lift the stay against the Individual Creditors did not determine whether they "regained the right . . . to prosecute their respective [SLCFC] claims" simply because the two-year window on trustee fraudulent conveyance claims closed without the Committee filing a constructive fraud claim on behalf of the estate. (Bankr. Decision ¶ 2.)

abandons those claims, the Individual Creditors lack standing to bring their own fraudulent conveyance claims targeting the very same transactions.

IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court concludes that Section 546(e) does not preempt the Individual Creditors' SLCFC claims, but that Section 362(a)(1) nonetheless deprives the Individual Creditors of standing to avoid the same transactions that the Committee is simultaneously suing to avoid. Defendants' motion to dismiss is therefore GRANTED. The Clerk of the Court is respectfully directed to terminate the motions pending at Doc. No. 1670 of 11 MD 2296 and Doc. No. 61 of 12 MC 2296 and to close the cases listed in Exhibit A of this Memorandum and Order.

IT IS FURTHER ORDERED THAT Liaison Counsel in the Committee Actions shall confer with the parties remaining in this MDL and shall submit a joint letter to the Court no later than October 8, 2013, regarding the next steps in this litigation. In particular, the letter shall address whether the Litigation Trustee intends to proceed with its fraudulent conveyance claims or amend its Fifth Amended Complaint in order to abandon those claims. If the Litigation Trustee intends to seek leave to amend, the letter shall also set forth the parties' views as to the permissibility of such an amendment in light of, among other things, the Litigation Trustee's duties to Tribune's creditors. *See In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 23, 2013
New York, New York

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___
DATE FILED: 9 - 23 - 13

14

11

The Individual Creditors in the Note Holder Actions are represented by Plaintiffs' Liaison Counsel David Zensky, Mitchell P. Hurley, Deborah J. Newman, Jason L. Goldsmith, and Katherine P. Scully, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036.

The Individual Creditors in the Retiree Actions are represented by Jay Teitelbaum, Teitelbaum & Baskin LLP, 1 Barker Avenue, Third Floor, White Plains, New York 10601.

Defendants are represented by Executive Committee Members P. Sabin Willett, Bingham McCutchen LLP, One Federal Street, Boston, Massachusetts, 01220; Elliot Moskowitz, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017; Michael S. Dolusio, Dechert LLP, Cira Centre 2929 Arch Street, Philadelphia, Pennsylvania 19104; Andrew J. Entwistle, Entwistle & Capucci LLP, 280 Park Avenue, Twenty-Sixth Floor, New York, New York, 10017; Joel A. Feuer, Gibson, Dunn & Crutcher LLP, 2029 Century Park East, Los Angeles, California 90067; Matthew L. Fornshell, Ice Miller LLP, 250 West Street, Columbus, Ohio, 43215; David C. Bohan, Katten Munchin Rosenman LLP, 525 West Monroe Street, Chicago, Illinois 60661; Alan J. Stone, Millbank, Tweed, Hadley & McCoy LLP, 1 Chase Manhattan Plaza, New York, New York 10005; Daniel L. Cantor, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York 10036; David N. Dunn, Potter Stewart Jr. Law Offices, P.C., The Merchants Bank Building, 205 Main Street, Suite 8, Brattleboro, Vermont 05301; Gregg Mashberg, Proskauer Rose LLP, 11 Times Square, New York, New York 10036; Steven R. Schoenfeld, Robinson & Cole LLP, 885 Third Avenue, Suite 2800, New York, New York 10022; D. Ross Martin,

Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036; Mark A. Neubauer, Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067; Philip D. Anker, Wilmer Cutler Pickering Hale & Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

Exhibit A

| | |
|---|---|
| 1:11-cv-04522-RJS | 1:11-cv-09600-RJS |
| 1:11-cv-04538-RJS | 1:12-cv-00061-RJS |
| 1:11-cv-04784-RJS | 1:12-cv-00062-RJS |
| 1:11-cv-04900-RJS | 1:12-cv-00063-RJS |
| 1:11-cv-05136-RJS | 1:12-cv-00064-RJS |
| 1:11-cv-09319-RJS | 1:12-cv-00065-RJS |
| 1:11-cv-09406-RJS | 1:12-cv-00549-RJS |
| 1:11-cv-09407-RJS | 1:12-cv-00550-RJS |
| 1:11-cv-09408-RJS | 1:12-cv-00551-RJS |
| 1:11-cv-09409-RJS | 1:12-cv-00552-RJS |
| 1:11-cv-09410-RJS | 1:12-cv-00554-RJS |
| 1:11-cv-09510-RJS | 1:12-cv-00555-RJS |
| 1:11-cv-09511-RJS | 1:12-cv-04539-RJS |
| 1:11-cv-09512-RJS | |
| 1:11-cv-09514-RJS | |
| 1:11-cv-09515-RJS | |
| 1:11-cv-09568-RJS | |
| 1:11-cv-09569-RJS | |
| 1:11-cv-09570-RJS | |
| 1:11-cv-09571-RJS | |
| 1:11-cv-09572-RJS | |
| 1:11-cv-09581-RJS | |
| 1:11-cv-09582-RJS | |
| 1:11-cv-09583-RJS | |
| 1:11-cv-09584-RJS | |
| 1:11-cv-09585-RJS | |
| 1:11-cv-09586-RJS | |
| 1:11-cv-09587-RJS | |
| 1:11-cv-09587-RJS | |
| 1:11-cv-09588-RJS | |
| 1:11-cv-09589-RJS | |
| 1:11-cv-09590-RJS | |
| 1:11-cv-09591-RJS | |
| 1:11-cv-09592-RJS | |
| 1:11-cv-09593-RJS | |
| 1:11-cv-09594-RJS | |
| 1:11-cv-09595-RJS | |
| 1:11-cv-09596-RJS | |
| 1:11-cv-09597-RJS | |
| 1:11-cv-09598-RJS | |
| 1:11-cv-09599-RJS | |