FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
SCOTT M. BERMAN
ERIC CORNGOLD
HAL NEIER
PHILIPPE ADLER
LANCE J. GOTKO
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
RICARDO SOLANO JR.
JOHN N. ORSINI
JEFFREY R. WANG
JEFFREY C. FOURMAUX
JASON C. RUBINSTEIN
MICHAEL A. GORDON

7 TIMES SQUARE
NEW YORK, NY 10036-6516

TELEPHONE (212) 833-1100
FACSIMILE (212) 833-1250

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
212-833-1108

WRITER'S DIRECT FAX
212-373-7908

E-MAIL
RLACK@FKLAW.COM

RICHARD M. HOFFMAN
SENIOR COUNSEL

NORMAN ALPERT
ASAF REINDEL
L. REID SKIBELL
COUNSEL

ROBERT S. LANDY
STEVEN E. FRANKEL
DANIEL R. GREENBERG
TIMOTHY M. HAGGERTY
CHRISTOPHER M. COLORADO
CHRISTOPHER L. McCALL
YITZCHAK E. SOLOVEICHIK
PEARLINE M. HONG
ERIC J. FINKELSTEIN
JENNIFER A. MUSTES
EMILY L. CHANG
ANDREW M. ENGLANDER
CHARLES E. ENLOE
ALEXANDER D. LEVI
ELIZABETH L. MACCHIAVERNA
SARAH F. FOLEY
JAMUNA D. KELLEY
RAINA L. NORTICK
MICHAEL S. PALMIERI
ELLIOT CHOI
TANVIR VAHORA
NORA BOJAR
KEVIN J. LIN
ANDREW C. KOSTIC

February 13, 2014

BY E-MAIL AND ECF

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 905
New York, NY 10007

    Re:   *In re Tribune Company Fraudulent Conveyance Litigation*,
          11-MD-2296 (RJS); *Kirschner v. FitzSimons*, 12-CV-2652
          (RJS) – Conduit Protocol and Joint Dismissal Protocol

Dear Judge Sullivan:

       We are counsel to Marc S. Kirschner, Litigation Trustee for the Tribune Litigation Trust (the "Trustee"). We write pursuant to MCO 4 to address the Conduit Protocol and Joint Dismissal Protocol to be submitted to the Court to establish efficient and effective procedures for the administration of *Kirschner v. FitzSimons*, 12-CV-2652 (RJS), part of the consolidated multidistrict litigation *In re Tribune Company Fraudulent Conveyance Litigation*, 11-MD-2296 (RJS).

       The parties have exchanged several drafts of each of the foregoing protocols, and have engaged in several lengthy meet and confer calls on each of them. The parties have reached agreement on the Joint Dismissal Protocol, attached hereto as Exhibit A, which applies to those defendants who the Trustee alleges received an

2925700.3

Hon. Richard J. Sullivan - 2 - February 13, 2014

aggregate of $100,000 or less of Shareholder Transfers, and demonstrate that they did not in fact receive any Shareholder Transfers or that they received an aggregate of less than $50,000 in Shareholder Transfers.  Given the parties' agreement on this protocol, the Trustee respectfully requests that the Court enter the Joint Dismissal Protocol.

The parties have only limited disputes with respect to the Conduit Protocol, which disagreements are shown by alternative language in brackets and boldface type in the composite draft Conduit Protocol attached as Exhibit B.  For the reasons set forth below, the Trustee respectfully requests that the Court adopt the Trustee's proposed language for the Conduit Protocol.  Alternatively, the Trustee respectfully requests that the Court convene a case management conference to aid in the resolution of the parties' differences.

### The Court Should Enter the Trustee's Proposed Conduit Protocol

Counsel for the Trustee and members of the Defendants' Executive Committee have reduced their differences concerning the proposed Conduit Protocol to a small number of issues, as set forth below.

**A.** *The definition of "mere conduit" should be determined by all the case law and not be artificially constrained* (Protocol ¶ 1, Appendix I [Form of Conduit Declaration], ¶ 2).

Both sides agree that the leading case in the Second Circuit on conduits is *Christy v. Alexander & Alexander of N.Y. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57-59 (2d Cir. 1997).  *Finley*, however, dealt with conduit status in the context of the particular facts presented in that case, and expressly declined to express an opinion on how conduit principles would be applied in other circumstances, including in a situation in which the alleged conduit did not pass along the entire amount it received to its customer, but retained some of the money as a commission or fee – a situation that could well exist in the *Tribune* case.  *See Finley,* 130 F.3d at 59 ("We need not decide whether A & A would have been an initial transferee as to the amount of any commission.").  Although the Trustee believes that in the substantial majority of cases, he is likely to reach agreement with defendants on whether a particular defendant was or was not a "mere conduit" with respect to a particular dollar amount of transfers, in the context of consensual dismissals the Trustee must be free to consider all relevant decisions, whether they are controlling or merely persuasive, and whether they come from the Supreme Court,  the Second Circuit, another court of appeals, or a lower court.  The language proposed by the Trustee would accomplish this, while the language proposed by the defendants is less inclusive, limiting consideration to *Finley*, other authority "to the extent consistent with" *Finley*'s "principles," and "any controlling Second Circuit or Supreme Court authority issued after

2925700.3

Hon. Richard J. Sullivan	- 3 -	February 13, 2014

the date this protocol is so-ordered." Because it is unclear what law the defendants seek to exclude, their proposed wording should be rejected.[1]

Similarly, even though the Second Circuit's language in *Finley* was limited to deciding the case before it, the defendants seek to exclude from the form of declaration to be submitted in support of conduit status (Appendix I) any mention of one of the key factors courts have considered in determining whether a defendant was a conduit, namely, whether the defendant did not have dominion and control over the funds, or the right to put the money to its own purposes, and had no discretion or authority to do anything else but transmit the amount to another person or entity. The defendants seek to treat the "dominion and control" test, which was articulated in the leading case of *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893-94 (7th Cir. 1988), as though it has no relevance, even though the Second Circuit cited *Bonded Financial* with approval in *Finley*. *See Finley,* 130 F.3d at 57-58 ("The Seventh Circuit's logic has been widely adopted. . . . We join these other circuits in adopting the 'mere conduit' test for determining who is an initial transferee under § 550(a)(1).") (citations and footnote omitted); *see also Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) ("Because *In re Finley* analyzed *Bonded* and approved of its reasoning, the 'dominion and control' test as stated in *Bonded* is also an essential part of the 'initial transferee' inquiry in this Circuit."). Accordingly, a statement concerning the absence of dominion and control should be included in the form of declaration.

Finally, the Trustee believes any declaration in support of conduit status must state that the defendant "did not hold an interest, *directly or indirectly*, as a beneficial owner of common stock of Tribune (including by holding an interest in a security entitlement, including puts, calls, options, swaps, and other derivatives, related to such common stock) that was purchased, repurchased, or redeemed by Tribune in connection with Tribune's leveraged buyout in 2007" (emphasis added). This is to ensure that defendants that in fact received the benefit of the LBO through derivative transactions or arrangements like an equity swap are not excluded. The defendants would limit the declaration to stating that the defendant did not "directly hold" an interest in Tribune stock that was sold into the LBO. This is inconsistent with the Bankruptcy Code's definition of "transfer," which includes "each mode, *direct or indirect, absolute or conditional, voluntary or involuntary*, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54)(D) (emphasis added). The defendants' language would create a loophole that could be exploited by institutions that structured transactions to benefit from the LBO without receiving a direct transfer from Tribune.

---

[1] Adopting an approach to determining conduit status that would exclude parts of the case law would be counterproductive, particularly because the Conduit Protocol, as a consensual mechanism, necessarily is without prejudice to the ability of the parties to litigate the conduit issue if no agreement on conduit status is reached. In such an event, this Court could consider all potentially relevant authorities.

Hon. Richard J. Sullivan - 4 - February 13, 2014

**B.     *The Trustee's time to consider what could be numerous requests for dismissal by conduits should not be arbitrarily limited*** (Protocol ¶¶ 3, 6).

It is possible that the Trustee could be faced with a large number of requests for dismissal based on alleged conduit status.  As a result, the Trustee has declined to include in the protocol a fixed deadline for responding to all such requests, instead providing in paragraph 3 that his counsel will make "reasonable efforts" to provide a response within 60 days of receipt of all materials submitted by a defendant.  The protocol provides that in the event the Trustee makes a follow-up request for information after receiving the defendant's submission, his time to provide his response to the dismissal request shall be extended until 30 days after receipt of any additional materials that are provided.  The defendants' proposal in paragraph 6 that a defendant be able to seek to proceed to motion practice if it has not received a response to its dismissal request within 120 days – regardless of whether follow-up requests are pending – is impractical, given the uncertainties of how many dismissal requests will be submitted and what follow-up requests will be made.  The period in which the Trustee will be reviewing and responding to conduit dismissal requests will also overlap with the period in which he will need to respond to defendants' motions to dismiss and to requests for dismissal under the Joint Dismissal Protocol.

There is no reason to question the Trustee's good faith in committing to make "reasonable efforts."  In fact, the Trustee dismissed numerous defendants between the filing of the Fourth and Fifth Amended Complaints, including a large financial institution that convinced the Trustee of its conduit status.  The Trustee was developing a protocol to deal with alleged conduits well before the issuance of MCO 4, and in just the last few weeks the Trustee has dismissed more than 100 defendants without even the requirement of a reasonable efforts standard.

**C.     *Defendants should not be able to withhold information on transferees based on vaguely defined "foreign laws"*** (Protocol ¶ 2).

The Trustee recognizes that certain defendants may be constrained by foreign data privacy and foreign bank secrecy laws from providing certain information called for by the protocol, and the agreed portion of the draft protocol provides for alternative procedures in such cases.  However, the Trustee cannot agree that information automatically may be withheld based on vague concepts like "other similar foreign laws," as proposed by the defendants.  The protocol provides a meet-and-confer process to resolve any disputes over the coverage of foreign data privacy and bank secrecy laws.

**D.     *The protocol should not include an extraneous provision on satisfaction of judgments*** (Protocol ¶ 4, Appendix II [Form of Stipulation of Dismissal], ¶ 5).

The protocol provides that any dismissal based on conduit status as to certain transfers shall not apply to instances where the defendant is also "expressly named in the Fifth Amended Complaint . . . in its capacity as a nominal or representative

Hon. Richard J. Sullivan - 5 - February 13, 2014

defendant (such as a trustee or IRA or UTMA custodian) in order to pursue the claim . . . against beneficial or legal recipients of Shareholder Transfers." The defendants wish to include a provision that "[t]o the extent that the defendant is named, now or at some later date, in its capacity as a nominal or representative defendant, Plaintiff shall not seek to satisfy any judgment in respect of Shareholder Transfers from such defendant." This provision, which seeks to determine in advance a substantive legal question on a case-wide basis; *i.e.*, the enforceability of a judgment against a trustee or custodian, has no place in a protocol designed to facilitate the consensual dismissal of conduits. Whether a trustee or custodian can be held personally liable for a judgment depends on the facts and circumstances, *see, e.g., Laird v. Bartz (In re Newman Cos.)*, 140 B.R. 495, 499 (Bankr. E.D. Wis. 1992) (trustee held personally liable for preferential transfer to trust), and it is premature to pursue that issue now. In addition, a representative defendant may be independently liable as a beneficial recipient of Shareholder Transfers, as noted below.

   E.   *Additional disputes* (Protocol Introduction, ¶ 4, Appendix II, ¶ 5).

In light of the intended entry of a Conduit Protocol and the fact that conduit issues are inherently fact-intensive, the Phase Two Motion Protocol should not provide for pre-answer motions to dismiss based on conduit status. If any defendants believe they are entitled to dismissal as conduits based solely on the allegations of the Complaint, they should proceed initially through the Conduit Protocol. Thus, defendants' proposed language in the introduction to the protocol about motions to dismiss "to the extent permitted by the Phase Two Motion Protocol" should not be included.

In paragraph 4 of the protocol and paragraph 5 of the form of stipulation of dismissal, defendants object to the Trustee's inclusion of language that "[t]he dismissal shall not apply . . . to the extent the defendant itself was a beneficial holder." Since conduit dismissals are not intended to apply to beneficial holders, this should not be a controversial provision. Some financial institutions that received multiple transfers are listed multiple times as defendants. If some of those transfers turn out to be for proprietary accounts and others in a conduit or representative capacity, the dismissal of the latter should not result in the dismissal of the former.

The Trustee would be happy to answer any questions the Court may have about his proposal.

                                        Respectfully,

                                        s/ Robert J. Lack
                                        Robert J. Lack

Attachments

cc: Defendants' Liaison Counsel (w/atts.)

2925700.3