**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action 11 MD 2296 (RJS) 12 MC 2296 (RJS) ECF Case |
| THIS DOCUMENT RELATES TO: *Kirschner v. FitzSimons* | 12 CV 2652 |

## <u>NOTICE OF SUBMISSION OF LETTER</u>

Pursuant to paragraph 47 of Master Case Order No. 3 (Sept. 7, 2012) [ECF No. 1395], please take notice that the undersigned submitted the attached letter and exhibits to the Court in the above-captioned actions.

Dated: November 14, 2017
New York, NY

By:    /s/ David M. Zensky

David M. Zensky, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: (212) 872-1000
Email: dzensky@akingump.com

*Counsel to the Tribune Litigation Trustee*

November 14, 2017

*VIA ECF AND EMAIL (sullivannysdchambers@nysd.uscourts.gov)*

The Honorable Richard J. Sullivan
United States District Court Judge
Southern District of New York
40 Foley Square, Room 2104
New York, NY 10007

> RE:   ***Marc S. Kirschner v. Dennis J. FitzSimons et al.*, Case No. 12-cv-2652 (RJS)**
> **Pre-Discovery Motion Letter**

Dear Judge Sullivan:

In accordance with Rule 2(G) of Your Honor's Individual Practices, Plaintiff Marc Kirschner ("Plaintiff" or the "Trustee"), in his capacity as the Litigation Trustee of the Litigation Trust (the "Trust") of the Tribune Company (together with its affiliated entities, "Tribune" or "Company"), and Betsy Holden, Enrique Hernandez Jr., Robert Morrison, William Osborn, Christopher Reyes, Dudley Taft, and Miles D. White (the "Independent Directors") jointly submit this letter regarding a discovery dispute over whether the Trustee is entitled to the production of documents in the possession, custody or control of the Independent Directors or Skadden, Arps, Slate, Meagher & Flom LLP that the subpoenaed parties believe remain subject to the attorney-client privilege or work product protection (collectively, the "Privileges") of the former Special Committee of Tribune's former board of directors (the "Board") that was formed in connection with Tribune's strategic review of potential transactions that ultimately led to the leveraged buy-out that is the subject of the Trustee's complaint (the "LBO").[1]  This Joint Letter does not represent a complete statement of relevant facts or each side's arguments.

**Agreed Facts:**  The Special Committee (composed of the Independent Directors) was formed by the Board on September 21, 2006.  On October 18, 2006, the Board approved resolutions formally creating the Special Committee pursuant to Section 141(c) of the Delaware General Corporation Law.  The Board's resolutions specifically provided that the Special Committee was entitled to engage independent counsel at the Company's expense, and that "all statutory and common law privileges shall be available with respect to legal advice rendered to, and documents prepared by counsel to assist, the Special Committee in its deliberations."  In accordance with these resolutions, Skadden served as counsel to the Special Committee itself (not the individual directors), and its fees were paid by Tribune.  On or about April 1, 2007, the Special Committee recommended to the Board that Tribune enter into the agreements and transactions needed to consummate the two-step LBO; the Board followed this recommendation.

---

[1] The Trustee seeks these documents pursuant to subpoenas that it served on Skadden and the Independent Directors (the "Subpoenas") (*see* Exhibits A-B).  The Independent Directors and Skadden have agreed to produce, subject to appropriate conditions, non-privileged documents, if any, as well as documents contemporaneously shared with Tribune or its representatives pursuant to a common interest which also may be protected by *Tribune's* Privileges within the scope of the Transfer Agreement (defined below), but not documents not previously shared which they contend to be protected from disclosure by independent Special Committee Privileges. On October 6, 2017, the undersigned counsel conferred telephonically regarding the Subpoenas, but could not resolve all issues.

The second step closed on December 20, 2007, and the Special Committee disbanded.  On December 8, 2008, Tribune and its affiliated debtors (the "Debtors") filed for bankruptcy.

On July 23, 2012, Judge Carey confirmed the Debtors' Fourth Amended Plan of Reorganization (the "Plan").  The Plan, *inter alia,* created a Litigation Trust to pursue Preserved Claims (as defined in the Plan), including those asserted in the FitzSimons Action.  The Plan incorporated by reference the *Agreement Respecting Transfer of Documents, Information, and Privileges from Debtors and Reorganized Debtors* (the "Transfer Agreement"), dated December 31, 2012, which contained provisions specifically dealing with, *inter alia*, the assignment of Tribune's various Privileges to the Trust.[2]

**Plaintiff's Position:**  The Trustee respectfully submits that any Privileges that originally belonged to the Special Committee expressly passed to the Trustee pursuant to the Transfer Agreement and Confirmation Order, and the reasoning of the Supreme Court's holding in *CFTC v. Weintraub*, 471 U.S. 343, 358 (1986) and its progeny.

To begin with, the Transfer Agreement defines "Debtors" to include "the board of directors, or ***any special committee of the board of directors***, of any of the Debtors."  Transfer Agmt. § I(A)(8))  (emphasis added).  It then states that (i) any Privileges belonging to the "Debtors, the Debtors' Estates and/or the Reorganized Debtors that applies to any Privileged Documents Relating to the Claims[3] … [are] ***hereby transferred, assigned, given over to, and shall vest exclusively in, the Litigation Trustee, and the Litigation Trustee shall have sole authority and sole discretion to waive any such privilege or immunity***"; and (ii) "[t]he Litigation Trustee is expressly authorized to . . .  subpoena Privileged Documents relating to the Claims  … ***from any Persons other than the Reorganized Debtors***, ***including attorneys***, professionals, consultants, and experts."  Transfer Agmt. §II(E) (emphasis added).

The Confirmation Order entered by Judge Carey on July 23, 2012 specifically provides that the Transfer Agreement is "APPROVED AND CONFIRMED, in each and every respect...".  Conf. Ord. §I.A.  Thus, the Confirmation Order and Transfer Agreement unambiguously provide that any Privileges allegedly held by the former Special Committee now belong solely to the Trustee, and that such Privileges are not a basis on which Skadden or the Independent Directors may refuse to produce documents or information.[4]

Any argument that the Confirmation Order or Transfer Agreement is not proper or binding on the Independent Directors or Skadden should be rejected out of hand.  "*Res judicata* principles apply to confirmed plans to bar the re-litigation of issues that were or could have been raised in the confirmation proceedings," in order to "provide[] finality to a confirmed plan."  *In*

---

[2] The Plan, Confirmation Order and Transfer Agreement can be found at docket nos. 12072-2, 12074 and 12072-26, respectively, in *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del.).

[3] The defined term "Documents Relating to the Claims" is expansive, covering not only documents relating to the Litigation Trustee's "Claims," but also documents "which relate in full or in part to Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to [them]."  Transfer Agmt. §I(A)(13).

[4] Tribune itself has already produced to the Trustee several thousand ostensibly privileged documents. Other law firms that represented Tribune in connection with the LBO have produced or are in the process of producing such documents as well.  The Trustee has not yet determined whether it will waive any Privileges in connection with this litigation (as he is expressly empowered to), but expects to make this determination shortly after completing discovery of privileged materials.

*re 401 E. 89th St. Owners, Inc.*, 223 B.R. 75, 79 (Bankr. S.D.N.Y. 1998)) (collecting cases). Here, the Independent Directors received notice of the proposed Transfer Agreement during the bankruptcy proceedings and participated in those proceedings as parties in interest. Indeed, the Independent Directors (and others) filed an unsuccessful objection to an earlier version of the Transfer Agreement now at issue.[5] As such, even assuming, *arguendo*, that the Independent Directors had a valid basis to object to the transfer of any separate Privileges that may have belonged to the Special Committee (which the Trustee disputes), they are precluded as a matter of law from now arguing that the Confirmation Order or Transfer Agreement are not lawful or binding on them. The proper vehicle for any disagreement with Judge Carey's approval of the Plan and Transfer Agreement was appeal, not an attempted collateral attack.

Further, the Debtors' express assignment of the Special Committee's Privileges was perfectly lawful, and the Privileges would have transferred to the Trustee even in the absence of the Transfer Agreement and Confirmation Order. In *CFTC v. Weintraub*, the Supreme Court held that upon the commencement of a bankruptcy case, the corporation's attorney-client privilege with respect to pre-bankruptcy communications is controlled not by the corporation's directors, but instead by the bankruptcy trustee, who is "directed to investigate the debtor's financial affairs" and "empowered to sue officers, directors, and other insiders." 471 U.S. at 352. Allowing directors to continue to control the privilege, the Supreme Court reasoned, "would frustrate an important goal of the bankruptcy laws," given that "[i]n seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors." *Id.* at 353.

Although *Weintraub* does not address the specific question of a privilege purportedly belonging to a special committee, *In re China Med. Techs., Inc. **does***, and aptly found that "the same considerations that weighed in favor [of *Weintraub's*]" finding that the bankruptcy trustee controls the Privileges of an insolvent corporation also weigh in favor of finding that the trustee controls the Privileges of a special committee of the corporation's former board of directors. 539 B.R. 643, 655 (S.D.N.Y. 2015). There, the party opposing discovery made "no argument" to support "the continued legal existence of the [applicable] Committee in bankruptcy, or as to the relevance of any distinction between an independent committee and corporate management once management is deposed in favor of a trustee...". *Id.*; *see also In re Flag Telecom Holdings, Ltd.*, 2009 WL 5245734, at *9 (S.D.N.Y. Jan. 14, 2009) (holding that notwithstanding the existence of a reorganized debtor, "the entity designated by [the debtor] in the Reorganization Plan with the responsibility of prosecuting officers and directors should control the ability to assert and waive the attorney-client privilege for communications related to those causes of action.").[6]

The situation presented here falls squarely within these holdings. The Trustee has been vested with the exclusive power to investigate and assert causes of action against, *inter alia,* the

---

[5] The Objection filed by the Independent Directors can be found at *In re Tribune*, No. 08-13141 (KJC) (Bankr. D. Del.), docket no. 11739. Transfer Agmt. §II(E)(4) was added in response to said objection, but the transfer of Tribune's and the Special Committees privileges was otherwise fully approved by Judge Carey.

[6] The Independent Directors rely heavily on *In re BCE West, L.P.*, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000). The *China Medical* court considered, and rejected, *BCE*, noting that the decision does not address the considerations found to be dispositive by the Supreme Court in *Weintraub*. 539 B.R. at 655. Further, BCE did not involve a judicially sanctioned, written transfer of the special committee privilege at issue. The Trustee respectfully submits that the *BCE* holding, which is not controlling, should be rejected, and the *China Medical* holding followed.

Debtors' officers and directors in connection with the LBO, for the benefit of the Debtors' creditors. The Special Committee disbanded in December 2007 and Tribune entered Bankruptcy in 2008. Allowing the Independent Directors to now assert the Privileges against the Trustee would thus serve no purpose other than to thwart the Trustee's efforts in pursuing the claims, all to the detriment of those to whom the Debtors owed fiduciary duties.[7]

   **The Independent Directors' Position:**   The Independent Directors respectfully submit that the relevant question is whether Delaware law provides the Special Committee privileges separate and distinct from those of the Trustee. If it does, then those Privileges could not have been validly transferred to the Trustee. *See In re AOG Entertainment, Inc.*, 569 B.R. 563, 583-84 (Bankr. S.D.N.Y. 2017) ("If [the company] possessed the privilege under applicable non-bankruptcy law, it passed to the Trust under the unambiguous terms of the Litigation Trust Agreement. If it did not belong to [the company], it could not be assigned by [the company] to the Trust or anyone else."). Delaware precedent demonstrates that under the facts of this case— where a special committee is formed pursuant to 8 Del. C. § 141(c)—that committee's deliberations and communications with independent counsel are protected by a privilege not owned by the company. *See Moore Business Forms, Inc. v. Cordant Holdings Corp.*, Civ. A. Nos. 13911, 14595, 1996 WL 307444, at *6 (Del. Ch. June 4, 1996) (a special committee created pursuant to 8 Del. C. § 141(c) "would have been free to retain separate legal counsel, and its communications with that counsel would have been properly protected from disclosure" to other board members); *see also Ryan v. Gifford*, No. 2213-CC, 2007 WL 4259557, at *3 (Del. Ch. Nov. 30, 2007) ("[A]bsent waiver or good cause, the attorney-client privilege protects communications between [counsel] and its client, the Special Committee.").

   Because the Special Committee was entitled to its own separate Privileges, those Privileges were not transferred to the Trustee either by the Transfer Agreement or by the reasoning of the Supreme Court in *Weintraub*. Notably, neither *Weintraub* nor *China Medical* addresses whether the privilege belonging to a special committee formed to evaluate and recommend strategic business alternatives belongs to the Trustee.[8] The only court to have considered this specific question was the court in *In re BCE West, LP (BCE)*, which, in a case nearly identical to this one, held that a special transaction committee retained its own unique privilege following bankruptcy. No. M-8-85, 2000 WL 1239117, at *1-2 (S.D.N.Y. Aug. 31, 2000). The *BCE* court began its analysis with *Weintraub*; however, it noted *Weintraub* specifically exempted the privileges of parties legally distinct from the corporation or its board. *BCE*, 2000 WL 129117, at *2 (citing *Weintraub*, 471 U.S. at 350). The *BCE* court found that the

---

   [7] The privileged materials sought by the Subpoenas are plainly relevant to the Trustee's claims against the Non-Moving Defendants, who are alleged to have manipulated the information provided to the Independent Directors. *See In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-MD-2296 (RJS), 2017 WL 82391, at *8 (S.D.N.Y. Jan. 6, 2017).

   [8] Indeed, the Court in *Weintraub* stated that "privileges of parties other than the corporation would still be 'applicable' as against the trustee." 471 U.S. at 350. Further, because the <u>audit committee</u> at issue in *China Medical* had been formed to investigate potential insider fraud—the same fraud being investigated by the bankruptcy liquidator—the court's assessment of the "countervailing considerations" addressed by *Weintraub* was particularly relevant. This was especially true because "there [were] strong indications" fraud had occurred. 522 B.R. 28, 31-32 (Bankr. S.D.N.Y. 2014) <u>rev'd and remanded,</u> 539 B.R. 643 (S.D.N.Y. 2015). Here, on the other hand, the Court has yet to determine that the Trustee's claims are even viable. For this and other reasons, *China Medical*, which the court itself limited to "the particular procedural and factual circumstances of this case," is not instructive to this dispute. 539 B.R. at 654.

board of directors and management had intended the special committee—convened for the specific purpose of evaluating a transaction—to have a separate identity. *Id.* at *2. Because the special committee was legally distinct, the court held the committee's privilege was different from the privilege of the corporation, and therefore the bankruptcy trustee could not waive it. *Id.* This was true even though independent counsel advised the committee as a committee of the company, not as individuals. Just as in *BCE*, the Tribune Board empowered the Special Committee to obtain its own independent counsel, and further provided that the Special Committee's communications with its counsel would be protected by all applicable privileges. As a result, as in *BCE*, the Special Committee's Privileges remain distinct from those of the Board, or Tribune itself, and have not been transferred to the Trustee.

The Transfer Agreement does not alter this conclusion. While the Trustee correctly observes that the Transfer Agreement itself defines "Debtors" to include the boards and committees of any Debtors, that definition is inconsistent with the definition of "Debtors" in both the Bankruptcy Plan and Confirmation Order, both of which limit the definition of "Debtors" to a list of Tribune entities. Significantly, the Transfer Agreement also provides that if there are any inconsistencies between it and the Confirmation Order or Plan, the latter shall control. (Transfer Agmt. § 1.C.) Because the Transfer Agreement, a signed contract between the Debtor and Litigation Trustee, may have properly transferred only privileges held by the Debtors (Tribune and its affiliated entities), the Agreement could not transfer Privileges held by the independent Special Committee, a non-signatory to the Transfer Agreement. *See In re Enron Corp.*, 379 B.R. 425, 435-36 (S.D.N.Y. 2007) (concluding that an assignor cannot assign more than he has).

Nor are the Independent Directors barred by *res judicata* from raising this argument now. Indeed, the Confirmation Order contains language specifically reserving for this Court all questions related to privilege other than whether the attorney-client privileges of the *Debtors, Debtors' Estates, Reorganized Debtors, or Creditor's Committee* (as defined in the Confirmation Order) were validly transferred to the Litigation Trustee.[9] (Confirmation Order at 41-42.) Aside from that transfer and the finding that such transfers did not constitute a waiver, the bankruptcy court ordered that the Transfer Agreements "do not and shall not be construed or interpreted to: (a) affect any rights or positions of any person or entity in the LBO actions."[10]

Finally, to the extent the Trustee is seeking the Independent Directors' privileged documents to investigate and assert causes of action against *them*, this attempt runs afoul of the limits set by the Court's orders, which directed the parties to treat the Independent Directors as third parties while their motion to dismiss remains pending. (Order, dated Feb. 23, 2017, at 2.) For these reasons, the Independent Directors respectfully submit that neither the establishment of a Litigation Trust, nor the execution of the Transfer Agreement, eliminated the well-established privilege protections the Independent Directors expected and enjoyed in their capacity as Special Committee members.

---

[9] It is well-established that the scope of the preclusive effect of a confirmation order "is limited by the content of the reorganization plan and the confirmation order." *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1044-45 (2d Cir. 1996).

[10] It is also notable that the Transfer Agreement itself carves out from the definition of "Claims" causes of action against the Independent Directors (Transfer Agmt. § I.A.3), and further states that the "Privileges" transferred are only those related to "Claims." (*Id.* § I.A.21.) Accordingly, by the terms of the Transfer Agreement itself, any privilege held by the Special Committee was not transferred to the Litigation Trustee.

Respectfully submitted,

**Akin Gump Strauss Hauer & Feld LLP**

By:      /s/ David M. Zensky
         David M. Zensky
         Deborah Newman

**Friedman Kaplan Seiler & Adelman LLP**

By:      /s/ Robert J. Lack
         Robert J. Lack
         Jeffrey R. Wang
         Christopher M. Colorado

*Attorneys for Plaintiff, Marc S. Kirschner*

**Skadden, Arps, Slate, Meagher & Flom LLP**

By:      /s/ Matthew R. Kipp
         Matthew R. Kipp
         Timothy M. Frey

*Attorneys for the Independent Director Defendants*