**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Litigation No. 11 MD 2296 (RJS) No. 12 MC 2296 (RJS) |
| THIS DOCUMENT RELATES TO: MARK S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST, *Plaintiff*, -against- DENNIS J. FITZSIMONS, *et al.*, *Defendants*. | No. 12 CV 2652 (RJS) |

**THE INDEPENDENT DIRECTORS' MEMORANDUM OF LAW
<u>IN OPPOSITION TO THE LITIGATION TRUSTEE'S MOTION TO COMPEL</u>**

Matthew R. Kipp
Donna L. McDevitt
Timothy M. Frey
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
155 North Wacker Drive
Chicago, Illinois  60606
(312) 407-0700
matthew.kipp@skadden.com
donna.mcdevitt@skadden.com
timothy.frey@skadden.com

Counsel for the Independent Directors

## <u>TABLE OF CONTENTS</u>

Preliminary Statement...................................................................................................1

Factual Background ......................................................................................................2

Argument .....................................................................................................................5

I.      Under Delaware Law, the Special Committee Holds a Privilege Separate and
        Distinct from the Privilege Belonging to Tribune Company, and now the Trustee. ...........6

II.     The Debtors' Transfer Agreement Did Not Transfer the Special Committee's
        Privilege to the Trustee. ................................................................................11

Conclusion ................................................................................................................14

## **TABLE OF AUTHORITIES**

### CASES

*3Com Corp. v. Diamond II Holdings, Inc.,*
   No. 3933-VCN, 2010 WL 2280734 (Del. Ch. May 31, 2010) ...........................................6

*In re AOG Entertainment, Inc.,*
   569 B.R. 563 (Bankr. S.D.N.Y. 2017) ......................................................................5, 11

*In re BCE West, L.P.,*
   No. M-8-85, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000) [*BCE*]................................8, 9

*In re China Medical Technologies, Inc.,*
   522 B.R. 28 (Bankr. S.D.N.Y. 2014) [*China Medical I*], *rev'd*, 539 B.R. 643
   (S.D.N.Y. 2015) ...................................................................................................10, 11

*In re China Medical Technologies, Inc.,*
   539 B.R. 643 (S.D.N.Y. 2015) [*China Medical II*] ...............................................9, 10, 11

*Commodity Futures Trading Commission v. Weintraub,*
   471 U.S. 343 (1985)....................................................................................................8

*In re Coudert Bros. LLP,*
   673 F.3d 180 (2d Cir. 2012)..........................................................................................6

*In re Enron Corp.,*
   379 B.R. 425 (S.D.N.Y. 2007)......................................................................................11

*Hollinger International, Inc. v. Black,*
   844 A.2d 1022 (Del. Ch. 2004).....................................................................................8

*Kalisman v. Friedman,*
   No. 8447–VCL, 2013 WL 1668205 (Del. Ch. Apr. 17, 2013) ...........................................7

*In re Maxwell Communication Corp.,*
   93 F.3d 1036 (2d Cir. 1996).........................................................................................13

*Moore Business Forms, Inc. v. Cordant Holdings Corp.,*
   Nos. 13911, 14595, 1996 WL 307444 (Del. Ch. June 4, 1996) ....................................6, 7

*Ryan v. Gifford,*
   No. 2213-CC, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007).............................................7

*SBC Interactive, Inc. v. Corp. Media Partners,*
   No. Civ.A. 15987, 1997 WL 770715 (Del. Ch. Dec. 9, 1997) ...........................................8

*In re Tribune Co. Fraudulent Conveyance Litigation,*
   No. 12-cv-2652 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017)...........................4, 10, 11

Betsy D. Holden, Enrique Hernandez, Jr., Robert S. Morrison, William A. Osborn, J. Christopher Reyes, Dudley S. Taft, and Miles D. White (the "Independent Directors"), former members of the Special Committee of Tribune Company ("Tribune" or the "Company"), respectfully submit this memorandum of law in opposition to the motion to compel of Plaintiff Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust (the "Trustee").

## PRELIMINARY STATEMENT

In September 2006, Tribune, a Delaware corporation, formed a Special Committee consisting of the Independent Directors to consider strategic alternatives for the Company. The resolution appointing the Special Committee made clear that the Committee was to act as a separate entity, with the authority to retain its own bankers and lawyers, and the independence to recommend alternatives that the Committee, in its own judgment, believed to be in the Company's best interest. Delaware law provided at the time, and continues to do so now, that the Special Committee possessed an attorney-client privilege that was separate from that owned by Tribune itself.

Tribune's later bankruptcy, in December 2008, did not alter, or abrogate, this separate privilege. To the contrary, this privilege remained intact throughout Tribune's bankruptcy and continues to this day. The Transfer Agreement to which the Trustee refers in his motion does not alter this conclusion. The Special Committee was not a signatory to the Transfer Agreement, and Tribune (the principal signatory) did not have the capacity to transfer a privilege it did not own. Simply put, Delaware law affords the Special Committee its own privilege, separate and apart from any privilege held by Tribune. Because Delaware law confers a separate privilege, that privilege could not have been transferred to the Trustee and is a proper objection to the Trustee's subpoenas to the Special Committee and its counsel.

Contrary to the Trustee's suggestion, enforcement of the Special Committee's privilege will not result in any prejudice to the Trustee. The Trustee already has access to millions of pages of discovery from the Bankruptcy proceedings, as well as access to thousands of pages of testimony from depositions and evidentiary hearings in that matter. These materials include board minutes, banker presentations, internal Company communications, and even privileged communications between Tribune's management and the Company's counsel. Furthermore, the Special Committee is not seeking to invoke the privilege to preclude the production of all documents in its possession. Rather, the Special Committee objects only to producing documents reflecting its privileged communications with its outside counsel. There is no basis to allow the Trustee to invade the freestanding privilege between the Special Committee and its counsel.

## FACTUAL BACKGROUND

In 2006, Tribune's Board of Directors consisted of eleven members: Tribune President and Chief Executive Officer Dennis J. Fitzsimons (Fifth Am. Compl., dated August 1, 2013, ECF No. 1052, at ¶ 27), the seven Independent Directors (*id.* ¶¶ 28-34), and three representatives of the Chandler Trusts—one of Tribune's largest shareholders (*id.* ¶¶ 35-37). In June 2006, in reaction to a decline in the newspaper publishing industry and Tribune's deteriorating performance, a representative of the Chandler Trusts sent a publicly filed letter to Tribune's Board requesting that the Board "'promptly appoint a committee of independent directors to oversee a thorough review of the issues facing Tribune and to take prompt decisive action to enhance stockholder value.'" (*Id.* ¶¶ 129-30 (quoting letter).)

In response to the Chandler Trusts' request, on September 21, 2006, the Tribune Board appointed the Independent Directors to a Special Committee tasked with overseeing the Company's strategic review process. On October 18, 2006, the Board approved a resolution

formally creating the Special Committee pursuant to Section 141(c) of the Delaware General Corporation Law. The Board's resolution provided that, *inter alia*: (1) "the Special Committee be, and it hereby is, authorized to retain, at the Company's expense, legal counsel, financial advisors, and other such advisors as the Special Committee shall deem necessary, appropriate, or advisable"; and (2) "to the fullest extent permitted by applicable law, *the deliberations and records of the Special Committee shall be confidential and, without limiting the generality of the foregoing, all statutory and common law privileges shall be available with respect to legal advice rendered to, and documents prepared by counsel to assist, the Special Committee in its deliberations*." (Declaration of William F. Mongan ("Mongan Decl.") Ex. B (Oct. 18, 2006, Tribune Board Minutes), ECF No. 7209-2, at 2-4 (emphasis added).)

The Special Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to serve as its legal counsel (*see* Declaration of Matthew Kipp ("Kipp Decl.") Ex. A (Schedule 14A Proxy Statement, dated July 13, 2007 ("Proxy Statement")), at 52), and Morgan Stanley to act as its financial advisor (Fifth Am. Compl. ¶ 137). Between September 2006 and April 1, 2007, the Special Committee met on numerous occasions to consider and evaluate various strategic transactions, including the leveraged buy-out that is the subject of the Trustee's complaint (the "LBO"). (*See* Kipp Decl. Ex. A (Proxy Statement), at 19-27.) Following the consummation of the LBO in December 2007, the Special Committee disbanded.

On December 8, 2008, Tribune filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. In 2010, the Official Committee of Unsecured Creditors of Tribune (the "Unsecured Creditors") sought standing in the Bankruptcy Court to assert claims on behalf of Tribune's bankruptcy estate and creditors and, on November 1, 2010, filed a complaint asserting claims against Tribune's directors, officers, shareholders, and

financial advisors. *See In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12-cv-2652 (RJS), 2017 WL 82391, at *3 (S.D.N.Y. Jan. 6, 2017) (summarizing procedural history in bankruptcy court). In connection with the bankruptcy proceedings, "the Unsecured Creditors undertook wide-ranging discovery from over 30 entities and persons involved in the LBO, 'obtained and reviewed nearly 4.5 million pages of documents' pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, and deposed 'a number of' critical participants." *Id.* (citation omitted). Notably, the documents produced during this discovery period included the minutes of the Special Committee meetings, as well as various presentations made to the Special Committee by financial advisors to both the Committee and the Company.

On June 23, 2012, the Bankruptcy Court confirmed a plan to implement Tribune's reorganization. The plan, among other things, established a litigation trust for the benefit of certain former creditors. The plan went into effect on December 31, 2012. Accordingly, on such date, the unsecured creditors' preserved causes of action were transferred to the Trustee. On August 2, 2013, the Trustee filed in this Court a Fifth Amended Complaint against the Independent Directors as well as former Tribune officers, advisors, and shareholders. On May 23, 2014, the Independent Directors filed a Motion to Dismiss all claims asserted against them. This motion remains pending.

On January 6, 2017, this Court entered an Opinion and Order dismissing with prejudice the Trustee's claim that the LBO constituted an intentional fraudulent transfer under the federal bankruptcy code, holding that the Trustee "failed to plead facts sufficient to allege that the Independent Directors possessed actual intent to hinder, delay, or defraud Tribune's creditors through the LBO." *Id.* at *20. On February 23, 2017, the Court directed the Trustee and the Non-Moving Defendants (*i.e.*, those individuals and entities who, unlike the Independent Directors,

4

did *not* move to dismiss) to submit a joint letter to the Court proposing a case management plan and discovery schedule, which would treat the Moving Defendants (including the Independent Directors) as third parties. (Feb. 23, 2017, Order, ECF No. 347, at 2.) On April 5, 2017, the Court approved the proposal and allowed discovery to proceed with respect to the Trustee's claims against the Non-Moving Defendants. The Trustee served subpoenas on the Special Committee's independent counsel, Skadden, on August 16, 2017, and on the Independent Directors on September 22 and October 9, 2017, seeking a broad range of documents related to the LBO, including privileged communications between the Special Committee and Skadden.[1]

## ARGUMENT

Delaware law provides the Special Committee with an attorney-client privilege separate and distinct from that of the Company's. Because Delaware law makes plain that the Special Committee was and is entitled to its own privilege, the Trustee (standing in the shoes of the Company) is not entitled to documents protected by such privilege, and no third-party agreement in the course of the bankruptcy proceedings can alter that conclusion. *See In re AOG Entm't, Inc.*, 569 B.R. 563, 583-84 (Bankr. S.D.N.Y. 2017) (holding that only an entity that possesses a privilege can assign that privilege to a litigation trust in the course of a bankruptcy proceeding). Thus, for the reasons set forth below, the Court should deny the Trustee's Motion to Compel.

---

[1]   In addition to asserting objections based upon the attorney-client privilege, the Special Committee and its counsel have further objected to the production of any documents reflecting Skadden attorneys' mental impressions, conclusions, opinions, or legal theories, which are subject to protection as work product.

I.     **Under Delaware Law, the Special Committee Holds a Privilege Separate and Distinct from the Privilege Belonging to Tribune Company, and now the Trustee.**

Delaware law governs this dispute. In cases arising under federal bankruptcy jurisdiction, where the claims are based on state law and no important federal policy is implicated, courts apply the law of the forum state, including the forum state's choice-of-law rules. *See In re Coudert Bros. LLP*, 673 F.3d 180, 188 (2d Cir. 2012). The Trustee's original complaint was filed in the United States Bankruptcy Court for the District of Delaware. Thus, because this case originated in Delaware, its choice-of-law rules apply. *See id.* Under those rules, a Delaware court would apply Delaware privilege law, especially where, as here, the parties selected Delaware law to govern the transaction at issue. *See, e.g.*, *3Com Corp. v. Diamond II Holdings, Inc.*, No. 3933-VCN, 2010 WL 2280734, at *5 (Del. Ch. May 31, 2010) (holding that the application of Delaware law "would foster predictability for parties to major corporate transactions that have availed themselves of Delaware law").

Under Delaware law, the Special Committee enjoyed a privilege separate from that held by the Company. Indeed, Delaware precedent regarding attorney-client privilege demonstrates that under the facts of this case—where the Board of Directors formed a special committee pursuant to Title 8, Section 141(c) of the Delaware Code—the Special Committee's deliberations and communications with its independent counsel are protected by a privilege that is separate from that belonging to the Company. *See Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, Nos. 13911, 14595, 1996 WL 307444, at *6 (Del. Ch. June 4, 1996).

In *Moore*, the Delaware Court of Chancery granted plaintiff, which had a director-designee on a company's board of directors, access to allegedly privileged materials that were created during the director-designee's tenure but without his involvement. *Id.* at *2, *6. Without the director-designee's knowledge, the other board members had obtained legal advice regarding

6

whether to repurchase preferred stock, and subsequently invoked the attorney-client privilege against the director-designee to protect their communications. *Id.* at *2. Reasoning that the "client in this case is the [] board," and that plaintiff's director-designee "was a member of that board, having the same status as the other directors[,]" the court stated that "it would be perverse" to allow an attorney-client privilege to be asserted against a client, and accordingly permitted access. *Id.* at *6. Importantly, however, the court stated that if the board had appointed a special committee pursuant to Section 141(c), "the special committee would have been free to retain separate legal counsel, and its communications with that counsel would have been properly protected from disclosure to [plaintiff] and its director designee." *Id.*; *see also Ryan v. Gifford,* No. 2213-CC, 2007 WL 4259557, at *3 (Del. Ch. Nov. 30, 2007) ("[A]bsent waiver or good cause, the attorney-client privilege protects communications between [counsel] and its client, the Special Committee.")

The Trustee argues that, under Delaware law, a special committee's privilege can only be used to protect against disclosures to third parties (as opposed to the Company). (*See* Pl.'s Mem. Supp. Mot. Compel ("Pl.'s Mem.") at 13-14, ECF No. 7208.) This argument rests upon an overly narrow reading of precedent. Indeed, in both *Moore* and *Ryan*, the Delaware Court of Chancery held that, if properly established, a special committee could assert its privilege against other Board members. *Moore*, 1996 WL 307444, at *6; *Ryan*, 2007 WL 4259557, at *3. By the Trustee's own arguments, and the structures imposed by Delaware law, the Board of Directors often is a proxy for the corporation itself. Thus, the power of a special committee under Section 141(c) to assert a privilege against other members of the board amounts to nothing less than the power to withhold information from the corporation. The Trustee's authorities do not hold otherwise. *See Kalisman v. Friedman*, No. 8447–VCL, 2013 WL 1668205, at *5 (Del. Ch. Apr.

17, 2013) (under Section 141(c), a special committee would be free to withhold information from another director); *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1058-59 (Del. Ch. 2004) (independent directors on the special committee could invoke privilege against a former CEO whom they investigated); *cf. SBC Interactive, Inc. v. Corp. Media Partners*, No. Civ.A. 15987, 1997 WL 770715, at *6 (Del. Ch. Dec. 9, 1997) (holding once adversity arises between two partners, advice provided to one need not be disclosed to the other). Accordingly, under Delaware law, the Special Committee's privilege is separate and distinct from that of the Company's.

Because Delaware privilege law applies in this case, the Court need not examine federal privilege law. Nonetheless, the outcome in this case would be no different under the Supreme Court's holding in *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985). *Weintraub* does not address whether the privilege belonging to a special committee formed to evaluate and recommend strategic business alternatives also belongs to a post-confirmation litigation trustee. *See id.* Rather, *Weintraub* only addresses whether a *corporation's* attorney-client privilege may pass to a Chapter 7 bankruptcy trustee. *Id.* at 352-53. The only court to have considered the specific question presented here was the court in *In re BCE West, L.P.*, No. M-8-85, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000) [*BCE*]. In that case, which was virtually identical to this one, the court held that a special transaction committee retained its own unique privilege following bankruptcy. *Id.* at *2.

In *BCE*, a trustee was appointed under the plan to, among other things, pursue claims of the bankruptcy estate. *See id.* at *1. Like here, the privilege dispute in *BCE* arose after the trustee sought discovery of communications between a law firm and its client, a special transaction committee. *Id.* The law firm had advised the special committee in conjunction with the

committee's analysis of a transaction, which the committee recommended for approval, after which the company filed for Chapter 11 bankruptcy. *Id.* The *BCE* court acknowledged *Weintraub's* holding, but noted that *Weintraub* specifically exempted the privileges of parties legally distinct from the corporation or its board. *Id.* at *2 (citing *Weintraub,* 471 U.S. at 350). The *BCE* court held that the board of directors and management had intended the special committee—convened for the specific purpose of evaluating a transaction—to have a separate identity. *Id.* The committee's explicit power to retain independent counsel (paid for by the company), and its counsel's complete separation from the corporation or board, confirmed this view. *Id.* Consequently, because the special committee existed as a legally distinct entity, the court concluded the committee's privilege stood apart from the corporation's privilege, rendering the bankruptcy trustee powerless to waive it. *Id.* That independent counsel advised the committee as a committee of the company, and not as separate individuals, did not change the result.

Just as in *BCE*, the Tribune Board authorized the Special Committee to retain its own counsel, and further provided that the Special Committee's communications with its counsel would be protected by all applicable privileges. (*See* Mongan Decl. Ex. B (Oct. 18, 2006, Tribune Board Minutes), at 3 ("[A]ll statutory and common law privileges shall be available with respect to legal advice rendered to, and documents prepared by counsel to assist, the Special Committee in its deliberations.").) As in *BCE*, the Special Committee's privilege remains distinct from that of the Board, or Tribune itself, and has not been transferred to the Trustee.

The Trustee's reliance on *In re China Medical Technologies, Inc.*, 539 B.R. 643 (S.D.N.Y. 2015) [*China Medical II*], is misplaced. The committee at issue in *China Medical II* was not a special transaction committee, but rather an audit committee that had been formed to investigate potential insider fraud—the same fraud that the bankruptcy liquidator (as opposed to

9

a post-confirmation litigation trustee) was investigating. *See In re China Medical Techs., Inc.*, 522 B.R. 28, 31-32 (Bankr. S.D.N.Y. 2014) [*China Medical I*] (cited for background only), *rev'd*, 539 B.R. 643 (S.D.N.Y. 2015). Because the focus of the audit committee and bankruptcy liquidator were the same, the court's assessment of the "countervailing considerations" addressed by the Supreme Court in *Weintraub*—*i.e.*, the risk that allowing company management to invoke privilege would do nothing more than preclude the trustee from investigating potential liability— was particularly relevant. As the court found, a determination that the audit committee held a separate privilege likely would have "permit[ted] the attorney-client privilege to operate as a shield against the trustee's efforts to identify corporate assets wrongfully diverted or appropriated by a corporation's management." *China Medical II*, 539 B.R. at 657 (internal quotations omitted).

Here, by contrast, the Special Committee was not formed to investigate potential malfeasance by the Company's management (which is the alleged focus of the Trustee's current discovery efforts), but to consider and evaluate potential strategic transactions to save the Company. Accordingly, there is no similar threat in this case that by protecting the Special Committee's privileged communications with its counsel regarding the Committee's consideration of potential transactions, the Trustee will be foreclosed from discovering information relevant to his claims against the Non-Moving Defendants. Indeed, as this Court acknowledged in its opinion of January 6, 2017, the Trustee already has had access to "more than 30 depositions, 10 expert reports/opinions, and nearly 4.5 million pages of documents," *In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at \*20, not to mention the Bankruptcy Examiner's Report and any discovery that will be obtained from the Non-Moving Defendants. The Trustee, therefore, can hardly contend that he is being thwarted in his attempts

10

to gather information needed to pursue his claims. Additionally, China Medical Technologies, Inc. was a Cayman Islands Corporation, and thus Delaware law did not apply. *See China Medical II*, 539 B.R. at 645-46. The *China Medical II* decision, which the court itself limited to "the particular procedural and factual circumstances of this case," *id.* at 654, is not instructive to this dispute.[2]

For these reasons, under both Delaware law and relevant federal precedent, the Special Committee possessed a separate attorney-client privilege with its counsel—a privilege that was distinct from that belonging to the Company and therefore one that differs from the privilege currently held by the Trustee.

## II.   The Debtors' Transfer Agreement Did Not Transfer the Special Committee's Privilege to the Trustee.

Because Delaware law and federal precedent provide that the Special Committee possessed a privilege separate and distinct from that of Tribune, neither Tribune nor the Bankruptcy Court could have transferred the Special Committee's privilege to the Trustee. *See In re AOG Entm't, Inc.*, 569 B.R. at 583-84; *In re Enron Corp.*, 379 B.R. 425, 435-36 (S.D.N.Y. 2007) (concluding that an assignor cannot assign more than he has). Neither the Special Committee nor the Independent Directors were signatories to the Transfer Agreement. (*See* Kipp Decl. Ex. B (Agreement Respecting Transfer of Documents, Information, and Privileges from

---

[2]   To the extent the objective of the Trustee's discovery is to fish for potential documents implicating the Independent Directors themselves, it is notable that, unlike the situation in the *China Medical* dispute, in which the bankruptcy court found "there [were] strong indications" that fraud had occurred, 522 B.R. at 32, there are no such indications here. Although the Court has yet to determine whether the Trustee's claims against the Independent Directors are even viable, the Court, in dismissing the Trustee's intentional fraudulent transfer claim, already concluded that the Trustee has "failed to plead facts sufficient to allege that the Independent Directors possessed actual intent to hinder, delay, or defraud Tribune's creditors through the LBO." *In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *20.

Debtors and Reorganized Debtors ("Transfer Agreement")) (signature pages).) Nevertheless, the Trustee contends that the Transfer Agreement transferred the Special Committee's privilege to him, and that the Independent Directors are barred by principles of *res judicata* from arguing otherwise. (*See* Pl.'s Mem. at 4, 6.)

The Trustee is incorrect. Even if the Special Committee or the Independent Directors had signed the Transfer Agreement, the Trustee's argument still would fail for two reasons: (1) the Transfer Agreement could not have transferred the privilege held by the Special Committee because the Transfer Agreement is inconsistent with other, controlling Plan documents, and (2) the Confirmation Order reserved most questions of privilege for resolution by this Court.

The Trustee's principal argument as to why the Transfer Agreement purports to transfer the Special Committee's privilege is that the definition of "Debtors" in the Transfer Agreement includes the phrase "or any special committee of the board of directors, of any of the Debtors." (Kipp Decl. Ex. B (Transfer Agreement), at 3.) The operative documents in Tribune's reorganization, however, do not support the Trustee's position. Indeed, the Trustee's argument ignores a key passage of the Transfer Agreement, Section I.C, which provides: "If any provisions of this Agreement are found to be inconsistent with the provisions of the Litigation Trust Agreement, the Plan or the Confirmation Order, each such document shall have controlling effect in the following order: (i) the Confirmation Order; (ii) the Plan; (iii) the Litigation Trust Agreement and (iv) this Agreement." (*Id.* at 5.)[3]

---

[3]   Not only does the Transfer Agreement acknowledge the hierarchy of controlling documents, but the Confirmation Order does as well: "Notwithstanding the foregoing, if there is any direct conflict or inconsistency between the terms of the DCL Plan, the DCL Plan Supplement, or any Exhibit or schedule attached thereto, and the terms of this Confirmation Order, the terms of this Confirmation Order shall control." (Mongan Decl. Ex. D (Order Confirming the Fourth Amended Joint Plan of Reorganization ("Confirmation Order")), ECF No. 7209-4, at 2.)

Contrary to the Trustee's argument, the Transfer Agreement is inconsistent with both the Plan and Confirmation Order, both of which define "Debtors" as the entities listed in footnote 1 of each document and notably do not include the Special Committee. (Mongan Decl. Ex. D (Confirmation Order), at 1-2; Mongan Decl. Ex. C (Fourth Amended Joint Plan of Reorganization), ECF No. 7209-3, at 8.) Its absence from the definition of "Debtors" is consistent with the view under Delaware law that the Special Committee is legally distinct from the Company. Accordingly, the Special Committee is not a Debtor as defined in the reorganization. Thus, the Trustee's attempt to bind the Special Committee to the terms of the Transfer Agreement would fail even if the Special Committee were a signatory to the Agreement (which it is not).

The Trustee also argues that the Special Committee is barred by the *res judicata* effect of the Confirmation Order from arguing about the scope of the Transfer Agreement. (*See* Pl.'s Mem. at 6-8.) This argument ignores the fact that the Confirmation Order reserved the instant question for this Court. *See In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1044-45 (2d Cir. 1996) (holding that the preclusive effect of a confirmation order "is limited by the content of the reorganization plan and the confirmation order"). Indeed, as the Trustee acknowledges, when the Independent Directors learned that the parties to the bankruptcy were considering an agreement related to privilege transfers, the Independent Directors asserted objections seeking to reserve privilege-related questions for this Court. (*See* Pl.'s Mem. at 4-5.) As a result of these objections and subsequent negotiations, the Confirmation Order reserved for this Court all questions related to privilege other than whether the attorney-client privileges of the *Debtors, Debtors' Estates, Reorganized Debtors, or Creditor's Committee* (as defined by the Confirmation Order) were transferred to the Trustee. (Mongan Decl. Ex. D (Confirmation Order), at 41-42.) Aside from

13

that transfer, and the finding that such transfers did not constitute a waiver, the bankruptcy court ordered that the Transfer Agreements "do not and shall not be construed or interpreted to: (a) affect any rights or positions of any person or entity in the LBO actions." (*Id.* at 41.)

The Trustee's assertion that the Special Committee's privilege transferred to the Litigation Trustee is unavailing because the Special Committee was not a debtor bound by the Transfer Agreement, nor a signatory to it. Moreover, the Confirmation Order makes clear that the Bankruptcy court preserved all other privilege-related issues for resolution by this Court.

## CONCLUSION

For the foregoing reasons, neither the execution of the Transfer Agreement, nor the establishment of a post-confirmation Litigation Trust, eliminated the well-established protections provided by Delaware law to the Independent Directors as members of a Board-appointed Special Committee. The Independent Directors respectfully request that the Court deny the Trustee's Motion to Compel.

Dated: January 8, 2018

Respectfully submitted,

/s/ *Matthew R. Kipp*

Matthew R. Kipp
Donna McDevitt
Timothy M. Frey
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
155 North Wacker Drive
Chicago, Illinois  60606
(312) 407-0700
matthew.kipp@skadden.com
donna.mcdevitt@skadden.com
timothy.frey@skadden.com

Counsel for the Independent Directors

14