# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

March 13, 2018

VIA ECF AND EMAIL

Honorable Richard J. Sullivan
United States District Court
For the Southern District of New York
40 Foley Square, Room 2104
New York, NY 10007

**Mark A. Angelov**
Partner
212.457.5491 DIRECT
212.484.3990 FAX
mark.angelov@arentfox.com

Re:   *In re Tribune Co. Fraudulent Conveyance Litigation, 11-MD-2296;*
      *Kirschner v. Fitzsimmons, et al., 12-CV-2652 (the "Fitzsimmons Action")*

Dear Judge Sullivan:

Arent Fox is counsel for Blackport Capital Fund Ltd. ("Blackport"), a former Shareholder Defendant in the Fitzsimmons Action and a large investment fund with over $2 billion in assets under management during the relevant time period. We write to oppose the Trustee's second request to amend the complaint to assert claims for constructive fraudulent conveyance under 11 U.S.C. §548(a)(1)(B) ("CFC Claims").

Blackport previously opposed the Trustee's initial request to amend by letter dated July 28, 2017 based on, among other things, that the proposed amendment would be futile as against Blackport and other protected entities specifically enumerated in 11 U.S.C. §546(e) (the "Protected Entities"). *See* Case No. 11-MD-2296, Dkt. 7000. In its response, the Trustee conceded – as it had to – that regardless of the outcome of the *FTI Consulting* appeal, "Protected Entity defendants," including "financial participant[s] or institution[s]" would still be entitled to Section 546(e) defense. *See* Case No. 11-MD-2296, Dkt. 7008 at 3. This letter will not restate arguments previously made in the July 28, 2017 letter (which independently warrant denial of the motion to amend) and will address solely the Trustee's failure to limit the proposed amendment to exclude the admittedly defective CFC Claims against Blackport.

While feigning compliance with statutory and ethical obligations to refrain from asserting frivolous claims, the proposed amendment does just that with the apparent goal of once again miring Protected Entities in years of nuisance litigation.[1]  Specifically, the Trustee proposes to

---

[1] There has been no change in the law as to any of the Protected Entities. The Trustee is attempting to use the *FTI Consulting* decision to assert claims against Protected Entities that are no more valid today than they were in 2012 when the litigation was commenced. Had the CFC Claims been asserted in 2012, they would have been resolved by now, along with all other claims against the Shareholder Defendants.

AFDOCS/16130434.1

| 555 West Fifth Street, 48th Floor | 1675 Broadway | 55 Second Street, 21st Floor | 1717 K Street, NW |
| Los Angeles, CA 90013-1065 | New York, NY 10019-5820 | San Francisco, CA 94105-3470 | Washington, DC 20006-5344 |
| T 213.629.7400  F 213.629.7401 | T 212.484.3900  F 212.484.3990 | T 415.757.5500  F 415.757.5501 | T 202.857.6000  F 202.857.6395 |

**Arent Fox**

The Honorable
Richard J. Sullivan
March 13, 2018
Page 2

assert CFC Claims against all former shareholder defendants, except those it will at some future time identify in Exhibit A-2.  *See* Trustee Letter, Exhibit B at 147.  All other Protected Entities who the Trustee has refused to so identify would be required to litigate their entitlement to the defense.  *Id.* n.1.  This is impermissible for several independent reasons.

*First*, the Trustee's proposed handling of Exhibit A-2 is deeply flawed and self-serving.[2]  Most fundamentally, the Trustee's proposal as to who will be listed in Exhibit A-2 and therefore excluded from the scope of the CFC Claims conflicts with the plain language of Section 546(e).  The Trustee does not intend to exclude Protected Entities unless they fall within the definition of "financial institutions" such as banks, trust companies, and credit unions.  *Id.* n.1.  In contrast, Section 546(e) safe harbor is much broader and protects not only financial institutions, but also financial participants, commodity brokers, forward contract merchants, stockbrokers, and securities clearing agency.  11 U.S.C. §546(e).  For the reasons detailed in Blackport's July 28, 2017 letter, it is a financial participant with assets under management far exceeding the $100,000,000 mark-to-market position requirement.  *See* 11 U.S.C. §101(22A).  However, under the Trustee's proposed approach, it will not be excluded from the CFC Claims.

The reasons for the Trustee's refusal to honor the full scope of the safe harbor as it applies to financial participants becomes clear upon even a cursory review of the list of now-dismissed shareholder defendants.  *See* Fifth Amended Complaint, Exhibit A.  In addition to Blackport, the list includes many other well-known mutual and other investment funds that clearly meet the definition of "financial participant" based on publicly available information.  The Trustee is surely aware of this but chooses to ignore the protected status of "financial participants" in order to maximize the nuisance value as against large defendants most susceptible to financial and regulatory burdens resulting from the prolonged pendency of meritless litigation.

*Second*, the Trustee's request for permission to sue everyone first and have the Court sort it out later is contrary to axiomatic legal and ethical principles.[3]  For example, by filing the proposed amended complaint, the Trustee would be certifying that the assertion of CFC Claims against the named defendants is not frivolous "to the best of [counsel's] knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances*."  Fed.R.Civ.P. 11(b).  In other words, the Trustee has the obligation to conduct an inquiry into each named defendant's entitlement to the safe harbor that is "reasonable under the circumstances."  Because the Trustee has not attached a proposed Exhibit A-2, it is impossible to determine at this time whether such an inquiry has taken place.  However, the Trustee is now on notice, by virtue of the parties'

---

[2] As an initial matter, the failure to submit the proposed Exhibit A-2 in connection with its request to amend deprives the defendants and the Court of the ability to evaluate fully the validity of the proposed amendment.  The Trustee should be required to submit a complete pleading for Court approval.

[3] This approach also seeks to take advantage of the size and logistical complexity of this litigation, which make timely resolution of meritless claims difficult.

**Arent Fox**

The Honorable
Richard J. Sullivan
March 13, 2018
Page 3

submissions and other publicly available information, that an individualized inquiry as to at least *some* specific defendants is required. At a minimum, reasonableness requires that the Trustee conduct this individualized inquiry with respect to Blackport and any other defendant whose name suggests that it may be a "bank" or a "fund." This inquiry should involve review of publicly available information and, where information is lacking, informal requests to defendants for information sufficient to confirm their Section 546(e) protected status. The Trustee cannot comply fully with its ethical obligations unless it conducts a good faith and reasonable inquiry prior to the assertion of the CFC Claims and submits to the Court Exhibit A-2 that is consistent with the outcome of the inquiry.

*Third*, to the extent the Court is inclined to permit the overbroad amendment – and it should not – procedural safeguards are necessary. The Trustee's suggestion that entitlement to Section 546(e) safe harbor should be litigated like "any other affirmative defense" serves only the Trustee's apparent goal of resurrecting nuisance litigation against as many financial institution defendants as possible. If the overbroad assertion of CFC Claims proposed by the Trustee is permitted, it will necessitate hundreds of individual dispositive motions, each turning on facts that, although undisputed, are unique to each statutorily protected defendant. The cost and delay of resolving each of these motions will be borne solely by the Protected Entities and the Court, while the Trustee will continue with its efforts to extract nuisance value settlements on account of already-dismissed or soon-to-be-dismissed meritless claims.[4]

Therefore, absent outright denial of the flawed request to amend, any leave to amend must be accompanied by procedural safeguards that shift to the Trustee the financial onus of having to deal with meritless claims. At a minimum, the safeguards should include the following:

1. The Trustee should be compelled to (i) conduct an individualized inquiry with respect to those defendants whose names suggest that they may be a Protected Entity of any kind, including a financial participant, and (ii) submit a proposed Exhibit A-2 identifying the excluded Protected Entities.

2. Once the inquiry is concluded and a proposed Exhibit A-2 is submitted, there should be a standstill period before any amendments are permitted to allow any defendant not identified in Exhibit A-2 to engage in a disclosure process with the Trustee to support its protected status.

---

[4] The Trustee's most recent offer to settle claims against Shareholder Defendants was made less than two months ago and will remain open until April 17, 2018. That offer called for up to 55 cents on the dollar on account of claims that had already been dismissed by this Court, including previously asserted CFC Claims the dismissal of which had been affirmed by the Second Circuit.

**Arent Fox**

    3.   In the event the Trustee asserts CFC Claims against any defendant that engaged in the disclosure process, and the defendant successfully challenges the CFC Claims based on Section 546(e), the Trustee would be responsible for such defendants' costs incurred as a result of the amendment, including reasonable attorneys' fees.[5]

In summary, the amendment should be denied outright. However, to the extent the Court is inclined to permit it in any respect, procedural safeguards are necessary to prevent the assertion and maintenance of meritless CFC Claims against parties protected by Section 546(e) safe harbor.

Respectfully submitted,

s/ Mark A. Angelov

cc:    David M. Zensky (via ECF and email)
        Robert J. Lack (via ECF and email)
        D. Ross Martin (via ECF and email)
        Joshua Sturm (via ECF and email)
        All counsel of record (via ECF)

---

[5] Federal courts have the inherent power to award attorneys' fees based on litigation conduct undertaken "in bad faith, vexatiously, or for oppressive reasons." *Int'l. Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).