**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE | ) |
| | ) |
| | ) Case No.: 11-md-02296-RJS |
| TRIBUNE COMPANY FRAUDULENT | ) |
| CONVEYANCE LITIGATION | ) Case No.: 12-mc-02296-RJS |
| | ) Case No.: 12-cv-02652-RJS |
| | ) |
| MARK S. KIRSCHNER, AS LITIGATION | ) |
| TRUSTEE FOR THE TRIBUNE LITIGATION | ) |
| TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -against- | ) |
| | ) |
| DENNIS J. FITZSIMONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>NOTICE OF SUBMISSION OF LETTER</u>

Pursuant to paragraph 47 of Master Case Order No. 3, 11-md-02296 (Sept. 7, 2012), ECF

No. 1395, please take notice that the undersigned submitted the attached letter to the Court in the

above-captioned actions.

Dated: May 16, 2018

Respectfully submitted,

<u>/s/ Andrew G. Devore</u>
Andrew G. Devore
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Telephone: (617) 951-7618
Fax: (617) 235-9715
Andrew.Devore@ropesgray.com

*Attorney for Named Defendants*



ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

May 16, 2018

Andrew G. Devore
Joshua Y. Sturm
T +1 617 951 7000
andrew.devore@ropesgray.com
joshua.sturm@ropesgray.com

**BY ECF AND E-MAIL**

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square, Room 905
New York, New York 10007

Re:  *In re Tribune Co. Fraudulent Conveyance Litig.*, 11-MD-2296; *Kirschner* (the "Trustee") *v. FitzSimons, et al.*, No. 12-CV-2652 ("*FitzSimons*")

Dear Judge Sullivan:

We write on behalf of the Exhibit A Shareholder Defendants' Executive Committee in *FitzSimons* to notify the Court that, yesterday, the Court of Appeals for the Second Circuit entered the order annexed as Exhibit A, recalling the mandate in *Deutsche Bank Trust Company Americas, et al. v. Robert R. McCormick Foundation, et al.* (the "State Law Actions") "in anticipation of further panel review." No. 13-3992 (2d Cir. May 15, 2018). This latest development in the State Law Actions confirms that, if the Court is not inclined to deny the Trustee's pending March 8, 2018 application to amend the *FitzSimons* complaint outright, the Court should defer consideration until the Second Circuit's forthcoming decision in that related matter, or, at the very least, should not grant the Trustee's request without the benefit of full briefing.

On April 10, 2018, the plaintiffs in the State Law Actions—represented by, among others, the same counsel as represents the Trustee in *FitzSimons*— requested that the Second Circuit recall its mandate, vacate its decision affirming this Court's dismissal of state law constructive fraudulent conveyance claims, and remand the State Law Actions to this Court for further proceedings. The Second Circuit has now indicated that it intends to consider that request on the merits, and its conclusions will likely impact the Trustee's pending application to add analogous federal constructive fraudulent conveyance claims in *FitzSimons*. Briefing on the motion that is now under Second Circuit panel review addresses, among other matters, whether Bankruptcy Code section 546(e) continues to shelter all payments received by shareholders in the Tribune LBO transaction. *See* Opposition of Defendants-Appellees-Cross-Appellants at 16-22, *Deutsche Bank Trust Co. Ams.*, No. 13-3992 (2d Cir. Apr. 20, 2018) (annexed as Exhibit B). If the Second Circuit holds that section 546(e) continues to protect the shareholders, the Trustee's request to add the same claims in the present action would be futile. If the Court is not inclined to deny the Trustee's application

outright, we respectfully submit that these issues should only be decided in the context of full briefing to address the implications of the Second Circuit's forthcoming decision.

Respectfully submitted,

*/s/ Andrew G. Devore*
Andrew G. Devore
Joshua Y. Sturm

*Liaison Counsel to the Executive Committee of Shareholder Defendants in Kirschner v. FitzSimons, et al.*

# Exhibit A

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand and eighteen.

Before:      Ralph K. Winter,
             Christopher F. Droney,
                  *Circuit Judges*,
             Alvin K. Hellerstein,
                  *District Judge.* *

_____

IN RE: TRIBUNE COMPANY FRAUDULENT
CONVEYANCE LITIGATION

**ORDER**

| | |
|---|---|
| NOTE HOLDERS, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, Wilmington Trust Company, INDIVIDUAL RETIREES, William A. Niese, on behalf of a putative class of Tribune Company retirees, | Docket No. 13-3992(L)<br>13-3875(XAP)<br>13-4178(XAP)<br>13-4196(XAP) |

       Plaintiff - Appellant-Cross-Appellees,

Mark S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust,

       Plaintiff,

Tendering Phones Holders, Citadel Equity Fund Ltd., Camden Asset Management LLP and certain of their affiliates,

       Plaintiff-Intervenors,

v.

Large Private Beneficial Owners, Financial Institution Holders,

_____
*The Honorable Alvin K. Hellerstein, of the United States District Court for the Southern District of New York, sitting by designation.

Financial Institution Conduits, Merrill Lynch, Pierce, Fenner & Smith, Inc., on behalf of a putative class of former Tribune Company shareholders, Pension Funds, including public, private, and Taft Hartlet Funds, Individual Beneficial Owners, Mario J. Gabelli, on behalf of a putative class of former Tribune Company shareholders, Mutual Funds, At-Large, Estate of Karen Babcock, Phillip S. Babcock, Phillip S. Babcock, Douglas Babcock, Defendants listed on Exhibit B,

Defendants - Appellee-Cross-Appellants,

Current and Former Directors and Officers, Betsy D. Holden, Christopher Reyes, Dudley S. Taft, Enrique Hernandez, Jr., Miles D. White, Robert S. Morrison, William A. Osborn, Harry Amsden, Stephen D. Carver, Dennis J. FitzSimons, Robert Gremillion, Donald C. Grenesko, David Dean Hiller, Timothy J. Landon, Thomas D. Leach, Luis E. Le, Mark Hianik, Irving Quimby, Crane Kenney, Chandler Bigelow, Daniel Kazan, Timothy Knight, Thomas Finke, SAM ZELL AND AFFILIATED ENTITIES, EGI-TRB, LLC, Equity Group Investments, LLC, SAM Investment Trust, Samuel Zell, Tower CH, LLC, Tower DC, LLC, Tower Dl, LLC, Tower EH, LLC, Tower Gr, Large Shareholders, Chandler Trust and their representatives, FINANCIAL ADVISORS, Valuation Research Corporation, Duff & Phelps, LLC, Morgan Stanley & Co. Inc. and Morgan Stanley Capital Services, Inc., GreatBanc Trust Company, Citigroup Global Markets, Inc., CA PUBLIC EMPLOYEE RETIREMENT SYSTEM, CALPERS, UNIVERSITY OF CA REGENTS, T. ROWE PRICE ASSOCIATES, INC., MORGAN KEEGAN & COMPANY, INC., NTCA, DIOCESE OF TRENTON-PENSION FUND, FIRST ENERGY SERVICE COMPANY, MARYLAND STATE RETIREMENT AND PENSION SYSTEM, T BANK LCV QP, T BANK-LCV- PT, JAPAN POST INSURANCE, CO., LTD., SERVANTS OF RELIEF FOR INCURABLE CANCER (AKA DOMINICAN SISTERS OF HAWTHORNE), NEW LIFE INTERNATIONAL, NEW LIFE INTERNATIONAL TRUST, SALVATION ARMY, SOUTHERN TERRITORIAL HEADQUARTERS, CITY OF PHILADELPHIA EMPLOYEES, OHIO CARPENTERS' MIDCAP (AKA OHIO

CARPENTARS' PENSION FUND), TILDEN H.
EDWARDS, JR., MALLOY AND EVANS, INC.,
BEDFORD OAK PARTNERS, LP, DUFF AND
PHELPS LLC, DURHAM J. MONSMA, CERTAIN
TAG-ALONG DEFENDANTS, MICHAEL S.
MEADOWS, WIRTZ CORPORATION,

        Defendants.

_____

     IT IS HEREBY ORDERED that the mandate in this case is recalled in anticipation of further panel review.

                For the Court:

                Catherine O'Hagan Wolfe,
                Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# **Exhibit B**

# 13-3992(L)

### 13-3875, 13-4178, 13-4196

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

IN RE TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION

On Appeal from the United States District Court
for the Southern District of New York, Nos. 11-md-2296 & 12-mc-2296
Before the Honorable Richard J. Sullivan

## OPPOSITION OF DEFENDANTS-APPELLEES-CROSS-APPELLANTS TO MOTION OF PLAINTIFFS-APPELLANTS-CROSS-APPELLEES TO RECALL THE MANDATE

DAVID M. LEHN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

PHILIP D. ANKER
    *Counsel of Record*
ALAN E. SCHOENFELD
JACK ZARIN-ROSENFELD
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
New York, NY 10007
(212) 230-8890
philip.anker@wilmerhale.com

April 20, 2018

*Counsel for Susquehanna Investment Group and Affiliates*

**ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK**

# CORPORATE DISCLOSURE STATEMENT

The undersigned Defendants-Appellees-Cross-Appellants previously filed corporate disclosure statements pursuant to Federal Rule of Appellate Procedure 26.1. *See* ECF Nos. 30, 135, 136, 138 & 139. Defendants-Appellees-Cross-Appellants incorporate and rely upon those corporate disclosure statements in satisfaction of their obligations under Federal Rule of Appellate Procedure 26.1, with the following amendments:

Each of the following Defendants-Appellees-Cross-Appellants states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock: DiMaio Ahmad Capital LLC, now operating as DA Capital LLC; Employee Retirement System of Texas; Illinois Municipal Retirement Fund; Ohio Public Employees Retirement System; Oppenheimer Main Street All Cap Fund (f/k/a/Oppenheimer Main Street Select Fund and Oppenheimer Main Street Opportunity Fund); Oppenheimer Main Street Mid Cap Fund (f/k/a as Oppenheimer Main Street Small Cap Fund); Oppenheimer Variable Account Funds doing business as Oppenheimer Main Street Small Cap Fund/VA (f/k/a Oppenheimer Main Street Small & Mid-Cap Fund/VA); Pensions Reserve Investment Management Board of Massachusetts; Russell U.S. Core Equity Fund (incorrectly named as "Russell US Core Equity Fund," and f/k/a Russell Equity I Fund and Russell Investment

Company Diversified Equity Funds); School Employees Retirement System of Ohio; Texas Education Agency.

Bank of Montreal Holding Inc. (as successor in interest to BMO Nesbitt Burns Trading Corp. S.A.) states that it is ultimately wholly owned by the Bank of Montreal. Bank of Montreal holds 100% of the issued and outstanding common shares of Bank of Montreal Holding Inc. BMO Life Assurance Company ("BMOLA") holds 100% of the Class K Preference Shares and Class L Preference Shares of Bank of Montreal Holding Inc. BMO Life Holdings (Canada), ULC ("BMO ULC") holds 100% of the issued and outstanding shares of BMOLA. BMO Life Insurance Company ("BMOLI") holds 100% of the issued and outstanding common shares of BMO ULC. Bank of Montreal holds 100% of the issued and outstanding common shares of BMOLI.

Barclays Capital Inc. states that it is an indirectly held wholly owned subsidiary of Barclays PLC, a publicly held company whose shares are traded on the London and New York stock exchanges. Barclays PLC has no parent company, and no publicly held company owns more than 10% of its stock.

Bear Stearns Securities Corp. (which changed its name to J.P. Morgan Clearing Corp.) was a wholly owned subsidiary of J.P. Morgan Securities LLC, which is a wholly owned subsidiary of J.P. Morgan Broker-Dealer Holdings Inc., which is a wholly owned subsidiary of JPMorgan Chase & Co., a publicly held

corporation. J.P. Morgan Clearing Corp. was merged into J.P. Morgan Securities LLC on October 1, 2016.

BNP Paribas Prime Brokerage Inc. states that on March 12, 2018, it merged into BNP Paribas Securities Corp., which is a wholly owned indirect subsidiary of BNP Paribas, which is a publicly owned company organized under the laws of France. No publicly held entity owns 10% or more of the stock of BNP Paribas.

Charles Schwab Futures, Inc. (f/k/a optionsXpress, Inc.) is a wholly owned subsidiary of optionsXpress Holdings, Inc., which is in turn 100% owned by The Charles Schwab Corporation, a publicly traded company.

Credit Suisse Securities (Europe) Ltd. states that it is a wholly owned subsidiary of Credit Suisse Investment Holdings (UK), which in turn is a wholly owned subsidiary of Credit Suisse Investments (UK), which is jointly owned by Credit Suisse AG and Credit Suisse AG, Guernsey Branch. Credit Suisse AG, Guernsey Branch is a branch of Credit Suisse Group AG, and Credit Suisse AG is 100% owned by Credit Suisse Group AG. Credit Suisse Group AG is a corporation organized under the laws of Switzerland and whose shares are listed on the Six Swiss Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares. No publicly held company owns 10% or more of Credit Suisse Group AG.

Credit Suisse Securities (USA) LLC states that it is a wholly owned subsidiary of Credit Suisse (USA), Inc., whose voting stock is 100% owned by Credit Suisse AG, which is 100% owned by Credit Suisse Group AG, which is a corporation organized under the laws of Switzerland and whose shares are listed on the Six Swiss Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares. No publicly held company owns 10% or more of Credit Suisse Group AG.

Credit Suisse (USA), Inc. states that it is a wholly owned subsidiary of Credit Suisse Holdings (USA) Inc., whose voting stock is 100% owned by Credit Suisse AG, which is 100% owned by Credit Suisse Group AG, which is a corporation organized under the laws of Switzerland and whose shares are listed on the Six Swiss Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares. No publicly held company owns 10% or more of Credit Suisse Group AG.

Deutsche Bank Securities Inc. states that it is a wholly-owned subsidiary of DB U.S. Financial Markets Holding Corporation, which in turn is a wholly-owned subsidiary of DB USA Corporation, previously doing business as Taunus Corporation, which in turn is a wholly-owned subsidiary of Deutsche Bank A.G., a publicly traded corporation. No other publicly held company owns 10% or more of the stock of Deutsche Bank Securities Inc.

Deutsche Investment Management Americas Inc. states that it is a wholly owned subsidiary of DeAM US Holding Corporation.  DeAM US Holding Corporation is a wholly owned subsidiary of DWS Group GmbH & Co. KGaA.  DWS Group GmbH & Co. KGaA is publicly traded in part and 77.75% owned by DB Beteiligungs Holding GmbH.  DB Beteiligungs Holding GmbH is wholly owned by Deutsche Bank AG.  No publicly traded corporation holds 10% or more of the stock of Deutsche Bank AG.

Frank Russell Company states that it is a wholly owned subsidiary of the London Stock Exchange Group, LLC.  "Frank Russell," "Frank Russell Investments," and "Frank Russell Trust" do not exist, to the best of counsel's knowledge.

Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.) states that it is a wholly-owned subsidiary of The Goldman Sachs Group, Inc. ("GS Group") except for de minimis non-voting, non-participating interests held by unaffiliated broker-dealers.  GS Group is a corporation organized under the laws of Delaware, and its shares are publicly traded on the New York Stock Exchange.  GS Group has no parent corporation, and to the best of GS Group's knowledge, no publicly held company owns 10% or more of the common stock of GS Group.  Goldman Sachs Execution & Clearing, L.P. was merged into Goldman Sachs & Co. LLC in June 2017.

Goldman Sachs International Holdings LLC states that it is an indirect, wholly-owned subsidiary of The Goldman Sachs Group, Inc. ("GS Group"). GS Group is a corporation organized under the laws of Delaware, and its shares are publicly traded on the New York Stock Exchange. GS Group has no parent corporation, and to the best of GS Group's knowledge, no publicly held company owns 10% or more of the common stock of GS Group.

GS Investment Strategies LLC states that it is an indirect, wholly-owned subsidiary of The Goldman Sachs Group, Inc. ("GS Group"). GS Group is a corporation organized under the laws of Delaware, and its shares are publicly traded on the New York Stock Exchange. GS Group has no parent corporation, and to the best of GS Group's knowledge, no publicly held company owns 10% or more of the common stock of GS Group.

Harbor Capital Advisors, Inc. states that it is wholly owned by Robeco US Holding, Inc., which is wholly owned by Robeco US Holding B.V., which is wholly owned by ORIX Corporation Europe N.V. ORIX Corporation, a publicly traded company, owns 100% of the outstanding shares of ORIX Corporation Europe N.V.

JPMorgan Chase 401(k) Savings Plan is an "employee pension benefit plan" as defined by the Employee Retirement Security Act, its income is exempt from federal income tax under Section 501(a) of the Internal Revenue Code, and is

sponsored by JPMorgan Chase Bank, N.A., a wholly owned subsidiary of JPMorgan Chase & Co., a publicly held corporation.

J.P. Morgan Clearing Corp. was merged into J.P. Morgan Securities LLC on October 1, 2016.

J.P. Morgan Securities plc (formerly J.P. Morgan Securities Ltd.) is an indirect wholly owned subsidiary of JPMorgan Chase Bank, N.A., which is a wholly owned subsidiary of JPMorgan Chase & Co., a publicly held corporation.

JPMorgan Trust II is an open-end, management investment company organized as a Delaware statutory trust. JPMorgan Trust II issues shares of beneficial interest in series, with each series corresponding to a separate fund. JPMorgan Trust II has no parent corporation and, as of March 30, 2018, no publicly held corporation owns, of record, ten percent or more of any class of shares of a relevant fund for its own benefit.

J.P. Morgan Whitefriars, Inc. (n/k/a J.P. Morgan Whitefriars LLC) is a wholly owned subsidiary of J.P. Morgan Overseas Capital Corporation, which is a wholly owned subsidiary of J.P. Morgan International Finance Limited, which is an indirect wholly owned subsidiary of JPMorgan Chase & Co., a publicly held corporation.

Manulife Investment Exchange Funds Corp. (incorrectly named as "Manulife Invst Ex FDS Corp.-MIX") states that it is a wholly owned subsidiary of Manulife Investment Exchange Funds Trust.

Manulife Investments (f/k/a "Manulife Mutual Funds") states that it is a division of Manulife Asset Management Limited, which is a wholly owned subsidiary of Manulife Asset Management Holdings (Canada) Inc. (f/k/a/ "FNA Financial Inc."), which is itself a wholly owned subsidiary of The Manufacturers Life Insurance Company, which is wholly owned by Manulife Financial Corporation, a publicly traded company.

Manulife U.S. Equity Fund states that it has no parent corporation and that The Manufacturers Life Insurance Company owns more than 10% of its units. The Manufacturers Life Insurance Company is wholly owned by Manulife Financial Corporation, a publicly traded company.

MassMutual Premier Main Street Small/Mid Cap Fund (f/k/a "MassMutual Premier Main Street Small Cap Fund") no longer exists, to the best of counsel's knowledge.

MUFG Union Bank N.A., formerly known as Union Bank, N.A., states that it is a wholly owned subsidiary of MUFG Americas Holdings Corporation, which is a wholly owned subsidiary of MUFG Bank, Ltd., which in turn is a wholly owned subsidiary of Mitsubishi UFJ Financial Group.

Neuberger Berman BD LLC states that, effective January 1, 2017, Neuberger Berman LLC changed its name to Neuberger Berman BD LLC ("NB BD LLC"), and, following a consolidation of certain legal entities, became 100% owned by

Neuberger Berman Investment Advisers LLC ("NBIA"). Both NB BD LLC and NBIA are indirect wholly-owned subsidiaries of Neuberger Berman Group LLC. NBSH Acquisitions, LLC is the parent company of Neuberger Berman Group LLC ("NBG"). No publicly held company owns more than 10% of NBG's equity.

ODDO BHF Aktiengesellschaft states that it is a wholly owned subsidiary of ODDO BHF Group S.A. Brussels and ODDO BHF Group Ltd., London, which are each directly or indirectly wholly owned by ODDO BHF S.C.A., Paris, which is a partnership organized under French law. Upon information and belief, no publicly traded company owns 10 % or more of the partnership interest in ODDO BHF S.C.A., Paris.

Pacific Select Fund states that it is a wholly owned subsidiary of Pacific Mutual Holding Company. "Pacific Select Fund Equity Index Portfolio" is not a corporate entity, but an investment fund operating under the Pacific Select Fund. "Pacific Select" does not exist, to the best of counsel's knowledge.

RBC Capital Markets Arbitrage, S.A., formerly known as RBC Capital Markets Arbitrage, LLC, states that it is an indirect, wholly owned subsidiary of Royal Bank of Canada, which is publicly traded on the New York Stock Exchange and Toronto Stock Exchange.

RBC O'Shaughnessy U.S. Value Fund states that it is a Canadian trust for which RBC Global Asset Management Inc. is its investment advisor. RBC Global

Asset Management Inc. is an indirect wholly owned subsidiary of Royal Bank of Canada, which is publicly traded on the New York Stock Exchange and the Toronto Stock Exchange.

Russell Investment Group (also named as "Russell Investments") states that it is a registered trade name of investment management business affiliates formerly under the common control of Russell Investments Group, Ltd.

Russell Investments Trust Company (f/k/a Frank Russell Trust Company) states that it is a wholly owned subsidiary of Russell Investments US Institutional Holdco, Inc.

Schultze Asset Management, LP states that, effective on June 30, 2015, Schultze Asset Management, LLC changed its name to Schultze Asset Management, LP. Schultze Asset Management, LP has no parent corporation and no publicly held corporation owns 10% or more of an ownership interest in Schultze Asset Management, LP.

Scotia Capital Inc. states that it is owned entirely by The Bank of Nova Scotia, a publicly held foreign bank with its head office in Halifax, Nova Scotia, Canada. No publicly held corporation owns 10% or more of any class of shares of The Bank of Nova Scotia.

Scotia Capital (USA) Inc. states that it is a wholly owned subsidiary of Scotia Holdings (US) Inc., which is wholly owned by BNS Investments Inc. BNS

Investments Inc. is wholly owned by The Bank of Nova Scotia, a publicly held foreign bank with its head office in Halifax, Nova Scotia, Canada. No publicly held corporation owns 10% or more of any class of shares of The Bank of Nova Scotia.

Security Global Investors-Rydex/SGI states that it is the former doing-business-as name for Security Global Investors, LLC, which was merged with and into Security Investors LLC, and no publicly held corporation owns 10% or more of its stock.

Swiss American Corporation states that it is a wholly owned subsidiary of Credit Suisse (USA), Inc., which in turn is a wholly owned subsidiary of Credit Suisse Holdings (USA) Inc., whose voting stock is 100% owned by Credit Suisse AG, which is 100% owned by Credit Suisse Group AG, which is a corporation organized under the laws of Switzerland and whose shares are listed on the Six Swiss Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares. No publicly held company owns 10% or more of Credit Suisse Group AG.

TD Ameritrade Clearing, Inc. states that it is a wholly owned subsidiary of TD Ameritrade Online Holdings Corp. TD Ameritrade Online Holdings Corp. is a wholly owned subsidiary of TD Ameritrade Holdings Corporation. TD Ameritrade Holding Corporation is a publicly traded corporation with no parent company. The

Toronto-Dominion Bank, a publicly held entity, owns more than 10 percent of TD Ameritrade Holding Corporation's stock.

Transamerica Asset Management, as owner of the DIA Mid Cap Value Portfolio, states that it is directly owned by Transamerica Premier Life Insurance Company ("TPLIC") and AUSA Holding, LLC ("AUSA"), both of which are indirect, wholly owned subsidiaries of Aegon N.V. TPLIC is owned by Commonwealth General Corporation ("Commonwealth"). Commonwealth and AUSA are wholly owned by Transamerica Corporation, a financial services holding company. Transamerica Corporation is owned by The AEGON Trust, which is owned by Aegon International B.V., which is owned by Aegon N.V., a Netherlands corporation, and a publicly traded international insurance group.

Transamerica Premier Life Insurance Company (f/k/a "Monumental Life Insurance Company") states that it is a wholly owned subsidiary of Commonwealth General Corporation. Commonwealth General Corporation is a direct wholly owned subsidiary of Transamerica Corporation, which is a wholly owned subsidiary of The AEGON Trust. The AEGON Trust is a wholly owned subsidiary of Aegon International B.V., which is wholly owned by Aegon N.V. Aegon N.V. is a publicly traded holding company with its headquarters in The Hague, the Netherlands, and more than 10% of its stock is owned by Vereniging Aegon.

UBS AG states that it is wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

UBS Financial Services, Inc. states that is wholly owned by UBS Americas Inc., which is in turn wholly owned by UBS Americas Holding LLC, which is in turn wholly owned by UBS AG, which is in turn wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

UBS Global Asset Management (Americas) Inc. states that it is a wholly owned subsidiary of UBS Americas Inc., which is in turn wholly owned by UBS Americas Holding LLC, which is in turn wholly owned by UBS AG, which is in turn wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

UBS Global Asset Management (US) Inc. states that it is a wholly owned subsidiary of UBS Americas Inc., which is in turn wholly owned by UBS Americas Holding LLC, which is in turn wholly owned by UBS AG, which is in turn wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

UBS O'Connor LLC states that it is a wholly owned subsidiary of UBS Americas Holding LLC, which is in turn wholly owned by UBS AG, which is in turn wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

UBS Securities LLC states that it is wholly owned (directly and indirectly) by UBS Americas Holding LLC, which in turn is wholly owned by UBS AG, which in turn is wholly owned by UBS Group AG. UBS Group AG is a publicly traded company with no parent corporation and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF AUTHORITIES ...............................................................xvi

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE .............................................................4

ARGUMENT ....................................................................................9

I.  REGARDLESS OF SECTION 546(e), PLAINTIFFS' CLAIMS ARE
    FORECLOSED BECAUSE THEY NEVER REVERTED FROM THE
    TRUSTEE ...............................................................................9

II. EVEN IF PLAINTIFFS' CLAIMS REVERTED, *MERIT MANAGEMENT*
    WOULD NOT REQUIRE VACATUR OF THE DECISION ......................................12

    A.  *Merit Management* Does Not Touch This Court's
        Conclusion Regarding Section 546(e)'s Preemptive Force ...............13

    B.  Section 546(e) Covers The LBO And Therefore
        Plaintiffs' Claims Are Preempted ........................................16

CONCLUSION ................................................................................22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531 (1994)................................................................11

*Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*,
    709 F.3d 140 (2d Cir. 2013) ...................................................... 2-3

*Dewsnup v. Timm*,
    502 U.S. 410 (1992)................................................................11

*Enron Corp. v. International Finance Corp.* (*In re Enron Corp.*),
    341 B.R. 451 (Bankr. S.D.N.Y. 2006) ...........................................17

*Glenny v. Langdon*,
    98 U.S. 20 (1878)..................................................................10

*In re MortgageAmerica Corp.*,
    714 F.2d 1266 (5th Cir. 1983) ...................................................11

*In re Northington*,
    876 F.3d 1302 (11th Cir. 2017) .................................................16

*In re Quebecor World (USA) Inc.*,
    719 F.3d 94 (2d Cir. 2013) .........................................................1

*In re Tribune Co. Fraudulent Conveyance Litigation*,
    818 F.3d 98 (2d Cir. 2016) ...............................................*passim*

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006) .....................................................16

*Manhattan Properties v. Irving Trust Co.*,
    291 U.S. 320 (1934)...............................................................11

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018)..........................................1, 7-8, 14-15, 21

*Moyer v. Dewey*,
    103 U.S. 301 (1880)...............................................................10

*Ransom v. FIA Card Services, N.A.*,
    562 U.S. 61 (2011) ........................................................................18

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ...........................................................16

*Sargent v. Columbia Forest Products, Inc.*,
    75 F.3d 86 (2d Cir. 1996) ........................................................... 2-3

*St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc.*,
    884 F.2d 688 (2d Cir. 1989) ...........................................................9

*Trimble v. Woodhead*,
    102 U.S. 647 (1880)......................................................................10

*United States v. Jacobson*,
    15 F.3d 19 (2d Cir. 1994) ...............................................................4

*Whyte v. Barclays Bank PLC*,
    644 F. App'x 60 (2d Cir. 2016) .......................................................6

## DOCKETED CASES

*Deutsche Bank Trust Co. Americas v. McCormick Foundation*,
    No. 16-317 (U.S.) ............................................................................6

*In re Tribune Co. Fraudulent Conveyance Litigation*,
    No. 11-md-2296 (S.D.N.Y.) ..........................................................19

*In re Tribune Co.*,
    No. 08-13141 (Bankr. D. Del.)................................................. 18-22

*Kirschner v. FitzSimons*,
    No. 12-2652 (S.D.N.Y.) ................................................................12

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    No. 16-784 (U.S.) ....................................................................7, 21

*Whyte v. Barclays Bank PLC*,
    No. 16-239 (U.S.) ............................................................................6

# STATUTES AND RULES

11 U.S.C.

§101 ....................................................................... 17-18, 21
§349 ................................................................................11
§541 ..................................................................................9
§544 ..................................................................................9
§546 ..........................................................................*passim*
§548 ..................................................................................9
§741 ..........................................................................18, 20
§1112 ..............................................................................11

28 U.S.C.

§1409 ..................................................................................9
§2109 ..................................................................................8

Fed. R. Evid. 201 ........................................................17

# OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014)..................................18

*Collier on Bankruptcy* (16th ed. 2018) ..................................17

Office of the Comptroller of the Currency, *National Banks Active as of March 31, 2018, at* https://www.occ.treas.gov/topics/ licensing/national-banks-fed-savings-assoc-lists/national-by-name-pdf.pdf (visited Apr. 20, 2018)............................................17

Office of the Comptroller of the Currency, *Trust Banks Active as of March 31, 2018, at* https://www.occ.treas.gov/topics/licensing/ national-banks-fed-savings-assoc-lists/trust-by-name-pdf.pdf (visited Apr. 20, 2018)..................................................17

Stern, Robert L., et al., *Supreme Court Practice* (7th ed. 1993) ............................14

U.C.C. §4-104 ..............................................................18

## INTRODUCTION

Two years ago, this Court affirmed the dismissal of these actions, holding that because Section 546(e) of the Bankruptcy Code would have barred a bankruptcy trustee from asserting constructive fraudulent-conveyance claims to avoid the payments at issue—i.e., it would have "safe harbored" them—Section 546(e) preempted the creditor-plaintiffs from doing the same.  The preemption issue was the focus of the litigation because it was understood that the payments came within Section 546(e)'s scope: entities covered by Section 546(e) had served as intermediaries for the payments, and this Court had previously held that suffices.  *See In re Quebecor World (USA) Inc.*, 719 F.3d 94, 99 (2d Cir. 2013).

Two months ago, the Supreme Court rejected *Quebecor*'s interpretation of Section 546(e), holding in *Merit Management Group, LP v. FTI Consulting, Inc.*, that the safe harbor applies only if the transfer to be avoided was "made by or to (or for the benefit of)" a covered entity; it is not enough that a covered entity served as an intermediary.  138 S. Ct. 883 (2018).  Although plaintiffs' certiorari petition in this case remains pending, the Supreme Court appears to lack a quorum and thus will soon be statutorily required to affirm this Court's decision.  Hoping to avoid that result, plaintiffs ask this Court to cut off the Supreme Court's process by recalling the mandate and vacating the judgment in its entirety in light of *Merit Management*.

There is no legitimate basis for that extraordinary request. "[C]ourts are exceptionally stingy in recalling mandates." *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 92 (2d Cir. 1996). The recall power "can be exercised only in extraordinary circumstances and is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 709 F.3d 140, 142 (2d Cir. 2013) (quotation marks omitted). Here, the relief requested is unwarranted because, for multiple reasons, *Merit Management* does not "call[] into serious question the correctness of th[is] court's judgment." *Sargent*, 75 F.3d at 89-90 (quotation marks omitted).

First, regardless of whether Section 546(e) applies, this Court's judgment should not be disturbed because—as this Court previously recognized—plaintiffs have no claims to assert. Under the Bankruptcy Code and longstanding Supreme Court precedent, when Tribune filed for bankruptcy, all creditors' avoidance claims vested in the bankruptcy trustee, the creditors' statutory representative, in order to promote a comprehensive and rational reorganization, and they have not reverted to the creditors.

Second, Section 546(e) still preempts plaintiffs' claims. Contrary to plaintiffs' contention, *Merit Management* does not undermine this Court's prior holding that Section 546(e) preempts state-law claims to avoid safe-harbored transfers. That case addressed only whether a payment was within the scope of

- 2 -

Section 546(e).  It involved an avoidance claim asserted under *federal* law and raised no issue of state-law preemption.  Indeed, while *Merit Management* was pending, the Supreme Court denied a certiorari petition in a companion to this case—*Whyte v. Barclays Bank PLC*—that sought review of the *preemption analysis adopted in this case*.  This Court's central preemption holding, therefore, should not be vacated.  *See Sargent*, 75 F.3d at 92 (scope of mandate recall must be "justified" and not on a "piggy-back basis").

And the payments at issue are still safe harbored.  They were "made by" Tribune, which was a covered entity in two independent ways: as a "financial institution" and as a "financial participant."  Moreover, the payments were "made … to (or for the benefit of)" Tribune's shareholders, who were themselves "financial institutions" and thus also covered entities.  This Court previously had no need to address these points, but the record supporting them is indisputable.  Under this Court's prior preemption ruling in this case, Section 546(e) still preempts plaintiffs' claims.

This Court, therefore, should deny plaintiffs' motion in full and finally bring these cases to a close.  Recall and vacatur would be particularly inequitable now, more than a decade after thousands of passive investors received payment for their stock as part of a transaction they played no role in arranging.  *See Christian*

*Louboutin*, 709 F.3d at 142 (equities and "substantial lapse[s] in time" are factors in deciding recall motions).

If the Court recalls the mandate, however, it should vacate only the premise that a covered entity's involvement as a mere intermediary sufficed to bring the transfer within Section 546(e)'s safe harbor, deny the request for a remand, and amend its opinion to reaffirm the judgment because plaintiffs' claims did not revert to them or because Tribune or its shareholders were covered entities.  Should the Court call for further proceedings here or in the district court, it should limit the proceedings to those two issues.  Further, if the Court remands, it should retain jurisdiction to quickly resolve these long-running cases.  *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994).

## STATEMENT OF THE CASE

In a 2007 leveraged buyout ("LBO"), Tribune "purchased all of its stock" from its thousands of public shareholders for about $8 billion.  *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 105-106 (2d Cir. 2016).  In December 2008, Tribune petitioned for Chapter 11 bankruptcy protection.  *Id.* at 106.  Years later, bondholders and other unsecured creditors—plaintiffs here—filed dozens of suits against the former shareholders alleging that Tribune's LBO payments were avoidable under state constructive fraudulent-conveyance laws.  *Id.* at 106-107.  Judge Sullivan dismissed the consolidated cases because he concluded that the

Bankruptcy Code's automatic stay provision deprived plaintiffs of statutory standing. *Id.* at 107-108.

In March 2016, this Court affirmed the dismissal, but on the alternative ground that plaintiffs' claims were preempted by Section 546(e) of the Bankruptcy Code. That section expressly bars bankruptcy trustees from claiming constructive fraudulent conveyance to avoid a "transfer … made by or to (or for the benefit of)" a covered entity if the transfer was a "settlement payment … [or] in connection with a securities contract." 11 U.S.C. §546(e). Among the covered entities are "financial institution[s]" and "financial participant[s]." *Id.*

Consistent with settled law in this Circuit (and most other circuits to address the question), this Court assumed that Tribune's bankruptcy estate would have been barred by Section 546(e) from seeking to avoid the payments as constructive fraudulent conveyances under the Bankruptcy Code simply because those payments went through intermediaries who were covered entities. 818 F.3d at 105-106, 112. This Court then held that the creditor-plaintiffs could not make an "end run" around that bar by bringing the claims themselves under state law. Rather, allowing creditors to assert state-law constructive fraudulent-conveyance claims that the bankruptcy trustee—the creditors' statutory representative—would be prohibited from bringing under the Bankruptcy Code would undermine the purpose of Section 546(e)'s safe harbor, which is to provide "finality … and

- 5 -

certainty" to the securities markets. *Id.* at 110, 119, 123. And, this Court found, there is "no conflict between Section 546(e)'s language and its purpose." *Id.* at 120. Consequently, this Court held that Section 546(e) preempted plaintiffs' state-law constructive fraudulent-conveyance claims. *See id.* at 123-124.

For "substantially the [same] reasons," this Court simultaneously affirmed the dismissal of the avoidance claims asserted in another case "heard in tandem." *Whyte v. Barclays Bank PLC*, 644 F. App'x 60 (2d Cir. 2016) (summary order), *cert. denied*, 137 S. Ct. 2114 (2017). Like the plaintiffs here, Whyte was a creditor representative suing under state law. The only defendant there—Barclays Bank—was undisputedly a covered entity. Accordingly, when Whyte petitioned for certiorari, she presented only the question whether Section 546(g)—a materially identical provision to Section 546(e) covering swap payments instead of securities payments—preempts state-law claims to avoid transactions within Section 546(g)'s scope. Pet. i, No. 16-239 (U.S. Aug. 19, 2016). The petition did not present "the separate question" whether the safe harbor applies to transactions merely because a covered entity served as an intermediary. Br. in Opp. 3, No. 16-239 (U.S. Oct. 24, 2016).

Plaintiffs in this case also petitioned for certiorari. As in *Whyte*, the petition challenged this Court's ruling regarding the preemptive effect of the Bankruptcy Code's safe harbor, but unlike in *Whyte*, it also challenged this Court's ruling

- 6 -

regarding Section 546(e)'s substantive scope.  *See* Pet. i, No. 16-317 (U.S. Sept. 9, 2016).

In May 2017, the Supreme Court granted the certiorari petition in *Merit Management*, which presented substantially the same question about Section 546(e)'s scope as the *Tribune* plaintiffs' petition but arose from a Seventh Circuit decision on the other side of the circuit split on the issue.  *See* Pet. i, No. 16-784 (U.S. Dec. 16, 2016).  Apart from that, *Merit Management* bore no resemblance to this case.  It involved a bankruptcy trustee's federal-law claim to avoid a comparatively modest payment made by a privately held company to its few shareholders through a bank.  138 S. Ct. at 890-891.  Here, in contrast, creditors assert state-law claims to avoid billions of dollars in payments that were made to thousands of shareholders by a public company using Computershare Trust Company, N.A. ("Computershare"), one of the principal paying agents and depositaries for such transactions in the public securities markets.

Shortly after granting the *Merit Management* petition, the Supreme Court denied the petition in *Whyte*, declining to review of the same preemption question presented in *Tribune*.  It did not act on the *Tribune* petition.

In February 2018, the Supreme Court decided *Merit Management*, holding that "the only relevant transfer for purposes of the safe harbor is the transfer that the trustee seeks to avoid" and thus it "is simply irrelevant" that a covered entity

served as an intermediary.  138 S. Ct. at 888, 895.  Put another way, courts "must

look to the overarching transfer [sought to be avoided] to evaluate whether it meets

the safe-harbor criteria."  *Id.* at 897.  With no preemption question presented, the

Court did not address Section 546(e)'s preemptive force.

Several weeks later, Justices Kennedy and Thomas issued a joint statement

about the *Tribune* petition.  The statement explained that "there might not be a

quorum in [the Supreme] Court" to hear *Tribune*, and so "consideration of the

petition for certiorari will be deferred for an additional period of time [to] allow the

Court of Appeals or the District Court to consider whether to recall the mandate …

or provide any other available relief in light of this Court's decision in *Merit*

*Management*."  Mot. App.  Should the Supreme Court continue to be unable to

attain a quorum by the end of the current Term, it will have to affirm this Court's

decision.  28 U.S.C. §2109.

Plaintiffs moved this Court on April 10 to recall the mandate.  Plaintiffs note

(at 5-6) that this Court's decision is "at odds" with *Merit Management*'s holding

that Section 546(e) does "'*not* protect transfers in which [covered entities] served

as mere conduits'" (quoting 138 S. Ct. at 892).  Plaintiffs' motion, however, goes

beyond *Merit Management*'s limited holding and requests (at 10) that this Court

"vacate its judgment *in its entirety*" for two reasons (emphasis added).  First,

plaintiffs assert (at 6-7), without support, that "neither the debtor nor the vast

preponderance of the relevant shareholders are … safe-harbored entities." Second, they contend (at 7 n.5, 10-12) that even if the Tribune LBO transaction is within Section 546(e)'s scope, this Court's preemption ruling "cannot possibly be reconciled" with *Merit Management*.

## ARGUMENT

### I. REGARDLESS OF SECTION 546(e), PLAINTIFFS' CLAIMS ARE FORECLOSED BECAUSE THEY NEVER REVERTED FROM THE TRUSTEE

Before even considering whether §546(e) still applies in light of *Merit Management*, the Court should deny plaintiffs' effort to vacate the judgment because, as the Court's opinion already recognized after full briefing on the issue,[1] plaintiffs have no right to assert avoidance claims. The claims were vested exclusively in the bankruptcy trustee and they never reverted to plaintiffs. Nothing in *Merit Management*—where the claim was brought by the bankruptcy trustee— discredits this Court's well-informed analysis of this issue.

Outside bankruptcy, creditors have standing under state law to bring fraudulent-conveyance claims. But the filing of a bankruptcy petition under the federal Bankruptcy Code changes that. The bankruptcy trustee becomes the creditors' statutory representative and obtains the exclusive right to bring fraudulent-conveyance claims. 28 U.S.C. §1409(c); 11 U.S.C. §§541, 544, 548. And "creditors are bound by the outcome of the trustee's action." *St. Paul Fire &*

---

[1] *See* ECF Nos. 143; 219, at 18-33; 230.

*Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-701 (2d Cir. 1989). Thus, this Court noted that "[o]nce Tribune entered bankruptcy, the creditors' avoidance claims were vested in the federally appointed trustee." 818 F.3d at 111.

Wholly independent of Section 546(e), this feature of the federal bankruptcy scheme dooms plaintiffs' claims. As this Court noted, a "critical step in … [plaintiffs'] theory" in this case is that "fraudulent conveyance actions revert to creditors if either the two-year statute of limitations passes without an exercise of the trustees' powers under Section 544 or the Section 362(a) stay is lifted by the bankruptcy court." 818 F.3d at 114. But that step "has no support in the language of the Code." *Id.*

One hundred forty years ago, the Supreme Court recognized the fundamental bankruptcy principle that creditors' "remedies," including the avoidance of fraudulent conveyances, "are absorbed in the great and comprehensive remedy" given the trustee "to collect and distribute among [creditors] the property of their debtor." *Glenny v. Langdon*, 98 U.S. 20, 22, 28 (1878). Soon after, the Court held that a bankruptcy trustee, once vested with the right to pursue what, outside bankruptcy, would be creditors' claims, cannot be "divested" of them, even after the trustee has failed to timely assert them. *Trimble v. Woodhead*, 102 U.S. 647, 649-650 (1880); *see also Moyer v. Dewey*, 103 U.S. 301, 303 (1880) (describing *Trimble*).

- 10 -

In the current Bankruptcy Code, Congress preserved the vesting of claims in the trustee and provided for reversion in one very limited situation, which is absent here: upon "dismissal of [the bankruptcy] case," 11 U.S.C. §349(b).  Against the backdrop of *Trimble* and *Glenny*, the text of today's Code shows that Congress intended to maintain the longstanding rule against reversion.  *See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983); *see also Dewsnup v. Timm*, 502 U.S. 410, 419 (1992); *Manhattan Props. v. Irving Tr. Co.*, 291 U.S. 320, 336 (1934); *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994).

This rule makes practical sense.  Before the bankruptcy filing, creditors can exercise their state-law remedies free from any restrictions the Code imposes.  Once the debtor files for bankruptcy, however, all the Code's interrelated provisions (including Sections 544, 546(e), and 548) apply, the trustee pursues a comprehensive remedy for the benefit of the entire estate, and creditors are bound by the outcome.  If creditors conclude that their debtor's bankruptcy filing is not in their best interests, they can seek dismissal of the bankruptcy case.  11 U.S.C. §1112.  But they cannot enjoy the benefits of bankruptcy without its burdens, opting in and out of particular Code provisions as they see fit.

This Court recognized that vesting all fraudulent-conveyance claims in the bankruptcy trustee serves "to simplify proceedings, reduce the costs of marshalling the debtor's assets, and assure an equitable distribution among creditors."  818

F.3d at 115.  As this Court noted, plaintiffs' "hypothesized" reversion is "hardly consistent" with these goals.  *Id.* at 114.  Allowing certain creditors to eat their cake and have it too—with individual creditors permitted to seek avoidance for their own benefit while the trustee brings the same claims to maximize the aggregate value of the estate for *all* creditors' benefit—would lead to duplicative litigation and potentially contradictory results regarding the same property.  That is why reversion can occur only upon dismissal of the bankruptcy case.

This risk of duplicative litigation is not theoretical.  In light of *Merit Management*, the Tribune estate representative has sought leave in the case he brought against the same Tribune shareholders to assert constructive fraudulent-conveyance claims under Section 548 of the Bankruptcy Code to avoid the LBO payments to the shareholders, just as the creditor plaintiffs are trying to do here under state law.[2]  Permitting these creditors to bring duplicative claims would undermine the basic structure of the Code.  For this reason alone, the Motion should be denied.

## II.  EVEN IF PLAINTIFFS' CLAIMS REVERTED, *MERIT MANAGEMENT* WOULD NOT REQUIRE VACATUR OF THE DECISION

Even if any fraudulent-conveyance claims could have reverted to plaintiffs, *Merit Management* would not alter the result here.  It does not affect this Court's

---

[2]    *See* Letters, *Kirschner v. FitzSimons*, No. 12-2652 (S.D.N.Y.), ECF 5600 (Mar. 7, 2018), ECF 5635 (Mar. 23, 2018).

prior ruling that state-law claims to avoid transfers within Section 546(e)'s scope are preempted, and plaintiffs' own allegations, augmented by an undisputed record, make clear that the LBO payments are still safe harbored by Section 546(e).

## A. *Merit Management* Does Not Touch This Court's Conclusion Regarding Section 546(e)'s Preemptive Force

1.    This Court correctly held in this case that Section 546(e) preempts state-law claims to avoid transfers that are within its scope.  The "purpose" of Section 546(e), this Court observed, is "to promote finality and certainty for investors" "in the event of a major bankruptcy affecting" securities markets.  818 F.3d at 120-121 (quotation marks and alterations omitted).  Allowing creditors to bring avoidance claims that the trustee is barred from bringing would thwart Congress' objective by "increas[ing] the disruptive effect of an unwinding by lengthening the period of uncertainty for intermediaries and investors" (just as allowing fraudulent-conveyance claims to revert to creditors would undermine Congress' goal of centralizing whatever claims can be brought in the trustee).  *Id.* at 119; *see id.* at 121-122.

2.    Plaintiffs contend (at 10) that *Merit Management* "necessitates careful reconsideration of whether Section 546(e) preempts *any* state-law fraudulent-conveyance actions, even those directly against financial institutions."  Plaintiffs are wrong.  *Merit Management* presented and addressed only the distinct question of Section 546(e)'s scope, i.e., whether it safe harbors a transaction merely because

a covered entity served as an intermediary.  Nowhere did the Supreme Court utter the word "preemption" or even allude to the concept—it had no occasion to because the case involved a *federal-law* avoidance suit *by the trustee*, not a state-law suit by individual creditors.  138 S. Ct. at 891.

That *Merit Management* had nothing to do with preemption is confirmed by the Supreme Court's denial of the *Whyte* certiorari petition shortly after it granted the *Merit Management* petition.  The *Whyte* petition challenged only this Court's conclusion that the Bankruptcy Code's safe harbor preempts state-law claims to avoid a transaction within its scope.  If *Merit Management* had implicated this Court's preemption ruling, the Supreme Court surely would have also held the *Whyte* petition pending final disposition of *Merit Management*.  *See* Stern et al., *Supreme Court Practice* 243-244 (7th ed. 1993).

Although plaintiffs' certiorari petition rightly treated the scope and preemption questions as distinct, *see* Pet. i, plaintiffs now contend (at 10-12) that the two issues are linked because "this Court's key rationale for preemption—that the policies ostensibly animating Section 546(e) warrant interpreting the section more broadly than its plain text provides—cannot be reconciled with what the Supreme Court has now said."

Plaintiffs' argument rests on a misreading of the passages it quotes (at 11) from this Court's opinion and *Merit Management*.  Those passages addressed

Section 546(e)'s scope, not its preemptive force.  *See Tribune*, 818 F.3d at 120; *Merit Management*, 138 S. Ct. at 896-897.  And in rejecting the respondent's "purposivist" argument for a safe harbor whose scope would have been so broad that it would have covered nearly any payment made through a bank, the Supreme Court did not reject the proposition that Congress intended Section 546(e) to promote finality and certainty for parties to transfers *within* its scope; it rejected only the respondent's argument that that purpose expanded the scope of Section 546(e) beyond its plain text.  *See Merit Management*, 138 S. Ct. at 896-897.

3.    Plaintiffs' final argument—that this Court's preemption analysis conflicts with other precedents from the Supreme Court and other circuits (at 10, 12 & n.7)—has nothing to do with whether *Merit Management* warrants recalling the mandate.  It is also wrong.  This Court neither assumed that, regardless of its text, Section 546(e) must be interpreted as broadly as its purpose might support, nor improperly disregarded the background presumption against preemption.  Instead, this Court recognized the presumption, *see, e.g.*, 818 F.3d at 110 ("As in the present matter, the presumption against preemption usually goes to the weight to be given to the lack of an express statement overriding state law."), but concluded that, under settled Supreme Court precedent, it deserved less weight here because this case concerns bankruptcy and the securities markets—two areas where there has been "'a history of significant federal presence,'" *id.* at 110-111.

This Court correctly focused on Section 546(e)'s purpose because the controlling question in any conflict-preemption analysis is whether "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 818 F.3d at 110 (quotation marks omitted). Even the precedents invoked by plaintiffs recognize that "the Bankruptcy Code can supersede state-law property rules by implication." *In re Northington*, 876 F.3d 1302, 1312 (11th Cir. 2017) (quotation marks omitted).

### B. Section 546(e) Covers The LBO And Therefore Plaintiffs' Claims Are Preempted

Although *Merit Management* forecloses one basis to conclude that the LBO transaction was safe harbored by Section 546(e), it leaves open many others. Contrary to plaintiffs' bald assertion (at 6-7), the complaints, undisputed transaction documents that are integral to them,[3] and public records establish that Tribune and all the shareholders were covered entities under Section 546(e): the entity "by" whom the LBO payments were "made"—Tribune—was both a "financial institution" and a "financial participant," and all the shareholders—"to (or for the benefit of)" whom the payments were "made"—were also "financial

---

[3]    The Court should assume the truth of these materials because plaintiffs' complaints relied "heavily upon [their] terms and effect." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *see also Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

- 16 -

institutions." *See* §546(e). Consequently, plaintiffs' avoidance claims are preempted.[4]

1.    Tribune and all the shareholders were "financial institutions." Under the Bankruptcy Code, the term "financial institution" includes a "customer" of a "commercial or savings bank [or] trust company … acting as agent … for [the] customer … in connection with a securities contract." 11 U.S.C. §101(22); *see Collier on Bankruptcy* ¶5-555.03 n.3 (16th ed. 2018). Although it would suffice if *either* Tribune *or* the shareholders qualifies as a financial institution, *see* §546(e) (safe harboring a transfer made "by *or* to (*or* for the benefit of)" a covered entity (emphasis added)), in actuality *both* do.

Tribune qualifies because it was a "customer" of Computershare—a trust company and a commercial or savings bank, as indicated by its full name (Computershare Trust Company, N.A.)[5]—and Computershare was its agent in the

---

[4]    Many defendants are also covered entities (e.g., "financial institutions," "stockbrokers," "financial participants") for *individualized* reasons. Defendants reserve the right to raise these individualized reasons, as well as additional global reasons, in any further proceedings.

[5]    *See* Office of the Comptroller of the Currency, *Trust Banks Active as of March 31, 2018, at* https://www.occ.treas.gov/topics/licensing/national-banks-fed-savings-assoc-lists/trust-by-name-pdf.pdf; Office of the Comptroller of the Currency, *National Banks Active as of March 31, 2018, at* https://www.occ.treas.gov/topics/licensing/national-banks-fed-savings-assoc-lists/national-by-name-pdf.pdf. The Court may take judicial notice of Computershare's status as a "financial institution." *See* Fed. R. Evid. 201; *Enron Corp. v. International Fin.*

LBO transaction.  Tribune "retained" Computershare "to act as Depositary in connection with the Tender Offer."  Tribune Offer to Purchase ("Tribune Offer") 113, *In re Tribune Co. ("Tribune Bankruptcy Case")*, No. 08-13141 (Bankr. D. Del. Aug. 20, 2010) (ECF 5437-5).  Computershare was to hold the tendered shares "on [Tribune's] behalf," deem them "accepted" for payment upon Tribune's "notice," and then pay the shareholders for them.  *Id.* at 81; *see* "Customer," *Black's Law Dictionary* (10th ed. 2014) ("A person … for whom a bank has agreed to collect items …."); *cf.* U.C.C. §4-104(a)(5) ("'Customer' means a person … for whom a bank has agreed to collect items ….").[6]

Thus, the bankruptcy examiner reported that Computershare "*acted as agent for Tribune for the purpose of receiving payment from Tribune and transmitting payment to the tendering stockholders*" during the first step of the LBO. Examiner's Report, vol. 1, at 206, *Tribune Bankruptcy Case* (Aug. 3, 2010) (ECF 5247) (emphasis added); *id.* ("Tribune … disbursed $4.284 billion to

---

*Corp.* (*In re Enron Corp.*), 341 B.R. 451, 453-454, 458 (Bankr. S.D.N.Y. 2006) (taking judicial notice of defendant's status as "financial institution" under 546(e)).

[6]    Although the Bankruptcy Code defines "customer" for certain purposes, *see* 11 U.S.C. §741(2), Congress declined to limit the meaning of "customer" for purposes of defining "financial institution."  *See* §101(22) ("financial institution" means a specified entity when such entity "is acting as agent … for a customer (*whether or not a 'customer,' as defined in section 741*)" (emphasis added)).  Thus, "customer" in this context must be given its ordinary meaning.  *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) ("Because the [Bankruptcy] Code does not define 'applicable,' we look to the ordinary meaning of the term.").

Computershare Trust Company, N.A. to consummate the Tender Offer."); Step
One Flow of Funds Memorandum at 2, *Tribune Bankruptcy Case* (Aug. 20, 2010)
(ECF 5444-4) (documenting $4.284 billion transfer from Tribune to
Computershare "to consummate the Stock Repurchase").  And Computershare
played the same agent role during the second step of the LBO, when Tribune
"disbursed approximately $4 billion to [Computershare] to consummate the
Merger."  Examiner's Report, vol. 1, at 461; *see also* Agreement and Plan of
Merger ("Merger") §2.2(a), *Tribune Bankruptcy Case* (Aug. 20, 2010) (ECF 5442)
(requiring Tribune to "deposit" merger consideration "with a U.S. bank or trust
company, to act as a paying agent"); Step Two Flow of Funds Memorandum 5,
*Tribune Bankruptcy Case* (Aug. 20, 2010) (ECF 5461-15) (documenting $3.98
billion transfer from Tribune to Computershare "to consummate the Acquisition").

The shareholders were also the "customers" of an "agent."  As plaintiffs
themselves allege, Computershare agreed to collect the payments from Tribune and
deliver them to the shareholders (and vice-versa with the shares), and thus the
shareholders were Computershare's customers, and it was the "Shareholders' agent."
N.Y. Compl. ¶¶149, 157 (ECF 1558), No. 11-md-2296 (S.D.N.Y.), in Joint App'x
JA903-905 (ECF 118) (2d Cir.); *accord, e.g.*, Cal. Compl. ¶¶147, 155 (ECF 1533),
Del. Compl. ¶¶145, 153 (ECF 1507), Ill. Compl. ¶¶143, 151 (ECF 1564), Tex.
Compl. ¶¶144, 152 (ECF 1501), No. 11-md-2296 (S.D.N.Y.).  That is confirmed by

the transaction documents, which state that, at both steps of the LBO, Computershare was "agent for stockholders for the purpose of receiving payment from [Tribune] and transmitting payment to the … stockholders."  Tribune Offer 82; *see also* Merger §2.2 (instructing Computershare as "Paying Agent" to hold merger consideration "in trust for the benefit of holders of the Shares").

Additionally, in concluding that Section 546(e) preempted plaintiffs' claims, this Court has already determined that the Tribune LBO transaction occurred "in connection with … securities contract[s]" between Tribune and its shareholders. *See Tribune*, 818 F.3d 105, 120.  Plaintiffs did not dispute that point, nor could they.  A "securities contract" is "a contract for the purchase [or] sale … of a security" or "any other … similar" "agreement or transaction."  11 U.S.C. §741(7)(A)(i), (vii).  Here, Tribune "purchased all of its stock" from the shareholders, 818 F.3d at 105, pursuant to a tender-offer agreement and a merger agreement, *see* Tribune Offer 1; Merger §§2.1(a), 2.2(b).

Thus, both Tribune and the shareholders were "customers" of Computershare, which served as their agent in the LBO, and hence are themselves "financial institutions" under the Bankruptcy Code.  This analysis is consistent with *Merit Management*.  The Supreme Court acknowledged but did "not address" (because the defendant had not raised) the possibility that the transaction at issue was safe harbored because "either the debtor or petitioner … qualified as a

- 20 -

'financial institution' by virtue of its status as a 'customer.'" 138 S. Ct. at 890 n.2; *see also* Oral Tr. 15-16, No. 16-784 (Nov. 6, 2017) at 15-16 (Breyer, J.) ("[W]hy are we hearing this case? … [I]t seems to me that Citizens Bank is acting [as] agent or custodian of a customer, namely VVD, and it seems to me that Credit Suisse is acting as—as an agent or custodian for VVD. So why doesn't that cover it?").

2. Tribune was also a "financial participant." §546(e). A "financial participant" is

> an entity that, … at the time of the date of the filing of the [bankruptcy] petition, has one or more agreements or transactions described in … section 561(a) [which includes swap agreements] with … any … entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional … principal amount outstanding (aggregated across counterparties) at such time or on any day during the 15 month-period preceding the date of the filing of the petition, or has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with … any … entity (other than an affiliate) at such time or on any day during the 15-month period preceding the date of the filing of the petition.

§101(22A)(A). Tribune qualifies in several ways. Here, it suffices to mention only one: through Tribune's swap agreements. When Tribune filed its bankruptcy petition in December 2008, it had in place three swap agreements with Barclays Bank (not a Tribune affiliate) whose total gross dollar value in notional principal amount outstanding was $2.5 billion both on that date and throughout the preceding 15-month period, 2007 Form 10-K at 43, 51, *Tribune Bankruptcy Case*

(Aug. 20, 2010) (ECF 5437-3), and whose aggregate gross mark-to-market position was about $150 million.[7]

## CONCLUSION

The Court should deny the motion to recall the mandate.  In the alternative, if it grants the motion, it should vacate only that portion of its opinion that addressed the intermediary question decided in *Merit Management*, decline to remand, and reaffirm the dismissal on either of the grounds discussed above.

If the Court believes further proceedings are warranted, it should confirm that all parts of its prior opinion except the intermediary ruling remain law of the case, and limit those proceedings to the two dispositive legal questions discussed above: whether plaintiffs' claims have reverted to them, and, if so, whether the LBO payments were made by, to, or for the benefit of a covered entity.  If the Court remands, it should retain jurisdiction under the *Jacobson* procedure.

---

[7]     *See* Proposed Confirmation Order 30, 40, *Tribune Bankruptcy Case*, (July 20, 2012) (ECF 12072-2) (allowing Barclays' "Swap Claims" against Tribune for $150,948,822).

- 22 -

Respectfully submitted.

/s/ Philip D. Anker

DAVID M. LEHN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

PHILIP D. ANKER
   *Counsel of Record*
ALAN E. SCHOENFELD
JACK ZARIN-ROSENFELD
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
New York, NY 10007
(212) 230-8890
philip.anker@wilmerhale.com

*Counsel for Susquehanna Investment Group and Affiliates*

MARK A. NEUBAUER
CARLTON FIELDS JORDEN BURT, LLP
2000 Avenue of the Stars, Suite 530N
Los Angeles, CA 90067

*Counsel for The Alfred W. Merkel Marlowe G. Merkel Trust UA 11 Sept 85; Chase L. Leavitt; Darell F. Kuenzler; Darell F. Kuenzler IRA; Debra A. Gastler; Denise Palmer Revocable Trust U/A/D 10-28-1991, Denise E. Palmer, Trustee; Durham J. Monsma; Emil Kratochvil; Evelyn A. Freed Trust U/A/D 03/26/90 Brandes-All Cap Value; Javad Rassouli; Jeanette Day Family Trust U/A DTD 10/04/1994; Jennifer Merkel, Successor Trustee of The Alfred W. Merkel Marlowe G. Merkel Trust UA 11 Sept 85; Jim Hicks as Trustee of the Jim Hicks & Co. Employee Profit-Sharing Plan; John Patinella; Leonidia Gonsalves; Mark Allen Itkin; Miles Adrian Collet Murray; Monserrate Ramirez JTWROS; Muriel S. Harris; Myrna Ramirez; Nancy Lobdell; OMA OPA LLC; The Peter J. Fernald Trust U/A 1/13/92; Peter J. Fernald, Trustee of The Peter J. Fernald Trust U/A 1/13/92; Posen Family Limited Partnership; Raymond M. Luthy Trust; Renee H. Miller; Reichhold, Inc.; Richard L. Goldstein; Robbie E. Monsma; Robert N. Mohr, Successor Trustee to Joseph B. Mohr, as Trustee of the J&M Trust UA Dated 07/23/1992; Terrill F Cox & Lorraine M Cox Trust U/A DTD 3/31/98; and William F. Thomas*

ELLIOT MOSKOWITZ
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

*Counsel for Bear Stearns Asset Management, Inc.; Bear Stearns & Co., Inc. (n/k/a J.P. Morgan Securities LLC); Bear Stearns Equity Strategies RT LLC; Bear Stearns Securities Corp. (which changed its name to J.P. Morgan Clearing Corp.); Custodial Trust Company; JPMorgan 401(k) Savings Plan; JPMorgan Chase Bank, N.A. (which was also improperly referred to in the Amended Complaint as "Custodial Trust Company"); J.P. Morgan Clearing Corp.; J.P. Morgan; J.P. Morgan Securities LLC (formerly J.P. Morgan Securities Inc.); J.P. Morgan Securities plc (formerly J.P. Morgan Securities Ltd.); JPMSI LLC (formerly J.P. Morgan Services Inc.); JPMorgan Trust II; and J.P. Morgan Whitefriars, Inc. (n/k/a J.P. Morgan Whitefriars LLC)*

MICHAEL S. DOLUISIO
STUART T. STEINBERG
ELLEN L. RATIGAN
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

*Counsel for Aegon/Transamerica Series Fund – TRP; Aegon/Transamerica Series Trust T Rowe Price Equity Income; Caxton Associates LP; Caxton International Ltd.; Charles Schwab & Co. Inc; Charles Schwab & Co., Inc, as Custodian for Brent V. Woods IRA Rollover; Charles Schwab & Co., Inc, as Custodian of the George William Buck SEP-IRA DTD 04/08/93; Charles Schwab & Co., Inc, as Custodian of the Peter Marino IRA Rollover; Charles Schwab Investment Management, Inc. (incorrectly named as "Charles Schwab Inv Mgt Co"); Clearwater Growth Fund; DIA MID CAP Value Portfolio; Harbor Capital Advisors, Inc.; Harbor Capital Group Trust for Defined Benefit Plans (incorrectly named as "Harbor Capital Group Trust"); Harbor Mid Cap Value Fund; J. Goldman & Co., L.P. (incorrectly named as "Jay Goldman & Co., LP"); Jay Goldman Master Limited Partnership (incorrectly named as "Jay Goldman Master LP"); John Hancock Life Insurance Company (U.S.A.) as successor-in-interest to John Hancock Financial Services, Inc.; John Hancock Funds II; John Hancock Funds II Equity Income Fund (incorrectly named as "John Hancock Funds II (Equity-Income Fund)" and "JHF II Equity-Income Fund"); John Hancock Funds II Spectrum Income Fund (incorrectly named as "John Hancock Funds II (Spectrum*

Income Fund)" and "JHF II Spectrum Income Fund"); John Hancock Variable
Insurance Trust New Income Trust (incorrectly named as "John Hancock Variable
Insurance Trust (F/K/A John Hancock Trust (New Income Trust)," "John Hancock
Variable Insurance Trust," and "JHT New Income Trust"); Linda Molenda;
Manulife Asset Management (US) LLC; Manulife Asset Management (US) LLC
(College of Applied Arts and Tech. Pension Plan); Manulife Invst Ex FDS Corp.-
MIX; Manulife Investments (f/k/a "Manulife Mutual Funds"); Manulife U.S. Equity
Fund; MassMutual Premier Enhanced Index Value Fund (currently known as
MassMutual Premier Disciplined Value Fund); MassMutual Premier Funds;
MassMutual Premier Main Street Small/Mid Cap Fund (f/k/a "MassMutual Premier
Main Street Small Cap Fund"); MassMutual Premier Small Company Opportunities
Fund (currently known as MassMutual Premier Small Cap Opportunities Fund);
MassMutual Select Diversified Value Fund; MassMutual Select Funds; MassMutual
Select Indexed Equity Fund (currently known as MM S&P 500 Index Fund); MML
Blend Fund; MML Equity Income Fund; MML Series Investment Fund; MML Series
Investment Fund II; Monumental Life Insurance Company; Monumental Life
Insurance Co. F/K/A Peoples Benefit Life Insurance Company; Monumental Life
Insurance Co., as Owner of Teamsters Separate Account (Monumental Life
Insurance Company, on Behalf of Separate Account L-32) (incorrectly named as
"Monumental Life Insurance Co., as Owner of Teamsters Separate Account
(Monumental Life Insurance Company, on Behalf of Separate Account L-23)"); OFI
Private Investments, Inc.; Oppenheimer Main Street Select Fund (formerly known as
Oppenheimer Main Street Opportunity Fund); Oppenheimer Main Street Mid Cap
Fund (formerly known as Oppenheimer Main Street Small Cap Fund); Oppenheimer
Variable Account Funds doing business as Oppenheimer Main Street Small & Mid-
Cap Fund/VA (formerly known as Oppenheimer Main Street Small Cap Fund/VA);
OppenheimerFunds, Inc.; optionsXpress, Inc.; Pacific Select Fund; ProShares Ultra
S&P500 (incorrectly named as "Pro Shares Ultra S&P 500"); Russell Investment
Company; Russell Investment Group; Russell Investments Trust Company (f/k/a
"Frank Russell Trust Company"); Russell U.S. Core Equity Fund (incorrectly
named as "Russell US Core Equity Fund," and f/k/a "Russell Equity I Fund" and
"Russell Investment Company Diversified Equity Funds"); Rydex ETF Trust
(Guggenheim S&P 500 Pure Value ETF) (incorrectly named as "Rydex ETF Trust
(Rydex S&P 500 Pure Value ETF)"); Rydex ETF Trust (Guggenheim S&P 500
Equal Weight Consumer Discretionary ETF) (incorrectly named as "Rydex ETF
Trust (Rydex S&P Equal Weight Consumer Discretionary ETF)"); Rydex ETF Trust
(Guggenheim S&P 500 Equal Weight ETF) (incorrectly named as "Rydex ETF
Trust (Rydex S&P Equal Weight ETF)"); Rydex Investments; Rydex Series Funds;
Rydex Series Funds Multi-Hedge Strategies Fund; Rydex Series Funds S&P 500
Pure Value Fund; Rydex Variable S&P 500 Pure Value Fund; Rydex Variable

*Trust; Rydex Variable Trust Multi-Hedge Strategies Fund; SBL Fund Series H; SBL Fund Series O; Schwab 1000 Index Fund; Schwab Capital Trust; Schwab Fundamental US Large Company Index Fund; Schwab Investments; Schwab S&P 500 Index Fund; Schwab S&P 500 Index Fund (F/K/A Schwab Institutional Select S&P 500 Fund); Schwab Total Stock Market Index Fund; Security Global Investors-Rydex/SGI; Security Investors, LLC; Transamerica Asset Management, as owner of the DIA Mid Cap Value Portfolio; Transamerica Blackrock Large Cap Value VP (F/K/A Transamerica T. Rowe Price Equity Income VP); Transamerica Partners Mid Cap Value; Transamerica Partners Mid Cap Value F/K/A Diversified Investors Portfolios; Transamerica Partners Mid Value Portfolio (f/k/a Transamerica Partners Mid-Cap Value Portfolio f/k/a/ Diversified Investors Mid-Cap Value Portfolio); Transamerica Partners Portfolios (F/K/A Diversified Investors Portfolios); Transamerica Series Trust (F/K/A Aegon/Transamerica Series Trust); The Vanguard Group, Inc.; Vanguard 500 Index Fund (incorrectly named as "Vanguard Index 500 Fund"); Vanguard Tax-Managed Growth & Income Fund; Vanguard Asset Allocation Fund; Vanguard Balanced Index Fund (incorrectly named as "Vanguard Balanced Index Fund (a/k/a Vanguard Balanced Index Equity Fund)"); Vanguard Consumer Discretionary Index Fund; Vanguard Equity Income Fund; Vanguard Fenway Funds; Vanguard Fiduciary Trust Company; Vanguard FTSE Social Index Fund; Vanguard Growth and Income Fund; Vanguard High Dividend Yield Index Fund; Vanguard Index Funds; Vanguard Institutional Index Fund (incorrectly named as "Vanguard Institutional Index Funds"); Vanguard Institutional Total Stock Market Index Fund; Vanguard Large Cap Index Fund; Vanguard Malvern Funds; Vanguard Mid-Cap Index Fund; Vanguard Mid-Cap Value Index Fund; Vanguard Quantitative Funds; Vanguard Scottsdale Funds; Vanguard Structured Large-Cap Equity Fund; Vanguard Tax-Managed Funds; Vanguard Total Stock Market Index Fund; Vanguard Valley Forge Funds; Vanguard Value Index Fund; Vanguard Variable Insurance Fund; Vanguard Variable Insurance Funds; Vanguard VVIF Equity Fund Index; Vanguard VVIF Equity Income VGI; Vanguard VVIF Midcap Index Fund; Vanguard Whitehall Funds; Vanguard Windsor Funds; Vanguard Windsor II Fund; Vanguard World Fund (f/k/a Vanguard World Funds); VFTC - Vanguard Company Stock Account 21; and Woodmont Investments Ltd.*

STEVEN R. SCHOENFELD
DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR LLP
One North Lexington Avenue
White Plains, NY 10601

*Counsel for College Retirement Equities Fund; Teachers Insurance and Annuity Association of America; TIAA Board of Overseers; TIAA-CREF Funds (formerly known as TIAA-CREF Institutional Mutual Funds); TIAA-CREF Investment Management, LLC; and TIAA-CREF Life Funds*

ANDREW J. ENTWISTLE
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171

*Counsel for GAMCO Asset Management, Inc., Public Employees' Retirement Association of Colorado, and State Universities Retirement System of Illinois*

OSCAR GARZA
DOUGLAS LEVIN
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612

MATTHEW D. MCGILL
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036

*Counsel for Chandler Trust No. 1 and Chandler Trust No. 2*

MATTHEW L. FORNSHELL
ICE MILLER LLP
250 West Street
Columbus, OH 43215

*Counsel for Illinois Municipal Retirement Fund, School Employees Retirement System of Ohio, Ohio Public Employees Retirement System, Pensions Reserve Investment Management Board of Massachusetts, Texas Education Agency, and Employee Retirement System of Texas*

DAVID C. BOHAN
JOHN P. SIEGER
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661

*Counsel for Cantigny Foundation and Robert R. McCormick Foundation*

ALAN J. STONE
ANDREW M. LEBLANC
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005

*Counsel for Amalgamated Bank; Barclays Bank PLC; Barclays Capital Inc.; Barclays Capital Securities Ltd.; Bessemer Trust Company; BHF-Bank Aktiengesellschaft; BMO Nesbitt Burns Employee Co-Investment Fund I (U.S.), L.P.; BMO Nesbitt Burns Employee Co-Investment Fund I Management (U.S.), Inc.; BMO Nesbitt Burns Inc.; Bank of Montreal Holding Inc. (as successor in interest to BMO Nesbitt Burns Trading Corp. S.A.); BMO Nesbitt Burns U.S. Blocker Inc.; BNP Paribas Securities Corp.; Brown Brothers Harriman & Co.; Canadian Imperial Holdings, Inc.; CIBC World Markets Corp.; CIBC World Markets, Inc.; Commerz Markets LLC; Commerzbank AG; Cooper Neff Advisors, Inc. now known as Harewood Asset Management (US) Inc.; Credit Suisse (USA), Inc.; Credit Suisse Securities (Europe) Ltd.; Credit Suisse Securities (USA) LLC; D.E. Shaw Valence Portfolios, L.L.C.; Deutsche Bank AG; Deutsche Bank AG, Filiale Amsterdam; Deutsche Bank Securities Inc.; Deutsche Investment Management Americas Inc.; Eaton Vance Multi Cap Growth Portfolio; Eaton Vance Tax Managed Global Buy Write Opportunities Fund; Eaton Vance Tax Managed Growth Portfolio; Eaton Vance Tax Managed Multi-Cap Growth Portfolio; Edward D. Jones & Co., L.P.; Fidelity Advisor Series I; Fidelity Commonwealth Trust; Fidelity Concord Street Trust; Fidelity Securities Fund – Leveraged Company Stock Fund; Fidelity U.S. Equity Index Commingled Pool; Goldman Sachs Execution & Clearing, L.P.; Goldman Sachs International Holdings LLC; Goldman Sachs Variable Insurance Trust; Goldman, Sachs & Co.; GS Investment Strategies LLC; Liberty Harbor Master Fund I, L.P.; Lyxor/Canyon Value Realization Fund Ltd.; National Financial Services LLC; Neuberger Berman LLC; PNC Bank, National Association; RBC Capital Markets Arbitrage, LLC; RBC Capital Markets, LLC; RBC Global Asset Management, Inc.; RBC O'Shaughnessy U.S. Value Fund; Royal Bank of Canada; Royal Trust Corporation of Canada; Schultze Asset Management LLC; Scotia Capital (USA) Inc.; Scotia*

*Capital Inc.; SG Americas Securities, LLC; State Street Bank and Trust Company; State Street Bank Luxembourg, S.A.; State Street Global Advisors (Japan) Co., Ltd.; State Street Global Advisors, Inc.; State Street Trust and Banking Company, Limited; SunTrust Bank; Swiss American Corporation; Swiss American Securities, Inc.; TD Ameritrade Clearing, Inc.; TD Equity Options LLC, f/k/a TD Options LLC; The Bank of Nova Scotia; U.S. Bancorp Investments, Inc.; U.S. Bank N.A.; UBS AG; UBS Financial Services, Inc.; UBS Global Asset Management (Americas) Inc.; UBS Global Asset Management (US) Inc.; UBS O'Connor LLC; UBS Securities LLC; Union Bank, N.A., formerly known as Union Bank of California, N.A.; Variable Insurance Products Fund II – Index 500 Portfolio; and Workers Compensation Board*

SABIN WILLETT
MICHAEL C. D'AGOSTINO
MORGAN LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110

*Counsel for T. Rowe Price Equity Income Fund, Inc.; T. Rowe Price Mid-Cap Value Fund, Inc.; T. Rowe Price Balanced Fund, Inc. (also named incorrectly as T. Rowe Price Balanced Fund–Large Cap Core Fund, Inc.); T. Rowe Price Equity Index Trust*

DANIEL L. CANTOR
DANIEL S. SHAMAH
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036

*Counsel for Bank of America, N.A; Bank of America, N.A. / LaSalle Bank, N.A.; Bank of America Corporation; Bank of America; Bank of America Structured Research; Banc of America Securities LLC; Bank of America N.A./ GWIM Trust Operations; BNP Paribas Prime Brokerage Inc.; Columbia Management Group; Forrestal Funding Master Trust; LaSalle Bank, N.A.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Merrill Lynch, Pierce, Fenner & Smith as successor to Banc of America Securities LLC, Securities Lending Services; Merrill Lynch; Merrill Lynch & Co., Inc.; Merrill Lynch Capital Corp.; Merrill Lynch Financial Markets, Inc.; Merrill Lynch Trust Co.; Merrill Lynch, Pierce, Fenner & Smith, Inc. – Safekeeping; Merrill Lynch, Pierce, Fenner & Smith, Inc. – Securities Lending; 1IA SPX1; US Trust Co. N.A.; and U.S. Trust Company of Delaware*

DAVID N. DUNN
PHILLIPS, DUNN, SHRIVER & CARROLL, P.C.
147 Western Avenue
Brattleboro, VT 05301

*Counsel for Ciri Gillespie, Cara-Leigh Gillespie-Wilson, John and Carol Jansson, Kirsten & John Gibbs, Walter Lang, Joel Marks, Steven and Susan Miller, Richard DeFoe, Kevin Domkowski, Richard & Lynda Freedman, Paul Gerken, Susan Gail Harwood Trust, Peter & Janice Howe, William H. Johnson, KWK Management, McConnell Foundation, Lili Charlotte Sarnoff, Spindle Limited Partnership, Maud P. Barton Revocable Trust, Cornelia Tobey, Richard Triest, Jerold Jay Wichtel, James & Eileen Wirth, Eileen S. Buckley, Willowlake Development, and Lu Ann Sodano*

GREGG M. MASHBERG
STEPHEN L. RATNER
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036

*Counsel for 1199SEIU Health Care Employees Pension Fund; 1199SEIU Home Care Employees Fund; 1199SEIU Greater New York Pension Fund; A.G. Edwards & Sons, LLC; A.G. Edwards Private Equity Partners III, L.P.; A.G. Edwards, Inc.; AG Edwards & Sons, Inc.; Baldwin Enterprises, Inc.; The Bank of New York Mellon Corporation Retirement Plans Master Trust; BNY Mellon Investment Servicing (US) Inc. (f/k/a PFPC, Inc.); BNY Mellon Trust of Delaware; BNY Mellon, N.A., as Successor-In-Interest to Mellon Trust of New England, N.A.; Cede & Co.; Dreyfus Index Fund, Inc.; Dreyfus Stock Index Fund, Inc.; Equity League Pension Trust Fund; Evergreen Asset Management Corp.; First Clearing, LLC; Iolaire Investors LLP; Jefferies Bache Securities, LLC (formerly Prudential Bache Securities, LLC); Jefferies LLC (formerly Jefferies & Company, Inc.); Mellon Bank N.A. Employees Benefit Collective Investment Plan; Mellon Bank, N.A. Employee Benefit Plan; Mellon Capital Management Corporation; New Eagle Holdings LLC; Newedge USA, LLC; Oppenheimer & Co., Inc.; Paper Products, Miscellaneous Chauffeurs, Warehousemen, Helpers, Messengers, Production and Office Workers Local 27 Pension Fund; Pershing LLC; Producers-Writers Guild of America Pension Plan; Reed Elsevier Inc.; Reed Elsevier U.S. Retirement Plan; Reliance Trust Company; Strategic Funds, Inc.; The Bank of New York Mellon; The Bank of New York Mellon as trustee of The Bank of New York Mellon Employee Benefit Collective Investment Fund Plan f/k/a Mellon Bank, N.A. Employee Benefit Collective Investment Fund Plan; The Bank of New York Mellon as trustee of The Collective Trust of The Bank of New York; The Bank of New York Mellon as trustee of the PG&E Nuclear*

*Facilities Qualified CPUC Decommissioning Master Trust; The Bank of New York Mellon as trustee of the PG&E Postretirment Medical Plan Trust; The Bank of New York Mellon as trustee of the R.E. Ginna Nuclear Power Plant LLC Master Decommissioning Trust; The Bank of New York Mellon Corporation; The Depository Trust & Clearing Corporation; The Depository Trust Company; The Dreyfus Corporation; The Dreyfus/Laurel Funds, Inc.; Wachovia Bank, N.A.; Wells Fargo Bank, N.A.; and Wells Fargo Investments, LLC*

DOUGLAS HALLWARD-DRIEMEIER
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC  20006-6807

ANDREW G. DEVORE
JOSHUA Y. STURM
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600

*Counsel for Francis L. Coolidge; Harvard University; Harvard Management Co.; President and Fellows of Harvard College; Loomis, Sayles & Company, L.P.; Mutual of America Investment Corp.; Stichting Pensioenfonds van de ABN AMRO N.V.; Stichting Pensioenfonds ABP; Stichting Pensioenfonds Hoogovens; Stichting Pensioenfonds Zorg En Welzijn; Stichting Shell Pensioenfonds; Tribune Company Master Retirement Savings Trust; Tribune Employee Stock Ownership Plan; Times Mirror Savings Plan; Tribune Company 401(k) Savings Plan; and Trustees of Boston College*

GARY STEIN
DAVID K. MOMBORQUETTE
WILLIAM H. GUSSMAN, JR.
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY  10022

*Counsel for Adage Capital Advisors Long, Adage Capital Partners LP, Cougar Trading, LLC, Del Mar Master Fund, Ltd., DiMaio Ahmad Capital LLC, Emanuel E. Geduld 2005 Family Trust, Gryphon Hidden Values VIII Ltd., Guggenheim Advisors, LLC, Guggenheim Portfolio LIX, LLC, Halcyon Asset Management LLC, Halcyon Diversified Fund LP, Halcyon Fund, LP, Halcyon Master Fund LP, Harvest AA Capital LP, Harvest Capital LP, Howard Berkowitz, Hudson Bay Fund*

*LP, Hudson Bay Master Fund Ltd., Hussman Econometrics Advisors, Inc., Hussman Investment Trust, Hussman Strategic Growth Fund, John Splain, as Trustee of the Hussman Investment Trust, Lispenard Street Credit Fund LLP, Lispenard Street Credit Master Fund, Lispenard Street Credit Master Fund Ltd., Lockheed Martin Corporation, Lockheed Martin Corporation Master Retirement Trust, New Americans LLC, Pond View Credit (Master) LP, QVT Fund LP, Sowood Alpha Fund LP, Stark Global Opportunities Master Fund Ltd., Stark Investments, Stark Master Fund Ltd., Swiss Re Financial Products Corp., TOA Reinsurance Company of America, Towerview LLC, Twin Securities, Inc., and Wabash/Harvest Partners LP*

April 20, 2018

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,094 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Philip D. Anker
PHILIP D. ANKER

April 20, 2018