## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>11 MD 2296 (RJS)<br>12 MC 2296 (RJS) |
| THIS DOCUMENT RELATES TO:<br><br>ALL MATTERS | |

## <u>NOTICE OF SUBMISSION OF LETTER</u>

Pursuant to paragraph 47 of Master Case Order No. 3 (Sept. 7, 2012) [ECF No. 1395], please take notice that the undersigned submitted the attached letter to the Court in the above-captioned actions.

Dated: May 23, 2018
New York, New York

Respectfully submitted,

/s/ *David Zensky*
David Zensky, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: (212) 872-1000
Fax: (212) 872-1002

*Co-counsel to Marc S. Kirschner, Litigation
Trustee of the Tribune Litigation Trust*



**Akin Gump**

STRAUSS HAUER & FELD LLP

DAVID M. ZENSKY
+1 212.872.1075/fax: +1 212.872.1002
dzensky@akingump.com

May 23, 2018

VIA ECF AND E-MAIL (sullivannysdchambers@nysd.uscourts.gov)

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
Courtroom 905
New York, NY 10007

Re:     *In re Tribune Co. Fraudulent Conveyance Litigation*, 11-MD-2296; *Marc S. Kirschner (the "Trustee") v. FitzSimons, et al., No. 12-CV-2652* (the "*Action*")

Dear Judge Sullivan:

On behalf of the Trustee, we write in response to the Exhibit A Shareholder Defendants' May 16, 2018 letter (the "Letter") asking this Court to "defer" consideration of the Trustee's request to add claims for constructive fraud, supposedly based on the Second Circuit's May 15, 2018 order recalling its mandate in *Deutsche Bank Trust Co. Americas v. Robert R. McCormick Foundation*, No. 13-3992 (the "Order").

The shareholders' request for delay is not justified by the Order and, if granted, would only increase and compound the severe prejudice already suffered by the Litigation Trust and its beneficiaries from the extraordinarily long delays in this case to date. Indeed, the shareholder defendants themselves claim that delay in resolving constructive fraud claims asserted against them has been or could be "inequitable," as "more than a decade" has passed since Tribune's disastrous LBO. Letter Ex. B at 3. Evidence and memories relating to the LBO and its aftermath will continue to grow stale and fade the longer this Action is prolonged. To the extent this Court may permit the kind of time-consuming motion practice apparently sought by defendants in opposition to, or following, an amendment in the wake of *Merit Management Group, LP v. FTI Consulting, Inc.*, 138 S.Ct. 883 (Feb. 27, 2018), swift action on the Trustee's proposed amendment is all the more urgent. For his part, the Trustee acted with great diligence, seeking leave to amend as soon as the petition for *certiorari* was filed in *Merit Management*, and renewing his motion promptly after the Court's ruling.[1]

---

[1] This Court previously stated that the Trustee would have a strong basis for such relief in the event *Merit Management* altered the law in the Second Circuit, which has now occurred. *See* Doc. No. 7019.



Honorable Richard J. Sullivan
May 23, 2018
Page 2

Nothing in the Order suggests that the Second Circuit will do anything that could "impact the Trustee's pending application," or otherwise justifies the requested further delay in this matter. In *Merit Management*, the Supreme Court unanimously held that section 546(e) of the Bankruptcy Code does not bar a bankruptcy trustee from avoiding transfers merely because the transfer passes through a financial institution.[2] The 9-0 decision overruled conflicting Second Circuit precedents including *McCormick*,[3] at least to the extent it applied the Circuit's misreading of the Code to state law creditors based on "implied preemption."

On April 10, 2018, plaintiffs in *McCormick* moved the Second Circuit to recall its mandate and vacate the decision, *see* Ex. 1, after two Justices of the Supreme Court issued a statement suggesting it consider doing so "in light of ... *Merit Management.*" *See* Ex. 2. The *McCormick* plaintiffs sought relief based on the Second Circuit's erroneous application of section 546(e) to transfers involving financial institutions as mere conduits – an aspect of *McCormick* that even defendants admit was overruled by the Supreme Court. *E.g.*, Letter Ex. B at 1, 7-8. Plaintiffs also asked the Second Circuit to reverse its implied preemption decision, arguing that *McCormick's* key rationale for that decision cannot be reconciled with *Merit Management*, and that section 546(e) has no application even to state law claims that challenge transfers directly to financial institutions. Ex. 1 at 10. Defendants opposed recall, claiming that *McCormick's* preemption analysis remained sound, and arguing again that the plaintiffs' state law claims "vested in the bankruptcy trustee" when Tribune filed for Bankruptcy and never "reverted to the creditors." Letter Ex. B. at 2.

On May 15, 2018, the Second Circuit granted plaintiffs' recall motion "in anticipation of further panel review." Only the two issues identified above were ruled on by this court in its decision in *McCormick* and subject to briefing and argument before the Second Circuit in 2014. Even if the Second Circuit were to again address those issues – implied preemption and "reversion" – the outcome could not undermine the Trustee's application to amend his complaint in this Action to assert a federal Bankruptcy Code claim under section 548(a)(1)(B). Indeed, defendants do not contend otherwise. While the *McCormick* defendants also asked the Second Circuit to affirm its original decision based on brand-new arguments concerning the supposed scope of section 546(e) (and this is where the request for a delay here comes in), those arguments were never previously raised at the trial or appellate court, have not been subject to full briefing by the parties, and are not ripe for determination. *See, e.g., Sims v. Apfel*, 530 U.S. 103, 108-109 (2000) ("[A]ppellate courts will not consider arguments not raised before trial courts."); *see also* Ex. 3 at 7-11 (plaintiffs' reply on motion to recall). Moreover, the defendants' new theories are

---

[2] For simplicity, we refer to all entities identified in section 546(e) collectively as financial institutions.

[3] 818 F.3d 98 (2d Cir. 2016).



predicated on hotly disputed issues of fact, and must be addressed in the first instance – if at all – by the trial court, on a complete record, and after comprehensive briefing.[4]

The sensible way to proceed with the amendment (and panoply of alleged defenses) has been described in the Trustee's prior letters,[5] and is reflected by Judge Gross' order in *PAH Lit. Trust v. Water Street Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.)*, Adv. Pro. No. 15-51238. (Bankr. D. Del.), Doc. No. 851, Ex. 5. In 2016, Judge Gross dismissed the plaintiff-litigation trustee's fraudulent conveyance claims because the challenged LBO transfers had passed through financial institutions and were thus subject to the safe harbor under then-existing Third Circuit law. After *Merit Management* was decided, the trustee promptly moved to reinstate his constructive fraud claims. *Id.* Doc. No. 799. In response, the defendants reserved their right to make the same arguments that Tribune's shareholders wish to make in this Action concerning section 546(e), but did not oppose reinstatement of the trustee's claims, because they recognized their "financial institution" argument would require "findings of fact" not yet ripe for resolution. *See* Ex. 4. In his order, Judge Gross reinstated the trustee's constructive fraud claims based on the change in law ushered in by *Merit Management. Id.* Doc. No. 851, Ex. 5.

The defendants request for additional delay should be denied. It is impossible to know when the Second Circuit's "further [] review" will begin, or how long it will take.[6] It is certain, however, that severe prejudice will continue to accrue to the Trust and its beneficiaries every day this Action is unnecessarily prolonged. In the nearly eleven years since Step One of the Tribune LBO, documents have been destroyed or mislaid, memories have faded, at least one key witness has died and Litigation Trust beneficiaries have been deprived of the use of billions of dollars that the Trustee contends were improperly paid to equity ahead of Tribune's creditors. This type of prejudice will only grow worse with more delay, and the Trustee therefore again respectfully asks the Court to act on his request to amend or move to amend promptly.

---

[4] For instance, the *McCormick* defendants now contend that *all* of the shareholder transferees – every single one, including natural persons who owned Tribune shares in their individual capacities – are themselves "financial institutions" because (among other grounds) they supposedly would qualify as a "customer," and formed an "agency" relationship with a bank through which LBO transfers may have passed. Defendants' latest claim cannot be squared with the actual language of the Code or the nature of typical banking relationships, and if accepted would immunize an entire category of transfers that there is no evidence Congress sought to protect. In addition, the "customer" issue will involve discovery of individual defendants, and "[t]he question whether an agency relationship exists is highly factual," *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 522 (2d Cir. 2006), and will be vigorously disputed if and when it becomes ripe for decision. Defendants' new argument also assumes that the transfers were made "in connection with a securities contract," a factual contention the Trustee also will contest at least with respect to approximately half (in dollar amount) of the challenged transfers.

[5] *See* Doc. Nos. 7283, 7326.

[6] Approximately two years elapsed from completion of briefing on the appeal to the March 29, 2016 Second Circuit decision in *McCormick.*



Honorable Richard J. Sullivan
May 23, 2018
Page 4

Respectfully submitted,

David M. Zensky

cc:  Andrew G. Devore, Esq., Ropes & Gray LLP (via e-mail)
Joshua Y. Sturm, Esq., Ropes & Gray LLP (via e-mail)
All counsel of record (via ECF)

# EXHIBIT 1

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 13-3992, 13-3875, 13-4178, 13-4196      Caption [use short title]

Motion for: Court to Recall Its Mandate

In re: Tribune Company Fraudulent Conveyance Litigation

Set forth below precise, complete statement of relief sought:

That the Court recall its mandate, vacate its March 29,

2016, decision in its entirety, and remand to district

court for further proceedings in light of Merit Management

Group LP v. FTI Consulting, Inc., 138 S. Ct. 883 (2018).

MOVING PARTY: Noteholders and Retirees     OPPOSING PARTY: Tribune Shareholders

[✓] Plaintiff     [ ] Defendant

[✓] Appellant/Petitioner     [ ] Appellee/Respondent

MOVING ATTORNEY: Lawrence S. Robbins     OPPOSING ATTORNEY: Philip D. Anker

[name of attorney, with firm, address, phone number and e-mail]

Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP | Wilmer Cutler Pickering Hale and Dorr LLP

1801 K Street, NW, Suite 411-L, Washington, DC 20006 | 7 World Trade Center, 250 Greenwich Street

(202) 775-4500, lrobbins@robbinsrussell.com | New York, NY 10007

Court- Judge/ Agency appealed from: United States District Court for the Southern District of New York

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes   [ ] No (explain): _____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this court? [ ] Yes [ ] No
Requested return date and explanation of emergency:

Opposing counsel's position on motion:
[ ] Unopposed [✓] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
[✓] Yes [ ] No [ ] Don't Know

Is oral argument on motion requested? [ ] Yes [✓] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [✓] Yes [ ] No If yes, enter date: Argument was held November 5, 2014

Signature of Moving Attorney:

/s/ Lawrence S. Robbins   Date: 4/10/2018   Service by: [✓] CM/ECF [ ] Other [Attach proof of service]

Form T-1080 (rev. 12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

|  |  |
| --- | --- |
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Nos. 13-3992-cv(L), 13-3875 (XAP), 13-4178 (XAP), 13-4196 (XAP) |

## **<u>PLAINTIFFS-APPELLANTS-CROSS-APPELLEES'</u> <u>MOTION TO RECALL MANDATE</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITES ....................................................................... ii

BACKGROUND ................................................................................... 1

ARGUMENT ....................................................................................... 4

    I.   THIS CASE MEETS THIS COURT'S TEST FOR RECALLING THE MANDATE ..................................................................... 5

    II.  THE COURT SHOULD VACATE ITS JUDGMENT IN ITS ENTIRETY ............................................................................ 10

CONCLUSION ................................................................................... 13

APPENDIX: Statement of Justice Kennedy and Justice Thomas respecting the petition for certiorari, *Deutsche Bank Trust Co. Ams.* v. *Robert R. McCormick Found.*, No. 16-317, 2018 WL 1600841 (Apr. 3, 2018)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BFP* v. *Resolution Trust Corp.*,
    511 U.S. 531 (1994).......................................................................12

*Calderon* v. *Thompson*,
    523 U.S. 538 (1998)..........................................................................4

*Cyan, Inc.* v. *Beaver County Emps. Ret. Fund*,
    No. 15-1439, 583 U.S. ___, 2018 WL 1384564 (Mar. 20, 2018) ............ 12, 13

*Czyzewski* v. *Jevic Holding Corp.*,
    137 S. Ct. 973 (2017)........................................................................2

*Deutsche Bank Trust Co. Ams.* v. *Robert R. McCormick Found.*,
    No. 16-317, 2018 WL 1600841 (Apr. 3, 2018).................................... 1, 4, 7, 9

*Encino Motorcars, LLC* v. *Navarro*,
    No. 16-1362, 584 U.S. ___, 2018 WL 1568025 (Apr. 2, 2018).......................12

*Enron Creditors Recovery Corp.* v. *Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 1988) ...............................................................6

*Henson* v. *Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017).....................................................................12

*In re Northington*,
    876 F.3d 1302 (11th Cir. 2017) .........................................................12

*In re Quebecor World (USA) Inc.*,
    719 F.3d 94 (2d Cir. 2013) .................................................................5

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    499 B.R. 310 (S.D.N.Y. 2013) ...........................................................2

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    818 F.3d 98 (2d Cir. 2016) ...................................................... *passim*

*Mancuso* v. *Herbert*,
    166 F.3d 97 (2d Cir. 1999) .................................................................4

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Merit Management Group, LP* v. *FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018)................................................................ 1, 2, 6, 11

*Michigan* v. *Bay Mills Indian Cmty.*,
    134 S. Ct. 2024 (2014)........................................................12

*Mims* v. *Arrow Financial Servs., LLC*,
    565 U.S. 368 (2012)..........................................................13

*Orr* v. *Kinderhill Corp.*, 991 F.2d 31 (2d Cir. 1993)................................2

*Rudgayzer* v. *Google, Inc.*,
    No. 13 CV 120, 2014 WL 12676233 (E.D.N.Y. Feb. 10, 2014)......................8

*Sanchez* v. *United States*,
    839 F.2d 40 (2d Cir. 1988) ...............................................................4

*Sargent* v. *Columbia Forest Prods., Inc.*,
    75 F.3d 86 (2d Cir. 1996) ....................................................... *passim*

*Stevens* v. *Miller*,
    676 F.3d 62 (2d Cir. 2012) ................................................................5

*Tafflin* v. *Levitt*,
    493 U.S. 455 (1990)..........................................................13

*Tal* v. *Miller*,
    No. 97 Civ. 2275, 1999 WL 38254 (S.D.N.Y. Jan. 27, 1999) ...........................9

**Statute**

11 U.S.C. § 546(e) ...............................................................2, 7

**Other Authorities**

COLLIER ON BANKRUPTCY (16th ed. 2017) ...............................................2

GERRARD GLENN, FRAUDULENT CONVEYANCES & PREFERENCES (1940 ed.) ...........2

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

Peter V. Marchetti, *A Note to Congress: Amend Section 546(e) of the Bankruptcy Code to Harmonize the Underlying Policies of Fraudulent Conveyance Law and Protection of the Financial Markets*, 26 Am. Bankr. Inst. L. Rev. 1 (2018) .............................................................10

Stephen M. Shapiro, et al., Supreme Court Practice .......................................9

iv

Plaintiffs-Appellants-Cross-Appellees hereby move that this Court recall its mandate, vacate its decision of March 29, 2016,[1] in its entirety, and remand this case to the district court for further proceedings consistent with *Merit Management Group, LP* v. *FTI Consulting, Inc.*, 138 S. Ct. 883 (2018). This Court's cases recognize the Court's inherent power to take those actions, as discussed below. And the Court should take them in light of the statement concerning this case issued on April 3, 2018, by two Justices of the Supreme Court, which asked this Court to "consider whether to recall the mandate . . . or provide any other available relief in light of this Court's decision in *Merit Management*."[2]

## BACKGROUND

This case involves fraudulent-conveyance claims brought under state law by creditors of bankrupt debtor Tribune Company, including several hundred retirees who entrusted Tribune with more than $100 million of deferred income retirement funds. Tribune was forced into bankruptcy by a disastrous leveraged buyout that paid its shareholders while leaving its creditors—who as a matter of law must be

---

[1] *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016), petition for cert. pending *sub nom. Deutsche Bank Trust Co. Ams.* v. *Robert R. McCormick Found.*, No. 16-317 (filed Sept. 9, 2016).

[2] *Deutsche Bank Trust Co. Ams.* v. *Robert R. McCormick Found.*, No. 16-317, 2018 WL 1600841, at *1 (Apr. 3, 2018). See Appendix.

paid *first*—with only a small fraction of what they were owed.[3]  State law gives creditors the power to undo such transfers because they "unfairly or improperly deplete . . . assets or . . . dilute the[ir] claims against those assets."  5 COLLIER ON BANKRUPTCY ¶ 548.01, at 548-10 (16th ed. 2017), *quoted in Merit Management*, 138 S. Ct. at 888.  See generally 1 GERRARD GLENN, FRAUDULENT CONVEYANCES & PREFERENCES § 58 (1940 ed.) (reflecting state policing of fraudulent conveyances since before the American Revolution); *Orr* v. *Kinderhill Corp.*, 991 F.2d 31, 34-35 (2d Cir. 1993) (same).

The district court dismissed the creditors' claims on the ground that the creditors lacked standing.  *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 325 (S.D.N.Y. 2013).  The court nevertheless analyzed at length—and expressly rejected—the shareholder-defendants' arguments that the claims were preempted by 11 U.S.C. § 546(e).  *Id*. at 316-20.

This Court "affirm[ed] the dismissal of the complaint, on preemption rather than standing grounds."  818 F.3d at 124.  In doing so, the Court expressly rejected the district court's conclusion that plaintiff-creditors lack standing—thus recognizing that these fraudulent-conveyance claims belong to the plaintiffs.  *Id*. at

---

[3] As the Supreme Court has recently reminded us, "[t]he Code's priority system"— which puts creditors ahead of shareholders—"constitutes a basic underpinning of business bankruptcy law."  *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).

108-09.  But the Court affirmed anyway because it also disagreed with the district court about preemption, holding that Section 546(e) impliedly preempts *all* state-law claims seeking to avoid transfers involving a financial institution, even when that institution served only as an intermediary for payments to others, such as Tribune's shareholders.   Because the transfers at issue were made *through* financial institutions acting as conduits, the Court affirmed the dismissal as to all claims.

Plaintiffs sought certiorari on the grounds that this Court erred in holding (1) that Section 546(e) shields from avoidance transfers in which a financial institution acts as a mere conduit for fraudulently transferred property; (2) that the presumption against federal preemption of state law does not apply in the bankruptcy context; and (3) that Section 546(e) impliedly preempts state-law fraudulent-conveyance actions brought by private parties, rather than by the "trustee" mentioned in the statute.

The Supreme Court has not acted on the certiorari petition.  Instead, the Court granted certiorari in *Merit Management* and, in disagreement with this Court as to the basic scope of Section 546(e), held that Section 546(e) has no bearing on claims seeking to avoid transfers in which a financial institution served as a mere intermediary.

3

It has now been nearly two months since the Supreme Court decided *Merit Management*, but still it has not acted on the petition for certiorari in this case. Instead, Justices Kennedy and Thomas issued the statement quoted above, suggesting that *this* Court may wish to recall its mandate or provide other relief in light of *Merit Management*, noting "the possibility that there might not be a quorum in th[e Supreme] Court." 2018 WL 1600841, at *1. The two Justices further "advised" the parties "that consideration of the petition for certiorari will be deferred for an additional period of time" to permit this Court to act. *Ibid*.

## ARGUMENT

This Court should now recall its mandate. The courts of appeals "'have an inherent power to recall their mandates.'" *Mancuso* v. *Herbert*, 166 F.3d 97, 100 (2d Cir. 1999) (quoting *Calderon* v. *Thompson*, 523 U.S. 538, 549 (1998)). "One circumstance that may justify recall of a mandate is [a] supervening change in governing law that calls into serious question the correctness of the court's judgment." *Sargent* v. *Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996) (internal quotation marks omitted). Consistent with that principle, this Court has granted motions to recall the mandate where its decision conflicts with a subsequent decision from a state high court (in diversity cases) or the Supreme Court of the United States. See, *e.g.*, *id.* at 91; *Sanchez* v. *United States*, 839 F.2d 40, 42 (2d Cir. 1988) (per curiam).

4

## I.  THIS CASE MEETS THIS COURT'S TEST FOR RECALLING THE MANDATE

This Court has considered four factors when determining whether to recall a mandate in light of a subsequent decision of the Supreme Court of the United States:  (1) whether this Court's decision is "inconsistent with" the later Supreme Court decision; (2) whether the movant's papers "made the argument that prevailed" in the Supreme Court; (3) whether there was "a substantial lapse of time" before moving to recall the mandate; and (4) whether the equities "strongly favor" relief.  *Sargent*, 75 F.3d at 90; see *Stevens* v. *Miller*, 676 F.3d 62, 69 (2d Cir. 2012) (listing *Sargent* factors).  Those factors support recalling the mandate in this case.

First, this Court's decision is "unquestionably at odds," *Sargent*, 75 F.3d at 90, with the Supreme Court's decision in *Merit Management*.  This Court held that Section 546(e)'s safe harbor "clearly covers payments, such as those at issue here, by commercial firms to financial intermediaries to purchase shares from the firm's shareholders." *Tribune*, 818 F.3d at 120; see also *id*. at 112 ("Transfers in which either the transferor or transferee is not such an intermediary are clearly included in the language.").  That holding reaffirmed this Court's longstanding interpretation "that a transfer may qualify for the section 546(e) safe harbor even if the financial intermediary is merely a conduit" for the transfer.  *In re Quebecor World (USA)*

5

*Inc.*, 719 F.3d 94, 99 (2d Cir. 2013); see also *Enron Creditors Recovery Corp.* v. *Alfa, S.A.B. de C.V.*, 651 F.3d 329, 333 (2d Cir. 1988).

The Supreme Court granted certiorari in *Merit Management* "to resolve a conflict among the circuit courts as to the proper application of the § 546(e) safe harbor." 138 S. Ct. at 892. The first case the Court cited as part of the circuit conflict being resolved was this Court's *Quebecor* decision. *Id*. at 892 n.6. In resolving the split against this Court's position, the Supreme Court affirmed the Seventh Circuit's contrary holding that Section 546(e) "did *not* protect transfers in which financial institutions served as mere conduits." *Id*. at 892 (emphasis added). Rather, the Supreme Court held, "the relevant transfer for purposes of the § 546(e) safe harbor is the same transfer that the trustee seeks to avoid pursuant to its substantive avoiding powers." *Id*. at 897. If *that* transfer is made by or to (or for the benefit of) a financial institution, then it falls within Section 546(e)'s scope. Where a financial institution served only as a conduit for a transfer between entities that are not financial institutions, however, Section 546(e)'s exception to a trustee's avoidance powers does not apply.

Here, the challenged transfer is from the debtor company (Tribune) to its shareholders. Because neither the debtor nor the vast preponderance of the

relevant shareholders are financial institutions or other safe-harbored entities,[4] Section 546(e)'s safe harbor does not apply.[5]   This Court's opinion therefore squarely conflicts with the Supreme Court's opinion in *Merit Management*. Indeed, Justices Kennedy and Thomas took the extraordinarily unusual step of stating that the Supreme Court is deferring action on the certiorari petition in this case specifically so that this Court can "consider whether to recall the mandate . . . in light of this Court's decision in *Merit Management*."   2018 WL 1600841, at *1.

Second, plaintiff-creditors' "appeal papers . . . made the argument that prevailed" in the Supreme Court.   *Sargent*, 75 F.3d at 90.   We expressly stated that "Plaintiffs preserved below—and hereby preserve here—the position that *Enron* and *Quebecor* were wrongly decided and should be reconsidered by this Court en banc or by the Supreme Court in an appropriate case."   Doc. 214 at 82.   The

---

[4] In addition to financial institutions, Section 546(e) also protects transfers "made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, . . . financial participant, or securities clearing agency."   11 U.S.C. § 546(e).   For simplicity, we refer here to these entities collectively as financial institutions.

[5] Although some of the Tribune shareholders are financial institutions, the vast preponderance are not.   This Court should vacate its 2016 decision and allow the district court to decide in the first instance whether Section 546(e) preempts clawbacks from *any* of the shareholders.   After *Merit Management*, it is clear that Section 546(e) has nothing to say about, and therefore cannot possibly preempt actions seeking to avoid, transfers in which neither the transferor nor the transferee is a financial institution.   Even as to actions against financial institutions, the reasoning of *Merit Management* demonstrates why preemption does not exist, as explained in Point II below.

"appropriate case," as it turned out, was *Merit Management*, which overruled the very legal rule that plaintiff-creditors argued was erroneous. Indeed, both the plaintiffs and the defendants in this case filed briefs as *amici curiae* in the Supreme Court in *Merit Management*, with defendant-shareholders unsuccessfully urging reversal of the Seventh Circuit and plaintiff-creditors successfully urging that the Supreme Court reject this Court's *Quebecor* and *Enron* decisions and affirm the Seventh Circuit.

Third, there was not a "substantial lapse of time between issuance of [the] mandate and the present motion." *Sargent*, 75 F.3d at 90. In *Sargent*, this Court explained that there was not a substantial lapse of time because, when the supervening case was decided by the Vermont Supreme Court, "a petition for a writ of certiorari was pending in the Supreme Court, and the motion to recall the mandate was filed within two weeks of the denial of the petition for certiorari." *Ibid.* Here, too, our petition for certiorari was pending in the Supreme Court when it issued *Merit Management*—indeed, it is *still* pending. And we are filing this motion to recall the mandate within days of the statement by Justices Kennedy and Thomas that consideration of the certiorari petition will be delayed to provide this Court time to consider whether to recall the mandate.[6]

---

[6] See also *Rudgayzer* v. *Google, Inc.*, No. 13 CV 120, 2014 WL 12676233, at *3 (E.D.N.Y. Feb. 10, 2014) (applying *Sargent* factors in granting Rule 60(b) motion

Finally, "the equities strongly favor" recalling the mandate in this case. *Sargent*, 75 F.3d at 90. As noted, this is an extraordinary—and, to our knowledge, unique—case. In a typical case, a pending petition for certiorari that presents a question addressed and resolved favorably by another Supreme Court decision would be granted, the judgment vacated, and the case remanded to the court of appeals for further proceedings in light of that decision. See STEPHEN M. SHAPIRO, ET AL., SUPREME COURT PRACTICE, ch. 5.12(b), at 346. Here, however, it appears that there may be some doubt as to the existence of a quorum in the Supreme Court to do so. But, rather than simply allowing this Court's decision to be affirmed by operation of 28 U.S.C. § 2109, the Supreme Court has taken the extraordinary step of delaying consideration of the petition—and it has evidently done so specifically to "allow" this Court "to consider whether to recall the mandate" in light of *Merit Management*. 2018 WL 1600841, at *1. It is difficult to imagine circumstances in which it is more appropriate for a court of appeals to recall its mandate than where, as here, two Justices have stated that the Supreme Court is deferring consideration of its decision *for the express purpose* of allowing this Court to do so.

---

that was filed "a mere 10 days" after the supervening decision); *Tal* v. *Miller*, No. 97 Civ. 2275, 1999 WL 38254, at *2 (S.D.N.Y. Jan. 27, 1999) (applying *Sargent* factors in granting Rule 60(b) motion (by a pro se movant) filed "just over a month" after the supervening case was decided).

## II.  THE COURT SHOULD VACATE ITS JUDGMENT IN ITS ENTIRETY

This Court should vacate its judgment in its entirety.  *Merit Management* does not just fatally undermine this Court's basis for applying Section 546(e) to transfers in which neither the transferor nor the transferee is a financial institution. It also necessitates careful reconsideration of whether Section 546(e) preempts *any* state-law fraudulent-conveyance actions, even those directly against financial institutions.  It does so because this Court's key rationale for preemption—that the policies ostensibly animating Section 546(e) warrant interpreting the section more broadly than its plain text provides—cannot be reconciled with what the Supreme Court has now said.

Courts have almost unanimously disagreed with this Court's preemption conclusion, both before and after this Court ruled.  See generally Peter V. Marchetti, *A Note to Congress: Amend Section 546(e) of the Bankruptcy Code to Harmonize the Underlying Policies of Fraudulent Conveyance Law and Protection of the Financial Markets*, 26 Am. Bankr. Inst. L. Rev. 1, 55-62, 68-72 (2018) (collecting cases).  The flaw in this Court's reasoning is that it "used a faulty intentionalist approach to interpret section 546(e)."  *Id*. at 72.  To be more specific, in reasoning that cannot possibly be reconciled with the later Supreme Court decision in *Merit Management*, this Court wrote:

10

We do not dwell on this because we perceive no conflict between Section 546(e)'s language and its purpose. Section 546(e) is simply a case of Congress perceiving a need to address a particular problem within an important process or market *and using statutory language broader than necessary to resolve the immediate problem. Such broad language is intended to protect the process or market from the entire genre of harms of which the particular problem was only one symptom.* The legislative history of Section 546(e) clearly reveals such a purpose.

818 F.3d at 120 (emphasis added).

But the *same* argument was made to the Supreme Court in *Merit Management* as a reason to construe Section 546(e) broadly—and the unanimous Supreme Court resoundingly rejected it. "Merit fails to support its purposivist arguments. In fact, its perceived purpose is actually contradicted by the plain language of the safe harbor." 138 S. Ct. at 896-97.

The rationale that Merit "fail[ed] to support" was exactly the same as this Court's: "Merit contends that the broad language of § 546(e) shows that Congress took a 'comprehensive approach to securities and commodities transactions' that 'was prophylactic, not surgical,' and meant to 'advanc[e] the interests of parties in the finality of transactions.' Brief for Petitioner 41-43." *Id*. at 896. And "Merit posits that Congress' concern was plainly broader than the risk that is posed by the imposition of avoidance liability on a securities industry entity." *Ibid.* Those contentions—rejected by the Supreme Court as "nothing more than an attack on the text of the statute," *id*. at 897—exactly parallel this Court's reasoning quoted

11

above, and its repeated emphasis on the need for "finality" in the securities markets.  See 818 F.3d at 119, 121.

This Court's approach in its *Tribune* opinion is also inconsistent with other recent Supreme Court decisions on statutory interpretation.  See, *e.g.*, *Encino Motorcars, LLC* v. *Navarro*, No. 16-1362, 584 U.S. ___, 2018 WL 1568025, at *7 (Apr. 2, 2018) ("'[I]t is quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must be the law.'") (quoting *Henson* v. *Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)); *Cyan, Inc.* v. *Beaver County Emps. Ret. Fund*, No. 15-1439, 583 U.S. ___, 2018 WL 1384564, at *11 (Mar. 20, 2018) ("Even if Congress could or should have done more, still it 'wrote the statute it wrote—meaning, a statute going so far and no further.'") (quoting *Michigan* v. *Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2033-34 (2014)).

In short, this Court's rationale for finding implied preemption of *any* state-law claim (even one against a financial institution) cannot survive *Merit Management*.[7]  Defendants have no valid arguments for dismissing any of

---

[7] Case law and party concessions postdating this Court's March 29, 2016, decision reveal additional flaws in this Court's reasoning.  For example, citing the controlling authority in *BFP* v. *Resolution Trust Corp.*, 511 U.S. 531 (1994), the Eleventh Circuit has given case-dispositive weight to the presumption against preemption in bankruptcy cases.  *In re Northington*, 876 F.3d 1302, 1312 (11th Cir. 2017) (abrogation of creditors' rights provided by state law requires a "clear textual indication that Congress intended that result").  This Court, by contrast, wrote that, "[o]nce a party enters bankruptcy, the Bankruptcy Code constitutes a

plaintiffs' state-law complaints. If they wish to attempt to raise any particular arguments for dismissal, those arguments should be addressed in the first instance by the district court, unhindered by this Court's ruling of March 29, 2016.

## CONCLUSION

This Court should recall its mandate, vacate its March 29, 2016, judgment, and remand this case to the district court for further proceedings consistent with *Merit Management*.

---

*wholesale preemption* of state laws regarding creditors' rights." 818 F.3d at 111 (emphasis added); see also *id*. at 112 (here "there is no measurable concern about federal intrusion into traditional state domains"). Vacating this Court's March 29, 2016, decision would allow the district court to take a fresh look at whether the presumption against preemption applies. Indeed, the shareholder-defendants *conceded* in the Supreme Court, in two separate briefs, that a presumption against preemption applies. 16-317 Br. in Opp. 10 (filed Nov. 4, 2016) (asserting that this Court "never said" that the presumption against preemption does not apply in bankruptcy cases); 16-317 Supp. Br. 1 (filed Jan. 12, 2018) ("the Second Circuit . . . expressly acknowledged the 'recognized presumption against preemption' of state law in the bankruptcy context"). But see 818 F.3d at 110 (stating only that "*Appellants argue* that a recognized presumption against preemption limits the implied preemption doctrine.") (emphasis added). The district court should be free to follow the Supreme Court's statement that "[t]his Court has often applied a 'presumption in favor of concurrent state court jurisdiction' when interpreting federal statutes." *Cyan*, 2018 WL 1384564, at *8 n.2 (quoting *Mims* v. *Arrow Financial Servs., LLC*, 565 U.S. 368, 378 (2012), in turn quoting *Tafflin* v. *Levitt*, 493 U.S. 455, 458-59 (1990)).

13

Respectfully submitted,

/s/ Lawrence S. Robbins
Lawrence S. Robbins
Roy T. Englert, Jr.
Ariel N. Lavinbuk
Daniel N. Lerman
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
lrobbins@robbinsrussell.com
renglert@robbinsrussell.com
alavinbuk@robbinsrussell.com
dlerman@robbinsrussell.com

David M. Zensky
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000
dzensky@akingump.com

Robert J. Lack
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1100
rlack@fklaw.com

David S. Rosner
Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
drosner@kasowitz.com
skorpus@kasowitz.com

14

Daniel M. Scott
Kevin M. Magnuson
KELLEY, WOLTER & SCOTT, P.A.
431 S. 7th Street, Suite 2530
Minneapolis, MN 55415
(612) 371-9090
dscott@kelleywolter.com
kmagnuson@kelleywolter.com

Joseph Aronauer
ARONAUER RE & YUDELL, LLP
One Grand Central Place
60 East 42nd Street, Suite 1420
New York, NY 10165
(212) 755-6000
jaronauer@aryllp.com

*Counsel for Note Holder Appellants*

Jay Teitelbaum, Esq.
TEITELBAUM LAW GROUP, LLC
ATTORNEYS AT LAW
1 Barker Avenue, Third Floor
White Plains, NY 10601
(914) 437-7670
jteitelbaum@tblawllp.com

*Counsel for Retiree Appellants*

Dated: April 10, 2018

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,224 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), which is less than the 5,200 word limitation set forth in Fed. R. App. P. 27(d)(2)(A). The motion complies with the typeface and style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5) and 32(a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman font, with footnotes in 14-point Times New Roman font.

 /s/ Lawrence S. Robbins
Lawrence S. Robbins

Dated: April 10, 2018

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2018, I caused a true and correct copy of the foregoing to be filed with the Court by CM/ECF, thereby effecting electronic service on counsel for all parties.

/s/ Lawrence S. Robbins
Lawrence S. Robbins

17

# APPENDIX

Cite as: 584 U. S. ____ (2018)     1

Statement of KENNEDY, J. and THOMAS, J.

# SUPREME COURT OF THE UNITED STATES

## DEUTSCHE BANK TRUST COMPANY AMERICAS, ET AL. *v.* ROBERT R. MCCORMICK FOUNDATION, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 16–317.   Decided April 3, 2018

Statement of JUSTICE KENNEDY and JUSTICE THOMAS respecting the petition for certiorari.

The parties are advised that consideration of the petition for certiorari will be deferred for an additional period of time. This will allow the Court of Appeals or the District Court to consider whether to recall the mandate, entertain a Federal Rule of Civil Procedure 60(b) motion to vacate the earlier judgment, or provide any other available relief in light of this Court's decision in *Merit Management Group, LP* v. *FTI Consulting, Inc.*, 583 U. S. ___ (2018). The petition for certiorari in this case was pending when the Court decided *Merit Management*. The Court of Appeals or the District Court could decide whether relief from judgment is appropriate given the possibility that there might not be a quorum in this Court. See 28 U. S. C. §2109.

# EXHIBIT 2

# SUPREME COURT OF THE UNITED STATES

DEUTSCHE BANK TRUST COMPANY AMERICAS, ET AL.
*v.* ROBERT R. MCCORMICK FOUNDATION, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 16–317.   Decided April 3, 2018

Statement of JUSTICE KENNEDY and JUSTICE THOMAS
respecting the petition for certiorari.

The parties are advised that consideration of the petition for certiorari will be deferred for an additional period of time.  This will allow the Court of Appeals or the District Court to consider whether to recall the mandate, entertain a Federal Rule of Civil Procedure 60(b) motion to vacate the earlier judgment, or provide any other available relief in light of this Court's decision in *Merit Management Group, LP* v. *FTI Consulting, Inc.*, 583 U. S. \_\_\_ (2018). The petition for certiorari in this case was pending when the Court decided *Merit Management*.  The Court of Appeals or the District Court could decide whether relief from judgment is appropriate given the possibility that there might not be a quorum in this Court.  See 28 U. S. C. §2109.

# EXHIBIT 3

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Nos. 13-3992-cv(L), 13-3875 (XAP), 13-4178 (XAP), 13-4196 (XAP) |

**<u>PLAINTIFFS-APPELLANTS-CROSS-APPELLEES'</u>**
**<u>REPLY IN SUPPORT OF MOTION TO RECALL MANDATE</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

I.   STATE-LAW FRAUDULENT-CONVEYANCE CLAIMS ARE NOT PROPERTY OF THE ESTATE THAT MUST "REVERT" TO CREDITORS—AND THIS COURT DID NOT HOLD OTHERWISE ..............................................................................2

II.  *MERIT MANAGEMENT* FATALLY UNDERMINES THIS COURT'S UNDERSTANDING OF THE PURPOSES AND PREEMPTIVE FORCE OF SECTION 546(e)..........................................5

III. THIS COURT SHOULD NOT CONSIDER DEFENDANTS' NEW ARGUMENTS REGARDING THE SCOPE OF SECTION 546(e)..............................................................................7

CONCLUSION ....................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bishop* v. *Wells Fargo & Co.*,
   870 F.3d 104 (2d Cir. 2017) ...................................................................9

*Carpenter* v. *Republic of Chile*,
   610 F.3d 776 (2d Cir. 2010) .................................................................9

*Cleveland* v. *Caplaw Enters.*,
   448 F.3d 518 (2d Cir. 2006) .................................................................9

*Frank* v. *United States*,
   78 F.3d 815 (2d Cir. 1996) ...................................................................8

*Glenny* v. *Langdon*,
   98 U.S. 20 (1878).................................................................................4

*Golb* v. *Attorney General of N.Y.*,
   870 F.3d 89 (2d Cir. 2017) ...................................................................6

*Hall* v. *United States*,
   566 U.S. 506 (2012).............................................................................11

*Hines* v. *Davidowitz*,
   312 U.S. 52 (1941)...............................................................................5

*In re Colonial Realty Co.*,
   980 F.2d 125 (2d Cir. 1992) .................................................................4

*In re Cybergenics Corp.*,
   226 F.3d 237 (3d Cir. 2000) .................................................................4

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) .................................................................8

*In re MortgageAmerica Corp.*,
   714 F.2d 1266 (5th Cir. 1983) .............................................................4

*In re Munford, Inc.*,
   98 F.3d 604 (11th Cir. 1996) ...............................................................8

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*In re Quebecor World (USA) Inc.*,
719 F.3d 94 (2d Cir. 2013) ..................................................................10

*In re Tribune Co. Fraudulent Conveyance Litig.*,
499 B.R. 310 (S.D.N.Y. 2013) .............................................................2

*In re Tribune Co. Fraudulent Conveyance Litig.*,
818 F.3d 98 (2d Cir. 2016) .................................................. *passim*

*Johnson* v. *Priceline.com, Inc.*,
711 F.3d 271 (2d Cir. 2013) ................................................................10

*Johnson* v. *Testman*,
380 F.3d 691 (2d Cir. 2004) ..................................................................8

*Manufacturers Hanover Tr. Co.* v. *Yanakas*,
7 F.3d 310 (2d Cir. 1993) ....................................................................10

*Marentette* v. *Abbott Labs., Inc.*,
886 F.3d 112 (2d Cir. 2018) ..................................................................5

*Merit Management Grp., LP* v. *FTI Consulting, Inc.*,
138 S. Ct. 883 (2018)........................................................................1, 5

*Rodriguez ex rel. Rodriguez* v. *DeBuono*,
175 F.3d 227 (2d Cir. 1999) ..................................................................8

*Sargent* v. *Columbia Forest Prods., Inc.*,
75 F.3d 86 (2d Cir. 1996) .....................................................................1

*Smith* v. *General Motors Corp.*,
108 F.3d 1370 (Table), 1997 WL 138452 (2d Cir. 1997) .................7

*Teague* v. *Lane*,
489 U.S. 288 (1989)..........................................................................6, 7

*Trimble* v. *Woodhead*,
102 U.S. 647 (1880)...............................................................................4

**TABLE OF AUTHORITIES—Continued**

Page(s)

*United States* v. *Cedeño,*
    644 F.3d 79 (2d Cir. 2011) ...............................................................8

**Statutes**

11 U.S.C. § 101(11) .........................................................................9

11 U.S.C. § 101(22)(A) ...............................................................9, 10

11 U.S.C. § 362(a)(3) .......................................................................4

11 U.S.C. § 541(a)(1) .......................................................................3

11 U.S.C. § 561(b)(2)(B) ................................................................11

11 U.S.C. § 741(2) ..........................................................................11

11 U.S.C. § 745 ...............................................................................11

11 U.S.C. § 746 ...............................................................................11

11 U.S.C. § 747 ...............................................................................11

11 U.S.C. § 748 ...............................................................................11

11 U.S.C. § 749 ...............................................................................11

11 U.S.C. § 751 ...............................................................................11

11 U.S.C. § 752 ...............................................................................11

11 U.S.C. § 761(9) ..........................................................................11

11 U.S.C. § 763 ...............................................................................11

11 U.S.C. § 764 ...............................................................................11

11 U.S.C. § 765 ...............................................................................11

11 U.S.C. § 766 ...............................................................................11

11 U.S.C. § 783(a) ..........................................................................11

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

28 U.S.C. § 2109 ....................................................................................1

**Other Authorities**

COLLIER ON BANKRUPTCY (16th ed. 2018) ..............................................4

H.R. Rep. No. 109-31(I) (2005), reprinted in 2005 U.S.C.C.A.N. 88....................11

Tribune Co. 2007 Form 10-K, https://bit.ly/2qSyUy8 ...........................................11

This Court should recall its mandate, vacate its decision of March 29, 2016, in its entirety, and remand this case to the district court for further proceedings consistent with *Merit Management Group, LP* v. *FTI Consulting, Inc.*, 138 S. Ct. 883 (2018).

Defendants do not seriously dispute that recall is appropriate here. Every factor considered by this Court weighs in favor of it. See generally *Sargent* v. *Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996); Mot. 5-9. Defendants are constrained to concede (at 16) that *Merit Management* "forecloses" a central element of this Court's decision: that Section 546(e) reaches *every* defendant in this case. This Court held that it "clearly" does because all the transfers at issue were made through financial intermediaries. *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 112, 120 (2d Cir. 2016). But that is precisely the holding rejected by *Merit Management*, leaving the two decisions "unquestionably at odds." *Sargent*, 75 F.3d at 90. Defendants note (at 2) that recall is an "extraordinary request," but barely acknowledge the extraordinary circumstance that prompted our motion: a statement by two Justices *expressly asking* this Court to consider "available relief in light of" *Merit Management*. See Mot. App.[1]

---

[1] Defendants misstate (at 8) the operation of 28 U.S.C. § 2109. While Justices Kennedy and Thomas noted that "there might not be a quorum" to address this case right now, Section 2109 requires affirmance only after "a majority of the qualified justices" actually conclude "that the case cannot be heard and determined

Defendants' Opposition is, instead, a rearguard battle to rehabilitate this Court's decision on different grounds. But the arguments they advance already have been rejected, are equally undermined by *Merit Management*, or are new and plainly fact bound. Each is best addressed in the first instance (if at all) by the district court.

## I. STATE-LAW FRAUDULENT-CONVEYANCE CLAIMS ARE NOT PROPERTY OF THE ESTATE THAT MUST "REVERT" TO CREDITORS—AND THIS COURT DID NOT HOLD OTHERWISE

Defendants' lead argument attempts to avoid *Merit Management* altogether. According to Defendants, Plaintiffs' state-law fraudulent-conveyance claims "were vested exclusively in the bankruptcy trustee and they never reverted to plaintiffs." Opp. 9. Thus, they say, Plaintiffs could bring those state-law claims only if the district court had dismissed the bankruptcy case, which it didn't do. But Defendants *lost* that argument in the district court, which held that "creditors' avoidance claims are not property of the estate" in the first place. *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 322 & n.12 (S.D.N.Y. 2013). And, contrary to their suggestions here (at 9), Defendants did not win their "reverter" argument on appeal, either. Rather, this Court stated that it "need not

---

*at the next* ensuing term"—not "the end of the current Term" (Opp. 8), as Defendants claim.

2

resolve either the 'property' or the reversion issues." *Tribune*, 818 F.3d at 117; see also *id.* at 118 (stating that the reverter issue was "unclear").[2]

What is more, Defendants argued that, "[i]f the avoidance claims reached Appellants at all, they did so still limited by section 546(e)." Dkt. 143 at 23. That argument, of course, assumed that Section 546(e) protected *all* transfers in which financial institutions acted as conduits. But *Merit Management* overruled that understanding. Thus, even if Defendants' argument were correct, endorsement of it by this Court would not end the case: The district court would *still* need to determine whether Section 546(e) reaches each of the approximately 3,300 differently situated defendants in this case in light of *Merit Management*. See *infra* Part III.

In any event, Defendants' "reverter" argument mischaracterizes our position and is divorced from the Bankruptcy Code's text. Our argument is *not*, as Defendants suggest, that the state-law fraudulent-conveyance claims have "reverted" to creditors. Rather, such claims never became property of the estate to begin with.

The bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

---

[2] Indeed, there would have been no reason for this Court to hold that Section 546(e) preempted Plaintiffs' fraudulent-conveyance claims if they didn't otherwise possess such claims.

3

And a state-law fraudulent-transfer claim is *not* property of the debtor. See Dkt. 219 at 18-33. Rather, "fraudulent transfer claims have long belonged to a transferor's *creditors*." *In re Cybergenics Corp.*, 226 F.3d 237, 241 (3d Cir. 2000).[3] Indeed, in *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992), this Court held that fraudulently transferred property is not property of the estate until it is recovered—and that an avoidance action itself is not "an 'act to obtain possession of property of the estate.'" *Id.* at 131-132 (quoting 11 U.S.C. § 362(a)(3)).[4] Because fraudulent-conveyance claims are not property of the estate to begin with, they need not "revert" to creditors before creditors can bring such claims.

Defendants nevertheless assert that "the text of today's Code" supports their "reverter" argument. Opp. 11. Yet Defendants do not cite Section 541(a)'s definition of property of the estate. Indeed, they do not cite *any* "text of today's Code." Rather, they rely on two Supreme Court cases from "[o]ne hundred forty years ago" (Opp. 10)—*Glenny* v. *Langdon*, 98 U.S. 20 (1878), and *Trimble* v. *Woodhead*, 102 U.S. 647 (1880). But those cases relied on a provision of the

---

[3] See also 5 COLLIER ON BANKRUPTCY ¶ 541.07, n.1 (16th ed. 2018) (the "correct" reading of Section 541(a) is that "fraudulent transfer claims arising out of a leveraged buyout [a]re not" property of the estate).

[4] It is telling that defendants rely (at 11) on *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983). This Court expressly rejected *Mortgage-America*'s reasoning in *Colonial Realty*, 980 F.2d at 131.

*Bankruptcy Act of 1867* that vested fraudulently conveyed property in the trustee—

a provision Congress *deleted* when it enacted the Bankruptcy Code of 1978. See

Dkt. 219 at 29-30. Text from the Bankruptcy Act that has been *repealed* by the

Code plainly is not the "text of today's Code" (Opp. 11).

II.   *MERIT MANAGEMENT* FATALLY UNDERMINES THIS COURT'S
      UNDERSTANDING OF THE PURPOSES AND PREEMPTIVE
      FORCE OF SECTION 546(e)

       Defendants next assert (at 13-16) that nothing about *Merit Management*

undermines this Court's preemption analysis. But ever since *Hines* v. *Davidowitz*,

312 U.S. 52, 67 (1941), the question at the heart of any implied-preemption case

has been whether a state law "stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." Accord *Tribune*,

818 F.3d at 110; *Marentette* v. *Abbott Labs., Inc.*, 886 F.3d 112, 117

(2d Cir. 2018). It thus follows ineluctably that a court's erroneous perception of

the "purposes and objectives of Congress" in enacting the allegedly preemptive

federal statute will profoundly affect the analysis of implied preemption.

       We showed in the Motion (at 10-12) that the Supreme Court in *Merit

Management* determined the purposes and objectives of Congress underlying

Section 546(e) to be very different than did this Court. See *Merit Management*,

138 S. Ct. at 896-97. ***Defendants have no response***. They simply repeat this

Court's interpretation of Congress's purposes, as if it remained self-evidently

correct even now.  Opp. 5-6, 13.  Indeed, they go so far as to quote (at 6) this Court's comment that it "perceive[d] no conflict between Section 546(e)'s language and its purpose" (*Tribune*, 818 F.3d at 120)—even though the Supreme Court *rejected* this Court's interpretation of such language.  Any serious analysis of *Merit Management* shows that it undermined this Court's understanding of Congress's purpose just as much as it undermined this Court's understanding of Congress's text.  This Court's holding on preemption—built on that erroneous understanding—thus falls as well.

But rather than engage in such analysis, Defendants offer only misdirection. *First*, they say that *Merit Management* did not directly address any preemption issue.  Opp. 13-14.  That is true, undisputed, and irrelevant.  We did not argue that *Merit Management* necessitates remand to consider preemption anew *because* the case directly addressed preemption.  Rather, we showed that *Merit Management* necessitates reconsideration because this Court's preemption opinion rests on an understanding of Congress's purposes that has been rejected by *Merit Management*.

*Second*, Defendants point to the denial of certiorari in another case.  Opp. 3, 6-7, 14.  The answer to that misguided argument is simple: "'the denial of a writ of certiorari imports no expression of opinion upon the merits of the case.'"  *Golb* v. *Attorney General of N.Y.*, 870 F.3d 89, 98 (2d Cir. 2017) (quoting *Teague* v. *Lane*,

489 U.S. 288, 296 (1989)); see also *Smith* v. *General Motors Corp.*, 108 F.3d 1370 (Table), 1997 WL 138452, at *2 (2d Cir. 1997) (stating with respect to denial of certiorari in a preemption case that a "denial of certiorari has no precedential weight whatsoever, and marks no change in the law"); *Teague*, 489 U.S. at 296 ("The 'variety of considerations that underlie denials of the writ' counsels against according denials of certiorari any precedential value.") (citation omitted).

In sum, Defendants simply fail to engage with our showing that *Merit Management* necessitates reconsideration of this Court's preemption holding because of what it teaches about the purposes of Section 546(e), the allegedly preemptive enactment in this case. That issue should be addressed anew by the district court on remand, unburdened by this Court's March 2016 decision.

## III.   THIS COURT SHOULD NOT CONSIDER DEFENDANTS' NEW ARGUMENTS REGARDING THE SCOPE OF SECTION 546(e)

Even if Section 546(e) does preempt state law (or if Plaintiffs' claims only "revert" subject to it), the question remains whether it protects *all* of the defendants in this case. As Defendants concede, *Merit Management* "forecloses" the Court's original reason for holding that it does. Opp. 16. So instead, Defendants ask the Court to reach the same conclusion for a different reason. It should not.

A.   To begin with, Defendants have never before made the argument advanced in their Opposition. The argument is that the definitions of "financial institution" and "financial participant" bring every transfer in the case within the

7

scope of Section 546(e), regardless of *Merit Management*'s holding. Opp. 16-22. But that argument appears nowhere in Defendants' district-court briefs. *In re Tribune Co. Fraudulent Conveyance Litig. ("District Court Case")*, No. 11-MD-2296 (S.D.N.Y.), Dkt. 1671; Dkt. 2293. Nor does it appear anywhere in their briefs in this Court. No. 13-3992, Dkts. 143-145; Dkts. 229-231.

There is therefore no reason for this Court to consider the argument now. Appellants—and cross-appellants, like Defendants here—must present *all* arguments in their initial briefs. *E.g.*, *Rodriguez ex rel. Rodriguez* v. *DeBuono*, 175 F.3d 227, 230 n.1 (2d Cir. 1999) (per curiam); *Frank* v. *United States*, 78 F.3d 815, 833 (2d Cir. 1996), vacated on other grounds, 521 U.S. 1114 (1997). Even ordinary appellees may not raise new arguments at oral argument, *United States* v. *Cedeño*, 644 F.3d 79, 83 n.3 (2d Cir. 2011), or in post-argument letters, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 n.4 (2d Cir. 2011), much less after the court's decision. That the law has changed during the pendency of this case is no justification. "The circuits were split" on the scope of Section 546(e) when this case first reached this Court, so Defendants cannot argue "that [they were] misled by the then-current law of this circuit into waiving" their argument. *Johnson* v. *Testman*, 380 F.3d 691, 696 (2d Cir. 2004).[5]

---

[5] The interpretation of Section 546(e) adopted by the Supreme Court had been law in the Eleventh Circuit since 1996. See *In re Munford, Inc.*, 98 F.3d 604 (1996).

Nor should this Court condone Defendants' attempt to undermine the district court's management of this case. That court ordered Defendants to raise in the initial motion to dismiss "any ground which, if successful, would dispose of the entirety of the Individual Creditor Actions." Master Case Order No. 3 ¶ 12(i), *District Court Case*, Dkt. 1395. Defendants are now trying to raise various new arguments based on Section 546(e) that they contend (wrongly) are a "global reason[]" to dismiss "plaintiffs' avoidance claims." Opp. 17 & n.4. If any court is to consider those new arguments—and they should not—it should be the district court on remand. See, *e.g.*, *Bishop* v. *Wells Fargo & Co.*, 870 F.3d 104, 106-07 (2d Cir. 2017) (per curiam) (remanding, in an analogous posture, even a purely legal issue to district court); *Carpenter* v. *Republic of Chile*, 610 F.3d 776, 780 (2d Cir. 2010) (per curiam) (same).

B.     Defendants' new argument is premised on factual assertions never before tested in this case—confirming that it is not ripe for review by this Court. For example, under Defendants' new theory, a bank through whose hands merger consideration was remitted must have "act[ed] as agent" for Tribune or its former shareholders. 11 U.S.C. § 101(22)(A).[6] But "[t]he question whether an agency relationship exists is highly factual." *Cleveland* v. *Caplaw Enters.*, 448 F.3d 518,

---

[6] The entity may also act as "custodian." 11 U.S.C. § 101(22)(A). That is not relevant here. See *id.* § 101(11).

522 (2d Cir. 2006). In particular, agency is a fiduciary relationship, *Johnson* v. *Priceline.com, Inc.*, 711 F.3d 271, 277 (2d Cir. 2013), which most bank-customer relationships are not, *Manufacturers Hanover Tr. Co.* v. *Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993). The documents Defendants cite (at 17-20) do not suffice to determine that agency relationships existed here for any Defendant, let alone *all* of them.

Another factual issue is whether the relationship Defendants posit is in connection with a "securities contract." 11 U.S.C. § 101(22)(A). That term's definition encompasses contracts "to *purchase* shares." *Tribune*, 818 F.3d at 120 (emphasis added). But this Court did not hold, as Defendants suggest (at 20), that it encompasses contracts to *redeem* shares. Indeed, this Court has expressly declined to rule on that issue. *In re Quebecor World (USA) Inc.*, 719 F.3d 94, 99 (2d Cir. 2013). That distinction matters because the merger agreement covering approximately half of the transfers here involved the cancellation, not the purchase, of shares. Merger Agreement § 2.1(a), *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del.), Dkt. 5442 ("All Shares . . . shall be automatically canceled and shall cease to exist.").

In addition to such factual questions, Defendants' new argument embeds legal errors. For example, it requires "customer" to have "its ordinary meaning." Opp. 18 n.6. But the Bankruptcy Code gives "customer" a technical meaning.

10

11 U.S.C. §§ 741(2), 761(9). It does not use the word in any other way. *Id.* §§ 561(b)(2)(B), 745-749, 751, 752, 763-766, 783(a). The meaning here should be correspondingly limited. See, *e.g.*, *Hall* v. *United States*, 566 U.S. 506, 519 (2012) ("[I]dentical words and phrases within the [Bankruptcy Code] should normally be given the same meaning." (quotation marks omitted)).

Similar problems plague the distinct argument (Opp. 21-22) that Tribune was a "financial participant." For example, the swap agreements on which that argument rests were part of the very leveraged buyout we challenge. Tribune Co. 2007 Form 10-K at 6, https://bit.ly/2qSyUy8. A transferor cannot immunize challenges to a transaction simply by including certain derivatives in it. See H.R. Rep. No. 109-31(I), at 130-31 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 191 (noting that the definition of "financial participant" protects "major market participants" to prevent "systemic impact upon the markets from a single failure"). Like their other new arguments, this one is indisputably fact bound—the kind of argument to be evaluated, in the first instance if at all, by the district court.

## CONCLUSION

This Court should recall its mandate, vacate its March 29, 2016, judgment, in its entirety, and remand this case to the district court for further proceedings consistent with *Merit Management*.

Respectfully submitted,

/s/ Lawrence S. Robbins
Lawrence S. Robbins
Roy T. Englert, Jr.
Ariel N. Lavinbuk
Daniel N. Lerman
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
lrobbins@robbinsrussell.com
renglert@robbinsrussell.com
alavinbuk@robbinsrussell.com
dlerman@robbinsrussell.com

David M. Zensky
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000
dzensky@akingump.com

Robert J. Lack
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
(212) 833-1100
rlack@fklaw.com

David S. Rosner
Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
drosner@kasowitz.com
skorpus@kasowitz.com

Daniel M. Scott
Kevin M. Magnuson
KELLEY, WOLTER & SCOTT, P.A.
431 S. 7th Street, Suite 2530
Minneapolis, MN 55415
(612) 371-9090
dscott@kelleywolter.com
kmagnuson@kelleywolter.com

Joseph Aronauer
ARONAUER RE & YUDELL, LLP
One Grand Central Place
60 East 42nd Street, Suite 1420
New York, NY 10165
(212) 755-6000
jaronauer@aryllp.com

*Counsel for Note Holder Appellants*

Jay Teitelbaum
TEITELBAUM & BASKIN, LLP
1 Barker Avenue, Third Floor
White Plains, NY 10601
 (914) 437-7670
jteitelbaum@tblawllp.com

*Counsel for Retiree Appellants*

Dated:  April 27, 2018

13

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 2,598 words. The motion complies with the typeface and style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5) and 32(a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman font, with footnotes in 14-point Times New Roman font.

/s/ Lawrence S. Robbins
Lawrence S. Robbins

Dated: April 27, 2018

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, I caused a true and correct copy of the foregoing to be filed with the Court by CM/ECF, thereby effecting electronic service on counsel for all parties.

 /s/ Lawrence S. Robbins
Lawrence S. Robbins

# EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC., *et al.*,<br><br>    Debtors. | Chapter 11 Case<br>Case No. 13-12965 (KG)<br>(Jointly Administered) |
| PAH LITIGATION TRUST,<br><br><br>    Plaintiff,<br><br>        v.<br><br>WATER STREET HEALTHCARE<br>PARTNERS, L.P., *et al.*,<br><br>    Defendants. | Adversary Proceeding<br>No. 15-51238-KG<br><br>**RE:  Adv. D.I. 798, 799** |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS BASED ON AN INTERVENING CHANGE IN CONTROLLING LAW

Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email:  stearn@rlf.com
       kandestin@rlf.com
       delillo@rlf.com

*Attorneys for Water Street and Wind Point Defendants*


Additional counsel on signature page


Dated:  May 7, 2018

J. Cory Falgowski (No. 4546)
BURR & FORMAN LLP
1201 N. Market Street, Suite 1407
Wilmington, Delaware 19801
Telephone: (302) 830-2300
Email:  jfalgowski@burr.com

  -and-

Emily Devan (No. 6104)
REED SMITH LLP
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Email:  edevan@reedsmith.com

*Attorneys for Wind Point Entities*


Additional counsel on signature page

Defendants Water Street Healthcare Partners, L.P.; WS Associate Co-Invest Partners, LLC; and Water Street Healthcare Management, L.P. (collectively, "Water Street"); and Defendants Wind Point Partners IV, L.P.; Wind Point IV Executive Advisor Partners, L.P.; Wind Point Associates IV, LLC; and Wind Point Investors IV, L.P. (collectively, "Wind Point" and, where applicable, together with Water Street, the "Defendants"), respectfully submit this response (the "Response") to the *Motion for Reconsideration of the Court's Order Granting in Part Defendants' Motion to Dismiss Based on an Intervening Change in Controlling Law* [Adv. D.I. 798] (the "Motion for Reconsideration") filed by Plaintiff, the PAH Litigation Trust (the "Litigation Trust"), and state as follows:[1]

## RESPONSE

Defendants agree that, to the extent this Court dismissed the Litigation Trust's federal constructive fraudulent transfer claims (*i.e.*, Counts II, IV, and V) as barred under section 546(e) of the Bankruptcy Code, on the grounds that the alleged fraudulent transfer was made via a financial institution acting as an intermediary, *see* Opinion at 25, 2016 WL 3611831, at *11, such grounds have been overruled by the decision of the United States Supreme Court in *Merit Management Group, LP v. FTI Consulting, Inc.*, in which the Supreme Court held that the safe harbor only applies where the transfer to be avoided was made "by or to (or for the benefit of)" a covered entity, in other words, where the transferor or transferee is a covered entity. 138 S. Ct. 883, 892–93, 897 (2018). Defendants, therefore, do not oppose reconsideration of the Court's Opinion to the extent it was based on reasoning that the Supreme Court has now rejected.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Motion for Reconsideration and its accompanying pleadings in support thereof. References to "Adv. D.I." are documents filed in the above-captioned adversary proceeding. "Opinion" shall refer to the Court's opinion and order, granting in part and denying in part the Defendants' motion to dismiss. *PAH Litigation Trust v. Water Street Healthcare Partners, L.P. (In re Physiotherapy Holdings, Inc., et al.)*, Adv. Pro. No. 15-51238 (KG), 2016 WL 3611831 (Bankr. D. Del. June 20, 2016).

However, the Supreme Court in *Merit Management* did not completely negate application of the section 546(e) safe harbor, as the Supreme Court expressly acknowledged in its opinion. For example, *Merit Management* did not address (let alone overrule, abridge or otherwise change) well-settled Third Circuit law regarding what constitutes a "securities contract" or a "settlement payment"—*see id.* at 892 n.5—law that formed the basis for this Court's decision that the Merger Agreement was a "securities contract" and that the payment of the Merger Consideration in exchange for Defendants' shares of PTA stock constituted a "settlement payment." *See* Opinion at 24–26, 2016 WL 3611831, at *11. The Supreme Court in *Merit Management* also expressly acknowledged, but declined to address (since the issue was not squarely presented or briefed by the parties), the fact that the plain language of section 546(e) applies *where, e.g., the transferor or transferee is* a "customer" of a "financial institution"[2] or a "financial participant," as defined in the Bankruptcy Code. *See* 138 S. Ct. at 890 n.2. Therefore, while there has been a change in the law, such change is not by any means, as the Litigation Trust submits, "outcome determinative" of the federal constructive fraudulent transfer claims the Litigation Trust now seeks to revive. Motion for Reconsideration at 8.

These aforementioned alternative grounds for dismissal of Counts II, IV, and V of the Complaint, left standing in the wake of *Merit Management* were not briefed, argued or decided by the Court in its prior Opinion. Nor were Defendants required to raise all alternative grounds for dismissal at the time,[3] particularly given the existence of clear, binding Third Circuit

---

[2] In its decision, the Supreme Court expressly noted that "[t]he parties here do not contend that either the debtor or petitioner in this case qualified as a 'financial institution' by virtue of its status as a 'customer' under § 101(22)(A)" (the Bankruptcy Code provision that defines a "financial institution), and that the petitioner "did not argue that it somehow dictates the outcome in this case." *Merit Mgmt.*, 138 S. Ct. at 890 n.2. Thus, the Supreme Court expressly did "**not** address what impact, if any, § 101(22)(A) would have in the application of the § 546(e) safe harbor." *Id.* (emphasis added).

[3] *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted….may be raised (A) in any pleading allowed or ordered under Rule 7(a); (B) by motion under Rule 12(c); or (C) at trial.").

authority supporting the Court's dismissal of those claims on the grounds the Court appropriately followed.

Accordingly, although Defendants do not oppose the Motion for Reconsideration, Defendants reserve their right to raise any and all alternative grounds for dismissal of Counts II, IV and V (some of which may require findings of fact)[4] at the appropriate time, either at or before trial.[5]

[*Signature page to follow*]

---

[4] For example, and without limitation, including defenses under section 546(e) left open by the Supreme Court in *Merit Management* and the Litigation Trust's lack of standing to assert state law fraudulent transfer claims in its capacity as an assignee of Noteholders (which already has been asserted as an affirmative defense in Defendants' Answers, *see* D.I. 262, 266).

[5] Defendants also understand that other courts, including the Second Circuit in *In re Tribune Co. Fraudulent Conveyance Litig.*, Case No. 13-3992 (2d Cir.) and the Bankruptcy Court for the Southern District of New York in *Holliday v. K Road Power Mgmt., LLC, et al.(In re Boston Generating, LLC, et al.*), Adv. Pro. No. 12-1879-SCC (Bankr. S.D.N.Y.), have been or will be asked to address the same issue—*i.e.*, alternate grounds for the application of section 546(e)'s safe harbor to dismiss fraudulent transfer claims—in the near future.

Dated: May 7, 2018
Wilmington, Delaware

By:  *Robert J. Stearn, Jr.*                          By:  *J. Cory Falgowski*

Robert J. Stearn, Jr. (No. 2915)                        J. Cory Falgowski (No. 4546)
Cory D. Kandestin (No. 5025)                            BURR & FORMAN LLP
Christopher M. De Lillo (No. 6355)                      1201 N. Market Street, Suite 1407
RICHARDS, LAYTON & FINGER, P.A.                         Wilmington, Delaware 19801
One Rodney Square                                       Telephone: (302) 830-2300
920 North King Street                                   Email:  jfalgowski@burr.com
Wilmington, Delaware 19801
Telephone: (302) 651-7700                               -and-
Email:  stearn@rlf.com
        kandestin@rlf.com                               Emily Devan (No. 6104)
        delillo@rlf.com                                 REED SMITH LLP
                                                        1201 N. Market Street, Suite 1500
-and-                                                   Wilmington, Delaware 19801
                                                        Telephone: (302) 778-7500
Richard W. Reinthaler                                   Email:  edevan@reedsmith.com
David Neier
Rolf S. Woolner                                         -and-
Carrie V. Hardman
Kerry C. Donovan                                        Brian D. Roche
WINSTON & STRAWN LLP                                    10 S. Wacker Drive
200 Park Avenue                                         Chicago, Illinois 60606-7507
New York, New York 10166                                Telephone: (312) 207-6490
Telephone: (212) 294-6700                               Email:  broche@reedsmith.com
Email:  rreinthaler@winston.com
        dneier@winston.com                              *Attorneys for Wind Point Defendants*
        rwoolner@winston.com
        chardman@winston.com
        kcdonovan@winston.com

*Attorneys for Water Street Defendants*

Robert A. Van Nest
David J. Silbert
Ajay S. Krishnan
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Email:  rvannest@keker.com
        dsilbert@keker.com
        akrishnan@keker.com

*Attorneys for Water Street and Wind Point
Defendants*

4

### CERTIFICATE OF SERVICE

I, Robert J. Stearn, Jr., hereby certify that on May 7, 2018 I caused a copy of the foregoing *Defendants' Response to Plaintiff's Motion for Reconsideration of the Court's Order Granting in Part Defendants' Motion to Dismiss Based on an Intervening Change in Controlling Law* to be served upon the parties on the attached list in the manner indicated.

 

 

 

 

    /s/ *Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (No. 2915)

## <u>SERVICE LIST</u>

*Via Hand Delivery and Email*
Laura Davis Jones
Michael R. Seidl
Peter J. Keane
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Email:  ljones@pszjlaw.com
        mseidl@pszjlaw.com
        pkeane@pszjlaw.com

*Via First Class Mail and Email*
Richard I. Werder, Jr.
Susheel Kirpalani
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Email:  rickwerder@quinnemanuel.com
        susheelkirpalani@quinnemanuel.com

*Via First Class Mail and Email*
Farbod S. Moridani
Benjamin Finestone
R. Brian Timmons
Johanna Y. Ong
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Email: farbodmoridani@quinnemanuel.com
        benjaminfinestone@quinnemanuel.com
        briantimmons@quinnemanuel.com
        johannaong@quinnemanuel.com

# EXHIBIT 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| PHYSIOTHERAPY HOLDINGS, INC., *et al.*, | ) | Case No. 13-12965(KG) |
| | ) | |
| Debtors. | ) | |
| PAH LITIGATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 15-51238(KG) |
| | ) | |
| WATER STREET HEALTHCARE | ) | |
| PARTNERS, L.P., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **Re: D.I. Nos. 250, 251 & 798** |

## MEMORANDUM ORDER GRANTING
## MOTION FOR RECONSIDERATION

PAH Litigation Trust (the "Plaintiff") has asked the Court to reconsider a portion of the

Opinion (the "Opinion") and Order it issued on June 20, 2016. D.I.'s 250 & 251.  Specifically, the

Plaintiff asks the Court to reconsider its dismissal of Counts II, IV and V of the Complaint in which

the Plaintiff asserted fraudulent transfer claims under 11 U.S.C. § 544(b) and 548(a)(1)(B).  Plaintiff

bases its request on what it argues is "an intervening change in the law." *N. River Ins. Co. v. CIGNA*

*Reinsurance Co.*, 52 F. 3d 1194, 1218 (3d Cir. 1995).  Courts also apply the foregoing expression

to motions to reconsider orders that are not yet final.  *In re Lenox Healthcare, Inc.*, 366 B.R. 292,

293 (Bankr. D. Del. 2007).

Here, the intervening change in the law is the decision by the United States Supreme Court

in *Merit Management Group, LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018), holding that section

546(e) does not provide a "safe harbor" in the circumstances presented in the present case.  It was

the "safe harbor" defense which directed the Court to dismiss certain of the Plaintiff's claims.

Discussion

In the Opinion, the Court had held that the law in the Third Circuit was clear, and that a transfer which qualifies as a "settlement payment" or a common securities transaction during a leveraged buyout is a settlement payment under section 546(e) and therefore subject to the safe harbor provided. *See*, *Lowenschuss v. Resorts Int'l, Ins.*, 181 F. 3d 505, 516 (3d Cir. 1999) ("*Resorts*"), upon which the Court reluctantly but necessarily relied. The Court therefore dismissed Counts II, IV and V.

Then, on February 27, 2018, the Supreme Court issued its *Merit Management* opinion in which it carefully, painstakingly reviewed Section 546(e) of the Bankruptcy Code and its legislative history. The Supreme Court then ruled that the "safe harbor" did not protect transfers in which financial institutions served as mere conduits. *Id.* at 892.

Defendants do not argue that any of the entities named as defendants are financial institutions and do not oppose the motion for reconsideration. It is clear from *Merit Management* that the Supreme Court reversed the holding in *Resorts* upon which the Court relied in the Opinion. Accordingly, Counts II, IV and V in Plaintiff's Complaint are reinstated. As the Defendants requested in their response to the motion for reconsideration, the reinstatement should be understood not to bar Defendants from raising alternative grounds for dismissing Counts II, IV and V.

SO ORDERED.

Dated: May 21, 2018

_____
KEVIN GROSS, U.S.B.J.