**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>11 MD 2296 (RJS)<br>12 MC 2296 (RJS)<br><br>ECF Case |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions* | |

## NOTICE OF SUBMISSION OF LETTER

Pursuant to paragraph 47 of Master Case Order No. 3 (Sept. 7, 2012) [ECF No. 1395], please take notice that the undersigned submitted the attached letter to the Court in the above-captioned actions on behalf of the parties listed therein.


Dated: July 9, 2018          By:     /s/ David M. Zensky
      New York, NY

                                 David M. Zensky, Esq.
                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                 One Bryant Park
                                 New York, NY 10036
                                 Tel: (212) 872-1000
                                 Email: dzensky@akingump.com

                                 *Counsel to the Tribune Litigation Trustee*

July 9, 2018

*VIA ECF AND EMAIL (sullivannysdchambers@nysd.uscourts.gov)*

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, NY 10007

   RE: *In re: Tribune Co. Fraudulent Conveyance Litig.*, Case No. 11-md-2296 (RJS)
**Joint Letter**

Dear Judge Sullivan:

  In response to your June 18, 2018 Order [ECF No. 7552] (the "Order"), Plaintiff Marc Kirschner ("Plaintiff" or the "Trustee"), in his capacity as the Litigation Trustee of the Litigation Trust (the "Trust") of Tribune Company (together with its affiliated entities, "Tribune" or "Company"), the Note Holder Plaintiffs, the Retirees (together with the Note Holder Plaintiffs, the "Individual Creditor Action Plaintiffs,"[1]) and the defendants[2] in this MDL proceeding submit this joint letter to (i) indicate how they wish to proceed with respect to a potential global resolution of the above-captioned litigation, and (ii) update the Court regarding the current state of discovery.[3]

---

   [1] *See* Master Case Order #3 [ECF No. 1395] at 2.

  [2] Defendants submitting this letter are: Dudley S. Taft, Enrique Hernandez, Jr., Betsy D. Holden, Robert S. Morrison, William A. Osborn, J. Christopher Reyes, and Miles D. White (together, the "Independent Directors"); The Exhibit A Shareholder Defendants' Executive Committee, and the Individual Creditor Action Defendants' Executive Committee (together, the "Shareholder Executive Committees"); Samuel Zell, Equity Group Investments, LLC, EGI-TRB, LLC, and Sam Investment Trust (together, "Zell and Affiliated Entities"); The Robert R. McCormick Foundation and The Cantigny Foundation (together the "Foundations"); Chandler Trust No. 1 and Chandler Trust No. 2 (together, the "Chandler Trusts"); Duff & Phelps, LLC, GreatBanc Trust Company, Valuation Research Corporation, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Morgan Stanley & Co. LLC ("Morgan Stanley") (collectively, the "Advisor Defendants"); and Harry Amsden, Chandler Bigelow, Stephen Carver; Thomas Finke, Dennis FitzSimons, Robert Gremillion, Donald Grenesko, Mark Hianik, David Hiller, Dan Kazan, Crane Kenney, Timothy Knight, Tim Landon, Richard Malone, Irving Quimby, John Reardon, Scott Smith, John Vitanovec, Kathleen Waltz, David Williams, and John Worthington (the "Non-Moving Defendants," and together with the Trustee, Advisor Defendants, Foundations, Independent Directors, Shareholder Executive Committees, Chandler Trusts, and Zell and Affiliated Entities, the "Parties").

   [3] Although the Order did not list all of the plaintiffs, defendants and defendant groups, by agreement they were invited to participate in the Parties' discussions and to contribute to this joint letter. Counsel for the Defendants' Executive Committee in the Individual Creditor Actions also participated by agreement, as did counsel for the Note Holder Plaintiffs and Retirees. The Parties agree that a global resolution of claims against the Shareholder Defendants and other defendants that received LBO proceeds will require the participation of the Individual Creditor Action Plaintiffs.

On June 27, counsel for the Parties conducted a call to discuss the status of discovery and exchange initial views on the contents of this joint letter. The Parties thereafter exchanged drafts of their respective sections of this letter.

## I.      PARTIES' POSITIONS ON POTENTIAL GLOBAL RESOLUTION

### A. The Trustee's Position on Potential Settlement

The Trust represents the interests of creditors holding billions of dollars of allowed claims against Tribune that were not satisfied in the bankruptcy. It is now *ten years* since Tribune defaulted on these debts, and more than five years since the company exited bankruptcy, and clearly time to accelerate the pace of these proceedings.

As of today, Plaintiff considers responses to be substantially complete for the vast majority of merits requests and subpoenas issued, and expects the remaining productions (principally from the Non-Moving Defendants) to be complete within the next one to three months.[4] The Trustee does not presently contemplate needing to serve further document requests or subpoenas unless answers or summary judgment motions are filed or deposition testimony is given that raises new or different fact issues.[5] On the defense side, other than one request served on the Trustee, the Non-Moving Defendants have not served any document requests and the Trustee is unaware of any document discovery the Moving Defendants intend to seek. Thus, document discovery in these cases is now very far along.

The productions made in the past year have given the Trustee access to tens of thousands of never-before-produced documents, many of which were previously withheld from production as privileged, such as communications with the Tribune Special Committee (*see* Order on Motion to Compel, dated February 25, 2018 [ECF No. 7245]), or from custodians and time periods not subject to production during the bankruptcy.[6] A prime example is the radically lower financial forecasts rendered by Tribune and many of the defendants just weeks and months after the LBO was completed. In the view of the Trustee, the Post-Bankruptcy Discovery strongly supports the allegations made in the operative complaints, and, as further detailed below, will be instrumental in the next phase of the litigation and in driving future settlement negotiations.

The Trustee has carefully considered the Court's suggestion respecting settlement discussions, as well as the views of defendants. The Trustee believes a staggered approach is

---

[4] The Trustee has not yet received privilege logs (first time or updated) from many of the parties it served with document requests and subpoenas, and reserves all rights respecting documents withheld by any party or third-party on privilege or immunity grounds. Additionally, no parties or third-parties have been deposed about their document retention processes or the manner in which documents were collected in response to the Trustee's requests; the Trustee reserves all rights in that regard as well.

[5] The one exception is document discovery from shareholders who seek to raise individualized defenses, to the extent the Trustee is permitted to amend to assert a constructive fraudulent conveyance claim and/or successfully appeals the dismissal of his intentional fraudulent conveyance claim.

[6] The Trustee also received the turnover of privileged documents from reorganized Tribune itself during 2013. These documents, together with productions received and to be received pursuant to the Preliminary Discovery Plan, collectively, are referred to herein as the "Post-Bankruptcy Discovery."

warranted, with targeted mediation with many of the Shareholder Defendants proceeding in the near term (i.e., starting sometime in the next few months), and a separate mediation with the remaining defendants 6 months from now, after certain depositions can be taken. This staggered approach assumes a narrower scope of mediation than the Shareholder Defendants are proposing below; mediation of all Shareholder claims and defenses would require the completion of these depositions. While defendants universally oppose conducting depositions prior to any mediation, their assertion that mediation could be successful absent further discovery is belied by their failure to request mediation or come to the settlement table at any time during the last four years.[7] The Trustee is rightly concerned that the defendants' support of mediation in lieu of discovery is a delay tactic.

Any mediation should be before a private mediator selected by the Parties, not the Court, experienced in complex commercial and bankruptcy claims. Any mediation should be governed by terms and conditions agreed to by the Parties. A court order directing mediation at this juncture is both unnecessary and premature. The Trustee has steadfastly pursued settlement with the Shareholder Defendants, and requires no court order to continue to do so.

<u>As to the Shareholder Defendants:</u>

Plaintiff has endeavored to settle the Count One fraudulent transfer claim almost continuously since his substitution in 2012, having joined with the Individual Creditor Plaintiffs in making a series of five settlement offers that were communicated to and open to virtually all of the Shareholder Defendants named in the Trust Action and/or the Individual Creditor Actions.[8] To date, those offers have resulted in over 600 defendants settling and being dismissed with prejudice from the action.[9]

The remaining Shareholder Defendants apparently are disinterested in settling absent mediation or until further legal developments occur in this proceeding and/or in the Second Circuit, where the panel recently recalled the mandate "in anticipation of further panel review." Order, *In re: Tribune Co. Fraudulent Conveyance Litig.*, No. 13-3992(L) (2d Cir. May 15, 2018) [ECF Nos. 7432-33]. Following highly preliminary discussions with the Shareholder Executive Committees the Trustee is conceptually willing to engage in mediation of certain alleged individualized defenses to the Trustee's fraudulent transfer claims (including any potential amended claims) provided, *inter alia,* a sufficient number of Shareholder Defendants (measured by aggregate transfer amount, number, and/or percentage) claiming each such defense are interested in pursuing settlements.[10] This mediation would *not* cover alleged defenses applicable

---

[7] The sole exceptions are Advisor Defendants Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Morgan Stanley, which entered into private, bilateral negotiations with the Trustee in 2016, resulting in a partial settlement of claims against Morgan Stanley.

[8] *See* Master Case Order #3 [ECF No. 1395] at 2.

[9] All settlements have included both the previously pled intentional fraudulent conveyance claim and the constructive fraudulent conveyance claim the Trustee seeks to add by way of amendment. In addition, virtually all settlements have involved the Individual Creditor Action Plaintiffs, who have agreed to release any and all constructive fraud claims asserted against the settling defendants.

[10] By limiting the defenses to be mediated, the Trustee is not in any way suggesting that any settlements reached with the Shareholder Defendants would not encompass all claims related to their Shareholder Payments.

to all Shareholder Defendants unless scheduled following depositions, and would not include any of the Trustee's other claims. The Trustee has confirmed that the Noteholder Plaintiffs and Retirees (who also sued many of the same Shareholder Defendants) would participate in such a mediation, if and when appropriate parameters are agreed to.

Subject to achieving sufficient participation, the Trustee believes that targeted mediation with the Shareholder Defendants could go forward in the short term, without the need for further discovery before commencing the mediation, in contrast to the Trustee's views with respect to the remaining defendants (described below). If the Shareholders Executive Committees insist on mediating all issues of general applicability to the fraudulent conveyance claims, the Trustee is willing to do so following the completion of the twelve depositions detailed herein.[11] However, whenever such mediation should occur, and irrespective of its scope, it must not prejudice or delay the Trustee's rights to conduct depositions later this year, as discussed below, or the Trustee's ability to proceed with his motion to amend as soon as developments at the Second Circuit occur, as contemplated by the Order.

The Trustee and Individual Creditor Action Plaintiffs will continue discussions with the Shareholder Executive Committees regarding, *inter alia*, the identification of appropriate topics for mediation, appropriate procedures, expected participants, and mediator candidates. Indeed, as of now these parties have materially different views as to the appropriate scope of a mediation and multiple further discussions are necessary. Accordingly, at this juncture any order from the Court respecting mediation would be premature, and the Court should decline the Shareholder Executive Committees' invitation (set forth later in this letter) to intervene in the parties' negotiations. The Trustee only learned of the Shareholder Defendants' desire to engage in mediation on June 27, and has had but one additional meet and confer call since then. While the Trustee intends to negotiate in good faith the myriad logistics of mediation timing, cost-sharing, mediator selection, and the threshold for mediating individualized defenses, the Trustee has not yet heard any mechanism for bringing all or even substantially all shareholders to the table, including the many that failed to appear. The Trustee submits that the best course of action is to continue negotiations with the Shareholder Executive Committees and report back to the Court if and when the parameters of a mediation either are or are not agreed to. The Trustee is confident the Parties can negotiate an acceptable mediation process and will mutually agree to an acceptable mediator.

As to all other Defendants:

In 2014, Plaintiff participated in mediation with counsel for certain of the Non-Moving Defendants, Independent Directors, tag-along defendants, and Samuel Zell, and had settlement discussions with certain of the Advisor Defendants. Insurance carriers covering certain of the defendants also participated. Those mediations and discussions ended without any settlements, and there have been no formal or informal negotiations with any of these parties in the

---

[11] The Shareholders Executive Committees have raised at least one specific global defense in this letter. While the Trustee does not believe this is the right forum to debate the merits of any particular claims or defenses, suffice to say the Trustee and Individual Creditor Action Plaintiffs are well aware of the Executive Committees' arguments in this regard and have factored them into prior global settlement offers made to the Shareholder Defendants.

intervening four years. The absence of settlements or settlement discussions is not surprising given the absence of any developments directly affecting these claims.

The Trustee is willing to resume mediation with all of these defendants at the appropriate time, but believes it will be no more successful than the last mediation and result in a large and unnecessary drain on the Trustee's resources until (1) the Court has rendered rulings on the pending motions to dismiss, which have been fully briefed for some time, and (2) the Parties are permitted to proceed with some of the key, initial depositions. In Plaintiff's view, a ruling on the pending motions to dismiss will provide incentives to settle that do not presently exist.

Additionally, Plaintiff believes that allowing the Trustee to conduct an initial twelve depositions prior to any mediation or formal settlement conference with the Director and Officer, tag-along, Advisor, and Zell Defendants will provide these Parties and the Trustee with an important factual basis for settlement discussions. Plaintiff has communicated a preliminary list of these deponents[12] to the Parties, and believes that the depositions of these individuals, who were key directors, officers, and advisors of Tribune at the time of the relevant events, will serve to explore the new discovery obtained by the Trustee, including the privileged documents and post-LBO material, and allow both Plaintiff and defendants to test certain of their core allegations and theories.

Following the completion of these initial depositions (and potentially rulings from the Court as well), the Trustee intends to mediate the remaining claims against the Director and Officer, tag-along, Advisor, and Zell Defendants. With respect to all claims, the Trustee believes a professional mediator selected by the Parties, with experience in complex commercial disputes, and who has the time available to address the very complex claims and defenses in this litigation, would be preferable to a special master or magistrate, a position that all defendants save Zell and his affiliated entities appear to share. The Trustee disagrees that there is any role to play for a Magistrate Judge or Special Master in sequencing motions or discovery, tasks the Parties have regularly dealt with in meet and confers and this Court has handled to date and should continue to handle.

To recap, the Trustee (joined by the Individual Creditor Action Plaintiffs) proposes (i) a mediation with the shareholders first, to begin as soon as terms are negotiated consensually, followed by (ii) a separate mediation with the Director and Officer, tag-along, Advisor, and Zell Defendants, to be held following the completion of the currently contemplated document discovery and the twelve depositions of key witnesses. All mediations would be governed by terms negotiated by the Parties, rather than set by the Court. The timeline for this would be as follows:

> **July-September, 2018**: Completion of outstanding productions, negotiation of Trustee-Shareholder Defendant mediation terms, and if successful, beginning of Trustee-Shareholder mediation with a professional mediator.

---

[12] These expected initial deponents are: Chandler Bigelow, Dennis FitzSimons, Heidi Fischer, Rachel Sauter, William Osborn, David Hiller, Crane Kenney, Harry Amsden, Gina Mazzaferri, Todd Kaplan, Roseanne Kurmaniak, and Thomas Whayne.

**July-November, 2018:** All Parties to receive and review Post-Bankruptcy Discovery, as each sees fit.

**November, 2018-January, 2019:** Deposition of no more than 12 witnesses identified by Trustee. Trustee to negotiate with Director and Officer Defendants, Advisor Defendants terms of mediation and select mediator

**January 2019:** Trustee, Director and Officer Defendants, and Advisor Defendants begin mediation with a professional mediator. Further discovery stayed pending outcome of mediation.

## B. Retirees' Position on Potential Settlement

There are approximately 164 individual retirees of Tribune (the "Retirees") who are plaintiffs in the four State Law Constructive Fraudulent Conveyance Litigations (the "Retiree SLCFC Actions") which are the subject of the Second Circuit's recent order recalling the mandate in *In re: Tribune Co. Fraudulent Conveyance Litig.*, No. 13-3992(L) (2d Cir. May 15, 2018) [ECF Nos. 7432-33]. The principal amount of the claims asserted by the Retirees in the Retiree SLCFC Actions is approximately $63 million. Of the 164 Retirees, approximately 84 are beneficiaries of the Trust and hold claims in the principal amount of approximately $36 million (the "LT Retirees"). Among the overlapping retirees is William A. Niese. Mr. Niese is the lead plaintiff in each of the Retiree SLCFC Actions and is a member of the Advisory Board of the Trust. Teitelbaum Law Group, LLC represents Mr. Niese in his capacity as a member of the Advisory Board to the Trust and the Retirees in the Retiree SLCFC Actions. This section is submitted on behalf of the Retirees in their capacity as plaintiffs in the Retiree SLCFC Actions.

There has been and continues to be cooperation among the Retirees, the Note Holder Plaintiffs who are party to their own State Law Constructive Fraudulent Conveyance Litigations and the Trust in connection with efforts to resolve the myriad of complex issues before this Court and the Second Circuit. The Retirees have supported the settlements brokered by the Trust and have agreed to dismiss claims asserted by them in the Retiree SLCFC Actions against settling defendants. The Retirees believe that their continued participation in this process is necessary if there is any prospect of a global settlement as suggested by this Court. Thus, the Retirees appreciate this Court's recognition of the fact that it may be time for parties to seriously embrace a comprehensive settlement of this complex multi-district litigation.

The Retirees share the concerns of the Trust regarding the complexity of such a process and the need to incentivize parties to participate in a meaningful way. The Retirees have lived with these cases and the loss of their personal retirement savings since the Tribune bankruptcy filing in 2008. As a result of the bankruptcy case the Retirees recovered approximately 33% of the $95 million of their hard earned money entrusted to Tribune as part of a deferred compensation retirement program. The Retirees have had to come to grips with the fact that the LBO devastated their "golden years" and that the Retiree SLCFC Actions and the Trust Actions are their last chance to recover their lives—while they are still living.

The Retirees, consistent with the Trust's position, support mediation and request that this

Court use its good offices to encourage all parties to promptly explore a global settlement.


## C. Shareholder Executive Committees' and Large Shareholders' Position

<u>The Shareholder Executive Committees Support Mediation of Shareholder Claims</u>

The Shareholder Executive Committees support a formal mediation process to attempt to consensually resolve any claims against shareholder defendants that might be reinstated or added. While all previously pled claims against shareholders are currently dismissed,[13] both the intentional and constructive fraudulent transfer claims remain subject to future appellate proceedings, and the plaintiff continues to seek to amend the *FitzSimons* complaint to add new federal constructive fraudulent transfer claims against the shareholder defendants.

As a result of the dismissal of all claims against the shareholder defendants based on globally applicable defenses, there has been no process to date to address other defenses applicable to all or individual or sub-groups of shareholder defendants beyond the "Conduit Protocol,"[14] which was suspended upon dismissal of the *FitzSimons* complaint against the shareholder defendants. For example, while the recent decision in *Merit Management Group, LP v. FTI Consulting, Inc.* may foreclose one theory that would protect all shareholder defendants, other global defenses remain, including those that, in the circumstances of *Tribune,* entitle every tendering shareholder to the safe harbor, and another based on older but equally valid Supreme Court precedent, as the defendants have outlined in their recent submission in the Second Circuit. Additional safe harbor arguments are available to particular defendants who may qualify as "financial institutions" or "financial participants" on grounds distinct from the global defenses.[15] Other individual or sub-group defenses include statutes of limitations, principles of sovereign immunity, service and jurisdictional issues, interplay with the various state laws governing testamentary estates and corporate dissolution, interplay with the Investment Company Act of 1940, ERISA or other federal law, as well as other categories, many of which are set forth in Schedule A of our letter to the Court in connection with Master Case Order No. 4, dated February 13, 2014. [ECF No. 4335-1].

The plaintiffs purport to be willing to mediate individualized defenses, but oppose mediation of global defenses applicable to all shareholder defendants. Plaintiffs' refusal to mediate global defenses together with individualized defenses would doom mediation to failure before it even started. To have any prospect of success, mediation of shareholder claims must include all potentially applicable defenses, both global and individual. Indeed, the concept of mediating some defenses, but not others that a defendant has makes no sense, just as it would

---

[13] The only exception is certain state-law claims in *FitzSimons* against the Foundations and the Chandler Trusts, which are subject to pending motions to dismiss. The foregoing shareholder defendants are referred to as the "Large Shareholders" in this Court's Master Case Order No. 3. The Large Shareholders support the position set forth herein by the Shareholder Executive Committees, of which the Large Shareholders are members.

[14] *See* Conduit Protocol entered April 24, 2014 [ECF No. 5695].

[15] *See, e.g.,* Citigroup Entities Letter to the Court submitted Mar. 13, 2018 [ECF No. 7291].

make no sense to mediate some, but not all, claims against that defendant. No defendant is going to entertain a settlement that does not take account of all defenses it has, just as no plaintiff is going to entertain a settlement that does not take account of all of its claims against that defendant.

The plaintiffs suggest that a mediation including global defenses would be fruitless because shareholders with any interest in settlement accounting for those defenses have already settled. That suggestion is misleading. A mediation process would foster dialogue and, with the assistance of a skilled mediator, test each side's view of the claims and defenses at issue. By contrast, the plaintiffs in this multi-district litigation have thus far issued only take-it-or-leave-it settlement offers usually limited to defendants with smaller amounts of exposure. For shareholder defendants that received more than $10 million in LBO proceeds, only two offers were made in 2012 and 2018, each open for approximately six weeks and non-negotiable.[16]

Even these limited offers did not account for individual or sub-group defenses, and, with respect to global defenses, plaintiffs have largely not engaged with the shareholder defendants with the largest exposure. Indeed, plaintiffs' most recent unilateral offer, made after the decision in *Merit Management*, was proposed before defendants had explained—and did not purport to address—the defendants' remaining global defenses under Bankruptcy Code Section 546(e) based on the facts that Tribune still qualifies as a "financial participant," and that Tribune and the transferees in the LBO were "customers" of a "trust company" and therefore qualify as "financial institutions." While plaintiffs note that 600 named shareholder defendants have accepted the plaintiffs' global settlement offers, that represents barely 10% by number of the more than 5,000 originally named shareholder defendants, and consists principally (if not exclusively) of shareholders that received relatively small amounts in settlement of their share redemptions. Defendants who received the overwhelming majority (by both amount and number) of the LBO shareholder transfers have not agreed to accept plaintiffs' unilaterally determined settlement amounts. The Shareholder Executive Committees respectfully submit that a mediation process that addresses both global and individual or sub-group defenses would be much more productive than the take-it-or-leave-it offers that plaintiffs have made to date.

The Shareholder Executive Committees believe that a mediation process that addresses both the global and individual and sub-group defenses of shareholders would advance the resolution of remaining or potential claims against many, if not all, shareholder defendants. Accordingly, the Shareholder Executive Committees respectfully request that the Court order that (i) the plaintiffs and shareholder defendants participate in a mediation of both global and individual defenses, (ii) the plaintiffs and Shareholder Executive Committees meet and confer regarding the selection of a mediator and, in the absence of consensus, submit letter briefing to the Court regarding the parties' respective positions on the selection of a mediator,[17] and

---

[16] During the periods when other offers limited to smaller shareholders were open, the plaintiffs rejected at least some requests from shareholder defendants to settle on the proposed terms because those defendants' exposure exceeded the plaintiffs' established thresholds, and in some cases, by just small amounts.

[17] The members of the Shareholder Executive Committees respectfully request that the Court provide the parties additional time to meet and confer regarding the selection of a mediator. Given the number of parties involved, the nature of the claims, and the complexity of the case, the selection of a mediator will be of critical importance to the ultimate success of the mediation. The parties should be afforded the opportunity to meet and

(iii) following the selection of a mediator, the mediator, in consultation with the plaintiffs and Shareholder Executive Committees, establish mediation procedures to be submitted to the Court for entry of an order approving such procedures for mediation of the claims against the shareholders, including global and individual and sub-group defenses.  Further, while the goal of the mediation would of course be to consensually resolve claims against the shareholders, the mediation process could prove helpful even if that goal were not achieved.  For example, it could also be utilized to develop a voluntary process by which individual or sub-group defenses could be efficiently adjudicated, including processes similar to the Conduit Protocol, potentially conducted through the use of a magistrate or special master.

### D.  Non-Moving Defendants' Position

Non-Moving Defendants state (and echo the other Parties' sentiments herein) that if a global resolution through mediation is the objective, then pre-mediation rulings on the pending motions to dismiss would make that outcome more likely. For the reasons discussed *infra* Section II.C., Non-Moving Defendants also agree with all defendants that the Court should reject the Trustee's suggestion to hold depositions before an initial mediation. Instead, any party left in the case after this Court rules on the motions to dismiss, and after mediation, can proceed to depositions at that time. This will result in depositions that are more focused, efficient and fair to everyone left in the case. If the Trustee's suggestion that depositions will aid mediation holds true, those parties can hold a second mediation to wrap things up.

With respect to timing, Non-Moving Defendants stand ready to participate in the development of a mediation plan, and ultimately mediate, whenever asked to do so.

Finally, to clarify a potential misunderstanding, we note that the prior settlement offers the Trustee describes do not apply to Non-Moving Defendants because those offers were extended only to defendants named solely in Count 1. In addition, current and former Tribune employees who are Shareholder Defendants named only in Count 1, and who also are defendants in Adversary Proceedings transferred to this Court seeking to recoup compensation paid to them by Tribune pre-Bankruptcy, have never been offered complete relief by the Trustee. This is because the Trustee's offers have not included a release of corresponding Adversary Proceedings against any employee Shareholder Defendant.

### E.  Sam Zell and Affiliated Entities' Position

Mr. Zell and affiliated defendants, Equity Group Investments, LLC, EGI-TRB, LLC and Sam Investment Trust ("Affiliated Entities"), were investors (or affiliates of investors) who lost money in the Tribune transaction.  Consistent with the findings of the Examiner, the Tribune Bankruptcy Court required a special disclosure to creditors in conjunction with the Tribune bankruptcy Plan of Reorganization notifying creditors that any claims against Mr. Zell were unlikely to succeed.

---

confer to attempt to reach a consensus, or at least narrow the field of potential mediators, before the Court orders the appointment of any particular mediator.

Mr. Zell and Affiliated Entities have long believed that a resolution of this dispute is in the best interest of all concerned.  To that end, they would engage in any mediation process at any time and believe there would be merit in commencing that process without further delay.  Mr. Zell and Affiliated Entities submit the following additional comments as to why they believe a) the Court should appoint a special master or magistrate as opposed to a private mediator, b) at least initially the mediation should be a global mediation involving all interested parties; and c) motions to dismiss should be decided before deposition discovery is permitted.

<u>Appointment of a special master or magistrate is preferable to appointment of a private mediator</u>:  Mr. Zell and Affiliated Entities agree with the Court appointing either a special master or a magistrate who, in addition to mediating the dispute, would have authority (in the event a global resolution is not achieved at first) to make recommendations to the Court about how best to sequence motion practice, discovery and/or further litigation so as to promote a global resolution.  Consistent with this Court's reference in its June 19, 2018 Order to the possible appointment of a magistrate or special master, Mr. Zell and Affiliated Entities believe appointment of a special master or mediator would be preferable to appointment of a private mediator because the former could formulate recommendations for how best to narrow and resolve remaining issues and could report to the Court on the progress of the mediation process.  Additionally, given the multiplicity of parties and diversity of interests, it may be challenging for all interested parties to agree on a particular private mediator; yet, there would be obvious value in having the same individual mediate all disputes related to this case.

<u>At least initially, the mediation should be a global mediation involving all interested parties</u>:  Because there should be value to all involved in achieving a global resolution, a mediation should involve all interested parties (at least initially), including dismissed parties like the Shareholder Defendants.  Inclusion of all interested parties will ensure the mediator is fully informed and in a position to make recommendations to the Court with respect to additional steps (including, for example, targeted discovery or prioritization of certain motion practice) that might promote global resolution.  Educating multiple different mediators about this dispute would be inefficient and likely further delay resolution.

<u>Resolution of motions to dismiss may facilitate settlement.</u>  Mr. Zell and Affiliated Entities defer to the Court on when to decide motions to dismiss relative to mediation, but submit that rulings on pending motions to dismiss may facilitate settlement.  They are concerned that the Litigation Trustee may be unwilling to engage in meaningful settlement discussions without further determinations by the Court regarding the merits of the Trustee's claims.  Because the Litigation Trustee will undoubtedly appeal any dismissals, any dismissed parties (including Mr. Zell and Affiliated Entities) would continue to participate in a mediation subsequent to their dismissal, as there will continue to be value in achieving a complete and final resolution of this dispute.

In sum, Mr. Zell and Affiliated Entities are supportive of a) a global mediation or any other mediation process directed by the Court; b) the appointment of a magistrate or special master with authority both to mediate all claims and also to recommend additional processes for narrowing or resolving this litigation globally, if mediation is not completely successful at first; c) the Court resolving motions to dismiss when it determines that doing so would be most likely to facilitate global resolution, but in all events prior to authorizing any deposition discovery.

### F.  Independent Directors' Position

The Independent Directors are willing to participate in a mediation with the goal of achieving a global resolution of this litigation. However, they agree with the Trustee and other defendants that any mediation in this case would benefit from additional rulings by the Court on the pending substantive motions.

### G.  Financial Advisor Defendants' Position

While the Financial Advisor Defendants are prepared to participate in mediation with a mediator to be agreed upon by the parties, assuming other parties are similarly inclined, we believe that mediation would make more sense, and be more productive, after a decision on the pending motions to dismiss is rendered.  Regardless, the Financial Advisor Defendants believe the Court should deny the Trustee's request to authorize deposition discovery.  Currently, this Court's order authorizing limited document discovery treats the Financial Advisor Defendants as non-parties to the litigation.  *See* Preliminary Discovery Plan at 3–5, *Kirschner v. Fitzsimons*, 1:11-md-02296-RJS, ECF Doc. No. 6952 (April 5, 2017, S.D.N.Y.).  Unless and until the pending motions to dismiss are denied, the Financial Advisor Defendants' status remains the same.  The Trustee offers no new reason or urgency to change that status while the motions to dismiss are still pending, relying again solely on the passage of time.  Moreover, moving forward with the depositions at the end of this year, as proposed by the Trustee, would impose on non-parties the substantial burden of reviewing, in preparation for the depositions, the millions of pages of documents that have been produced by the many defendants in this case.  Further, the depositions themselves would likely be very burdensome as numerous parties—who might otherwise be dismissed from the case—would want to question each deponent, thus exposing non-party deponents to the possibility of multiple rounds of depositions or depositions that may exceed the seven-hour time limit under the Federal Rule of Civil Procedure 30(d)(1).  In contrast, deferring depositions until after the motions to dismiss are decided would be far more efficient and economical.  To the extent one or more of the Financial Advisor Defendants are dismissed, their preparation for a non-party deposition may be significantly reduced as compared to preparing for a deposition while their status in the case is in limbo.  In addition, if multiple parties are dismissed, it would likely narrow the number of parties participating in the depositions, thereby avoiding issues surrounding multiple or protracted depositions.

## II. DISCOVERY UPDATE

### A. Joint Statement by the Trustee and Non-Moving Defendants

Discovery in these cases was stayed from 2012 through 2017.[18]  On February 23, 2017, this Court issued an order [ECF No. 6944], which requested that the parties propose a case management plan that, among other things, distinguishes between Non-Moving Defendants and Moving Defendants and treats the Moving Defendants as third parties.  To that end, Non-Moving Defendants and the Trustee agreed to the April 5, 2017 Preliminary Discovery Plan [ECF No. 6952], which provides for document discovery first and depositions later.

Upon entry of the Preliminary Discovery Plan, the Trustee and Non-Moving Defendants proceeded to consolidate and exchange Tribune Bankruptcy Data, and were, for the first time, permitted to take merits discovery.  To that end:

- The Trustee and Non-Moving Defendants issued documents requests to each other.

- The Trustee issued 28 third-party subpoenas to various Moving Defendants and non-parties.[19]  These subpoenas covered a number of Tribune's former counsel and advisors.

   - To simplify third-party discovery, the Non-Moving Defendants did not serve separate subpoenas on entities subpoenaed by the Trustee.  In return, the Trustee agreed to share with Non-Moving Defendants all non-privileged documents produced during the subpoena process, and to involve Non-Moving Defendants in all meet-and-confer discussions with subpoena respondents.  The Trustee believes that certain of Tribune's privileges were transferred to him during Tribune's bankruptcy, and has withheld documents based on that privilege.

   - Most subpoenas resulted in meet-and-confer discussions among the Trustee, the respondent, and Non-Moving Defendants.  In most cases, lengthy meet-and-confer processes following service of responses and objections were necessary before production commenced.

   - Moving Defendants did not participate in this process other than by responding to subpoenas served upon them, and, in some cases, objecting to the production of

---

[18] The Court permitted limited discovery for purposes of correcting defendant names and addresses for service, and identifying individuals who were initial or subsequent transferees of LBO proceeds, where the transfer amounts were unknown, or one or more transferees were dissolved or deceased.  *See* Master Case Order 4 [ECF No. 2865], at IX.

[19] Specifically, the Trustee served subpoenas upon the Chandler Trusts; the Cantigny Foundation; the McCormick Foundation; Sam Zell; Sam Investment Trust; EGI; EGI TRB; Reorganized Tribune/tronc; Sidley Austin LLP; Morris Nichols, Arsht & Tunnell LLP; Wachtell, Lipton, Rosen & Katz; Skadden, Arps, Slate, Meagher & Flom LLP; Betsy Holden; Dudley Taft; Enrique Hernandez, Jr.; J. Christopher Reyes; Robert S. Morrison; William A. Osborn; Miles White; Pricewaterhouse Coopers; Boston Consulting Group; Citibank; Duff & Phelps; GreatBanc; Merrill Lynch; Morgan Stanley; VRC; and Ernst & Young.

documents by themselves or others based on a claim of attorney-client or common interest privilege.

- o Over half of the recipients of subpoenas produced documents. From those productions, the Trustee has re-produced to Non-Moving Defendants over 9,000 documents, and intends to produce any and all documents previously withheld on the basis of Tribune's privileges in the next few weeks.

- Trustee and Non-Moving Defendants have continually met and conferred about Trustee's document requests to Non-Moving Defendants. The progress to date includes:

- o Executing a Fed. R. Evid. 502(d) stipulation on May 22, 2018, which governs the timing and process for the Non-Moving Defendants' document production.

- o Agreeing to a process and search terms by which Certain Non-Moving Defendants[20] will produce documents. Certain Non-Moving Defendants anticipate commencing production within a month and finishing in approximately three months.

## B.    The Trustee's Proposed Next Steps on Discovery

Pursuant to the Preliminary Discovery Plan, the Trustee and the Non-Moving Defendants each have a database of all documents that were produced during the course of the bankruptcy. The Trustee is prepared to distribute these documents, along with the Post-Bankruptcy Discovery (in both cases electronically) to all Parties, including the Moving Defendants and the Shareholder Executive Committees. The Trustee expects that this can be accomplished within two weeks. Productions still being completed can simply be made to all Parties simultaneously, and are expected to be complete within the next three months.

*Tribune Privilege Waiver*

As noted in the Court's order on the Trustee's Motion to Compel, the Trustee was assigned control over any privileges belonging to the "Debtors" and "which relate in full or in part to Tribune Company's 2007 leveraged buy-out transactions" (collectively, the "Tribune Privilege"). *See* Agreement Respecting Transfer of Documents, Information, and Privileges from Debtors and Reorganized Debtors, dated Dec. 31, 2012 (the "Transfer Agreement") §§ I(A). The Transfer Agreement also vests in the Trustee "sole authority and sole discretion to waive any such privilege or immunity." *Id.* In order to allow the unfettered use of all of the Post-Bankruptcy Discovery for settlement purposes, in depositions, and at trial, the Trustee has determined to waive the Tribune Privilege. For the avoidance of doubt, this waiver is limited to the Tribune Privileges covered by the Transfer Agreement. The Trustee does not waive, and expressly preserves, any and all other privileges, protections, and immunities otherwise afforded to information in the possession, custody, or control of the Trustee, including but not limited to

---

[20] Harry Amsden; Stephen Carver; Dennis FitzSimons; Robert Gremillion; Donald Grenesko; David Hiller; Tim Landon; Richard Malone; John Reardon; Scott Smith; John Vitanovec; Kathleen Waltz; and David Williams.

the Trustee's communications with the Trustee's counsel and advisors, their work product, and all common-interest communications.

*Depositions*

Not surprisingly, even at this late date the defendants continue to be united in seeking further delay of the Trustee's ability to move ahead with this litigation. Yet, aside from three of the Advisor Defendants, not a single one of the Moving Defendants or Non-Moving Defendants has approached the trustee with any interest in settling in the past four years. Proceeding with depositions notwithstanding the pendency of motions to dismiss is consistent with the Federal Rules and the Preliminary Discovery Plan. *See In re Currency Conversion Fee Antitrust Litig.*, 2002 U.S. Dist. LEXIS 974, *4-5 (S.D.N.Y. Jan. 22, 2002) ("imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed, as the Federal Rules make no such provisions"); Preliminary Discovery Plan at ¶ 11. It is certainly warranted here, where depositions of the Non-Moving Defendants (and some moving defendants) are inevitable regardless of the outcome of the pending motions. *See, e.g., Hollins v. United States Tennis Ass'n.*, 469 F. Supp. 2d 67, 79 (E.D.N.Y. 2006) (compelling depositions where discovery would proceed regardless of the outcome of motions to dismiss); *Salgado v. City of New York*, 2001 U.S. Dist. LEXIS 799, *2 (S.D.N.Y. Jan. 31, 2001) (denying defendants' request for a stay of discovery; "even if the defendants' motion were granted, this action would not terminate and the same discovery would be necessary.").

Moreover, given the pace at which the Individual Creditor Action appeal has progressed, deferring depositions until after the resolution of the Trustee's pending request to amend to add a constructive fraud claim and/or appeal the dismissal of the Trustee's actual fraud claims (as the Shareholder Executive Committees suggest), would likely defer depositions for several additional years, at great prejudice to the Trustee. *See Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 13 (E.D.N.Y. 2007) (stay of discovery pending interlocutory appeal denied where discovery already stayed for three years at request of defendants). The Trustee is entitled to depose these key witnesses while they retain some semblance of memory of the events in question, and before any additional witnesses pass away.

The Trustee vigorously disputes the Shareholder Executive Committees' suggestion that proceeding with these depositions, which the Trustee believes are not necessary for mediation with the Shareholder Defendants, would prejudice them in any way. Liaison Counsel for the Shareholder Defendants have ably defended the interests of the Shareholder Defendants without any administrative difficulty, and there is no reason why counsel could not continue to do so by attending these twelve depositions. Indeed these depositions do not entail any facts pertinent to any alleged individualized shareholder defenses. The cost of Liaison Counsel participating would be minute when compared to the billions of dollars of transfers retained by their clients and other Shareholder Defendants. Moreover, this is not a case where dismissed defendants are at odds with those who remain in the case—many of the Non-Moving Defendants are themselves Shareholder Defendants, having received in the aggregate millions of dollars in LBO-related proceeds. For example, former director and CEO Dennis FitzSimons, one of the Non-Moving Defendants, received over $21 million in LBO proceeds. At any rate, some or all of these depositions would likely take place after a mediation with the Shareholder Defendants, at which point many of them may no longer be parties to these proceedings.

The objection of the Zell Defendants and Independent Directors to the cost of preparing for or attending depositions also rings hollow, as their defense costs are being borne by Tribune's insurers. *See V.S. v. Muhammad*, No. 07-CV-1281(DLI)(JO), 2009 WL 936711, at *2 (E.D.N.Y. Apr. 3, 2009) (no irreparable harm to individual defendants justifying stay pending appeal where appellants indemnified by employer). The Trustee also disagrees that the Financial Advisors and other Moving Defendants will be required to review "millions" of documents in preparation for these depositions. The Trustee has, at great expense, subpoenaed and processed hundreds of thousands of documents' worth of new and improved metadata, permitting most Bankruptcy Discovery and virtually all Post-Bankruptcy Discovery to be sorted so as to focus on the documents relating to the deponents.

The Preliminary Discovery Order so-ordered by the Court contemplates that depositions will begin following the completion of the document discovery described therein.[21] *See* Preliminary Discovery Plan ¶ 11 ("Trustee and the Non-Moving Defendants presently contemplate waiting until the document production contemplated by this Preliminary Discovery Plan is substantially complete to conduct most depositions."). Now that this time has come, the Trustee should be permitted at the very least to depose a limited slate of important witnesses. Plaintiff anticipates that these depositions could be conducted beginning in November, giving all Parties at least four to five months to review the vast majority of Post-Bankruptcy Discovery, and at least two months to review any new material produced by the Non-Moving Defendants. During this time, Plaintiff intends to continue negotiating with the Shareholder Executive Committees, and if agreement is reached on mediation terms, commence mediation with the Shareholder Defendants.

### C.     Non-Moving Defendants' Position on Next Steps

Non-Moving Defendants disagree with the Trustee's suggestion to commence deposition practice in November. To provide some background, the Trustee and Non-Moving Defendants negotiated a stipulation over the course of several months that anticipated the following process: (1) document production by the Non-Moving Defendants; then (2) 60 days later, a decision by the Trustee on whether to waive privilege; followed by (3) either a production by the Trustee or a motion to compel by Non-Moving Defendants.

The Trustee's decision to waive privilege now, before Non-Moving Defendants have produced, means Non-Moving Defendants must finish reviewing and producing their own documents while simultaneously analyzing 26,298 previously withheld documents that the Trustee claims are material to the case. For that reason and others explained below, Non-Moving Defendants propose the following steps:

---

[21] The Non-Moving Defendants assert that depositions should not proceed this year because the *Moving Defendants* have not yet conducted written discovery. The Trustee notes that neither the Non-Moving Defendants nor the Moving Defendants have identified any topics or parties not covered to date by prior discovery. Nevertheless, the Trustee has no objection to the Moving Defendants taking written discovery, and believes they should do so promptly.

All defendants must review all previously withheld documents, some of which the Trustee has possessed since 2013.

A.      Due to the Trustee's decision to waive privilege, all defendants need time to analyze at least 26,298 documents the Trustee claims are material to the case.

- **7,603 documents from Tribune's bankruptcy.** A central issue throughout the discovery process has been the volume and importance of documents withheld by the Trustee as privileged. During Tribune's bankruptcy, Sidley Austin LLP ("Sidley") produced a privilege log on behalf of the debtors that spans over 1,100 pages and lists well over 11,000 documents. The Trustee represents that he received 8,422 such documents in September 2013. The Trustee produced 819 of these documents it believes are non-privileged a few weeks ago.

- **18,695 documents from third-party subpoenas.** The Trustee received productions from Sidley's own records, as well as various advisors, including Wachtell Lipton Rosen & Katz; Skadden, Arps, Slate, Meagher & Flom; Morris, Nichols, Arsht & Tunnell; the Special Committee; Boston Consulting Group; Ernst & Young; PricewaterhouseCoopers; and Reorganized Tribune. The Trustee represents that these productions include 18,695 documents that the Trustee is now withholding as privileged.

B.      The Trustee represents that the productions he received from subpoena respondents over the last year "have given [him] access to tens of thousands of never-before-produced documents, many of which were previously withheld from production as privileged, such as communications with the Tribune Special Committee" that "will be instrumental in the next phase of the litigation and in driving future settlement negotiations."

C.      The Trustee has also represented that he has unresolved disputes with Tribune over documents that are listed on Tribune's bankruptcy privilege log, but have not yet been produced to the Trustee.

D.      To summarize, the Trustee had substantial time to review thousands of privileged documents, but now proposes that all defendants do the same work in just a few months while simultaneously participating in document discovery and preparing for depositions by November. The Trustee's position is unreasonable, not only as a matter of timing, but also because:

- Those tens of thousands of putatively privileged documents may contain significant information that requires careful consideration.

- The Trustee requested a process for Non-Moving Defendants' review of documents that would protect the Trustee's privilege.  The parties carefully negotiated a stipulated process and reached final agreement in May 2018. Under the stipulated process, the Trustee's decision to waive privilege is due three months after all Non-Moving Defendants are finished producing—in

16

other words, months from now.

- All Defendants agree that depositions should not be scheduled until after the Trustee produces, and the parties have had a reasonable chance to review, the Trustee's production of putatively privileged documents.

- As noted in Step 3, below, Moving Defendants have not participated in discovery except to produce documents in response to subpoenas.

***Step 2*:**     Non-Moving Defendants must review and produce documents in response to the Trustee's requests for production.

A.     As mentioned in the joint statement, Certain Non-Moving Defendants and the Trustee engaged in good faith negotiations regarding the production of Certain Non-Moving Defendants' documents. The agreed-upon process anticipates production within three months and contemplates the following:

- Certain Non-Moving Defendants will complete the predictive coding process that is being applied to their substantial document repository. The predictive coding software currently estimates that approximately 55,000 documents are responsive.

- Certain Non-Moving Defendants will manually review all documents that the predictive coding software is unable to analyze. That number currently stands at approximately 22,000 documents, though Certain Non-Moving Defendants anticipate the final number will be lower. Certain Non-Moving Defendants will then produce all responsive documents and create a privilege log.

***Step 3*:**     Moving Defendants should be permitted to engage in written discovery before any deposition practice commences.

A.     Under the Preliminary Discovery Plan, Moving Defendants have been treated as third parties with respect to document discovery given the pending motions to dismiss.

B.     Accordingly, Moving Defendants have participated in discovery only as subpoena respondents, and have not yet (1) issued requests for production; (2) received responses and objections; (3) met and conferred; and (4) received and analyzed any document productions; or (5) received and analyzed the documents that other third party subpoena respondents have produced to the Trustee.

C.     Moving Defendants also need to review and analyze the 26,298 withheld documents discussed above in Step 1.

*          *          *

Based on the foregoing, Non-Moving Defendants propose the following schedule:

1. As soon as practicable, the Trustee will produce all documents subject to his waiver and file an appropriate notice of compliance with the Court.

2. 90 days thereafter, the Parties will provide the Court a joint discovery status update and suggestions for next steps.

**D.    Moving Defendants' Position on Next Steps**

### i.    Shareholder Executive Committees and Large Shareholders

Plaintiffs seek to proceed with depositions of a number of witnesses while all existing claims against the shareholders have been dismissed, but remain subject to appellate proceedings and plaintiffs' pending request to add new federal constructive fraudulent transfer claims. Commencing depositions now would place the dismissed shareholder defendants in an untenable position. Shareholder defendants would need to either incur the expense of participating in depositions while no claims against them are pending, or risk that their failure to participate in such depositions would impair their rights in the event that claims against them are revived in the future.[22] The plaintiffs should not be permitted to place the thousands of shareholder defendants in such a position.[23] Commencing depositions at this juncture would also be highly inefficient by unnecessarily imposing substantial burdens on—and sowing confusion among—the thousands of *Tribune* shareholder defendants, all of whom are currently dismissed and many of whom are appearing *pro se*.

While it may be proper to continue to stay any depositions of witnesses that may impact the claims against the shareholders until it is determined whether any claims against the shareholders are revived or added to these cases, the Shareholder Executive Committees submit that addressing the timing of depositions should be deferred at least until the conclusion of a mediation process. At that point, shareholders that remain in the cases can further address the timing of depositions based on the then-status of these cases, including the status of the current proceedings in the Second Circuit.

### ii.    Sam Zell and Affiliated Entities

Mr. Zell and Affiliated Entities provided substantial discovery in the bankruptcy proceedings and reached a resolution with the Litigation Trustee in connection with the Litigation Trustee's discovery subpoenas to them in this litigation.

Mr. Zell and Affiliated Entities object to both the Litigation Trustee conducting depositions and to requiring Moving Defendants to review additional documents or engage in written discovery as would be necessary as a prelude to depositions before pending motions to dismiss are resolved. Mr. Zell and Affiliated Entities are hopeful that they (and others) will no longer be defendants once those motions are decided. Particularly, given the number of persons

---

[22] While the Trustee has asserted additional state-law claims against the Large Shareholders in *FitzSimons*, those claims, as noted, are subject to pending motions to dismiss.

[23] Merits discovery in the multi-district litigation has, with limited exceptions, been and remains stayed pursuant to Master Case Order No. 4. *See* ECF No. 2865, § IX.

and entities who are currently defendants in this litigation, depositions of key individuals, including a number of individuals identified by the Litigation Trustee, may be needlessly protracted and complicated by the participation of counsel for defendants who may not be parties once the Court addresses the motions to dismiss.  Mr. Zell also seeks to avoid the needless dissipation of ever-declining D&O insurance proceeds on litigation expenses that may be avoided if motions to dismiss are resolved before deposition discovery commences.

### iii.    Independent Directors

Pursuant to the Preliminary Discovery Plan entered by the Court on April 5, 2017, and the Court's Order of February 15, 2018, granting the Trustee's Motion to Compel, the Independent Directors and their counsel, Skadden, Arps, Slate, Meagher & Flom LLP, have completed their responses to the third party document subpoenas served on them by the Trustee.

The Independent Directors object to the Litigation Trustee conducting any depositions, particularly the deposition of Mr. Osborn or any other Independent Director, before the Court rules on the pending motions.  Consistent with the Preliminary Discovery Plan, the Independent Directors have not served any affirmative discovery requests. Nor have they received any of the "tens of thousands of never-before-produced documents" produced by the other subpoenaed parties, which are currently in the possession of the Trustee.  Accordingly, the Independent Directors agree with the Shareholder Executive Committees, Non-Moving Defendants, Zell Defendants, and Financial Advisor Defendants that any depositions would be premature, unduly burdensome, and inefficient in light of the current status of this litigation.

Respectfully,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

_/s/ David M. Zensky_

David M. Zensky

_Attorneys for the Trustee and the Note Holder Plaintiffs_


**TEITELBAUM LAW GROUP, LLC**

_/s/ Jay Teitelbaum_

Jay Teitelbaum

_Attorneys for the Retirees_


**SHOOK, HARDY & BACON L.L.P.**

_/s/ George R. Dougherty_

George R. Dougherty

_Liaison Counsel for Non-Moving Defendants_


**JENNER & BLOCK LLP**

_/s/ David J. Bradford_

David J. Bradford
Andrew W. Vail

_Attorneys for Samuel Zell, EGI-TRB, LLC, Equity Group Investments, LLC, Sam Investment Trust_

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

_/s/ Robert J. Lack_

Robert J. Lack

_Attorneys for the Trustee and the Note Holder Plaintiffs_


**ROPES & GRAY LLP**

_/s/ Douglas Hallward-Driemeier_

Douglas Hallward-Driemeier
Andrew G. Devore
Joshua Y. Sturm

_On Behalf of Shareholder Executive Committees_


**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

_/s/ Matthew R. Kipp_

Matthew R. Kipp

_Attorneys for the Independent Director Defendants_


**O'MELVENY & MYERS LLP**

_/s/ David L. Cantor_

Daniel L. Cantor
Daniel S. Shamah

_Attorneys for Merrill Lynch Pierce Fenner & Smith Incorporated (on behalf of the Financial Advisor Defendants)_

**GIBSON, DUNN & CRUTCHER LLP**

  /s/ Oscar Garza
_____

Oscar Garza
Douglas Levin

*Attorneys for the Chandler Trusts*


**WINSTON & STRAWN LLP**

  /s/ Richard W. Reinthaler
_____

Richard W. Reinthaler
David Neier

*Attorneys for Valuation Research
Corporation*


**BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP**

  /s/ W. Scott Porterfield
_____

W. Scott Porterfield
Roger H. Stetson
Jack O. Snyder, Jr.
Michael J. B. Pitt

*Attorneys for GreatBanc Trust Company*


**KIRKLAND & ELLIS LLP**

  /s/ Gabor Balassa
_____

Gabor Balassa

*Attorneys for the Robert R. McCormick
Foundation and Cantigny Foundation*


**WINSTON & STRAWN LLP**

  /s/ Stephen V. D'Amore
_____

Stephen V. D'Amore
Scott M. Ahmad

*Attorneys for Duff & Phelps LLC*


**WEIL, GOTSHAL & MANGES LLP**

  /s/ Jonathan D. Polkes
_____

Jonathan D. Polkes
Stacy Nettleton

*Attorneys to Morgan Stanley & Co. LLC*