# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action 11 MD 2296 (DLC) 12 MC 2296 (DLC) |
| THIS DOCUMENT RELATES TO: | |
| MARC S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST, *Plaintiff*, -against- DENNIS J. FITZSIMONS, *et al.*, *Defendants*. *and* MATTERS LISTED ON APPENDIX 1 | No. 12 CV 2652 (DLC) |

# MEMORANDUM OF LAW IN SUPPORT OF THE LITIGATION TRUSTEE'S MOTION FOR PARTIAL RECONSIDERATION AND FOR CLARIFICATION

David M. Zensky
Mitchell P. Hurley
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

*Attorneys for Plaintiff Marc S. Kirschner, as Litigation Trustee for the Tribune Litigation Trust*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT ..............................................................................................................................5

I. THE STANDARD FOR RECONSIDERATION ..............................................................5

II. THE COURT COMMITTED CLEAR ERROR, AND OVERLOOKED CONTROLLING
AUTHORITY, IN HOLDING THAT THE TRUSTEE'S STANDING TO PURSUE THE
BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CLAIMS
DEPENDED ON SHOWING INSOLVENCY .................................................................6

A. The Trustee Stands in the Shoes of Tribune, Not the Creditors, and Has Standing to
Pursue the Breach of Fiduciary Duty and Aiding and Abetting Claims ...................................6

B. It Was Clear Error to Hold that Creditors Lack Standing to Assert Breach of Fiduciary
Duty Claims for Conduct That Occurs Prior to Insolvency.....................................................9

C. It Was Manifestly Unjust to Dismiss the Claims for Lack of Standing Without Briefing
or Argument ..........................................................................................................................12

III. THE TRUSTEE ADEQUATELY ALLEGED INSOLVENCY AT STEP ONE .............13

A. The Court Committed Clear Error and Overlooked Intervening Case Law in Holding
that the "Inability to Pay Debts When Due" Test Is Not Forward-Looking under
Delaware Law ......................................................................................................................14

B. The Court Committed Clear Error and Overlooked Recent Controlling Case Law in
Holding That Step Two Should Not Be Considered for Purposes of Alleging Insolvency at
Step One ...............................................................................................................................16

C. The Complaint Pled Insolvency at Step One—Regardless of Step Two......................20

D. The Unjust Enrichment and Delaware General Corporate Law Claims Must Be
Reinstated.............................................................................................................................21

IV. IT WAS CLEAR ERROR AND MANIFESTLY UNJUST, AND OVERLOOKED
CONTROLLING LAW, TO DISMISS THE CLAIMS WITH PREJUDICE ..................21

V. CLARIFICATION WITH RESPECT TO COUNTS NOT DISMISSED BY MOTIONS 6
AND 7....................................................................................................................................24

CONCLUSION..........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ANZ Sales, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*,
    630 F. App'x 27 (2d Cir. 2015) ...................................................................12

*Bank of N.Y. Mellon Tr. Co., N.A. v. Liberty Media Corp.*,
    29 A.3d 225 (Del. 2011) ...........................................................................17

*Bankr. Tr. of Gerard Sillam v. Refco Grp., LLC*,
    No. 05 Civ. 10072 (GEL), 2006 WL 2129786 (S.D.N.Y. July 28, 2006) ...............22

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*,
    208 B.R. 288 (Bankr. D. Mass. 1997) .................................................................8

*BV Supermarkets, Inc. v. Wakefern Food Corp. (In re Big V Holding Corp.)*,
    267 B.R. 71 (Bankr. D. Del. 2001) .............................................................18, 19

*Carr v. New Enter. Assocs., Inc.*,
    No. 2017-0381-AGB, 2018 WL 1472336 (Del. Ch. Mar. 26, 2018)................17, 18

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    154 F. Supp. 2d 696 (S.D.N.Y. 2001).........................................................5

*Cirillo Family Trust v. Moezinia*,
    No. 10116-CB, 2018 WL 3388398 (Del. Ch. July 11, 2018)................................17

*Cresci v. Mohawk Valley Cmty. Coll.*,
    693 F. App'x 21 (2d Cir. 2017) .........................................................................22

*Cruz v. Barnhart*,
    No. 04 Civ. 9794 (DLC), 2006 WL 547681 (S.D.N.Y. Mar. 7, 2006).....................5

*Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*,
    476 B.R. 746 (Bankr. S.D.N.Y. 2012), *adopted in part*, 499 B.R. 276
    (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 43 (2d Cir. 2014) ..........................................8

*In re Gen. Elec. Co. Sec. Litig.*,
    856 F. Supp. 2d 645 (S.D.N.Y. 2012)......................................................5

*Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*,
    No. 10 CIV. 4341 ILG RML, 2011 WL 5507426 (E.D.N.Y. Nov. 9, 2011)............5

*In re Jevic Holding Corp.*,
    No. 08–11006, 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) ......................17

*Liquidation Tr. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*,
    327 B.R. 537 (D. Del. 2005) ................................................................................17

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015) .........................................................................21, 22

*McGinty v. New York*,
    251 F.3d 84 (2d Cir. 2001) ...................................................................................12

*Moody v. Sec. Pac. Bus. Credit, Inc.*,
    971 F.2d 1056 (3d Cir. 1992) ...............................................................................16

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
    930 A.2d 92 (Del. 2007) ........................................................................10, 14, 15

*In re Nat'l Auto Credit, Inc. S'holders Litig.*,
    No. Civ. A. 19028, 2003 WL 139768 (Del. Ch. Jan. 10, 2003) ...........................18

*Noddings Inv. Grp., Inc. v. Capstar Commc'ns Inc.*,
    No. CIV. A. 16538, 1999 WL 182568 (Del. Ch. Mar. 24, 1999) ...........................17

*In re Opus E. LLC*,
    698 F. App'x 711 (3d Cir. 2017) ...........................................................................15

*Orr v. Kinderhill*,
    991 F.2d 31 (2d Cir. 1993) ...................................................................................16

*Peoples v. Fischer*,
    898 F. Supp. 2d 618 (S.D.N.Y. 2012) ....................................................................5

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005) ...........................................................................14, 15

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
    863 A.2d 772 (Del. Ch. 2004) .........................................................................11, 12

*Quadrant Structured Prods. Co. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014) ....................................................................10, 11, 12

*Quadrant Structured Products Co., Ltd. v. Vertin*,
    115 A.3d 535 (Del. Ch. 2015) ..................................................................14, 15, 20

*Rajala v. Gardner*,
    No. 09–2482, 2013 WL 12250906 (D. Kan. July 3, 2013) ......................................8

*In re Sabine Oil & Gas Corp.*,
    547 B.R. 503 (Bankr. S.D.N.Y. 2016) ...................................................................16

*Smith v. Planas*,
  151 F.R.D. 547 (S.D.N.Y. 1993) ...........................................................................22

*Teleglobe USA, Inc. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*,
  392 B.R. 561 (Bankr. D. Del. 2008) ......................................................................15

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Lit. Tr. v. Billett*,
  931 A.2d 438 (Del. 2007) ...................................................................9, 10, 11, 12

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) ......................................................................16

*In re Tribune Company Fraudulent Conveyance Litigation*,
  No. 11-md-2296, 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018). ...........................1

*U.S. Bank N.A. v. U.S. Timberlands Klamath Falls, LLC*,
  864 A.2d 930 (Del. Ch. 2004), *vacated on other grounds*, 875 A.2d 632 (Del.
  2005) .....................................................................................................................15

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
  817 F. Supp. 2d 934 (N.D. Tex. 2011) ....................................................................9

*In re United States*,
  733 F.2d 10 (2d Cir. 1984)........................................................................................5

**Statutes**

11 U.S.C. §541(a)(1)........................................................................................................7, 8

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 541.07 (16th ed. 2018) ....................................................8

J.B. Heaton, *Solvency Tests*, 62 Bus. Law. 983 (May 2007)........................................15

Marc S. Kirschner, as Litigation Trustee of the Tribune Litigation Trust (the "Trustee"),[1] respectfully submits this memorandum of law in support of his motion for partial reconsideration of, or further briefing on, those portions of the Court's opinion filed November 30, 2018 and entered December 3, 2018 [ECF No. 7659] ("Opinion" or "Op."), granting dismissal of certain counts and/or defendants pursuant to Motions 3 through 5, and the "with prejudice" component of dismissal pursuant to Motions 3 through 7, and for clarification.

## PRELIMINARY STATEMENT

Reconsideration is infrequently granted, but it is warranted here. The Trustee's claims arise out of the failed leveraged buyout of Tribune (the "LBO"), executed in two steps in 2007 ("Step One" and "Step Two") that left the Company with approximately $14 billion in debt and plunged it into bankruptcy less than a year later. The Opinion dismissed claims against, *inter alia*, the Controlling Shareholders and the Chandler Trust Representatives on Tribune's Board (the "Reconsideration Defendants"). The dismissal of these parties turned on determinations of Delaware law that (a) the Trustee, a successor to Tribune Company and its affiliated debtors, must allege insolvency as of Step One in order to have standing to sue for fiduciary breaches relating to Step One, and (b) the Complaint failed to plausibly allege insolvency at Step One. In so ruling, the Court improperly determined a host of inherently factual issues at the pleading stage.

The Trustee seeks reconsideration of, or an opportunity for briefing on, these standing and insolvency holdings. Many of the Opinion's errors arise because the Court overlooked the fact that the Trustee represents the interests of Tribune, the corporation, on these claims. Thus,

---

[1] Capitalized terms used but not defined have the meanings given to them in the *Litigation Trustee's Memorandum of Law in Opposition to Phase Two Motions to Dismiss Nos. 1-7* [ECF No. 6137] ("Opposition"). As in the Opposition, citations to the Complaint are denoted by "FC." The Opinion is published at *In re Tribune Company Fraudulent Conveyance Litigation*, No. 11-md-2296, 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018). Citations to the Opinion are to the pages of the ruling filed on the docket under ECF No. 7659.

the Trustee is not subject to the line of creditor-standing case law that the Opinion relied upon (and, in any event, misread). As a result, the standing issues, and most of the insolvency issues, were not raised by defendants in their motions to dismiss, and therefore were never briefed by the Trustee. Nor did the Court solicit submissions from the parties on these issues, or hold oral argument on the Motions. As a result, the standing and insolvency determinations overlook and conflict with controlling authority (including cases decided since the Motions were briefed in 2014) and overlook allegations in the Complaint. The holdings are clearly erroneous and result in manifest injustice.

The Opinion granted dismissal of all claims "with prejudice" and denied leave to amend the Complaint on the ground that the Trustee did not submit a proposed amended complaint alleging additional facts. That aspect of the decision also defies governing precedent admonishing that the obligation to submit a proposed amended complaint does not arise until after a motion to dismiss has been granted. Accordingly, the Trustee seeks reconsideration of the "with prejudice" component of each dismissal as clear error, overlooking controlling authority, and resulting in manifest injustice.[2]

## BACKGROUND

Tribune was one of the nation's most venerable media companies. (FC ¶ 1.) In 2007, in the midst of secular, industry-wide declines, Tribune borrowed $10.7 billion to repurchase all of its outstanding shares in the two-step LBO, and become a private company controlled by Samuel Zell. (FC ¶¶ 7, 120, 122, 125, 238, 287, 353.) At the close of Step Two, Tribune had nearly $14

---

[2] Reconsideration of these points is further warranted due to the discovery of new facts. In 2017, the Trustee was permitted to take partial discovery, *see* ECF No. 6944, which unearthed additional facts relevant to, among other things, breach of fiduciary duty.

The Opinion also granted Motions 6 and 7, and dismissed some of the fraudulent transfer and preference claims asserted under *FitzSimons* Counts 34 and 35, and Count 2 of the Tag-Along Actions against certain defendants. The Trustee seeks clarification about which claims were dismissed.

billion of debt and no more than $10.4 billion of assets. (FC ¶ 20.) The LBO was contemporaneously described as "one of the most absurd deals ever" (FC ¶ 252), and was done by tampering with projections and valuation techniques and intentionally fraudulent conduct. (FC ¶¶ 1, 4, 8, 12–14, 19, 170–74, 198, 307.) Two established financial firms determined that they could not provide a solvency analysis that would approve the LBO under traditional methodologies, and ultimately the deal was able to proceed only because a third, lesser-known firm agreed to provide a solvency opinion based on a non-traditional solvency methodology for a fee in excess of any fee that firm had received before. (FC ¶¶ 180–82, 186–87, 197, 200–01, 270–72.) As predicted widely by analysts, the markets, and even by some insiders, the Company rapidly deteriorated under the LBO debt, and declared bankruptcy less than a year later. (FC ¶¶ 7, 20, 152–57, 357–59.)

The LBO was executed in two steps, in June and December of 2007, which steps were negotiated together, approved by the Board at the same time, funded in the same commitment letters and financing arrangements, and marketed in tandem. (FC ¶¶ 119, 211, 240, 241.) The LBO was designed to cash out Tribune's shareholders at a premium price, and thereby allow Tribune to become a privately held company with an ESOP ownership structure to obtain tax benefits. (FC ¶¶ 6, 209, 238.) Those anticipated tax benefits were the primary "Transaction Rationale" for the LBO (FC ¶ 239), and the LBO made economic sense only if Step Two closed (FC ¶ 238).

Tribune pursued the LBO after its two largest shareholders (included among the Reconsideration Defendants), who were dissatisfied with the Company's deteriorating performance, began to agitate for a transaction to provide value to shareholders. (FC ¶¶ 8, 126–35, 138–39, 144.) The Reconsideration Defendants include (a) the Chandler Trusts, a major

shareholder of Tribune that had three representatives on Tribune's Board, advocated for a cash-out transaction, and received close to $1 billion in the LBO (FC ¶¶ 35–37, 72); (b) the McCormick Foundation and Cantigny Foundation, the other major shareholders of Tribune, each of which had five directors who were Tribune executives and were intimately involved in facilitating the LBO, which also demanded that the Board pursue a cash-out transaction, and which received more than $1 billion collectively in the LBO (FC ¶¶ 73, 74); and (c) the Chandler Trust Representatives, each of whom was a director of Tribune and who, as a group, personally received more than $770,000 in the LBO (FC ¶¶ 35–37, 39).

The Trustee, appointed pursuant to Tribune's confirmed bankruptcy plan[3] (the "Plan"), and representing the interests of the debtors' estates, asserted claims arising out of the LBO for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, illegal dividends under Delaware corporate law, unjust enrichment, and fraudulent and preferential transfers under federal bankruptcy law, as well as other claims not at issue in the Opinion. The breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims seek damages for the pecuniary harm inflicted on the Company as a result of the LBO, which totals in the many billions of dollars. (FC ¶¶ 399, 502, 510.)

No answers have been filed. Twelve motions to dismiss were filed on May 23, 2014 (the "Motions"), pursuant to a case management order. *See* Phase Two Motion Protocol [ECF No. 5696]. The Court granted one of those motions (Motion 12) on January 6, 2017 [ECF No. 6924]. The Court entered the Opinion at issue here on December 3, 2018, granting Motions 3 through 7. The remaining motions to dismiss, Motions 1, 2, and 8 through 11, are still pending. No oral

---

[3] Fourth Amended Joint Plan of Reorganization, *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. July 20, 2012) [ECF No. 12072].

argument was held on the Motions, and the Court did not solicit submissions on the matters addressed in the Opinion which were not briefed by any of the parties.

## ARGUMENT

### I. THE STANDARD FOR RECONSIDERATION

A motion for reconsideration may be granted if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 651 (S.D.N.Y. 2012) (Cote, J.) (internal citations omitted). Reconsideration is also appropriate in order "to correct a clear error or prevent manifest injustice." *Peoples v. Fischer*, 898 F. Supp. 2d 618, 623 (S.D.N.Y. 2012) (internal citations omitted); *see also Cruz v. Barnhart*, No. 04 Civ. 9794 (DLC), 2006 WL 547681, at \*2 (S.D.N.Y. Mar. 7, 2006) (Cote, J.) ("[I]t may be an abuse of discretion to let stand an error of law brought to its attention in a timely manner."). And reconsideration is warranted where the movant demonstrates an intervening change of controlling law or the availability of new evidence. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001). It is within the power of the court, on reconsideration, to reinstate claims which have been dismissed before judgment is entered. *In re United States*, 733 F.2d 10 (2d Cir. 1984).

While a motion for reconsideration typically ought not rely on issues or arguments not previously presented to the court, a court may consider such issues where, as here, dismissal is granted "on grounds not raised in the[] motion papers . . . and [the opposing party] thus never had the opportunity to brief the issue." *Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*, No. 10 CIV. 4341 ILG RML, 2011 WL 5507426, at \*5 n.7 (E.D.N.Y. Nov. 9, 2011) (internal citations omitted).

Here, the Opinion warrants reconsideration on each of the enumerated grounds—holdings premised on arguments never raised by the parties and no opportunity for oral argument, overlooked decisions and data, clear error, manifest injustice, new evidence, and intervening change in the law. Accordingly, this Court should grant the Trustee's motion.

## II. THE COURT COMMITTED CLEAR ERROR, AND OVERLOOKED CONTROLLING AUTHORITY, IN HOLDING THAT THE TRUSTEE'S STANDING TO PURSUE THE BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CLAIMS DEPENDED ON SHOWING INSOLVENCY

### A. The Trustee Stands in the Shoes of Tribune, Not the Creditors, and Has Standing to Pursue the Breach of Fiduciary Duty and Aiding and Abetting Claims

The Court dismissed the Trustee's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims against the Reconsideration Defendants with prejudice for lack of standing, finding that the Trustee only has standing to assert fiduciary duty claims that Tribune's creditors could assert as a matter of Delaware law. (Op. 11–12, 16–17.) Because a creditor's derivative standing requires insolvency, the Court reasoned that the Trustee was required to allege insolvency at Step One—again, as measured by Delaware breach of fiduciary duty law, not fraudulent transfer law—in order to assert breaches of fiduciary duty at Step One. (Op. 12.) Finding the allegations of insolvency at Step One inadequate under Delaware law (but adequate at Step Two), the Court dismissed all claims against the Reconsideration Defendants that had cashed out in Step One, stepped down from the Tribune Board, and ceased to be fiduciaries, and were not involved in Step Two. (Op. 16–17.) The Opinion did not dismiss any other fiduciary duty claims; the claims against the other directors who remained on the Board past Step One, and against the Officers who did not move to dismiss, are still pending.

The Court's entire standing analysis rests on the mistaken premise that the Trustee "represents the interests of Tribune's creditors in this action" (Op. 12), and therefore may only

assert claims to the same extent Tribune's creditors could assert such claims derivatively. The Opinion contains no citation for the premise that the Trustee is acting on behalf of creditors. And indeed, the premise is incorrect. In fact, *no party* had argued that the doctrine of creditor derivative standing limits the Trustee's standing to assert breach of fiduciary duty claims. To the contrary, other defendants, whose motions to dismiss were not addressed in the Opinion, and are still pending, raised the question of standing in an unrelated context and expressly admit that "[i]t is indisputable that the Trustee stands in the shoes of the debtor, Tribune."[4]

The Trustee is the successor to, and stands in the shoes of *Tribune itself*, with all of its rights and powers; the Trustee does not stand in the shoes of *creditors*. Tribune's confirmed Plan, which created the Trust, vests Tribune's causes of action, including the above-captioned action, in the Trust. This action was commenced during the bankruptcy on behalf of Tribune. The Plan provides that "all of the Litigation Trust Assets"—defined to include causes of action "that the Tribune Entities or the Debtors' Estates may have or are entitled to assert on behalf of their respective Estates . . . under any provision of the Bankruptcy Code or any applicable nonbankruptcy law," and specifically referencing this action—and all "the rights and powers of the Debtors' Estates applicable to the Litigation Trust Assets, shall automatically vest in the Litigation Trust." Plan §§ 1.1.124, 1.1.174, 13.2. The Court also overlooked its own prior ruling in connection with a motion to compel, which held that the Trustee inherited Tribune's corporate privileges, including those of the special committee, dating back to well before Step One. *See* Order Granting Trust's Motion to Compel [ECF No. 7245] at 8.

Further, the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the *debtor* in property as of the commencement of the case." 11 U.S.C.

---

[4] Motion 8 [ECF No. 5955] at 8; *see also id.* at 5, 7, 10; Motion 10 [ECF No. 5926] at 2, 7, 14; Motion 11 [ECF No. 5952] at 15.

§541(a)(1) (emphasis added).  Pre-petition causes of action for breach of fiduciary duty are plainly property of the estate.  *See* 5 COLLIER ON BANKRUPTCY ¶ 541.07 (16th ed. 2018).  As such, the Trustee filed the Complaint "on behalf of the Chapter 11 estates of the debtors and debtors-in-possession in the above-captioned Chapter 11 cases."  (FC at 1.)  The Court overlooked this allegation in the Complaint.[5]

Multiple courts have found that a litigation trust, asserting the claims of a debtor, has standing to assert direct breach of fiduciary duty claims regardless of whether the creditors would independently have derivative standing to bring breach of fiduciary duty claims and, critically, <u>regardless of when the debtor became insolvent</u>.  In *Rajala v. Gardner*, No. 09–2482, 2013 WL 12250906 (D. Kan. July 3, 2013), the court found that "the Trustee is not standing in the shoes of the creditors," even though recovery would ultimately benefit creditors, and, therefore, "the Trustee need not demonstrate insolvency at the time of the alleged breach of fiduciary duty to proceed" under Delaware law.  *Id*. at *16–17.  Likewise, in *Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*, 476 B.R. 746 (Bankr. S.D.N.Y. 2012), *adopted in part*, 499 B.R. 276 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 43 (2d Cir. 2014), the court looked to Delaware law for guidance and found "the solvency-insolvency distinction" to be "academic" for purposes of analyzing the trust's standing to assert breach of fiduciary duty claims because the trust "could (and did) assert, on behalf of the Debtor, claims based on alleged breaches of those fiduciary duties, which were owed to the Debtor" regardless of insolvency.  *Id*. at 796–97; *see also Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 208 B.R. 288, 300 (Bankr. D. Mass. 1997) (trust "can bring any suit [debtor] could have brought, including suits against directors and controlling shareholders for breach of fiduciary duty.  In complaining that directors authorized a

---

[5] The fact that beneficiaries of the Trust include certain creditors of Tribune that elected certain treatment under the Plan, does not alter the fact that the causes of action vested in the Trust are those of Tribune, not its creditors.

transaction which unduly weakened Healthco, the Trustee is not asserting a claim of creditors.");

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*, 817 F. Supp. 2d 934, 942–43 (N.D. Tex. 2011) (breach

of fiduciary duty claim is a direct cause of action that belonged to debtor company and "which

now belongs to the Trust, not a cause of action that belongs to [the company's] creditors").

Indeed, *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006),

*aff'd sub nom. Trenwick Am. Lit. Tr. v. Billett*, 931 A.2d 438 (Del. 2007), which the Opinion cites

for a distinct but related issue, recognizes that where a litigation trust has standing to bring

claims on behalf of a debtor's estate, the question of insolvency can be relevant to failure to state

a claim, but not standing.  *See id.* at 195, 197–98, 202–04 (considering adequacy of solvency

allegations in connection with failure to state a claim).  The Opinion overlooks this holding in

*Trenwick*, and is clearly erroneous in light of the Plan and applicable case law.

The Trustee does not contend that questions of insolvency, and the LBO's overall impact

on Tribune's economic health, are irrelevant to the ultimate *merits* of the Trustee's breach of

fiduciary duty claims and the appropriate standard of review applicable to the defendants'

conduct.  For instance, questions of insolvency are relevant to how the LBO affected Tribune's

residual stakeholders, including, the creditors.  Such questions are, however, entirely irrelevant to

the Trustee's *standing* to bring such claims and are not an essential element, as the Opinion

assumes.  As such, the Court should grant reconsideration and the fiduciary duty claims in

Counts 3, 14, and 15 should be reinstated against the Reconsideration Defendants.

### B.  It Was Clear Error to Hold that Creditors Lack Standing to Assert Breach of Fiduciary Duty Claims for Conduct That Occurs Prior to Insolvency

Even if the Trustee's standing were limited by creditors' standing—which it is not—the

Court erred in determining that the Trustee lacked standing to pursue breach of fiduciary duty

claims premised upon conduct that took place prior to the moment of insolvency.  Here, the

Court found that the Trustee had sufficiently pled insolvency as of Step Two (Op. 16), but that the Trustee could not rely on that for standing to bring claims for fiduciary breaches at Step One.

The Court determined that "Delaware courts are split regarding whether creditors—once they gain standing to sue—can assert derivative claims against a corporation based on conduct that pre-dates the corporation's insolvency." (Op. 11 (comparing *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 180 (Del. Ch. 2014) ("*Quadrant I*") with *Trenwick*, each a Delaware Chancery Court case)). Then, purportedly following *Trenwick*'s reasoning, the Court held that, in light of the Delaware Supreme Court's decision in *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007), creditors only have standing to assert breach of fiduciary duty claims for conduct that occurred while the corporation was insolvent or which "directly and definitively caused the corporation to become insolvent." (Op. 12.) Again, this issue was not briefed by any party and, again, the Court erred in its application of Delaware law.

First, assuming *arguendo* that a conflict between *Trenwick* and *Quadrant I* exists on this point (which it does not), the Court erred in following *Trenwick*, rather than the more recent decision in *Quadrant I*. *Quadrant I* was decided after the Delaware Supreme Court decided the definitive case respecting creditor standing, *Gheewalla*, and *Quadrant I* incorporates *Gheewalla* in its reasoning. *Trenwick*, on the other hand, pre-dates *Gheewalla*. Under *Quadrant I*, insolvency is important in claims against fiduciaries by creditors because it establishes the time at which a creditor has standing to bring a claim, but once the creditor has standing, "*Gheewalla* indicates that the derivative claims that creditors gain standing to assert are no different than the derivative claims that stockholders could assert." *Quadrant I*, 102 A.3d at 177. *Quadrant I* then states that, upon insolvency, "creditors can and should <u>be able to assert claims that arose *before* they gained standing</u>." *Id.* at 180 (emphasis added); *see also id.* (noting that "[i]t is entirely

possible, perhaps even likely, that breaches of fiduciary duty that cause, hasten, or otherwise contribute to insolvency will have occurred before the point of insolvency in fact.").

Second, the Opinion misreads *Trenwick*, which does not support the Court's determination that a creditor is foreclosed from "assert[ing] derivative claims against a corporation based on conduct that pre-dates the corporation's insolvency." (Op. 11.)[6] In *Trenwick*, the court addressed the fiduciary duties owed by the directors of a wholly-owned subsidiary to its parent, and rejected the claim that the subsidiary's board had breached its fiduciary duties by managing the subsidiary to benefit the parent and permitting transactions that caused the subsidiary to become more leveraged without any direct benefit to the subsidiary. *Id.* at 200–04. Vice Chancellor Strine held that when a subsidiary follows the direction of a parent and the two companies later become insolvent, a trustee cannot assert claims against the subsidiary's board for events prior to the insolvency (in that case, several years prior to bankruptcy) without showing that the subsidiary's board knew the events would render the subsidiary "unable to meet its legal obligations." *Id.* at 203.

But as explained in *Quadrant I*, *Trenwick* cannot reasonably be read to stand for the proposition that creditors lack standing to pursue pre-insolvency conduct because the judge who authored *Trenwick* has espoused the contrary position:

> In his *Production Resources* [*Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004)] decision, Chief Justice Strine [author of *Trenwick*] explained while serving as a Vice Chancellor that creditors are *not* prevented from bringing derivative claims that pre-date the corporation's insolvency. After positing a situation in which a firm becomes insolvent "*after* the acts that are alleged to have been fiduciarily improper," he explained that a creditor in that situation would be included within "the class of those eligible to press the claim derivatively." *Prod. Res.,* 863 A.2d at 792 (emphasis in original). Later in that same decision, the Chief Justice again posited situations when directors engaged in fiduciary wrongdoing before the firm became insolvent and noted that after the firm

---

[6] *Trenwick* also does not stand for the cited proposition, as it was not addressing derivative creditor claims. *Id.* at 191.

became insolvent, the claim could be "asserted by creditors" or by a trustee in bankruptcy. *Id.* at 794.

*Quadrant I*, 102 A.2d at 180 (emphasis in original).

Accordingly, inasmuch as the Opinion acknowledged that the Trustee adequately pled insolvency at Step Two, which the Court determined would confer standing to bring fiduciary duty claims (Op. 16), its determination that insolvency in December 2007 at Step Two would not permit claims for breach of fiduciary duty in June 2007 in connection with Step One is clearly erroneous.

### C. It Was Manifestly Unjust to Dismiss the Claims for Lack of Standing Without Briefing or Argument

Here, no party raised the standing issue and the Court was not aided by briefing or oral argument. Although the Court may raise standing *sua sponte*, "[i]t is generally good practice . . . for courts to give a party an opportunity to oppose a contemplated *sua sponte* dismissal for lack of standing because '[i]t gives the adversely affected party a chance to develop the record to show why dismissal is improper; it facilitates *de novo* review of legal conclusions by ensuring the presence of a fully-developed record before an appellate court; and, it helps the trial court avoid the risk that it may have overlooked valid answers to what it perceives as defects in plaintiff's case.'" *ANZ Sales, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*, 630 F. App'x 27, 28–29 (2d Cir. 2015) (quoting *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001)). The Second Circuit has "reversed dismissals for failure to afford such an opportunity." *Id.*

The Trustee had no opportunity to point the Court to the relevant Plan provisions or Complaint allegations, or argue the relevant case law, showing that the Trustee's standing is derived from Tribune. Likewise, the Trustee had no opportunity to argue for the correct interpretation of *Trenwick*, or to present *Quadrant I*, which was decided after the Motions were

12

fully briefed.  That reality reinforces the necessity of reconsideration, and reinstatement of Counts 3, 14, and 15 as to the Reconsideration Defendants.

## III. THE TRUSTEE ADEQUATELY ALLEGED INSOLVENCY AT STEP ONE

Even if the Court adheres to the ruling that the Trustee needs to show "creditor" standing, and that such standing only confers the right to sue for claims that arise after insolvency, the Court should nevertheless reconsider the Opinion because the Complaint adequately alleged insolvency at Step One.  In connection with the fraudulent transfer and other claims, the Trustee pled dozens of allegations supporting the inference that Tribune was insolvent at Step One under all three definitions of insolvency employed by courts to consider fraudulent transfer claims—"balance sheet," "unreasonably small capital," and "inability to pay debts when due."[7]

The Opinion held that tests construing solvency for purposes of fraudulent transfer claims were irrelevant to its solvency analysis in connection with the breach of fiduciary duty claims against the Reconsideration Defendants, and instead applied its interpretation of solvency for purposes of Delaware breach of fiduciary duty law.  (Op. 13, 16.)[8]  The Opinion found that the "unreasonably small capital" test was inapplicable to the fiduciary duty claims at issue.  (Op. 13.) The Opinion then found insolvency was not adequately pled as a matter of Delaware breach of fiduciary duty law under the "balance sheet" and "inability to pay debts when due" tests.  (Op. 15–16.)  Those determinations are clearly erroneous and overlooked subsequent case law.  The Opinion should be reconsidered and the fiduciary duty claims in Counts 3, 14, 15, the illegal dividend claim in Count 2, and the unjust enrichment claim in Count 31 should be reinstated as to the Reconsideration Defendants.

---

[7] *E.g.*, FC ¶¶ 125, 135, 180–82, 185, 197, 206, 208, 209, 230, 237, 245, 248–54, 268, 270, 294, 379(e).

[8] The question of solvency for purpose of fraudulent transfer has not been ruled on.  (Op. 13, 16.)

**A. The Court Committed Clear Error and Overlooked Intervening Case Law in Holding that the "Inability to Pay Debts When Due" Test Is Not Forward-Looking under Delaware Law**

With respect to the "inability to pay debts when due" insolvency test invoked by the Trustee, the Court concluded that, as a matter of Delaware fiduciary duty law, the test is not forward-looking and applies only when there had already been a failure to pay debts at the time of the challenged transaction.  (Op. 16.)  The Court relied solely on *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), to reject the Trustee's allegation that the "inability to pay debts when due" test should consider future obligations.  *See id.* at 343 ("The Cash Flow test projects into the future to determine whether capital will remain adequate over time while the Delaware test looks solely at whether the corporation has been paying bills on a timely basis and/or whether its liabilities exceed its assets.").  No defendant advanced this argument.  And, the Court again overlooked recent and relevant case law.

In *Quadrant Structured Products Co., Ltd. v. Vertin* ("*Quadrant II*"), 115 A.3d 535 (Del. Ch. 2015), decided after briefing on the Motions was complete, the Delaware Chancery Court recognized that the concerns that led Delaware courts to apply a restrictive definition of insolvency no longer applied after the Delaware Supreme Court ruled in *Gheewalla* that fiduciary duties to creditors are not triggered by a company's entering the "zone of insolvency," but only by actual insolvency.[9]  The *Quadrant II* court held that to maintain standing to sue derivatively, a creditor must establish only that the corporation was insolvent at the time the creditor filed suit, not "continuous insolvency" thereafter, or "irretrievable insolvency," and it

---

[9] As the court observed:

> For fiduciary duty claims, however, . . . pre-*Gheewalla* . . . , a court could be justifiably concerned about a rash of direct claims by creditors, and a court might seek to make the definition of insolvency more onerous to head off those claims.  But after *Gheewalla* and its precursors, the landscape is different, and the same threat no longer exists.

*Quadrant II*, 115 A.3d at 561.

adopted a balance sheet test of insolvency in line with the measure used under the Delaware Uniform Fraudulent Transfer Act and the Bankruptcy Code.

On its facts, *Quadrant II* only dealt with balance-sheet insolvency, and not insolvency related to an inability to pay debts when due. Nevertheless, in light of the analysis in *Quadrant II*, *Pereira* is on uncertain ground.[10] *Pereira* was decided in 2005—before *Gheewalla* and before *Quadrant II*. And a Delaware-based court that subsequently considered *Pereira* applied the cash flow test differently. In *Teleglobe USA, Inc. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 392 B.R. 561 (Bankr. D. Del. 2008), the court considered whether the debtors were solvent such that fiduciary duties would be owed only to a shareholder (and not to creditors). *Id.* at 598. The *Teleglobe* court noted that the cash flow test does consider ability to pay future debts: "The cash flow test is 'forward looking' in the sense that it is not enough to be able to meet current obligations; the firm must be able to meet its future obligations as well." *Id.* at 602 (internal citation omitted); *see In re Opus E. LLC*, 698 F. App'x 711, 715 (3d Cir. 2017) ("This 'forward looking' test requires assessing the debtor's reasonable prediction about its ability to repay a debt as it is incurred.") (citing *Teleglobe*); Heaton, *supra* note 10, at 989. The inability to meet future obligations is exactly what the Trustee alleged Tribune could not do as of Step One. (*E.g.,* FC ¶¶ 125, 253.) As stated in *Teleglobe*, this test considers cash flow insolvency consistently with the Bankruptcy Code, would be adopted by Delaware courts, and should be used here.

---

[10] As one commentator observed, *Pereira* was "surely an incorrect reading of Delaware law." J.B. Heaton, *Solvency Tests*, 62 Bus. Law. 983, 989 n.30 (May 2007). In any event, the Second Circuit's statement in *Pereira* was *dicta*; because the court held that the breach of fiduciary duty claims were blocked by an exculpatory clause, it did not need to rule on solvency to dismiss those claims. 413 F.3d at 342. Furthermore, its discussion of the proper solvency test, *id.* at 343, cites a case that *does* apply a forward-looking test. *See U.S. Bank N.A. v. U.S. Timberlands Klamath Falls, LLC*, 864 A.2d 930, 948 (Del. Ch. 2004), *vacated on other grounds*, 875 A.2d 632 (Del. 2005) ("The allegation that the November 2003 payment was made late is not alone enough to support insolvency. Nevertheless, in 2007, the Issuer will have to repay the $225 million it borrowed by issuing the notes. The fact that the Issuer has been unable to make even the interest payments due under the notes on time implies, albeit weakly, that it *will* also be unable to repay the principal *when it comes due*.") (emphasis added).

Notably, the Delaware bankruptcy court overseeing Tribune's bankruptcy proceeding held a mini-trial canvassing the issues in connection with approving the Plan, and considered solvency issues in connection with Step One of the LBO. *In re Tribune Co.*, 464 B.R. 126, 168 (Bankr. D. Del. 2011). In the fraudulent transfer (rather than breach of fiduciary duty) context, that court also applied a "forward looking" test to the LBO and adopted "foreseeability" as the proper inquiry when considering the "related concepts of 'unreasonably small capital' and 'inability to pay debts as they come due.'" *Id.* (quoting *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992). That court agreed that "reasonable foreseeability" required consideration of the Step Two debt when considering solvency at Step One. *Id.*

**B. The Court Committed Clear Error and Overlooked Recent Controlling Case Law in Holding That Step Two Should Not Be Considered for Purposes of Alleging Insolvency at Step One**

With respect to the "balance sheet" test for insolvency, the Court acknowledged that the Trustee alleged that the two steps of the LBO should be considered as a unitary transaction. (Op. 13.) The Court noted the Trustee's citation to *Orr v. Kinderhill*, 991 F.2d 31 (2d Cir. 1993), but found that it had "little bearing on whether a court may conduct a similar analysis under Delaware law"[11] such that debt incurred at Step Two should be considered in connection with solvency at Step One, and went on to conclude that the two steps should not be collapsed under a test articulated in *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 541 (Bankr. S.D.N.Y. 2016). (Op. 15.) This, again, was clear error and overlooked case law and allegations.

First, contrary to the Opinion's findings, Delaware courts have frequently discussed a "collapsing" doctrine, and apply it at least as liberally as the Second Circuit did in *Orr*. Indeed,

---

[11] Although the Trustee's assertion that this was a "unitary" transaction was addressed in the briefs as a factual matter in connection with Count 2, *see* Motion 1 at 19–20, the defendants did not argue that Delaware courts would never evaluate multi-step transactions jointly when assessing solvency, nor did any defendant take issue with the Trustee's citation of *Orr*.

Delaware courts have relied on *Orr* specifically. *In re Jevic Holding Corp.*, No. 08–11006, 2011 WL 4345204, at *5 (Bankr. D. Del. Sept. 15, 2011); *Noddings Inv. Grp., Inc. v. Capstar Commc'ns Inc.*, No. CIV. A. 16538, 1999 WL 182568, at *7 n.32 (Del. Ch. Mar. 24, 1999). As recently as July, the Delaware Chancery Court considered collapsing two transactions in the context of a claim for breach of fiduciary duty. *Cirillo Family Trust v. Moezinia*, No. 10116-CB, 2018 WL 3388398, *10 (Del. Ch. July 11, 2018).[12] The *Cirillo* court considered the "[step transaction] doctrine [which] treats the 'steps' in a series of formally separate but related transactions involving the transfer of property as a single transaction, if all the steps are substantially linked." *Id.*, at *10, n.114 (quoting *Noddings Inv. Grp., Inc.*, 1999 WL 182568, at *6); *see also In re Jevic Holding Corp.*, 2011 WL 4345204, at *6 ("Neither time nor transactional formalities can shield a party involved in" an LBO that suggests an overall scheme to deplete assets).

When considering whether or not to view multiple transactions as part of a unitary plan, Delaware courts consider whether the transactions at issue meet *one* of three tests:

> First, under the end result test, the doctrine will be invoked if it appears that a series of separate transactions were prearranged parts of what was a single transaction, cast from the outset to achieve the ultimate result. Second, under the interdependence test, separate transactions will be treated as one if the steps are so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series. The third and most restrictive alternative is the binding-commitment test under which a series of transactions are combined only if, at the time the first step is entered into, there was a binding commitment to undertake the later steps.

*Carr v. New Enter. Assocs., Inc.*, No. 2017-0381-AGB, 2018 WL 1472336, at *7 (Del. Ch. Mar. 26, 2018) (citing *Bank of N.Y. Mellon Tr. Co., N.A. v. Liberty Media Corp.*, 29 A.3d 225, 239 (Del. 2011)); *see also Liquidation Tr. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*,

---

[12] There, the court considered on summary judgment whether certain warrants issued in January 2013 could be considered part of a unitary transaction with a merger accomplished in August 2014, such that the director defendants could be considered to have lacked independence. *Id.*

327 B.R. 537, 546 (D. Del. 2005) ("The court has previously noted that, when considering [collapsing], it would focus not on the structure of the transaction but the knowledge and intent of the parties involved in the transaction.").

The end result test focuses on whether separate events "appear to be component parts of something undertaken to reach a particular result." *BV Supermarkets, Inc. v. Wakefern Food Corp. (In re Big V Holding Corp.)*, 267 B.R. 71, 92 (Bankr. D. Del. 2001) (internal citations omitted). The interdependence test will disregard individual transaction steps if "it is unlikely that any one step would have been undertaken except in contemplation of the other integrating acts." *Id.* (internal quotation omitted). Finally, the little-used binding commitment test asks whether, at the time the first step is entered into, there was a binding legal commitment to undertake the later steps. *Id.* at 93. A transaction need not satisfy all three tests to be considered "unitary." *See id.* at 100 (noting that the binding commitment test had not been satisfied but that the transactions could nevertheless be collapsed).

The Opinion erred by overlooking this Delaware case law. Further, the Opinion erred by not applying the proper disjunctive multi-factor balancing test employed by such cases, and by relying instead on *Sabine*.

Second, the Opinion erred by overlooking a host of allegations supporting collapsing. On a motion to dismiss, a plaintiff need only allege a "reasonably conceivable" set of facts that satisfy any one of the tests set forth in the cases. *Carr*, 2018 WL 1472336, at *7; *see also In re Nat'l Auto Credit, Inc. S'holders Litig.*, No. Civ. A. 19028, 2003 WL 139768, at *10 (Del. Ch. Jan. 10, 2003) ("The issue is whether it is a *reasonable inference* that the [transactions] constituted and implemented a single plan.").

The Complaint has raised such an inference here, and the Court must therefore give credit to the allegations of insolvency at Step One as a function of the overall transaction. The Opinion wrongly holds the Trustee to proving that Step Two was a "binding commitment," as it relies on the lack of certainty of a Step Two close and the allegations of breach of fiduciary duty against Zell to conclusively find that this was not a unitary transaction. This holding ignores the many allegations suggesting that the two Steps were undertaken to achieve a particular result, *Big V*, 267 B.R. at 92, and the unlikelihood that either Step would have been undertaken except in contemplation of the other, *id.* (FC ¶¶ 238–42.)

For example, the Complaint pleads that the Tribune Board approved both Step One and Step Two at the same time. (FC ¶ 240.) And although it was not *certain* that Step Two would close, the Complaint further alleges that (i) the Step One Commitment Letter made the execution of the Merger Agreement without waiver, amendment, or modification a condition precedent to the Company's initial borrowings at Step One; (ii) the Step One and Step Two Commitment Letters cross-referenced each other; (iii) the Step One and Step Two Commitment Letters conditioned the borrowing under the facilities on the continued existence of the financing commitments as set out in the Merger Agreement; and (iv) the financing commitment letters obligated the lenders to provide the requisite financing to permit Step Two to occur. (FC ¶ 240.) Even if not by binding obligation, the Steps were "dependent" and "conditioned" on each other. The Complaint also alleges knowledge and an overall scheme suggesting that the transactions would not have been consummated separately. (FC ¶¶ 238–43.)

The Court was wrong to assume that Delaware courts would reject *Orr* or refuse to treat a multi-step transaction as a unitary undertaking when considering the balance-sheet test for solvency. In light of the uniform direction of the case law, the Court should reconsider its

decision and find that the Complaint sufficiently alleges that Step One and Step Two can be considered part of a unitary transaction, such that insolvency was properly pled at Step One.

### C. The Complaint Pled Insolvency at Step One—Regardless of Step Two

Even if Step One and Step Two are not considered together, the Trustee has made several assertions that indicate that Tribune was insolvent at Step One. The Court was wrong to hold that "the Trustee fails to allege any facts suggesting that Tribune was insolvent at Step One of the LBO . . . ." (Op. 15.) To reach this conclusion, the Court overlooked relevant case law and apparently omitted from consideration many allegations and the reasonable conclusions that can be drawn therefrom. This was another clear error.

The Chancery Court's decision in *Quadrant II* supports the inference that Tribune was insolvent at Step One, even without reference to Step Two. *Quadrant II* considered a decline in credit ratings (to CCC-) when assessing solvency for purposes of the balance-sheet test. *Quadrant II*, 115 A.3d at 562. It relied on these factors—at the summary judgment stage[13]—to hold that the defendant in that case was insolvent. *Id.* at 562–63. The Complaint here makes similar allegations. The Trustee alleged that shortly after the LBO was approved, but prior to Step One closing, S&P downgraded Tribune's unsecured debt to CCC+. (FC ¶ 244–45.)[14] But the Court reached the exact opposite conclusion: "the fact that Tribune's financial situation was trending in the wrong direction prior to Step One, and that Standard & Poor's downgraded Tribune's debt in advance of Step One, is totally irrelevant to the balance sheet test." (Op. 15.)

---

[13] Indeed, the Court appears to be applying a summary judgment standard to the Complaint as well. *See, e.g.*, Op. 15 (noting Houlihan had opined that Tribune was insolvent in May, in advance of Step One, but appearing to reject the relevance of the allegation because, *inter alia*, the basis for Houlihan's comment was not pled).

[14] *Quadrant II* also found that market discounts on the company's debt were indicative of insolvency. *Quadrant II*, 115 A.3d at 562. If permitted to amend, the Trustee could allege the distressed trading levels of Tribune's debt.

The Court also discounted the Trustee's other allegations suggesting that Tribune was insolvent at Step One. For instance, in addition to pointing out that multiple firms turned down paying engagements because they did not think that they would be able to opine that Tribune was solvent, and that analysts and the financial press were uniformly critical of the Company's prospects, the Complaint also alleges that, just a year prior to the LBO, the *Reconsideration Defendants* opposed incurring leverage at a fraction of the amount ultimately suffered by Tribune in the LBO. (FC ¶¶ 180–82, 185, 206, 209, 247–55.)

### D. The Unjust Enrichment and Delaware General Corporate Law Claims Must Be Reinstated

The Opinion also dismissed the Count 31 unjust enrichment claims and the Count 2 illegal dividend claims against the Reconsideration Defendants on the basis that Step One insolvency was not adequately pled and/or no fiduciary duties were breached. (Op. 18–19.) For the reasons set forth in Sections III.A, B, and C, the insolvency analysis was flawed, dismissal should be reconsidered, and the claims reinstated against the Reconsideration Defendants.

### IV. IT WAS CLEAR ERROR AND MANIFESTLY UNJUST, AND OVERLOOKED CONTROLLING LAW, TO DISMISS THE CLAIMS WITH PREJUDICE

The Court granted Motions 3 through 7 and dismissed the relevant claims without leave to amend. (Op. 32.) The Court denied leave to amend on the basis that the Trustee did not attach a proposed amended complaint to its opposition to the motions to dismiss and gave "no clue as to how the complaint's defects would be cured." *Id.* (citation omitted). Even if the Court denies reconsideration of the standing and insolvency issues, the "with prejudice" component of the dismissal independently requires reconsideration.

In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit, reversing a dismissal by Judge Sullivan, held that, without a definitive ruling on their motion to dismiss, the plaintiffs there had no obligation to provide a proposed

amended complaint or identify remedies for any asserted pleading deficiencies in order to obtain leave to amend. *Id.* at 190–91.[15] As the Second Circuit has recently held, in a decision issued after briefing on the instant motions was completed:

> The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously.
>
> * * *
>
> A plaintiff has no obligation to replead merely because the defendant has argued that the complaint is deficient, without knowing whether the court will agree.

*Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (citing *Loreley*, 797 F.3d at 190). As a result, a plaintiff is not required to provide the court with an amended complaint until it receives the district court's decision on the motion to dismiss. *Id.* ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.").

Denying leave to amend for failure to attach a proposed amended complaint was clear error and manifest injustice, and disregarded controlling authority. Although the Court cited *Loreley*, it failed to acknowledge its actual holding that the court had exceeded the bounds of its discretion in denying plaintiffs leave to amend. The error and injustice are compounded by the fact that dismissal was based in large part on grounds that were not even briefed by the parties and no oral argument was held, and so any proposed amended complaint appended to the Opposition would likely not have known to address the Court's concerns.

---

[15] The Opinion also cited *Bankr. Tr. of Gerard Sillam v. Refco Grp., LLC*, No. 05 Civ. 10072 (GEL), 2006 WL 2129786, at *5 (S.D.N.Y. July 28, 2006), for the proposition that Rule 7(b) "generally requires a movant to supply a copy of the proposed amendment." But the case *Bankruptcy Trust* cited for this proposition, *Smith v. Planas*, 151 F.R.D. 547 (S.D.N.Y. 1993), actually said, "[w]here the proposed amended complaint does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed complaint, or the Court may deny the motion without prejudice." *Id.* at 550 (emphasis added; citations omitted).

Moreover, the Court ignored the significance of the fact that it had authorized discovery in the years since the motions to dismiss were briefed.[16] Further discovery has since occurred, including of Tribune's privileged materials (which privilege the Trustee has waived), and further discovery is still required.[17] But the Court never asked, or allowed an opportunity for the Trustee to state, whether additional facts had been identified.[18]

If amendment were permitted, the Trustee could assert additional facts in support of the claims that were dismissed. For instance, in granting Motion 7, the Court noted that the Trustee had failed to allege adequately that the recipients of the allegedly preferential transfers were insiders of the Company at the time they received the transfers, and thus subject to the one-year look-back preference period. (Op. 30.) If permitted to amend, the Trustee would allege facts respecting employment dates which would show that certain transfers identified on Exhibit C to the Complaint and/or subject to Motion 7 occurred at a time that the transferee was still employed by Tribune, and thus was an "insider" for purpose of the preference claim. Defendant FitzSimons, for instance, received a total of $18,850,799.67 on December 27, 2007 (FC Ex. C), but did not leave the employ of Tribune until December 31, 2007. The Court's refusal to permit re-pleading requires reconsideration.

---

[16] See ECF No. 7586 at 12–19. While the Complaint is the "fifth amended complaint," those amendments are reflections of (a) additions of new parties, and (b) amendment when the Trustee was substituted as successor plaintiff pursuant to the Plan. The Complaint has never been tested on a motion to dismiss until the motions at issue here were filed in 2014.

[17] Even more discovery is yet to take place, as the Court ordered that defendants who had moved to dismiss claims be treated as third parties in connection with discovery. And the non-moving defendants themselves have argued that they need to take written discovery before depositions should proceed. See ECF No. 7586 at 17.

[18] The Court misunderstood the scope of discovery that had been completed prior to the Complaint's filing. (Op. 6.) In fact, the bankruptcy discovery was expedited and incomplete, and for the purpose of canvassing the issues, not a full trial, and some of the main defendants in the Complaint were not even custodians for discovery during the bankruptcy proceedings and were never interviewed or deposed. See Declaration of David M. Zensky in Support of Opposition [ECF No. 6138] ¶¶ 5, 6, 7, 8, 10.

# V. CLARIFICATION WITH RESPECT TO COUNTS NOT DISMISSED BY MOTIONS 6 AND 7

The Trustee seeks clarification with respect to *FitzSimons* Counts 34 and 35 and Count 2 of the Tag-Along Actions. The Opinion grants Motions 6 and 7 in their entirety, and extends the relief to "similarly situated defendants" identified therein. (Op. 25, 27 n.11, 32 n.18.)

*FitzSimons* Count 34 and Count 2 of the Tag-Along Actions seeks to avoid and recover as fraudulent transfers three kinds of payments made to Tribune executives in 2007 and 2008— Executive Transition Payments, Phantom Equity Payments, and Success Bonus Payments, and the related Excise Tax Gross Up payments. Motion 6 sought dismissal with respect to the claims only as against the Executive Transition Payments and related Excise Tax Gross Up payments. *See* Cho Decl. in Supp. of Mot. 6 [ECF No. 5935–1, 2]. Accordingly, the Trustee seeks clarification that the fraudulent transfer claims remain against the Phantom Equity Payments and Success Bonus Payments and related Excise Tax Gross Up payments.[19]

*FitzSimons* Count 35 seeks avoidance and recovery, as preferences, of all payments listed in Exhibit C to the Complaint. Motion 7 sought dismissal with respect to only specific transfers set forth in an exhibit to a declaration by the Motion 7 defendants' counsel. *See* Cho Decl. in Supp. of Mot. 7 [ECF No. 5932–1, 2].[20] Accordingly, the Trustee seeks clarification that the preference claims remain against all of the Unchallenged Preference Transfers.

## CONCLUSION

The Trustee's request for reconsideration should be granted, and Counts 2, 3, 14, 15, and 31 should be reinstated against the Reconsideration Defendants; in the alternative, further

---

[19] Charts showing the Trustee's view of what transfers were not dismissed pursuant to the Court's Opinion granting Motion 6 are attached as Exhibit 1.

[20] A chart showing the Trustee's view of what transfers were not dismissed pursuant to the Court's Opinion granting Motion 7 is attached as Exhibit 2 (the "Unchallenged Preference Transfers"). In addition, the Court held that Count 35 remains with respect to John J. Vitanovec, who was paid within 90 days prior to Tribune's bankruptcy. (Op. 31 n.16.)

briefing on the standing and solvency issues should be permitted.  The Trustee's request for reconsideration should also be granted, to the extent of withdrawing the "with prejudice" component of dismissal of all claims.  Finally, the Trustee's request for clarification should be granted with respect to *FitzSimons* Counts 34 and 35, and Count 2 of the Tag-Along Actions.

Dated: December 17, 2018            Respectfully submitted,
        New York, NY

                                   AKIN GUMP STRAUSS HAUER
                                   & FELD LLP

                                   By: /s/ David M. Zensky_
                                     David M. Zensky