# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action<br>No. 11 MD 2296 (DLC)<br>No. 12 MC 2296 (DLC) |
| MARC S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST,<br><br>         *Plaintiff*,<br><br>    v.<br><br>DENNIS J. FITZSIMONS, *et al.*,<br><br>         *Defendants*.<br><br>    *and*<br><br>MATTERS LISTED ON APPENDIX 1 | No. 12 CV 2652 (DLC) |

**CERTAIN DEFENDANTS' OPPOSITION TO THE LITIGATION TRUSTEE'S MOTION FOR PARTIAL RECONSIDERATION AND CLARIFICATION**

# TABLE OF CONTENTS

Page

INTRODUCTION.............................................................................................................. 1

I.      BACKGROUND ...................................................................................................... 1

        A.      Lead-Up To The Tribune LBO Transactions. ............................................ 1

        B.      Approval Of The Tender Offer And Merger. ............................................. 2

        C.      June 4, 2007: Consummation Of Step One (Tender Offer). ..................... 3

        D.      December 20, 2007: Consummation Of Step Two (Merger), And
                Satisfaction Of Conditions Precedent For Consummation. ...................... 3

        E.      The Trustee's Claims Belong To Tribune's Bankruptcy Estate But
                Are Brought For The Benefit Of Tribune's Creditors. ............................. 4

ARGUMENT ...................................................................................................................... 6

I.      LEGAL STANDARD FOR MOTION TO RECONSIDER ................................. 6

II.     THE COURT SHOULD DENY RECONSIDERATION AS TO THE
        TRUSTEE'S STANDING ARGUMENT ............................................................. 7

        A.      The Trustee Cites No Overlooked Controlling Law Or Clear Error As
                To The Court's Ruling That The Trustee Must Plead Insolvency. ........... 8

        B.      There Is No Manifest Injustice In Judge Sullivan Deciding The
                Motion Without Inviting Supplemental Briefing. ................................... 11

III.    THE COURT SHOULD DENY RECONSIDERATION OF ITS RULING
        THAT THE TRUSTEE FAILED TO ALLEGE INSOLVENCY AT STEP
        ONE ...................................................................................................................... 12

        A.      The Court Did Not Overlook Controlling Case Law Or Commit Clear
                Error In Concluding That Step One (Tender Offer) And Step Two
                (Merger) Were Independent Transactions For Purposes Of Pleading
                Insolvency. ............................................................................................... 13

                1.      The Court correctly applied the three-factor test articulated in
                        *In re Sabine Oil & Gas Corp.* ................................................... 13

                2.      The Motion fails to offer any valid basis for reconsidering the
                        Court's conclusion that Step One and Step Two were
                        independent transactions. .......................................................... 15

i

B.     The Court Correctly Applied Delaware's "Inability To Pay Debts When Due" Test. ................................................ 17

C.     The Court Correctly Concluded That The Trustee Failed To Plead "Balance Sheet" Insolvency At Step One (Tender Offer). ............................. 18

IV.     THERE IS NO BASIS TO REINSTATE THE UNJUST ENRICHMENT AND D.G.C.L. CLAIMS ................................................ 21

V.     THE COURT SHOULD DENY RECONSIDERATION OF JUDGE SULLIVAN'S DISMISSAL OF THE CLAIMS WITHOUT LEAVE TO AMEND ................................................ 21

VI.     THE TRUSTEE'S REQUEST FOR CLARIFICATION AS TO MOTION 7 ......... 24

CONCLUSION ................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.)*,
    512 B.R. 447 (Bankr. S.D.N.Y. 2014), *aff'd,* 2015 WL 1208588 (S.D.N.Y.
    Mar. 17, 2015), *aff'd*, 652 F. App'x 19 (2d Cir. 2016) ........................................14

*Anders v. Verizon Commc'ns Inc.*,
    2018 WL 6605200 (S.D.N.Y. Dec. 17, 2018) ..........................................................7

*Bank of N.Y. Mellon Tr. Co., N.A. v. Liberty Media Corp.*,
    29 A.3d 225 (Del. 2011) .........................................................................................15

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ............................................................................22, 23

*Cresci v. Mohawk Valley Cmty. Coll.*,
    693 F. App'x 21 (2d Cir. 2017) ..............................................................................22

*DiBella v. Hopkins*,
    403 F.3d 102 (2d Cir. 2005) ..............................................................................7, 10

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    2013 WL 5354212 (S.D.N.Y. Sept. 25, 2013) (Cote, J.) ........................................7

*Fisk v. Letterman*,
    501 F. Supp. 2d 505 (S.D.N.Y. 2007) .....................................................................7

*Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*,
    574 B.R. 446 (Bankr. D. Del. 2017) ......................................................................14

*In re Healthco Int'l, Inc.*,
    208 B.R. 288 (Bankr. D. Mass. 1997) ...................................................................10

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    2017 WL 3614442 (S.D.N.Y. Aug. 22, 2017) .........................................................6

*JPMorgan Chase Bank v. Cook*,
    322 F. Supp. 2d 353 (S.D.N.Y. 2004) ..............................................................7, 21

*Leonhard v. United States*,
    633 F.2d 599 (2d Cir. 1980) ...................................................................................11

*Liquidation Tr. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*,
    327 B.R. 537 (D. Del. 2005) ..................................................................................14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015)......................................................................22

*Maksymowicz v. Weisman & Calderon, LLP*,
    2014 WL 1760319 (S.D.N.Y. May 2, 2014) ...........................................11

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)......................................................................21

*N. Am. Catholic Educ. Programming Found., Inc., v. Gheewalla*,
    930 A.2d 92 (Del. 2007) ..............................................................8, 10, 12

*Noddings Inv. Grp., Inc. v. Capstar Commc'ns Inc.*,
    1999 WL 182568 (Del. Ch. Mar. 24, 1999).............................................15

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*,
    2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) .................................14

*In re Opus E. LLC*,
    698 F. App'x 711 (3d Cir. 2017) ...............................................................18

*Orr v. Kinderhill Corp.*,
    991 F.2d 31 (2d Cir. 1993)...................................................................15, 23

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005)......................................................................17

*In re Perry H. Koplik & Sons, Inc.*,
    476 B.R. 746 (Bankr. S.D.N.Y. 2012) ......................................................10

*Quadrant Structured Prods. Co. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014)....................................................9, 10, 12

*Quadrant Structured Prods. Co. v. Vertin*,
    115 A.3d 535 (Del. Ch. 2015)......................................................18, 19, 20

*Rajala v. Gardner*,
    2013 WL 12250906 (D. Kan. July 3, 2013) .............................................10

*In re Sabine Oil & Gas Corp.*,
    547 B.R. 503 (Bankr. S.D.N.Y. 2016), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016) .......................13

*SB Liquidation Tr. v. Preferred Bank (In re Syntax–Brillian Corp.)*,
    2011 WL 3101809 (Bankr. D. Del. July 25, 2011), *aff'd in part, vacated in part*, 573 F. App'x 154 (3d Cir. 2014)......................................................14

*Snider v. Melindez*,
  199 F.3d 108 (2d Cir. 1999)............................................................................11

*Stevens v. City of N.Y.*,
  2012 WL 5862659 (S.D.N.Y. Nov. 14, 2012) ..................................................7

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014)............................................................................22

*In re Teleglobe Commc'ns Corp.*,
  392 B.R. 561 (Bankr. D. Del. 2008) ...............................................................18

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006).........................................................8, 9, 11, 12

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) ..........................................................14, 18

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ........................................................25

*In re Tropicana Entm't, LLC*,
  520 B.R. 455 (Bankr. D. Del. 2014) ...............................................8, 9, 11, 12

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
  817 F. Supp. 2d 934 (N.D. Tex. 2011) ............................................................10

*United States v. Tabor Ct. Realty Corp.*,
  803 F.2d 1288 (3d Cir. 1986)......................................................................13, 14

*Zappin v. Doyle*,
  2018 WL 2376307 (S.D.N.Y. May 18, 2018) ..................................................11

**Statutes**

11 U.S.C. § 101(31)(B).............................................................................................23

11 U.S.C. § 547.........................................................................................................24

11 U.S.C. § 547(b)(4)(A)..........................................................................................23

11 U.S.C. § 548.........................................................................................................24

11 U.S.C. § 548(a)(1)(A)...........................................................................................24

11 U.S.C. § 548(a)(1)(B)...........................................................................................24

**Rules**

Fed. R. Civ. P. 25(a) ...................................................................................................25

In his Motion For Partial Reconsideration And For Clarification (Dkt. 5962, 5963)[1] ("Motion") regarding the Court's November 30, 2018 Motion to Dismiss Opinion (Dkt. 5952) ("Opinion"), the Litigation Trustee ("Trustee") points to no controlling decisions of law or factual matters that the Court failed to consider in its Opinion. Instead, the Trustee asks this Court to reexamine the arguments it has already considered and rejected. This Court's Opinion, however, was not a trial balloon, and it is inappropriate for the Trustee to exploit a change in judges as an opportunity to seek appellate-like review of the Court's decision, contrary to the standards for reconsideration. Accordingly, the Robert R. McCormick Foundation and Cantigny Foundation (the "Foundations"), Chandler Trust No. 1, Chandler Trust No. 2 and the Chandler Sub-Trusts (collectively with the Trustees and Successors as such terms are defined in footnote 31 below, the "Chandler Trusts"), Jeffrey Chandler (through his estate representatives, i.e., Successors), Roger Goodan, and William Stinehart, Jr. (the "Chandler Directors"), and the Motion 7 Movants[2] respectfully request that the Trustee's Motion be denied.

## I.     BACKGROUND

### A.     Lead-Up To The Tribune LBO Transactions.

In late 2005, in response to a decline in the newspaper publishing industry, Tribune Company ("Tribune") initiated a strategic review of its business.[3] (Dkt. 1052, 5th Am. Compl.

---

[1]     Unless otherwise noted, all references to the docket refer to Case No. 12-CV-2652.

[2]     The Motion 7 Movants are:  Betty Ellen Berlamino, Tom E. Ehlmann, James L. Ellis, Dennis J. FitzSimons, Vincent R. Giannini, Donald C. Grenesko, John R. Hendricks, David Dean Hiller, Peter A. Knapp, Timothy P. Knight, Timothy J. Landon, Thomas D. Leach, Luis E. Lewin, Brian F. Litman, R. Mark Mallory, Richard H. Malone, Gina M. Mazzaferri, David P. Murphy, Pamela S. Pearson, John F. Poelking, John E. Reardon, Irene M.F. Sewell, Patrick Shanahan, Scott C. Smith, Kathleen M. Waltz, and Gary Weitman.  The Motion 7 Movants join this brief with respect to Argument Sections V and VI.  Defendants Irving Quimby, Mark Hianik, John Worthington, Tom Finke, and Crane Kenney also join with respect to these sections.

[3]     All well-pled factual allegations are assumed here to be true, solely for purposes of the Motion.

("Compl.") ¶ 126.)  At that time, Tribune's shares were publicly held by "[t]ens of thousands" of shareholders.  (*Id*. ¶ 94.)  The Foundations and the Chandler Trusts held, respectively, 13% and 20% of Tribune's outstanding shares.  (*Id*. ¶¶ 491-492.)  Tribune's board of directors ("Board") consisted of eleven members.  (*Id*. ¶¶ 27-37.)  While four Board members were affiliated with either the Chandler Trusts or the Foundations, the other seven had no affiliation with the Foundations or the Chandler Trusts, nor were they members of Tribune's management.  (*Id*. ¶¶ 28-34.)  In September 2006, the Board appointed a special committee of independent directors ("Special Committee") "to oversee the Company's exploration" of strategic options for Tribune.  (*Id*. ¶¶ 9, 136.)  No member of the Special Committee was affiliated with either the Foundations or the Chandler Trusts, and none was a member of Tribune's management.  (*Id*. ¶¶ 28-34.)

**B.**      **Approval Of The Tender Offer And Merger.**

On April 1, 2007, the Special Committee unanimously recommended that the Board approve a series of transactions that, if numerous conditions precedent were satisfied and the transactions were fully consummated, would result in a leveraged buyout of Tribune ("LBO Transactions").  The Board, with the exception of the Chandler Directors, who abstained from voting and "remained silent" on the Board's consideration of the LBO Transactions, and Dudley S. Taft, who was absent, voted unanimously to approve the LBO Transactions.  (*Id*. ¶¶ 211, 281.)

The LBO Transactions generally consisted of: (1) a tender offer for approximately 50% of Tribune's outstanding common stock ("Step One"); and (2) upon the satisfaction of numerous conditions precedent, a subsequent cash-out merger whereby a newly formed employee stock ownership plan ("ESOP") would acquire Tribune's outstanding common stock and the remaining public shares would be exchanged for $34 per share ("Step Two").  (*Id*. ¶ 211.)  The Complaint does not allege that the Chandler Trusts or the Foundations, which received the same consideration

($34 per share) as all other shareholders for their stock, received any special payment or premium in the LBO Transactions.

### C.    June 4, 2007: Consummation Of Step One (Tender Offer).

On May 24, 2007, Valuation Research Corporation ("VRC") delivered a solvency opinion to Tribune "which concluded that the Company would be solvent immediately after and giving effect to the consummation of the Step One transactions."  (*Id*. ¶¶ 89, 279.)  A solvency opinion "is the central safeguard against overloading the company with debt and putting existing creditors at risk."  (*Id*. ¶ 175.)  Additionally, Duff & Phelps, LLC provided an opinion to GreatBanc Trust Company ("GreatBanc") (trustee of the ESOP), which "was 'the equivalent of a solvency opinion,' with the exception that it took Tribune's expected tax savings into account."  (Op. 5 (quoting Compl. ¶ 189).)  On June 4, 2007, Tribune consummated Step One by repurchasing 126 million shares of common stock.  (Compl. ¶ 287.)

Immediately after Step One closed in June 2007, the Chandler Trusts sold their remaining stock in a private transaction, and the Chandler Directors resigned from the Board.  (Op. 6; Compl. ¶¶ 35-37, 72.)  The Complaint does not contain any allegations concerning the Chandler Trusts or the Chandler Directors following Step One, as they no longer had any connection to Tribune. Although the Foundations allegedly held some stock until Step Two, the Motion does not dispute that "the Trustee fails to allege *any* activity by the Foundations following the close of Step One, let alone activity demonstrating control over Tribune."  (Op. 17.)

### D.    December 20, 2007: Consummation Of Step Two (Merger), And Satisfaction Of Conditions Precedent For Consummation.

As Judge Sullivan explained, Step Two was "not . . . inevitable" (Op. 15), because it was contingent upon the occurrence of numerous conditions precedent and was subject to various "safeguard[s]" well after the June 2007 consummation of Step One.  (Compl. ¶ 175.)  These

conditions included: (1) shareholder approval of the Step Two merger (*id.* ¶ 352); (2) the issuance of a separate solvency opinion, which the Complaint describes as "an opportunity for Tribune's fiduciaries to halt the LBO if it became apparent that the transaction posed unacceptable risks to the Company" (*id.* ¶ 17); and (3) Federal Communications Commission ("FCC") merger approval, which the Foundations and the Chandler Trusts believed presented "completion risk," meaning "risk that . . . the deal would not actually close" (*id.* ¶ 149).

Accordingly, as the Court noted, the Trustee has admitted that there were several "scenarios pursuant to which Step Two would not close" (Op. 14), and has asserted that numerous parties (including the Director Defendants, the Officer Defendants, the Subsidiary D&O Defendants, GreatBanc, and Zell) purportedly had the ability to "halt" Step Two. (*See* Compl. ¶¶ 196, 327, 395, 406, 418, 477.) The Trustee also alleged that Step Two ***would not*** have occurred if certain parties had not allegedly sought to circumvent the solvency opinion requirement and other safeguards, and that, even then, further action was required to prevent the LBO lenders from "backing out of the deal." (*See* Compl. ¶¶ 240, 249, 303-04, 312-317, 340, 349, 515.)

On August 21, 2007, Tribune's remaining shareholders approved the Step Two merger with 97% of voting shareholders voting to approve the merger. (*Id.* ¶ 352.) On December 18, 2007, the Special Committee recommended the Board rely on VRC's solvency opinion and effectuate the merger. (*Id.* ¶ 326.) On December 20, 2007, VRC provided a Step Two solvency opinion, and Tribune consummated the Step Two merger. (*Id.* ¶¶ 325, 353.) Following Step Two, Tribune "became a private company, wholly owned by the ESOP." (*Id.* ¶ 355.)

## E. The Trustee's Claims Belong To Tribune's Bankruptcy Estate But Are Brought For The Benefit Of Tribune's Creditors.

On December 8, 2008, over 18 months after Step One (and nearly one year after Step Two), and "in the midst of an unprecedented decline" in "the newspaper industry . . . which ha[d] only

been exacerbated by the . . . recession," Tribune and certain subsidiaries filed petitions for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). (*Id*. ¶ 359.) In 2010, the Official Committee of Unsecured Creditors ("Creditors Committee") appointed in Tribune's bankruptcy case "sought standing in the Bankruptcy Court to assert claims on behalf of Tribune's bankruptcy estate" (Op. 6) and commenced this action in the Bankruptcy Court on November 1, 2010.[4]

On December 19, 2011, the Judicial Panel on Multidistrict Litigation consolidated over 70 lawsuits brought by former Tribune creditors ("Individual Creditor Plaintiffs") seeking to avoid the LBO Transactions as constructive fraudulent conveyances under state law. (Op. 7.) On March 20, 2012, the Creditors Committee action was also transferred to this Court's MDL proceedings. On July 23, 2012, after the Creditors Committee had prosecuted this action for over 20 months and had filed four amended complaints, the Bankruptcy Court confirmed a plan of reorganization for Tribune ("Plan")[5] that transferred to the Trustee the right to bring claims on behalf of Tribune's estate. (Compl. ¶ 26; Op. 7.) The Trustee and the Individual Creditor Plaintiffs have purportedly agreed to share any proceeds from their lawsuits.[6]

On May 23, 2014, the Chandler Trusts and the Foundations moved to dismiss the claims against them for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. (Dkt. 4463, 4464.) The Chandler Directors moved to dismiss the same claims brought

---

[4]  *See Official Comm. of Unsecured Creditors of Tribune Co., On Behalf of Tribune Co. v. FitzSimons,* Case No. 08-013141-KJC (Bankr. D. Del.) ("Bankr. Dkt."), Bankr. Dkt. 6202 (filed Nov. 1, 2010).

[5]  Fourth Amended Joint Plan of Reorganization, Bankr. Dkt. 12072-2 (cited at Mot. 4 n.3).

[6]  *See* Case No. 11-MD-2296, Dkt. 2086 at 38 (Dec. 21, 2012); *In Re: Tribune Co. Fraudulent Conveyance Litig.*, Case No. 13-3992-cv(L), Dkt. 114 at 73 (2d Cir. Dec. 20, 2013).

against them (Dkt. 4465, 4467, 4469), in addition to claims for violations of §§ 160 and 173 of the

Delaware General Corporation Law ("D.G.C.L.").[7]

The Trustee's Omnibus Opposition to the dismissal motions made clear that this action

seeks to vindicate the defendants' alleged breaches of fiduciary duties that were owed "to [Tribune]

***and its creditors, not its shareholders***," and that this action, including claims against thousands of

former Tribune shareholders, is brought "***for the benefit of Tribune's creditors***."[8]  The Complaint

is also replete with allegations that the Trustee brought this action "on behalf of the beneficiaries

of the Litigation Trust, the Debtors' creditors" (Compl. ¶ 26), and that an objective of this action

is to "requir[e] Tribune's shareholders to restore to Tribune's unpaid creditors the priority of

payment to which they are legally entitled" (*id.* ¶ 21; *see also id.* ¶¶ 1, 6, 11, 20, 124, 207, 213).

Accordingly, while this action involves "claims on behalf of Tribune's bankruptcy estate," its

purpose is "to recover assets for Tribune's creditors," thus the "Trustee … represents the interests

of Tribune's creditors in this action."  (Op. 2, 6, 12.)

## ARGUMENT

## I.    LEGAL STANDARD FOR MOTION TO RECONSIDER

As the Trustee concedes, "[r]econsideration is infrequently granted."  (Mot. 1.)  Indeed,

"[r]econsideration of a previous order is an 'extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources.'"  *Homeward Residential, Inc.*

*v. Sand Canyon Corp.*, 2017 WL 3614442, at *3 (S.D.N.Y. Aug. 22, 2017) (citation omitted).  "A

court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings

---

[7]    The Motion 7 Movants also filed their motion to dismiss certain § 547 claims alleged against them in
*FitzSimons* and the Tag-Along Actions on May 23, 2014.  (S.D.N.Y. No. 11-MD-02296-DLC, Dkt. 6017.)

[8]    Dkt. 6137 (Litig. Tr. Omnibus Opp. to Mot. to Dismiss ("Omnibus Opp.")) at 33, 122  (emphases added); *see id.*
at 65 ("Count Fourteen of the Complaint alleges that Tribune's Controlling Shareholders breached their fiduciary
duties ***to Tribune's creditors***." (emphasis added)); *id.* at 107 ("[T]he LBO itself was agreed to and consummated
with an intent to hinder, delay and/or defraud ***Tribune's creditors***." (emphasis added)).

on previously considered issues and to prevent the Rule from being used . . . as a substitute for appealing a final judgment." *Fisk v. Letterman*, 501 F. Supp. 2d 505, 530 (S.D.N.Y. 2007). "Generally, a party seeking reconsideration must show either 'an intervening change of ***controlling law***, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Anders v. Verizon Commc'ns Inc.*, 2018 WL 6605200, at *2 (S.D.N.Y. Dec. 17, 2018) (emphasis added; citation omitted).  Thus, "[a] motion for reconsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2013 WL 5354212, at *1 (S.D.N.Y. Sept. 25, 2013) (citation omitted) (Cote, J.).  "Controlling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court." *Stevens v. City of N.Y.*, 2012 WL 5862659, at *1 (S.D.N.Y. Nov. 14, 2012) (citation omitted).  On issues of state law, opinions of the state's highest court—but not its trial or intermediate appellate courts—are also deemed "controlling." *See, e.g.*, *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).  Additionally, where reconsideration will not alter the resolution of the underlying motion, reconsideration should be denied. *See JPMorgan Chase Bank v. Cook*, 322 F. Supp. 2d 353, 58-59 (S.D.N.Y. 2004) (denying reconsideration that would lead to "purely theoretical . . . exercise . . . [whose] outcome cannot possibly alter the result").  The Trustee has not met this high reconsideration burden.

## II.  THE COURT SHOULD DENY RECONSIDERATION AS TO THE TRUSTEE'S STANDING ARGUMENT

The Trustee first argues that Judge Sullivan erred in dismissing the fiduciary claims as to Step One on the grounds that the Trustee lacks standing to bring such a claim for failing to plead Tribune's insolvency as a result of the alleged breach.  According to the Trustee, this is wrong because the Trustee is vested with the right to bring the legal claims of the entire Tribune estate, not just its creditors, rendering insolvency irrelevant. (Mot. 6-7.) The Trustee is mistaken.  Under

applicable law, the Trustee cannot proceed with a fiduciary-breach claim without adequately pleading that Tribune was insolvent at Step One or that Step One rendered Tribune insolvent. The Trustee identifies no "controlling law" that the Court overlooked or any clear legal error on this point. To the contrary, Judge Sullivan's opinion evaluates all the authorities that the Trustee cites, and a difference of interpretation is no basis for reconsideration.

### A. The Trustee Cites No Overlooked Controlling Law Or Clear Error As To The Court's Ruling That The Trustee Must Plead Insolvency.

Judge Sullivan concluded that when a corporation is **solvent**, conduct that enriches its shareholders cannot serve as the basis of a fiduciary breach unless the conduct "directly and definitively caused the corporation to become insolvent" under Delaware law. (Op. 12.) This is because, in times of solvency, "[t]he directors of Delaware corporations have the legal responsibility to manage the business of a corporation *for the benefit of its shareholders owners*." *N. Am. Catholic Educ. Programming Found., Inc., v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) (emphasis added; citation and quotations omitted) (cited at Op. 10-12). As a result, fiduciaries are "permitted to act to benefit" the shareholders in their decision-making. *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 202 (Del. Ch. 2006) (Strine, V.C.) (cited at Op. 11-12).[9] This license to pursue transactions that benefit shareholders extends until the moment of insolvency, at which point the corporation's "creditors take the place of the shareholders as the residual beneficiaries of any increase in value." (Op. 11, citing *Gheewalla*, 930 A.2d at 101.) Thus, on a fiduciary-breach claim for favoring shareholders' interests at the creditors' expense, a

---

[9] *See also id.* (absent insolvency, subsidiary's directors "were free to manage [subsidiary] for the best interests of Trenwick," the subsidiary's sole shareholder); *In re Tropicana Entm't, LLC*, 520 B.R. 455, 471 (Bankr. D. Del. 2014) (director "was obligated to manage the *solvent* [companies] in the best interests" of their parent and its sole shareholder (emphasis in original)).

plaintiff "must allege either that a corporation was insolvent or became insolvent as a result of the misconduct." *Tropicana*, 520 B.R. at 471 (citing *Trenwick*, 906 A.2d at 202).

This insolvency requirement applies equally to fiduciary-breach claims brought by a litigation trustee acting for the benefit of creditors as to claims brought derivatively by individual creditors. Indeed, in both cases on which the Court principally relied—*Trenwick* and *Tropicana*—the courts dismissed fiduciary-breach claims asserted by *a litigation trust* and *litigation trustee*, respectively.[10] *Trenwick*, 906 A.2d at 172, 202; *Tropicana*, 520 B.R. at 461-62. Like here, in *Tropicana* and *Trenwick*, a bankruptcy reorganization plan authorized the litigation trust or litigation trustee to assert all fiduciary-breach claims that had belonged to the debtor. *Trenwick*, 906 A.2d at 189-90; *Tropicana*, 520 B.R. at 461 n.5, 470.

Further, in each case, the court concluded the trust or trustee had failed to adequately plead the company had been insolvent or rendered insolvent by the challenged transactions.[11] Given the inadequate allegations of insolvency, the court in *Trenwick* dismissed the litigation trust's claim for both lack of standing and failure to state a claim. 906 A.2d at 200. Likewise, the court in *Tropicana* granted the defendants' motion, which sought dismissal of the litigation trust's claims on standing grounds. 520 B.R. at 469, 471. Accordingly, Judge Sullivan's analysis in no way departs from, but rather squarely tracks, relevant precedent.

The Trustee's argument that *Trenwick* and Judge Sullivan's Opinion (and, implicitly, *Tropicana*) are in tension with *Quadrant Structured Prods. Co. v. Vertin* ("*Quadrant I*"), 102 A.3d 155 (Del. Ch. 2014), is procedurally and substantively flawed. (Mot. 11-12.) Procedurally, a

---

[10] Tellingly, despite Judge Sullivan's citation to *Tropicana*, and its close resemblance to this case, the Trustee here does not attempt to distinguish it. The Trustee's Motion, in fact, **does not even once mention *Tropicana***.

[11] *Trenwick*, 906 A.2d at 202 ("[T]he complaint fails to plead facts . . . that Trenwick America was insolvent before any of the challenged transactions or that any of the challenged transactions would, when consummated, leave Trenwick America unable to satisfy its creditors."); *Tropicana*, 520 B.R. at 472 ("There are no facts to provide a basis from which I can infer whether . . . the Debtors were insolvent or when insolvency occurred.").

purported disagreement among Delaware Chancery judges, or between Judge Sullivan and a Chancery Court opinion, would provide no basis for reconsideration. *See DiBella*, 403 F.3d at 111-12. Substantively, the purported disagreement is manufactured, as *Quadrant I* **supports** dismissal here. There, the court reiterated that under Delaware law, a solvent company's directors "are obligated only to manage the affairs of the [company] in the best interests of the parent and its shareholders," thus "[a] transfer of value from a solvent subsidiary to the holder of 100% of the equity cannot give rise to a fiduciary wrong." 102 A.3d at 184 (citation omitted).[12]

The Trustee fares no better with the other four cases he cites on the insolvency threshold requirement. First, all are federal district and bankruptcy court opinions, and three are from courts in Kansas, Massachusetts, and Texas. Thus, none is "controlling" for reconsideration purposes.[13] Second, these cases do not contradict Judge Sullivan's Opinion, and the ones that are at all on point directly support it. *Koplik* and *Rajala* are inapposite because they are not based on conduct enriching the corporation's shareholders; rather, they concern alleged misconduct by management that would be as injurious to shareholders as to any of the corporation's other constituents.[14] And the courts in *U.S. Bank* and *Healthco* expressly agree with the legal basis for Judge Sullivan's ruling.[15] The Trustee, in short, cites no authority, much less controlling authority, that is contrary

---

[12] Moreover, contrary to the Trustee's suggestion (Mot. 10-11), the only fiduciary-breach claims the *Quadrant I* court allowed to proceed concerned transfers made **after** the debtor was already insolvent. *Id.* at 168-69, 177.

[13] *See U.S. Bank N.A. v. Verizon Commc'ns Inc.*, 817 F. Supp. 2d 934 (N.D. Tex. 2011) (Mot. 9); *In re Healthco Int'l, Inc.*, 208 B.R. 288 (Bankr. D. Mass. 1997) (Mot. 8); *Rajala v. Gardner*, 2013 WL 12250906 (D. Kan. July 3, 2013) (Op. 8); *In re Perry H. Koplik & Sons, Inc.*, 476 B.R. 746 (Bankr. S.D.N.Y. 2012) (Mot. 8).

[14] *See Koplik*, 476 B.R. at 753, 758-59 (claim based on alleged improper credit and loans provided to customer); *Rajala*, 2013 WL 12250906, at *15, *17-18 (claim based on alleged inflated salary to individual officers and officers' unauthorized personal use of business opportunities).

[15] *See U.S. Bank*, 817 F. Supp. 2d at 943 (directors are permitted to manage affairs of company "in the best interests of . . . its shareholders," but "[t]his rule . . . does not apply when the [company] is insolvent or when the transaction at issue would render the [company] unable to meet its legal obligations" (citing *Gheewalla*)); *Healthco*, 208 B.R. at 300-01 ("Normally, what is good for a corporation's stockholders is good for the corporation. . . . When a transaction renders a corporation insolvent, . . . the rights of creditors become paramount. In those circumstances . . . a representative of the corporation may recover damage from the defaulting directors.").

to Judge Sullivan's Opinion (which itself follows *Trenwick* and *Tropicana*), requiring that the Trustee plead Tribune was rendered insolvent at Step One.

As for this Court's dismissal of the Trustee's fiduciary-breach claim at Step Two, the Trustee's standing argument is beside the point. Judge Sullivan did not dismiss the claim as to Step Two on grounds that the Trustee had failed to plead insolvency. Rather, the Court dismissed the fiduciary-breach claim as to Step Two because: (1) the Chandler Trusts no longer owned any Tribune stock and the Chandler Directors had resigned from the Board following Step One; and (2) the Trustee failed to plead any conduct by the Foundations after Step One, let alone activity sufficient to show control over Tribune or participation in any alleged misconduct. (Op. 16-17.) The Trustee has not argued for reconsideration of the Court's assessment on those points. Thus, the Trustee's standing-related arguments fail at both Step One and Step Two.

## B. There Is No Manifest Injustice In Judge Sullivan Deciding The Motion Without Inviting Supplemental Briefing.

The Trustee separately asserts that it was manifestly unjust for the Court to have dismissed the fiduciary claims on grounds that were not briefed. (Mot. 12.) But the Trustee has failed to identify any authority, controlling or otherwise, for the proposition that a court must restrict itself to arguments advanced by the parties on a motion. That is because a court deciding a motion to dismiss may rely on alternative grounds and "has the power to dismiss a complaint *sua sponte* for failure to state a claim." *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980).[16] Thus, courts have consistently rejected motions for reconsideration premised on the court's dismissal based on grounds the parties did not brief or argue.[17]

---

[16] *See also Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) ("Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule.").

[17] *See, e.g.*, *Zappin v. Doyle*, 2018 WL 2376307, at *1 (S.D.N.Y. May 18, 2018); *Maksymowicz v. Weisman & Calderon, LLP*, 2014 WL 1760319, at *1 (S.D.N.Y. May 2, 2014).

In any event, the Trustee has failed to identify any law or facts he was unable to present, much less that he suffered a deprivation that amounts to manifest injustice. First, contrary to the Trustee's argument, he **did** present argument that the Complaint asserts facts sufficient to support a finding of insolvency at Step One and Step Two. (*See, e.g.*, Omnibus Opp. at 33-39 (section entitled "The Complaint More Than Sufficiently Pleads That Tribune Was Insolvent At The Time Of Both Step One And Step Two").) Second, the Trustee states he would have pointed to the relevant Tribune Plan provisions and case law relating to the Trustee's ownership of the Tribune estate's relevant legal claims. (Mot. 12.) But, like the litigation trustee and litigation trust in *Tropicana* and *Trenwick*, the Trustee's ownership of the estate's claims here does not excuse his failure to adequately plead insolvency. Third, the Trustee suggests he would have "argue[d] for the correct interpretation of *Trenwick*, or to present *Quadrant I*, which was decided after the Motions were fully briefed." (Mot. 12-13.) Judge Sullivan's Opinion, however, **cites and discusses these very cases**. (Op. 11.) While the Trustee might disagree with the Court's interpretation of these cases, Judge Sullivan plainly did not "overlook" this case law, and, as discussed, his interpretation of these cases was manifestly correct.

## III. THE COURT SHOULD DENY RECONSIDERATION OF ITS RULING THAT THE TRUSTEE FAILED TO ALLEGE INSOLVENCY AT STEP ONE

In reviewing the Complaint's allegations of insolvency, the Court concluded that Step One and Step Two must be analyzed as independent transactions, and it then analyzed the Trustee's fiduciary-breach claim pleadings under the two insolvency tests relevant under Delaware law: (1) the "inability to meet maturing obligations as they fall due in the ordinary course of business" test; and (2) the "balance sheet" test. (Op. 12 (citing *Gheewalla*, 930 A.2d at 92).) The Trustee fails to identify any controlling law contrary to this Court's decision. In concluding that the

Trustee had failed to plead that Tribune was insolvent as of the Step One tender offer under either

test, the Court committed no error of law, let alone "clear error."

A.  **The Court Did Not Overlook Controlling Case Law Or Commit Clear Error In Concluding That Step One (Tender Offer) And Step Two (Merger) Were Independent Transactions For Purposes Of Pleading Insolvency.**

1.  **The Court correctly applied the three-factor test articulated in *In re Sabine Oil & Gas Corp.***

The Trustee argues that the Court erred by applying the three-factor test for collapse

articulated in *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 541 (Bankr. S.D.N.Y. 2016), *aff'd*, 562

B.R. 211 (S.D.N.Y. 2016), in determining that the Complaint did not allege facts sufficient to

justify viewing Step One and Step Two "as a unitary transaction" for purposes of considering

Tribune's solvency at Step One. (Mot. 16-18.) In fact, the Court's use of *Sabine* is consistent with

the analysis of courts within both the Second and Third Circuits.

Similar to this case, *Sabine* considered fiduciary-breach claims under Delaware and New

York law and considered whether to collapse a series of transactions and view them as one

transaction with respect to fraudulent transfer claims under federal and state law. *Id*. at 541. As

explained in the Opinion, the *Sabine* court "identified three factors to be considered in determining

whether to apply the 'collapsing doctrine' to a multilateral transaction: '[1] [w]hether all of the

parties involved had knowledge of the multiple transactions; [2] [w]hether each transaction would

have occurred on its own; and [3] [w]hether each transaction was dependent or conditioned on

other transactions.'" (Op. 14 (citing *Sabine*, 547 B.R. at 541).) The three-factor test applied in

*Sabine* and by this Court is derived from the Third Circuit's decision in *United States v. Tabor Ct.*

*Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir. 1986), and is regularly applied by courts in Delaware,

including in cases involving fiduciary-breach claims under Delaware law, and fraudulent transfer claims under federal or state law, including in some of the same cases the Trustee cites.[18]

In fact, the Bankruptcy Court in Delaware applied the three-factor test in analyzing insolvency and the Trustee's claims in connection with confirmation of the Tribune Plan. *See In re Tribune Co.*, 464 B.R. 126, 166-67 (Bankr. D. Del. 2011) ("I am not willing to dispense with the third factor in the particular collapsing question at issue here (i.e., for purposes of determining solvency rather than reasonably equivalent value). . . .  [I]f the Step One transactions could stand on their own as of the closing of Step One, then it is not appropriate to collapse the steps for determining solvency at that time."); *accord Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.)*, 512 B.R. 447, 490-91 (Bankr. S.D.N.Y. 2014) (citing *Tabor* and Delaware bankruptcy cases following *Tabor* with approval), *aff'd*, 2015 WL 1208588 (S.D.N.Y. Mar. 17, 2015), *aff'd*, 652 F. App'x 19 (2d Cir. 2016).

The Motion cites a few Delaware cases that have considered three different tests for collapse (the "end result test," the "interdependence test," and the "binding-commitment test") and argues that the Court "erred by not applying the proper disjunctive multi-factor balancing test employed by such cases."  (Mot. 17-18.)  However, none of the cases cited is controlling, and, in any event, all are inapposite.  None involves a decision to collapse a series of transactions for purposes of determining solvency by treating a company as having debt obligations before it

---

[18]    *See, e.g.*, *Liquidation Tr. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 546-47 (D. Del. 2005) (Mot. 17-18); *Official Comm. of Unsecured Creditors v. CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*, 2011 WL 4345204, at *5 (Bankr. D. Del. Sept. 15, 2011) (Mot. 17); *see also Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 574 B.R. 446, 466-67 (Bankr. D. Del. 2017) (applying three-factor test in considering collapse); *SB Liquidation Tr. v. Preferred Bank (In re Syntax–Brillian Corp.)*, 2011 WL 3101809, at *11 (Bankr. D. Del. July 25, 2011) (same), *aff'd in part, vacated in part*, 573 F. App'x 154 (3d Cir. 2014).

actually incurred them, as the Trustee seeks to do here, and several of them interpret New York law, not Delaware law.[19]

In short, the Trustee fails to explain why any of the cases it cites is controlling or why the Court must apply a different test in analyzing collapse in a solvency context. The Court appropriately followed other Delaware and New York courts in applying the three-factor test.

2.    **The Motion fails to offer any valid basis for reconsidering the Court's conclusion that Step One and Step Two were independent transactions.**

As the Court noted, the Complaint contains numerous allegations that support its conclusion that Step One and Step Two were independent transactions, including the Trustee's admission that there were several "scenarios pursuant to which Step Two would not close." (Op. 14.) The Trustee also admits that: (1) Step Two was contingent upon the occurrence of multiple conditions precedent (*e.g.*, FCC approval) and was subject to various "safeguard[s]," including a solvency opinion, compliance with financial covenants, and the absence of a "Company Material Adverse Effect" (Compl. ¶¶ 175, 196, 302, 303, 349)[20]; and (2) the Foundations, the Chandler Trusts and the "LBO Lenders" specifically expressed concerns regarding the "completion risk" that "the deal would not actually close" (*id.* ¶¶ 149, 302 (cited at Op. 14)). The Complaint further alleges that other parties, any of whom purportedly could have "halted" the Step Two merger, allegedly "fail[ed] to act" to prevent Step Two from proceeding and "ultimately allow[ed] the LBO

---

[19]    *See Bank of N.Y. Mellon Tr. Co., N.A. v. Liberty Media Corp.*, 29 A.3d 225, 243 (Del. 2011) (interpreting bond indenture under New York law); *Noddings Inv. Grp., Inc. v. Capstar Commc'ns Inc.*, 1999 WL 182568, at *7 (Del. Ch. Mar. 24, 1999) (interpreting warrant agreement under New York law); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (analyzing collapse under the New York Uniform Fraudulent Conveyance Act).

[20]    *See* Dkt. 5292 (Op. and Order dated Jan. 6, 2017 ("Count One Decision")) at 13 ("[W]hile the Trustee at times suggests that the effectuation of Step Two was already a fait accompli following implementation of Step One (FitzSimons Compl. ¶¶ 238–43), he also argues that without Valuation Research's Step Two solvency opinion, the Board would not have permitted the LBO to proceed (*id.* ¶ 17; Opp'n 25–26).");  Compl. ¶¶ 379 (VRC's solvency opinions were "crucial to the consummation of the LBO"), 395 (same), 406 (same), 515 (same).

to close."[21]  In other words, Step Two did not follow automatically from Step One, but, according to the Complaint, required purported acts or omissions by numerous other parties more than six months after Step One closed in order for Step Two to proceed.

The LBO Transactions were also structured so that, if the Step Two merger did not occur, the Step One tender offer could stand on its own, similar to the leveraged recapitalization that Tribune consummated in 2006 and the "more modest recapitalization plan" that Tribune considered in March 2007.  (Compl. ¶¶ 127, 168.)  These facts more than sufficiently support the Court's conclusion that "Step One and Step Two of the LBO were independent transactions" to be considered separately for purposes of analyzing solvency.  (Op. 15.)

The Trustee argues that the Court "erred by overlooking a host of allegations supporting collapsing [sic]," and that "[t]he Opinion wrongly holds the Trustee to proving that Step Two was a 'binding commitment.'"  (Mot. 18-19.)  However, the Opinion never states that the Trustee was required to plead that Step Two was a "binding commitment," and it expressly acknowledges the Trustee's allegations regarding collapse.  (*See* Op. 14 (identifying Complaint's allegations that "the relevant parties clearly knew about both steps of the LBO, and, in fact, anticipated that both steps would be consummated").)  The Court reasonably concluded that the Complaint contains numerous "allegations that bely the Trustee's assertion that the LBO was one, unitary transaction," including the admission there was a meaningful likelihood and several scenarios pursuant to which Step Two would not occur.  (*Id*. 14-15.)[22]  The Trustee's disagreement with the Court's assessment of the adequacy of his allegations is not a basis for reconsideration.

---

[21]  *See* Compl. ¶¶ 196 (GreatBanc), 327 (Director Defendants), 395 (same), 406 (Officer Defendants), 418 (Zell), 477 (Subsidiary D&O Defendants).

[22]  For the same reasons stated by the Court, it is clear that Step One and Step Two should not be collapsed to determine solvency even if the Trustee's proposed three-part test were to apply.

**B.  The Court Correctly Applied Delaware's "Inability To Pay Debts When Due" Test.**

The Trustee asserts that the Court erred in relying on *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005)—a controlling Second Circuit opinion—for the proposition that the "inability to meet maturing obligations" insolvency test "looks solely at *whether the corporation has been paying bills on a timely basis*."  (Op. 16 (emphasis Judge Sullivan's).)  In *Pereira*, the Second Circuit rejected the application of a cash flow insolvency test that looked at the company's "ability to meet cash and capital requirements in the future, including those required to repay the additional borrowings that were being incurred to fund [company]'s cash flow deficits."  413 F.3d at 343. The Second Circuit held such a forward-looking cash flow test was contrary to Delaware's insolvency tests, as it "projects into the future to determine whether capital will remain adequate over time," whereas "the Delaware test looks solely at whether the corporation has been paying bills on a timely basis and/or whether its liabilities exceed its assets."  *Id.*  Judge Sullivan applied the latter, concluding the Trustee's allegations did not satisfy the "Delaware test."  (Op. 16.)

Specifically, Judge Sullivan found that "the Trustee never alleges that Tribune failed to pay any of its debts in a timely manner – prior to Step One *or* Step Two."  (Op. 16.)  Given that Tribune continued to satisfy all its debt obligations for the many months following the Step One tender offer, up through at least the consummation of Step Two, the Court was correct in concluding that the Trustee's "claim that Tribune was insolvent pursuant to the 'inability to pay debts when due' test must fail."  (Op. 16.)

Rather than disputing this Court's application of *Pereira*, the Trustee attempts to argue that *Pereira* was wrongly decided or has been superseded by other decisions.  (Mot. 15-16.)  These arguments are groundless.  In attacking *Pereira*, the Trustee inexplicably relies on cases from federal district and bankruptcy courts, and one from the Third Circuit.  None of these rulings does,

or could, displace the Second Circuit's interpretation of Delaware law, or constitute "controlling" authority appropriate for argument on reconsideration.

Moreover, most of the cases the Trustee cites do not even speak to the "inability to meet maturing obligations" test under Delaware law, and the one that does is not inconsistent with Judge Sullivan's ruling.[23]  The Trustee has not and cannot identify a single controlling case supporting his argument that, under Delaware law, this Court should look more than half a year beyond the completion of the Step One tender offer—after a decision by shareholders to proceed with the Step Two merger, the satisfaction of other merger prerequisites (including FCC approval and an additional solvency opinion), the consummation of Step Two, and the additional debt Tribune assumed in Step Two—to assess whether the Step One tender offer itself rendered Tribune unable to satisfy its debts as they came due.  Given the Trustee's failure to identify any clear error of law or overlooked controlling law, the Trustee's arguments to reconsider the Court's application of the "inability to pay debts" test should be rejected.

### C.     The Court Correctly Concluded That The Trustee Failed To Plead "Balance Sheet" Insolvency At Step One (Tender Offer).

The Trustee argues that "[t]he Court was wrong to hold that 'the Trustee fails to allege any facts suggesting that Tribune was insolvent at Step One of the LBO.'"  (Mot. 20 (quoting Op. 15).)  However, the Motion fails to cite any *controlling* law that the Court ignored (instead arguing that the Court "overlooked *relevant* case law" (emphasis added)), nor does it cite any facts that the Court "apparently omitted from consideration."  (Mot. 20.)  These failures reflect that the Trustee,

---

[23]  *See, e.g., Quadrant Structured Prods. Co. v. Vertin* ("*Quadrant II*"), 115 A.3d 535 (Del. Ch. 2015) (addressing a different insolvency test—the balance sheet test); *In re Teleglobe Commc'ns Corp.*, 392 B.R. 561 (Bankr. D. Del. 2008) (finding that company's payment of debt obligations over five-month period refuted assertion of insolvency); *In re Opus E. LLC*, 698 F. App'x 711 (3d Cir. 2017) (addressing federal bankruptcy insolvency standard, not Delaware state-law standard); *In re Tribune Co.*, 464 B.R. 126 at 168 (same).

once again, disagrees with the Court's assessment of the adequacy of his allegations, but that is not a basis for reconsideration.

The Court correctly concluded that the three allegations regarding balance sheet insolvency identified in the Trustee's Omnibus Opposition failed to plausibly allege insolvency at the time of or immediately following the Step One tender offer, holding that: (1) "the fact that Tribune's financial situation was trending in the wrong direction" and that S&P had downgraded Tribune's debt "is ***totally irrelevant*** to the balance sheet test" (emphasis added); and (2) the Trustee failed to allege any "basis" for the alleged "comment" by Houlihan Lokey that "'it would be tough to opine Tribune was solvent at Step One, and later stated that Tribune was insolvent at the time of Step One and was more insolvent at the time of Step Two,'" nor did the Trustee "affirmatively allege[] that this was true" or that Houlihan's use of the term "insolvent," which "carries more than one meaning – both legally and colloquially," referred to "Delaware's balance sheet test." (Op. 15-16 (quoting Omnibus Opp. 35 and citing Compl. ¶¶ 197, 245, 268).)

*Quadrant II* (cited at Mot. 20) is no help to the Trustee. That Chancery Court decision is not controlling law and is inapposite: (1) the alleged downgrade of Tribune's unsecured debt to CCC+ is two full levels above the CCC- rating in *Quadrant II*; (2) the alleged downgrade to CCC+ was based on the total prospective debt in Step One *and* Step Two;[24] and (3) *Quadrant II* held that the defendants' concession that the company's "balance sheet showed negative stockholders equity under GAAP to the tune of over $300 million" was *independently* sufficient to create a factual issue regarding insolvency, whereas the credit rating downgrade and the sale of the company's

---

[24] *See* Compl. ¶ 245 (S&P downgrade assumed "the close of the proposed bank transaction"). The April 19, 2007 S&P report states that "[t]he rating on Tribune's existing unsecured notes are currently rated 'BB-'" and that the rating would only be "lowered further to 'CCC+' if shareholder approval for the [Merger] is obtained" (*see* Bankr. Dkt. 5444-21, Ex. 216), which approval was obtained over two months after Step One on August 21, 2007 (Compl. ¶ 352).

debt at "significant discounts"[25] provided "[a]*dditional* evidence" of insolvency. *Quadrant II*, 115 A.3d at 562 (emphasis added).[26]

The Trustee points to three other allegations that it claims the Court "discounted." (Mot. 21.) However, Judge Sullivan considered and did not "overlook" the three allegations (Op. 4-5, 15-16), the Trustee's disagreement with the Court's treatment of the allegations is no basis for reconsideration, and, in any event, the Court's treatment of the allegations was correct. The Trustee first argues that "multiple firms turned down paying engagements because they did not think that they would be able to opine that Tribune was solvent." (Mot. 21.) However, the Court reasonably concluded that such vague, hypothetical and conclusory allegations lack a sufficient "basis" to support a reasonable inference of insolvency. (Op. 15.) Second, the Trustee argues that "analysts and the financial press were uniformly critical of the Company's prospects." (Mot. 21.) But this allegation cuts the other way. Despite intense scrutiny of the LBO Transactions at every stage by credit ratings agencies, industry analysts, and major publications (*see* Compl. ¶¶ 125, 152-54, 244-57, 293-96), the Complaint does not cite a single publication or report as stating that Tribune was insolvent prior to Step Two. Instead, the Complaint cites credit rating reports from the time between Step One and Step Two, which included the Step One debt and factored in the then-prospective Step Two debt, yet still yielded credit ratings that indicate solvency. (*Id.* ¶¶ 295-96.) Third, the Trustee argues that "just a year prior to the LBO, the Reconsideration Defendants

---

[25]   *See Quadrant II*, 115 A.3d at 562 (the discounted debt included the sale of "(i) Senior Notes with a face amount of $149.7 million for $37 million, (ii) Subordinated Notes with a face amount of $71.4 million for $7.6 million, and (iii) Junior Notes with a face amount of $50 million for $11.3 million").

[26]   The Trustee's argument that the Court improperly "appl[ied] a summary judgment standard to the Complaint" (Mot. 20 n.13) is belied by the Court's holding that the Complaint adequately alleged insolvency with respect to Step Two (with which the Foundations, Chandler Trusts, and Chandler Directors disagree) by alleging "that Tribune took on $13.7 billion in debt … even though Tribune, 'at the time the second step of the LBO closed in December 2007, was worth no more than $10.4 billion.'" (Op. 16 (citing Compl. ¶ 20).)

opposed incurring leverage at a fraction of the amount ultimately suffered by Tribune in the LBO." (Mot. 21.) This allegation, however, "is totally irrelevant to the balance sheet test." (Op. 15.)

That the allegations of insolvency cited in the Motion are the best that the Trustee could identify in his 192-page Complaint, and his desperation to treat the LBO Transactions as a "unitary transaction," show that he has not alleged, and cannot plausibly allege, balance sheet insolvency following the Step One tender offer. Accordingly, he fails to state a fiduciary-breach claim at Step One, and there is no basis to reconsider Judge Sullivan's ruling on this point. *See JPMorgan Chase Bank*, 322 F. Supp. 2d at 58-59.

## IV. THERE IS NO BASIS TO REINSTATE THE UNJUST ENRICHMENT AND D.G.C.L. CLAIMS

The Court determined that the unjust enrichment and D.G.C.L. claims fail based on its holding that the Trustee failed to plead that Tribune was insolvent following the Step One tender offer. (Op. 17-19.) The Trustee concedes that the viability of these claims depend on a reversal of that holding. (Mot. 21.) Because the Court's solvency analysis stands, there is no basis to reinstate the unjust enrichment (Count 31) or D.G.C.L. (Count 2) claims.

## V. THE COURT SHOULD DENY RECONSIDERATION OF JUDGE SULLIVAN'S DISMISSAL OF THE CLAIMS WITHOUT LEAVE TO AMEND

There is no basis for reconsidering the Court's execution of its wide discretion in denying the Trustee's request to amend the complaint for the sixth time. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend." (citation omitted)). The Court did not, as the Trustee argues, base its decision solely on the Trustee's failure to submit a proposed amended complaint. Instead, Judge Sullivan highlighted that the Trustee had neither submitted a proposed amended complaint *nor* identified what additional facts or claims he would add if granted leave. (Op. 32.) Specifically, Judge Sullivan stated that the Trustee gave "no clue as to how the complaint's defects

would be cured" and "identified no additional facts or legal theories . . . [he] might assert if given leave to amend."  (*Id.*)

Critically, the Trustee cannot point to a clear legal error that Judge Sullivan made in exercising his discretion to deny the Trustee leave to amend.  The Trustee relies solely on *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015) (Mot. 21), and *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 24-25 (2d Cir. 2017) (Mot. 22), both of which reversed district court orders that dismissed claims without leave to amend where, unlike the instant case, the plaintiffs never had an opportunity to amend the complaint.

In contrast, Judge Sullivan relied on *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (cited at Op. 32).  There, the Second Circuit affirmed dismissal of a complaint without leave to amend where the plaintiffs "already had one opportunity to amend their complaint" and where it was "unlikely that the deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when they amended."  *Id.* at 188.  Importantly, the Second Circuit emphasized the plaintiffs had "identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend."  *Id.*; *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint.").

Here, the grounds for denying leave to amend are even stronger than in *City of Pontiac*; in that case, the plaintiff had only amended the complaint once, but here, the Trustee is on his *Fifth* Amended Complaint, filed in 2013.  By then, Tribune's four-year bankruptcy had concluded, and the Trustee already had discovery from over 30 persons and entities involved in the LBO, including access to nearly 4.5 million pages of documents and 38 sworn interviews of critical participants in

the challenged transactions. (Op. 6.) Moreover, on March 8, 2018, the Trustee requested to amend the Complaint a sixth time (*see* Dkt. 5600), yet still none of the proposed amendments would address the deficiencies identified in the Court's Opinion.

And his current Motion reflects yet **another** failed opportunity by the Trustee to offer any new facts that would save his claims. Indeed, the Trustee does not attempt to offer a single additional fact on the fiduciary claims—let alone something that would sufficiently show that the LBO Transactions should be viewed as one unitary transaction and that Tribune was rendered insolvent following Step One. (Op. 32 (citing *City of Pontiac*, 752 F.3d at 188).)[27] The reason is clear: the Trustee cannot adequately allege collapse or insolvency.

In fact, the Trustee points to just one new factual allegation, one that purports to support only his preference claims (Count 35, addressed in Motion 7). The Trustee baldly asserts that defendant Dennis FitzSimons "did not leave the employ of Tribune until December 31, 2007." (Mot. 23.) That assertion, however, is irrelevant because the question for the preference claim is not whether FitzSimons remained an employee, but whether he was an officer or director or otherwise qualified as an "insider," at the time of the relevant payments. *See* 11 U.S.C. §§ 101(31)(B), 547(b)(4)(A). The Trustee identifies no facts that would establish insider status.[28]

Because the Trustee has failed to explain how he can fix the deficiencies identified in the Opinion, any attempt to amend would be futile and the Court correctly denied leave to amend.[29]

---

[27]   In passing, the Trustee also complains that the parties' briefing did not address the issue of collapse, which, in another part of his Motion, the Trustee acknowledges is untrue. (*See* Mot. 16 (acknowledging that the Trustee argued in favor of collapse, citing *Orr* in his Omnibus Opposition).)

[28]   Tribune's 2007 Form 8-K shows that FitzSimons ceased being a director or officer of the company on the date that Step Two closed, ***December 20, 2007***—one week before the challenged December 27, 2007 payments. *See* Dec. 28, 2007 Tribune Form 8-K, Bankr. Dkt. 5438-2 (filed Aug. 20, 2010) at 8 ("As of the Effective Time [defined as December 20, 2007 at page 2], Dennis J. FitzSimons, Chief Executive Officer and a member of the Board of Directors of the Company, ***resigned as a director and officer of the Company***." (emphasis added)).

[29]   Leave to amend also cannot cure the Trustee's failure to adequately allege that the Chandler Trusts or the Foundations were controlling shareholders who owed a fiduciary duty in the first place—an argument the Chandler Trusts and the Foundations made but the Court noted it did not need to reach in the Opinion. (*See* Op.

## VI. THE TRUSTEE'S REQUEST FOR CLARIFICATION AS TO MOTION 7

The Trustee also seeks clarification with respect to the portion of the Opinion that granted Motion 7 and dismissed with prejudice Count 35 of the *FitzSimons* Complaint and Count 1 of the Tag-Along Actions. The Trustee had sought to avoid and recover as preferential transfers under § 547 specified Executive Transition Payments, Phantom Equity Payments, and Success Bonus Payments (as well as related Excise Tax Gross Up Payments) made to Tribune employees in 2007 and 2008. The Trustee submits two exhibits "showing the Trustee's view of what transfers were not dismissed." (Mot. 24, Exs. 1-2.)[30]

The Trustee's ***exhibit*** is right, as far as it goes: this wave of motions did not attack the Trustee's claims under § 548(a)(1)(A) and (a)(1)(B) in the Tag-Along Actions. Motion No. 7 focused on the Trustee's failure "to include a single factual allegation to support the conclusory 'insider' label as to any Tag-Along Defendant" under § 547. (S.D.N.Y. No. 11-MD-2296, Dkt. 5930 at 2.) The Court agreed, concluding that "the Tag-Along Complaints fail to allege any facts demonstrating that the Tag-Along Defendants were ever insiders of Tribune, and utterly fail to explain what relationship, if any, each of the Tag-Along Defendants had to Tribune." (Op. 31.)

There is, therefore, no reason to clarify anything as to the Trustee's Exhibit 1. What the Trustee really seems to be seeking with respect to the Tag-Along Actions claims, however, is a ruling by the Court validating the Trustee's remaining § 548 claims which, if intervening rulings are considered, are also subject to dismissal. The Court's Count One Decision dismissing § 548 claims against the Shareholder Defendants, plainly stated that the Trustee failed to satisfy the

---

10 n.5.) Indeed, the Count One Decision already held that neither Dennis FitzSimons (as representative of the Foundations) nor the Chandler Directors (as representatives of the Chandler Trusts) were alleged to have possessed control over the Special Committee. (*See* Count One Decision at 10-15.)

[30] The Trustee does not dispute that Count 1 of the Tag-Along Actions, and all associated transfers, were dismissed pursuant to the Opinion. (Mot. 24.) In Counts 2 and 3 of the Tag-Along Actions, the Trustee still seeks to avoid and recover the same payments from each defendant as fraudulent transfers under § 548.

"actual intent to hinder, delay, or defraud" prong of § 548. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *20 (S.D.N.Y. Jan. 6, 2017). The Count One Decision applies equally to Counts 2 and 3 of the Tag-Along Actions, meaning that the transfers listed on Exhibit 1 will not survive once the Court is asked to rule on the remaining two Tag-Along Actions claims. The Trustee's "clarification" request should not foreclose that motion by an implicit and incorrect validation of the Trustee's § 548 claim to avoid and recover those transfers.

## **CONCLUSION**

For the foregoing reasons, the Foundations, the Chandler Trusts, the Chandler Directors, and the Motion 7 Movants respectfully request that the Court deny the Trustee's Motion.[31]

Dated: January 11, 2019                                 Respectfully submitted,


By:   /s/ Gabor Balassa                          By:   /s/Oscar Garza
      Gabor Balassa, P.C.                              Oscar Garza

Mark Filip, P.C.                                          Oscar Garza (CA SBN 149790)
Gabor Balassa, P.C.                                   Douglas G. Levin (CA SBN 263951)
Brian Borchard                                            Matthew G. Bouslog (CA SBN 280978)
KIRKLAND & ELLIS LLP                          GIBSON, DUNN & CRUTCHER LLP

---

[31] The Opinion directed the Clerk of the Court to terminate "the Chandler Trusts" and "the Chandler Directors" from this action. (Op. 32-33.) In the event that the Court denies the Motion, and in order for the docket to accurately reflect the current state of this action, the Chandler Trusts respectfully request that the Court also dismiss and terminate: (a) the following "sub-trusts" ("Sub-Trusts") that are included in the "Chandler Trusts" (*see* Compl. ¶ 72): (1) Philip Chandler Residuary Trust No. 2; (2) May C. Goodan Trust No. 2; (3) Ruth C. Von Platen Trust No. 2; (4) Dorothy B. Chandler Marital Trust No. 2; (5) Dorothy B. Chandler Residuary Trust No. 2; (6) HOC Trust No. 2 FBO Scott Haskins; (7) HOC Trust No. 2 FBO John Haskins; (8) HOC Trust No. 2 FBO Eliza Haskins; (9) HOC GST Exempt Trust No. 2. FBO Scott Haskins; (10) HOC GST Exempt Trust No. 2. FBO John Haskins; (11) HOC GST Exempt Trust No. 2. FBO Eliza Haskins; (12) Alberta W. Chandler Marital Trust No. 2; (13) Earl E. Crowe Trust No. 2; (14) Patricia Crowe Warren Residuary Trust No. 2; (15) Helen Garland Trust No. 2 (For Gwendolyn Garland Babcock); (16) Helen Garland Trust No. 2 (For William M. Garland III); (17) Helen Garland Trust No. 2 (For Hillary Duque Garland); (18) Garland Foundation Trust No. 2; and (19) Marian Otis Chandler Trust No. 2; (b) the following individuals, who were sued in their capacity as trustees of the Chandler Trusts and Sub-Trusts ("Trustees") and, if applicable, as former Tribune shareholders (who are also dismissed and terminated from the action, *see* Count One Decision at 27): (1) Judy C. Webb; (2) Susan Babcock; and (3) Camilla Chandler Frost; and (c) the following estate representatives for a Chandler Director (Jeffrey Chandler) and a Trustee (Warren Williamson), who were substituted into this action pursuant to Fed. R. Civ. P. 25(a) ("Successors"): (1) Chandler Family Trust C Dated April 15, 2012, Ann-Charlotte Chandler, Kristina Chandler Laviolette, Trustees (*see* Dkt. 5643); (2) Williamson Living Trust, Elizabeth A. Bawden, Trustee (*see* Dkt. 5842); and (3) Estate of Warren B. Williamson (*id.*).

300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200

*Counsel for the Robert R. McCormick
Foundation and Cantigny Foundation ("The
Foundations")*

3161 Michelson Dr.
Irvine, CA 92612
Tel: (949) 451-3800
Fax: (949) 451-4220

*Counsel for the Chandler Trusts and Sub-
Trusts, Trustees, Chandler Directors, and
Successors*

By:    /s/ George R. Dougherty
       George R. Dougherty

George R. Dougherty
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

*Liaison Counsel to the Named Defendants in
FitzSimons Action and Member of the
FitzSimons Named Defendants' Executive
Committee*

*I, George Dougherty, certify that each of the
other signatories below has agreed to the
form and substance of this brief and that I
have their consent to submit the brief
electronically on their behalf*

**Steptoe & Johnson LLP**

By:    /s/ Michael Dockterman
       Michael Dockterman

*Member of the FitzSimons Named
Defendants' Executive Committee*

**Arnold & Porter Kaye Scholer LLP**

By:    /s/ Alan Salpeter
       Alan Salpeter

*Member of the FitzSimons Named
Defendants' Executive Committee*

**Latimer LeVay Fyock LLC**

By:     /s/ Richard A. Saldinger
            Richard A. Saldinger

*Member of the FitzSimons Named
Defendants' Executive Committee*

**Hannafan & Hannafan, Ltd.**

By:     /s/ Blake T. Hannafan
            Blake T. Hannafan

*Member of the FitzSimons Named
Defendants' Executive Committee*

**Sperling & Slater, P.C.**

By:     /s/ Steven C. Florsheim
            Steven C. Florsheim

*Member of the FitzSimons Named
Defendants' Executive Committee*

**FrankGecker LLP**

By:     /s/ Joseph D. Frank
            Joseph D. Frank

*Member of the FitzSimons Named
Defendants' Executive Committee*

**CERTIFICATE OF SERVICE**

      I certify that on January 11, 2019, the foregoing was electronically filed through the CM/ECF system for the United States District Court, Southern District of New York and served through the Court's electronic filing system to all counsel and parties of record.


Dated: January 11, 2019           KIRKLAND & ELLIS LLP

                             By: /s/ Gabor Balassa, P.C.
                                   Gabor Balassa, P.C.

                                   Kirkland & Ellis LLP
                                   300 N. LaSalle
                                   Chicago, IL 60654
                                   Tel: (312) 862-2000
                                   gabor.balassa@kirkland.com